Receipt #C003192

ECF

FILED
JUL - 8 2005
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES )
)
)
Plaintiff, )
)
v. ) No. 05-738T
)
THE UNITED STATES OF AMERICA, )
)
Defendant. )

**COMPLAINT**

Plaintiff, Browning-Ferris Industries, Inc. & Subsidiaries (hereinafter, "BFI" or the "Plaintiff"), brings this suit against the Defendant, the United States of America (hereinafter, the "Defendant"), and alleges as follows:

**OVERVIEW OF THE COMPLAINT**

1. This is a tax dispute arising under the Internal Revenue Code, Title 26 of the United States Code, in which BFI seeks a refund of erroneously assessed and collected federal income taxes of $18,549,092 for the taxable year ended September 30, 1997 and $9,711,514 for the taxable year ended September 30, 1998 (hereinafter, the "1997 and 1998 tax years," respectively). The sole substantive issue to be resolved in this action involves BFI's capital loss in connection with the sale of stock in the taxable year ended July 30, 1999 (hereinafter, the "1999 tax year"), which impacts BFI's federal income tax for the 1997 and 1998 tax years.

2. Jurisdiction is conferred upon this Court by Title 28, United States Code, section 1491, and Title 26, United States Code, section 7422.

3. BFI is a corporation organized under the laws of the State of Delaware. BFI's employer identification number is 74-1673682.

4. BFI was the common parent of an affiliated group of corporations that filed consolidated federal income tax returns for the tax years at issue. Pursuant to Treas. Reg. §1.1502-77(a), BFI is duly authorized to act in its own name with respect to all matters relating to the tax liability of the affiliated group of corporations of which it was the common parent for all periods relevant to this action. The term "BFI" as used herein refers to BFI, the consolidated group, or the applicable members of the group, as appropriate.

5. Defendant is the United States of America.

**FACTS RELATING TO THE CAPITAL LOSS ON THE SALE OF STOCK**

6. On July 30, 1999, Allied Waste Industries, Inc. (hereinafter, "Allied") acquired substantially all of the outstanding stock of BFI.

7. Prior to the acquisition, BFI utilized a large in-house staff to manage the liabilities arising from its operations. In contrast, Allied utilized a small in-house staff and outsourced most of its environmental management, risk management and other expertise.

8. In July 1999, shortly before the close of the acquisition, BFI restructured the management of certain contingent liabilities in a manner consistent with Allied's outsourcing approach and to provide a legal structure that would foster the effective management of the liabilities. The contingent liabilities were liabilities arising from BFI's waste management operations, including, but not limited to, post-closure costs associated with closed landfills, closure and other costs associated with active landfills, costs associated with Superfund matters, costs associated with hazardous waste management, and remediation costs associated with chemical waste management.

9. As a replacement for its heavily staffed internal department, BFI established six separate liability management companies based on the specific expertise needed for the management of the liabilities and compliance with the applicable regulatory laws.

10. In order to consolidate the liabilities into the corresponding liability management companies, BFI contributed certain notes in the aggregate amount of $902,561,661 to the liability management companies in exchange for (i) Class B Common Stock of the liability management companies, and (ii) the assumption of contingent liabilities by the liability management companies in the aggregate amount of $901,660,007.

11. BFI then sold the shares of Class B Common Stock to environmental and insurance consultants with considerable expertise in the liabilities managed by the respective liability management company (hereinafter, the "Consulting Investors"). The ownership of the stock provided an equity incentive for the Consulting Investors to aggressively identify and take advantage of cost-saving opportunities in managing the liabilities.

12. The liability management companies have been helpful to the management of the liabilities and they have considered numerous cost containment strategies, many of which have been implemented and have helped to achieve cost saving relating to the liabilities.

13. The aggregate amount realized by BFI on the sale of the Class B Common Stock to the Consulting Investors in the 1999 tax year was $901,654. BFI's aggregate tax basis in the Class B Common Stock was $902,561,661, an amount which is the sum of the tax basis of the property that BFI contributed to the liability management companies and which is unreduced by the liability management companies' assumption of the contingent liabilities. Consequently, BFI's sale of the Class B Common Stock resulted in an aggregate capital loss of $901,660,007 in the 1999 tax year.

14. BFI is entitled to offset this capital loss against capital gain net income of $80,923,602 in the 1999 tax year and, as a result, incurred an additional net operating loss of $80,923,602 in the 1999 tax year.

**COUNT ONE**
**(1997 Tax Year)**

15. BFI reincorporates the allegations set forth in paragraphs 1 through 13, above, as if fully set forth herein.

16. Pursuant to RCFC 9(h)(6), BFI states the following:

a) On or about June 16, 1998, BFI filed its federal income tax return for the 1997 tax year with the IRS in Houston, Texas. The name, address, and employer identification number of the taxpayer appearing on the tax return are as follows:

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES
757 N. ELDRIDGE
HOUSTON, TEXAS 77079
EIN: 74-1673682

b) On or about the following dates, BFI made payments of income tax in the following amounts for the 1997 tax year to the Internal Revenue Service Center in Austin, Texas:

| DATE PAID OR REFUNDED | AMOUNT PAID (REFUNDED) |
|---|---|
| January 15, 1997 | $19,000,000 |
| March 17, 1997 | 47,500,000 |
| June 16, 1997 | 25,000,000 |
| September 15, 1997 | 26,000,670 |
| December 18, 1997 | (15,000,000) |
| January 15, 1998 | (46,086,008) |
| August 28, 2000 | (32,709,291) |

| | |
|---|---|
| Total | $23,705,371 |

c) On or about April 25, 2005, BFI made a payment of additional tax in the amount of $19,079,286 to the IRS Appeals Office in Houston, Texas, which forwarded the payment to an IRS Service Center.

d) The net amount of tax paid by BFI with respect to the 1997 tax year is $42,784,657.

e) On or about May 5, 2005, BFI filed a timely claim for refund of $18,549,092 of the $42,784,657 in taxes paid for the 1997 tax year with the IRS Appeals Office in Houston, Texas. A copy of BFI's claim for refund for the 1997 tax year is attached as Exhibit A hereto and incorporated by reference.

f) The name, address, and employer identification number of the taxpayer appearing on the BFI claim for refund for the 1997 tax year are as follows:

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES
15880 N. GREENWAY-HAYDEN LOOP, SUITE 100
SCOTTSDALE, ARIZONA 85260
EIN: 74-1673682

g) The IRS denied BFI's claim for refund for the 1997 tax year pursuant to a notice of disallowance dated May 10, 2005, thereby allowing BFI to bring suit in accordance with Title 26, United States Code, section 6532. A copy of the notice of disallowance is attached as Exhibit B hereto and incorporated by reference.

17. As a result of the capital loss incurred on the sale of the Class B Common Stock and the resulting additional net operating loss in the 1999 tax year, BFI is entitled to an additional net operating loss carryback from the 1999 tax year to the 1997 tax year in the amount of $80,923,602.

18. For the reasons set forth above, BFI is entitled to an income tax refund of at least $18,549,092 for the 1997 tax year, or such greater amount as is legally refundable, plus interest thereon as provided by law.

**COUNT TWO**
**(1998 Tax Year)**

19. BFI reincorporates the allegations set forth in paragraphs 1 through 17, above, as if fully set forth herein.

20. Pursuant to RCFC 9(h)(6), BFI states the following:

a) On or about June 15, 1999, BFI filed its federal income tax return for the 1998 tax year with the IRS in Houston, Texas. The name, address, and employer identification number of the taxpayer appearing on the tax return are as follows:

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES
757 N. ELDRIDGE
HOUSTON, TEXAS 77079
EIN: 74-1673682

b) On or about the following dates, BFI made payments of income tax in the following amounts for the 1998 tax year to the Internal Revenue Service Center in Austin, Texas:

| DATE PAID OR REFUNDED | AMOUNT PAID (REFUNDED) |
|---|---|
| January 15, 1998 | $26,000,000 |
| January 15, 1998 | 46,086,008 |
| March 16, 1998 | 24,000,000 |
| June 15, 1998 | 50,000,000 |
| December 18, 1998 | (45,086,008) |
| July 8, 1999 | (28,871,579) |
| August 28, 2000 | (9,498,799) |

| | |
|---|---|
| Total | $62,629,622 |

c) On or about April 25, 2005, BFI made a payment of additional tax in the amount of $3,519,979 to the IRS Appeals Office in Houston, Texas, which forwarded the payment to an IRS Service Center.

d) The net amount of tax paid by BFI with respect to the 1998 tax year is $66,149,601.

e) On or about May 5, 2005, BFI filed a timely claim for refund of $9,711,514 of the $66,149,601 in taxes paid for the 1998 tax year with the IRS Appeals Office in Houston, Texas. A copy of BFI's claim for refund for the 1998 tax year is attached as Exhibit C hereto and incorporated by reference.

f) The name, address, and employer identification number of the taxpayer appearing on the BFI claim for refund for the 1998 tax year are as follows:

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES
15880 N. GREENWAY-HAYDEN LOOP, SUITE 100
SCOTTSDALE, ARIZONA 85260
EIN: 74-1673682

g) The IRS denied BFI's claim for refund for the 1998 tax year pursuant to a notice of disallowance dated May 10, 2005, thereby allowing BFI to bring suit in accordance with Title 26, United States Code, section 6532. A copy of the notice of disallowance is attached as Exhibit B hereto and incorporated by reference.

21. As a result of the capital loss incurred on the sale of the Class B Common Stock and the resulting additional net operating loss in the 1999 tax year, BFI is entitled to an additional net operating loss carryback from the 1999 tax year to the 1997 tax year in the amount of $80,923,602, which reduces BFI's tax liability for the 1997 tax year by $18,549,092, or such greater amount as is legally refundable.

22. As a result thereof, BFI is subject to alternative minimum tax in the amount of $3,325,937 in the 1997 tax year and is not allowed a nonconventional source fuel credit in the amount of $6,385,577 in the 1997 tax year, but is entitled to a corresponding minimum tax credit in the amount of $9,711,514 in the 1998 tax year.

23. For the reasons set forth above, BFI is entitled to an income tax refund of at least $9,711,514 for the 1998 tax year, or such greater amount as is legally refundable plus interest thereon as provided by law.

**WHEREFORE,** BFI prays for judgment in its favor and against the Defendant:

1. In the amount of $18,549,092 for the 1997 tax year, or such greater amount as is legally refundable, plus interest thereon as provided by law;

2. In the amount of $9,711,514 for the 1998 tax year, or such greater amount as is legally refundable, plus interest thereon as provided by law;

3. For the costs and disbursements of this action, and such other and further relief as this Court deems just and proper.

Dated this 6th day of July, 2005.

Respectfully submitted,

ROBERT F. DENVIR
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 558-5675
Fax: (312) 558-5700
*Attorney of Record for the Plaintiff*

*Of counsel*:

JAMES M. LYNCH
PETER W. POULOS

Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 558-5600
Fax: (312) 558-5700

JAMES L. MALONE III
Winston & Strawn LLP
200 Park Avenue
New York, New York 10166
Phone: (212) 294-6700
Fax: (212) 294-4700

# Exhibit
# A

Form **1120X** (Rev. December 2004)
Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ 9/30/97 (Enter month and year.)

Please type or print

Name: Browning-Ferris Industries, Inc. & Subsidiaries

Employer identification number: 74-1673682

Number, street, and room or suite no. (If a P.O. box, see instructions.): 15880 N Greenway-Hayden Loop, Suite 100

City or town, state, and ZIP code: Scottsdale, AZ 85260

Telephone number (optional): 480.627.2736

Enter name and address used on original return (If same as above, write "Same.")

Browning-Ferris Industries, Inc. & Subsidiaries, 757 N. Eldridge, Houston, TX 77079

Internal Revenue Service Center where original return was filed ▶ Austin, TX

**Fill in applicable items and use Part II on the back to explain any changes**

| **Part I** Income and Deductions (see instructions) | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income (Form 1120 or 1120-A, line 11) | 1 | 4,389,800,149 | 0 | 4,389,800,149 |
| 2 Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 4,234,964,403 | 80,923,602 | 4,315,888,005 |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | 154,835,746 | (80,923,602) | 73,912,144 |
| 4 Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 42,784,657 | (18,549,092) | 24,235,565 |

**Payments and Credits** (see instructions)

| | | | | |
|---|---|---|---|---|
| 5a Overpayment in prior year allowed as a credit | 5a | 0 | 0 | 0 |
| b Estimated tax payments | 5b | 102,500,670 | 0 | 102,500,670 |
| c Refund applied for on Form 4466 | 5c | 32,709,291 | 0 | 32,709,291 |
| d Subtract line 5c from the sum of lines 5a and 5b | 5d | 69,791,379 | 0 | 69,791,379 |
| e Tax deposited with Form 7004 | 5e | 0 | 0 | 0 |
| f Credit from Form 2439 | 5f | 0 | 0 | 0 |
| g Credit for Federal tax on fuels | 5g | 0 | 0 | 0 |
| 6 Tax deposited or paid with (or after) the filing of the original return | | | 6 | 19,079,286 |
| 7 Add lines 5d through 6, column (c) | | | 7 | 88,870,665 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | | | 8 | 46,086,008 |
| 9 Subtract line 8 from line 7 | | | 9 | 42,784,657 |

**Tax Due or Overpayment** (see instructions)

| | | |
|---|---|---|
| 10 **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the **"United States Treasury"** ▶ | 10 | 0 |
| 11 **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 18,549,092 |
| 12 Enter the amount of line 11 you want: **Credited to 20__ estimated tax** ▶ **Refunded** ▶ | 12 | 18,549,092 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer — Date: 5/12/05 — ▶ Title: VP

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

**For Privacy Act and Paperwork Reduction Act Notice, see page 4.** Form **1120X** (Rev. 12-2004)

ISA
STF FED4298F.1

Form 1120X (Rev. 12-2004) Page 2

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . . ▶ ☑

Total Deductions (line 2) increased due to an additional net operating loss carryback from the taxable year ended July 30, 1999. Please refer to Attachment I for an explanation of the change in Total Deductions.

Taxable Income (line 3) has decreased due to the additional net operating loss carryback included in line 2 as explained above.

Federal Income Tax (line 4) has decreased due to the additional net operating loss carryback as explained above.

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**9/30/97 FORM 1120X EXPLANATION OF CHANGES**
**INDEX OF ATTACHMENTS**

1 Explanation of Changes

2 As Amended Schedules

3 IRS Audit Statement (Form 3610)

4 IRS Examination Report (Form 886A)

5 Copy of 7/30/99 Claim for Refund (Form 1120X)

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**9/30/97 FORM 1120X EXPLANATION OF CHANGES**
**ATTACHMENT 1**

The bases for the changes requested in this claim for refund are set forth below. The term "Claimant" as used herein refers to Browning-Ferris Industries, Inc. and the members of its consolidated group as appropriate. Unless otherwise indicated, section ("§") references are to the Internal Revenue Code of 1986 ("IRC"), as amended, as in effect for the year in issue. Based on the changes set forth below, Claimant is entitled to a refund of $18,549,092 or such greater amount as is legally refundable. In addition, Claimant asserts that it is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, its alternative minimum tax, environmental tax, net operating loss deductions and net operating loss carrybacks and carryovers, capital loss deductions and capital loss carrybacks and carryovers, and tax credits and tax credit carrybacks and carryovers) affecting this year. Claimant also requests a refund of all related interest, penalties, or additions to tax that have been overpaid. Claimant also requests statutory interest on any overpayment as provided by law (including, but not limited to, the benefit of offsetting, interest netting, and the net interest rate of zero on periods of overlapping underpayment and overpayments).

Claimant incurred an aggregate capital loss of $901,660,007 on the sale by certain members of Claimant's consolidated return group (hereinafter referred to as the "BFI Entities") of Class B Common Stock in six liability management companies, as shown on attached Exhibit 1, to unrelated investors during the taxable year ended July 30, 1999 (the "1999 tax year"). Claimant is entitled to offset this capital loss against capital gain net income of $80,923,602 in the 1999 tax year and, as a result, is entitled to an additional net operating loss carryback from the 1999 tax year to its taxable year ending September 30, 1997 (the "1997 tax year") in the

amount of $80,923,602 or such other proper amount as provided by law. This results in a reduction in Claimant's taxable income for the 1997 tax year in the amount of $80,923,602 or such other proper amount as provided by law.

On July 30, 1999, Allied Waste Industries, Inc. ("Allied") acquired substantially all of the outstanding stock of Claimant. Prior to the acquisition, Claimant utilized a large in-house staff to manage the liabilities arising from its operations. In contrast, Allied utilized a small in-house staff and outsourced most of its environmental management, risk management and other expertise.

In July 1999, shortly before the close of the acquisition, Claimant restructured the management of its contingent liabilities in a manner consistent with Allied's outsourcing approach and to provide a legal structure that would foster the effective management of the liabilities. As a replacement for Claimant's heavily staffed internal departments, Claimant established six separate liability management companies based on the specific expertise needed for the management of the liabilities and compliance with applicable regulatory laws, as shown on Exhibit 2. In order to consolidate the liabilities into the corresponding liability management companies, the BFI Entities contributed certain notes in an aggregate amount of $902,561,661 to the liability management companies in exchange for (i) Class B Common Stock, and (ii) the assumption by the liability management companies of contingent liabilities in the aggregate amount of $901,660,007. The above transactions were tax-free exchanges pursuant to § 351.

Each of the BFI Entities then sold their shares of Class B Common Stock to environmental and insurance consultants with considerable expertise in the liabilities managed by the respective liability management company (hereinafter referred to the "Consulting Investors"). See identities of Consulting Investors at Exhibit 2. The ownership of the stock

provides an equity incentive for the Consulting Investors to aggressively identify and take advantage of cost-saving opportunities in managing the liabilities.

The aggregate amount realized by the BFI Entities on the sale of the Class B Common Stock during the 1999 tax year was $901,654. The BFI Entities' tax basis in the Class B Common Stock was a substitute basis equal to the sum of the tax basis of the property which the BFI Entities contributed to the liability management companies and unreduced by the liability management companies' assumption of the liabilities in accordance with § 358. As shown on Exhibit 1, the BFI Entities' aggregate tax basis in the Class B Common Stock was $902,561,661. [The liabilities do not reduce stock basis because they are excluded under § 357(c)(3) and, therefore, § 358(d)(2) applies.] Alternatively, [the liabilities are not taken into account under § 358(d) because such contingent liabilities are not "liabilities" for federal income tax purposes.] Consequently, as shown on Exhibit 1, the BFI Entities' sales of the Class B Common Stock resulted in an aggregate capital loss of $901,660,007 in the 1999 tax year.

Claimant's deduction of the capital loss resulting from the sale of the Class B Common Stock during the 1999 tax year was disallowed by the Internal Revenue Service's (the "Service") examination team. The disallowance of the capital loss is reflected in Issue 71 of the Examination Report dated May 31, 2002 and revised September 3, 2002. The disallowance of the capital loss is incorrect and without merit. Claimant hereby incorporates by reference all documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to the Service.

As a result of the changes herein, Claimant's tax liability is reduced by $18,549,092 or such greater amount as is legally refundable.

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**FORM 1120X EXPLANATION OF CHANGES**
**ATTACHMENT 1**
**EXHIBIT 1**

| Shares Sold of: | Seller | Seller's FEIN | Sales Price | Basis | Gain (Loss) |
|---|---|---|---|---|---|
| Browning-Ferris Industries Europe, Inc. | Browning-Ferris Industries, Inc. | 74-1673682 | 155,840 | 155,995,840 | (155,840,000) |
| **Entity Total** | | | **155,840** | **155,995,840** | **(155,840,000)** |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries, Inc. | 74-1673682 | 121 | 120,120 | (119,999) |
| BFI Trans River (LP), Inc. | Attwoods of North America, Inc. | 98-0066273 | 2,022 | 2,022,020 | (2,019,998) |
| BFI Trans River (LP), Inc. | BFI Waste Systems of New Jersey, Inc. | 22-1755133 | 9,842 | 9,849,840 | (9,839,998) |
| BFI Trans River (LP), Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 72,871 | 72,952,880 | (72,880,009) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 6,552 | 6,556,550 | (6,549,998) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 4,949 | 4,954,950 | (4,950,001) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 941 | 940,940 | (939,999) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 2,563 | 2,562,560 | (2,559,997) |
| BFI Trans River (LP), Inc. | CECOS International, Inc. (New York) | 16-1069544 | 1,417 | 1,421,420 | (1,420,003) |
| BFI Trans River (LP), Inc. | Woodlake Sanitary Service, Inc. | 41-0673360 | 28 | 30,030 | (30,002) |
| **Entity Total** | | | **101,306** | **101,411,310** | **(101,310,004)** |
| BFI Energy Systems of Plymouth, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 278,417 | 278,698,420 | (278,420,003) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 16,125 | 16,126,110 | (16,109,985) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 49,040 | 49,099,050 | (49,050,010) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 4,164 | 4,164,160 | (4,159,996) |
| BFI Energy Systems of Plymouth, Inc. | International Disposal Corp. of California | 94-2229685 | 6,063 | 6,066,060 | (6,059,997) |
| BFI Energy Systems of Plymouth, Inc. | New Morgan Landfill Company, Inc. | 23-2645522 | 15,991 | 16,016,000 | (16,000,009) |
| **Entity Total** | | | **369,800** | **370,169,800** | **(369,800,000)** |
| Browning-Ferris Industries Asia Pacific, Inc. | CECOS International, Inc. (New York) | 16-1069544 | 69,810 | 69,879,810 | (69,810,000) |
| **Entity Total** | | | **69,810** | **69,879,810** | **(69,810,000)** |
| BFI Services Group, Inc. | BFI Waste Systems of New Jersey, Inc. | 22-1755133 | 7,438 | 7,437,430 | (7,429,992) |
| BFI Services Group, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 138,661 | 138,808,670 | (138,670,009) |
| BFI Services Group, Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 314 | 310,310 | (309,996) |
| BFI Services Group, Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 7,072 | 7,077,070 | (7,069,998) |
| BFI Services Group, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 21,084 | 21,111,090 | (21,090,006) |
| BFI Services Group, Inc. | Browning-Ferris, Inc. (MD) | 74-1990096 | 6,181 | 6,176,170 | (6,169,989) |
| BFI Services Group, Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 11,210 | 11,221,210 | (11,210,000) |
| BFI Services Group, Inc. | Woodlake Sanitary Service, Inc. | 41-0673360 | 1,860 | 1,871,870 | (1,870,010) |
| **Entity Total** | | | **193,820** | **194,013,820** | **(193,820,000)** |
| BFI Energy Systems of Boston, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 830 | 830,830 | (830,000) |
| BFI Energy Systems of Boston, Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 5,670 | 5,675,670 | (5,670,000) |
| BFI Energy Systems of Boston, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 4,580 | 4,584,580 | (4,580,000) |
| **Entity Total** | | | **11,080** | **11,091,080** | **(11,080,000)** |
| **Combined Entities Total** | | | **901,656** | **902,561,660** | **(901,660,004)** |

1.4

LMCs

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**FORM 1120X EXPLANATION OF CHANGE**
**ATTACHMENT 1**
**EXHIBIT 2**

| Liability Management Company | Description of Liabilities Assumed | Consulting Investors |
|---|---|---|
| BFI Services Group, Inc. | Routine post-closure costs associated with closed landfills | Foster Environmental<br>Herst & Associates<br>Power Strategies, Inc. |
| Browning-Ferris Industries Asia Pacific, Inc. | Costs associated with hazardous waste management | COMCOR Environmental, Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Energy Systems of Boston, Inc. | Remediation costs associated with chemical waste management | COMCOR Environmental Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Trans River (LP), Inc. | Transaction costs for Superfund matters, remediation costs, potential legal settlements, and related legal and engineering costs | COMCOR Environmental Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Energy Systems of Plymouth, Inc. | Closing costs, capping costs and storm water control costs associated with operating active landfills | COMCOR Environmental Ltd.<br>Foster Environmental<br>Herst & Associates |
| Browning-Ferris Industries Europe, Inc. | Contingent Insurance Liabilities (auto, general, and workman's compensation) | Willis Corroon Corp. of Arizona |

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**FORM 1120X DETAIL**
**YEAR ENDED SEPTEMBER 30, 1997**

| Line | Item | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss | |
|---|---|---|---|---|---|
| 1a | Gross receipts or sales | | 4,803,186,921 | | 4,803,186,921 |
| 1b | Less returns & allowances | | 0 | | 0 |
| 1c | Balance | | 4,803,186,921 | | 4,803,186,921 |
| 2 | Cost of goods sold | | 1,702,212,993 | | 1,702,212,993 |
| 3 | Gross profit | | 3,100,973,928 | | 3,100,973,928 |
| 4 | Dividends | | 60,081,101 | | 60,081,101 |
| 5 | Interest | | 942,402,667 | | 942,402,667 |
| 6 | Gross rents | | 28,113,844 | | 28,113,844 |
| 7 | Gross royalties | | 9,724,219 | | 9,724,219 |
| 8 | Capital gain net income | | | | 0 |
| 9 | Net gain or (loss) from Form 4797 | | (123,277,547) | | (123,277,547) |
| 10 | Other income | | 371,781,937 | | 371,781,937 |
| 11 | Total income | | 4,389,800,149 | | 4,389,800,149 |
| 12 | Compensation of officers | | 32,976,028 | | 32,976,028 |
| 13a | Salaries and wages | 930,951,932 | | 930,951,932 | |
| 13b | Less employment credits | 0 | | 0 | |
| 13c | Balance | | 930,951,932 | | 930,951,932 |
| 14 | Repairs and maintenance | | 75,713,449 | | 75,713,449 |
| 15 | Bad debts | | 21,675,033 | | 21,675,033 |
| 16 | Rents | | 78,357,197 | | 78,357,197 |
| 17 | Taxes and licenses | | 121,572,126 | | 121,572,126 |
| 18 | Interest | | 1,073,979,327 | | 1,073,979,327 |
| 19 | Charitable contributions | | 4,676,077 | | 4,676,077 |
| 20 | Depreciation | 419,990,097 | | 419,990,097 | |
| 21a | Less Depreciation claimed on Sch. A and elsewhere | 0 | | 0 | |
| 21b | | | 419,990,097 | | 419,990,097 |
| 22 | Depletion | | 0 | | 0 |
| 23 | Advertising | | 11,380,548 | | 11,380,548 |
| 24 | Pension, profit-sharing, etc. plans | | 15,811,037 | | 15,811,037 |
| 25 | Employee benefit programs | | 121,067,228 | | 121,067,228 |
| 26 | Other deductions | | 1,248,641,120 | | 1,248,641,120 |
| 27 | Total deductions | | 4,156,791,199 | | 4,156,791,199 |
| 28 | Taxable income before NOL & spec. ded. | | 233,008,950 | | 233,008,950 |
| 29a | Net operating loss deduction (from FY7/99) | 78,171,334 | | 159,094,936 | |
| 29b | Special deductions | 1,870 | | 1,870 | |
| 29c | | | 78,173,204 | | 159,096,806 |
| 30 | **Taxable income** | | 154,835,746 | | 73,912,144 |
| 31 | **Total tax (Schedule J, Line 10)** | | 42,784,657 | | 24,235,565 |
| 32a | Overpayment from previous year | 0 | | 0 | |
| 32b | Estimated tax payments & Backup withholding | 102,500,670 | | 102,500,670 | |
| 32c | Less refund applied for on Form 1139 | (32,709,291) | | (32,709,291) | |
| 32d | Balance | 69,791,379 | | 69,791,379 | |
| 32e | Tax deposited with Form 7004 | | | 0 | |
| 32f | Credit from regulated investment companies | | | 0 | |
| 32g | Credit for Federal tax on fuels | 0 | | 0 | |
| 32h | Tax deposited or paid with (or after) the filing of the original return (Paid per Appeals RAR issued 4/18/05) | 19,079,286 | 88,870,665 | 19,079,286 | 88,870,665 |
| 33 | Estimated tax penalty | | | | |
| 34 | Tax due | | 0 | | 0 |
| 35 | Overpayment (As originally filed) | | 46,086,008 | | 46,086,008 |
| 36 | Credited to following year/Refunded | 46,086,008 | 0 | 46,086,008 | 0 |
| | Underpayment per Revenue Agent Report | | 0 | | 0 |
| | Refund due to Taxpayer - Claim for Contingent Liability Capital Loss | | | | 18,549,092 |

2.1

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**FORM 1120X DETAIL**
**YEAR ENDED SEPTEMBER 30, 1997**

| | | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss | |
|---|---|---|---|---|---|
| **Schedule J--Tax computation** | | | | | |
| 1 | Check if member of controlled group | | N/A | | N/A |
| 2a | Share of $50,000, $25,000, and $9,925,000 bracket amt. | | | | |
| 2b | Share of (1) additional 5% tax, (2) additional 3% tax | | | | |
| 3 | Income tax | | 54,192,512 | | 25,869,251 |
| 4a | Foreign tax credit | 5,022,278 | | 4,959,623 | |
| 4b | Possessions tax credit | 0 | | 0 | |
| 4c | Nonconventional source fuel credit | 6,385,577 | | 0 | |
| 4d | General business credit | 0 | | 0 | |
| 4e | Credit for prior year minimum tax | 0 | | 0 | |
| 5 | Total credits -- add Lines 4a through 4e | | 11,407,855 | | 4,959,623 |
| 6 | Subtract line 5 from line 3 | | 42,784,657 | | 20,909,628 |
| 7 | Personal holding company tax | | 0 | | 0 |
| 8 | Recapture taxes | | 0 | | 0 |
| 9 | Alternative minimum tax | | 0 | | 3,325,937 |
| 10 | Total tax | | 42,784,657 | | 24,235,565 |

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 (AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 1**
**GENERAL LIMITATION INCOME**

Schedule A

| 1. Foreign Country | 2. Deemed Dividends (a) Exclude Gross-up | 2. Deemed Dividends (b) Gross-up | 3. Other Dividends (a) Exclude Gross-up | 3. Other Dividends (b) Gross-up | 4. Interest | 5. Gross Rents, Royalties & License Fees | 6. Gross Income from Performance of Services | 7. Other | 8. Total |
|---|---|---|---|---|---|---|---|---|---|
| Canada | 17,025,455 | 4,334,610 | 0 | 0 | 13,400,615 | 4,941,227 | 0 | 0 | 39,701,907 |
| IRS RAR Adj. | | | | | 65,901 | 9,724,219 | | | 9,790,120 |
| Others | 977,184 | 453,508 | 19,822,993 | 2,797,572 | 32,854,578 | 0 | 0 | 0 | 56,905,835 |
| | 18,002,639 | 4,788,118 | 19,822,993 | 2,797,572 | 46,321,094 | 14,665,446 | 0 | 0 | 106,397,862 |

| | | | |
|---|---|---|---|
| 9. Definitely Allocable Deductions: | | | |
| Rental, Royalty, and Licensing Expenses: | | | |
| (a) Depreciation, Depletion, and Amortization | | 0 | |
| (b) Other Expenses | | 0 | |
| (c) Expenses Related to Gross Income from Performance of Services | | 0 | |
| (d) Other Definitely Allocable Deductions | | 0 | |
| (e) Total Definitely Allocable Deductions: | | 0 | |
| 10. Apportioned Share of Deductions Not Definitely Allocable: | | 0 | |
| Interest | 57,110,553 | | |
| SG&A | 12,888,725 | 69,999,278 | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 | | 18,017,327 | |
| Non-controlled Section 902 Corporation Basket Loss | | 7,227,188 | |
| Non-controlled Section 902 Corporation Basket Loss - Appeals Adjustment per RAR issued 4/18/05 | | 1,689,476 | |
| 11. Total Deductions | | | 96,933,269 |
| 12. Total Separate Limitation Income | | | 9,464,593 |

Schedule B, Part I:

| Foreign Country | 1. Credit Claimed for Taxes Paid/Accrued: Date Paid | Date Accrued | 2. Foreign Taxes Paid or Accrued — Tax Withheld at Source on: (a) Dividends | (b) Interest | (c) Rents, Royalties & License Fees | Other Foreign Taxes Paid or Accrued on: (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | (h) Total Foreign Taxes Paid or Accrued | 3. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Canada | | | 0 | 942,281 | 494,123 | 0 | 0 | 0 | 0 | 1,436,404 | 4,334,610 |
| IRS RAR Adj. | | | (23,832) | (11,588) | 516,609 | | | | | 481,189 | 0 |
| Others | | | 719,264 | 690,330 | 0 | 0 | 0 | 0 | 0 | 1,409,594 | 3,251,080 |
| | 0 | 0 | 695,432 | 1,621,023 | 1,010,732 | 0 | 0 | 0 | 0 | 3,327,187 | 7,585,690 |

23

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 (AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 2**
**GENERAL LIMITATION INCOME**

Schedule B, Part II:

| | | |
|---|---|---|
| 1. Total foreign taxes paid or accrued | 3,327,187 | |
| 2. Total taxes deemed paid | 7,585,690 | |
| 3. Reduction of taxes paid, accrued, or deemed paid | | |
| 4. Carryback or carryover | | |
| 5. Total foreign taxes | | 10,912,877 |
| 6. Numerator of Limitation Fraction | | 9,464,593 |
| 7a. Total taxable income from all sources | 73,912,144 | |
| 7b. Adjustments to line 7a | 2,372,429 | |
| 7c. Denominator of Limitation Fraction | | 76,284,573 |
| 8. Divide line 6 by line 7c | | 0.1240698 |
| 9. Total U.S. income tax against which credit is allowed | | 25,869,251 |
| 10. Limitation | | 3,209,587 |
| 11. Foreign tax credit | | 3,209,587 |

Schedule B, Part III:

| | | |
|---|---|---|
| 1. Credit for taxes on passive income | 991,414 | |
| 5. Credit for taxes on dividends from noncontrolled Sec. 902 corporation | 758,622 | |
| 9. Credit for taxes on General Limitation Income | 3,209,587 | |
| 10. Total | | 4,959,623 |
| 11. Reduction in credit for international boycott operations | | 0 |
| 12. Total foreign tax credit | | 4,959,623 |

Schedule C, Part I:

| 1. Name of Corp. | 2. Incorp. Under the Laws of | 3. Undistrib. E&P for Years Beginning After 1986 | 4. Foreign Taxes Paid or Accrued on E&P | 5. Taxes Deemed Paid | 6. Add Columns 4 and 5 | 7. Dividends Paid and Deemed Paid (a) Functional Currency | 7. (b) U.S. Dollars | 8. Divide Column 7a by Column 3 | 9. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|
| BFI Ltd. | Canada | 94,389,721 | 17,204,853 | 0 | 17,204,853 | 23,780,651 | 17,025,455 | 0.251941112 | 4,334,610 |
| Swire | Hong Kong | 364,330,839 | 7,963,194 | 0 | 7,963,194 | 117,564,000 | 15,177,512 | 0.322684734 | 2,569,601 |
| Waste Care | New Zealand | 37,164,166 | 1,058,854 | 0 | 1,058,854 | 5,650,000 | 3,873,075 | 0.152028166 | 160,976 |
| Fritz Erismann | Switzerland | 2,065,288 | 121,765 | 0 | 121,765 | 1,000,000 | 715,600 | 0.484193972 | 58,958 |
| BFI of PR | Puerto Rico | 10,457,625 | 4,209,502 | 0 | 4,209,502 | 637,723 | 637,723 | 0.060981628 | 256,702 |
| BFI of Ponce | Puerto Rico | 13,324,786 | 10,547,228 | 0 | 10,547,228 | 248,634 | 248,634 | 0.018659512 | 196,806 |
| Attwoods Ltd | U.K. | 35,122 | 8,038 | 0 | 8,038 | 35,122 | 56,806 | 1.000000000 | 8,037 |
| Maas en Waal | Netherlands | 179,974 | 0 | 0 | 0 | 179,974 | 90,827 | 1.000000000 | 0 |
| Total | | | | | | | 37,825,632 | | 7,585,690 |

2.4

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 (AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 1**
**PASSIVE LIMITATION INCOME**

Schedule A

| 1. Foreign Country | 2. Deemed Dividends (a) Exclude Gross-up | 2. Deemed Dividends (b) Gross-up | 3. Other Dividends (a) Exclude Gross-up | 3. Other Dividends (b) Gross-up | 4. Interest | 5. Gross Rents, Royalties & License Fees | 6. Gross Income from Performance of Services | 7. Other | 8. Total |
|---|---|---|---|---|---|---|---|---|---|
| Canada | | | | | 23,842 | | | | 23,842 |
| IRS RAR Adj. | 6,986,809 | 988,666 | | | | | | | 7,975,475 |
| Others | 267,400 | 364 | | | 11,661 | | | | 279,425 |
| | 7,254,209 | 989,030 | 0 | 0 | 35,503 | 0 | 0 | 0 | 8,278,742 |

| | | | |
|---|---|---|---|
| 9. Definitely Allocable Deductions: | | | |
| Rental, Royalty, and Licensing Expenses: | | | |
| (a) Depreciation, Depletion, and Amortization | | 0 | |
| (b) Other Expenses | | 0 | |
| (c) Expenses Related to Gross Income from Performance of Services | | 0 | |
| (d) Other Definitely Allocable Deductions | | 0 | |
| (e) Total Definitely Allocable Deductions: | | 0 | |
| 10. Apportioned Share of Deductions Not Definitely Allocable: | | | |
| Interest | 580,941 | | |
| SG&A | 1,002,863 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 | 35,602 | | |
| Non-controlled Section 902 Corporation Basket Loss - Appeals Adjustment per RAR Issued 4/18/05 | 612,080 | | |
| Non-controlled Section 902 Corporation Basket Loss | 2,618,334 | 4,849,820 | |
| 11. Total Deductions | | | 4,849,820 |
| 12. Total Separate Limitation Income | | | 3,428,922 |

Schedule B, Part I:

| Foreign Country | 1. Credit Claimed for Taxes Paid/Accrued: Date Paid | Date Accrued | 2. Foreign Taxes Paid or Accrued — Tax Withheld at Source on: (a) Dividends | (b) Interest | (c) Rents, Royalties & License Fees | Other Foreign Taxes Paid or Accrued on: (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | (h) Total Foreign Taxes Paid or Accrued | 3. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Canada | | | | 2,384 | | | | | | 2,384 | 0 |
| IRS RAR Adj. | | | | | | | | | | 0 | 988,666 |
| Others | | | | | | | | | | 0 | 364 |
| | 0 | 0 | 0 | 2,384 | 0 | 0 | 0 | 0 | 0 | 2,384 | 989,030 |

2.5

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 (AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 2**
**PASSIVE LIMITATION INCOME**

Schedule B, Part II:

| | | |
|---|---|---|
| 1. Total foreign taxes paid or accrued | 2,384 | |
| 2. Total taxes deemed paid | 989,030 | |
| 3. Reduction of taxes paid, accrued, or deemed paid | | |
| 4. Carryback or carryover | 0 | |
| 5. Total foreign taxes | | 991,414 |
| 6. Numerator of Limitation Fraction | | 3,428,922 |
| 7a. Total taxable income from all sources | 73,912,144 | |
| 7b. Adjustments to line 7a | 2,372,429 | |
| 7c. Denominator of Limitation Fraction | | 76,284,573 |
| 8. Divide line 6 by line 7c | | 0.044949087 |
| 9. Total U.S. income tax against which credit is allowed | | 25,869,250 |
| 10. Limitation | | 1,162,798 |
| 11. Foreign tax credit | | 991,414 |

Schedule B, Part III:

| | | |
|---|---|---|
| 1. Credit for taxes on passive income | 991,414 | |
| 5. Credit for taxes on dividends from noncontrolled Sec. 902 corporation | 758,622 | |
| 9. Credit for taxes on General Limitation income | 3,209,587 | |
| 10. Total | | 4,959,623 |
| 11. Reduction in credit for international boycott operations | | 0 |
| 12. Total foreign tax credit | | 4,959,623 |

Schedule C, Part I:

| 1. Name of Corp. | 2. Incorp. Under the Laws of | 3. Undistrib. E&P for Years Beginning After 1986 | 4. Foreign Taxes Paid or Accrued on E&P | 5. Taxes Deemed Paid | 6. Add Columns 4 and 5 | 7. Dividends Paid and Deemed Paid (a) Functional Currency | 7. Dividends Paid and Deemed Paid (b) U.S. Dollars | 8. Divide Column 7a by Column 3 | 9. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|
| BFI Ltd. | Canada | | | 0 | 0 | | | 0.000000000 | 0 |
| IRS RAR Adj. | U.K. | 4,319,778 | 988,666 | 0 | 988,666 | 4,319,778 | 6,986,809 | 1.000000000 | 988,666 |
| Others | Taiwan | 169,009 | 364 | 0 | 364 | 169,009 | 5,909 | 1.000000000 | 364 |
| Others | Various | 243,504,330 | 0 | 0 | 0 | 243,504,330 | 261,491 | 1.000000000 | 0 |
| Total | | | | | | | 7,254,209 | | 989,030 |

2.6

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 (AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 1**
**NONCONTROLLED SECTION 902 CORPORATION - BFI, LTD. (CANADA)**

Schedule A

| 1. Foreign Country | 2. Deemed Dividends (a) Exclude Gross-up | 2. Deemed Dividends (b) Gross-up | 3. Other Dividends (a) Exclude Gross-up | 3. Other Dividends (b) Gross-up | 4. Interest | 5. Gross Rents, Royalties & License Fees | 6. Gross Income from Performance of Services | 7. Other | 8. Total |
|---|---|---|---|---|---|---|---|---|---|
| Canada | 1,287,641 | 161,647 | 0 | 0 | 139,172 | | 0 | 0 | 1,588,460 |
| IRS RAR Adj. | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Others | | | 0 | 0 | | 0 | 0 | 0 | 0 |
| | 1,287,641 | 161,647 | 0 | 0 | 139,172 | 0 | 0 | 0 | 1,588,460 |

| | | | |
|---|---|---|---|
| 9. Definitely Allocable Deductions: | | | |
| Rental, Royalty, and Licensing Expenses: | | | |
| (a) Depreciation, Depletion, and Amortization | | 0 | |
| (b) Other Expenses | | 0 | |
| (c) Expenses Related to Gross Income from Performance of Services | | 0 | |
| (d) Other Definitely Allocable Deductions | | 0 | |
| (e) Total Definitely Allocable Deductions: | | 0 | |
| 10. Apportioned Share of Deductions Not Definitely Allocable: | | 0 | |
| Interest | 265,342 | | |
| SG&A | 192,415 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 | 3,621,087 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 - Appeals Adj. per RAR Issued 4/18/05 | (3,621,087) | | |
| Non-controlled Section 902 Corporation Basket Loss - Appeals Adjustment per RAR Issued 4/18/05 | 3,036,988 | | |
| Non-controlled Section 902 Corporation Basket Loss | (2,490,439) | 1,006,306 | |
| 11. Total Deductions | | | 1,006,306 |
| 12. Total Separate Limitation Income | | | 582,153 |

Schedule B, Part I:

| Foreign Country | 1. Credit Claimed for Taxes Paid/Accrued: Date Paid | Date Accrued | 2. Foreign Taxes Paid or Accrued — Tax Withheld at Source on: (a) Dividends | (b) Interest | (c) Rents, Royalties & License Fees | Other Foreign Taxes Paid or Accrued on: (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | (h) Total Foreign Taxes Paid or Accrued | 3. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Canada | | | 0 | 13,917 | 0 | 0 | 0 | 0 | 0 | 13,917 | 161,647 |
| IRS RAR Adj. | | | | 0 | 0 | | | | | 0 | 0 |
| Others | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 13,917 | 0 | 0 | 0 | 0 | 0 | 13,917 | 161,647 |

2.7

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 (AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 2**
**NONCONTROLLED SECTION 902 CORPORATION - BFI, LTD. (CANADA)**

Schedule B, Part II:

| | | |
|---|---|---|
| 1. Total foreign taxes paid or accrued | 13,917 | |
| 2. Total taxes deemed paid | 161,647 | |
| 3. Reduction of taxes paid, accrued, or deemed paid | | |
| 4. Carryback or carryover | 0 | |
| 5. Total foreign taxes | | 175,564 |
| 6. Numerator of Limitation Fraction | | 582,153 |
| 7a. Total taxable income from all sources | 73,912,144 | |
| 7b. Adjustments to line 7a | 2,372,429 | |
| 7c. Denominator of Limitation Fraction | | 76,284,573 |
| 8. Divide line 6 by line 7c | | 0.0076313 |
| 9. Total U.S. income tax against which credit is allowed | | 25,869,250 |
| 10. Limitation | | 197,417 |
| 11. Foreign tax credit | | 175,564 |

Schedule B, Part III:

| | | |
|---|---|---|
| 1. Credit for taxes on passive income | 991,414 | |
| 5. Credit for taxes on dividends from noncontrolled Sec. 902 corporation | 758,622 | |
| 9. Credit for taxes on General Limitation Income | 3,209,587 | |
| 10. Total | | 4,959,623 |
| 11. Reduction in credit for international boycott operations | | 0 |
| 12. Total foreign tax credit | | 4,959,623 |

Schedule C, Part I:

| 1. Name of Corp. | 2. Incorp. Under the Laws of | 3. Undistrib. E&P for Years Beginning After 1986 | 4. Foreign Taxes Paid or Accrued on E&P | 5. Taxes Deemed Paid | 6. Add Columns 4 and 5 | 7. Dividends Paid and Deemed Paid (a) Functional Currency | (b) U.S. Dollars | 8. Divide Column 7a by Column 3 | 9. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|
| BFI Ltd. | Canada | 4,699,414 | 422,233 | 0 | 422,233 | 1,799,113 | 1,287,641 | 0.382837733 | 161,647 |
| Other | | | | 0 | 0 | | | | |
| Total | | | | | | | | | 161,647 |

2.8

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 (AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)—Page 1**
**NONCONTROLLED SECTION 902 CORPORATION - OED & SUBSIDIARIES (GERMANY)**

Schedule A

| 1. Foreign Country | 2. Deemed Dividends (a) Exclude Gross-up | 2. Deemed Dividends (b) Gross-up | 3. Other Dividends (a) Exclude Gross-up | 3. Other Dividends (b) Gross-up | 4. Interest | 5. Gross Rents, Royalties & License Fees | 6. Gross Income from Performance of Services | 7. Other | 8. Total |
|---|---|---|---|---|---|---|---|---|---|
| Canada | | | | | | | | 0 | 0 |
| IRS RAR Adj. | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Germany | 1,645,328 | 1,081,294 | 2,243,705 | 0 | 251,933 | 0 | 0 | (535,483) | 4,686,777 |
| | 1,645,328 | 1,081,294 | 2,243,705 | 0 | 251,933 | 0 | 0 | (535,483) | 4,686,777 |

| | | | |
|---|---|---|---|
| 9. Definitely Allocable Deductions: | | | |
| Rental, Royalty, and Licensing Expenses: | | | |
| (a) Depreciation, Depletion, and Amortization | | 0 | |
| (b) Other Expenses | | 0 | |
| (c) Expenses Related to Gross Income from Performance of Services | | 0 | |
| (d) Other Definitely Allocable Deductions | | 0 | |
| (e) Total Definitely Allocable Deductions: | | 0 | |
| 10. Apportioned Share of Deductions Not Definitely Allocable: | | 0 | |
| Interest | 782,923 | | |
| SG&A | 567,743 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 | 10,684,446 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 - Appeals Adj. per RAR Issued 4/18/05 | (10,604,317) | | |
| Non-controlled Section 902 Corporation Basket Loss - Appeals Adjustment per RAR Issued 4/18/05 | 8,886,540 | | |
| Non-controlled Section 902 Corporation Basket Loss | (7,348,334) | 2,969,000 | |
| 11. Total Deductions | | | 2,969,000 |
| 12. Total Separate Limitation Income | | | 1,717,777 |

Schedule B, Part I:

| Foreign Country | 1. Credit Claimed for Taxes Paid/Accrued: Date Paid | Date Accrued | 2. Foreign Taxes Paid or Accrued — Tax Withheld at Source on: (a) Dividends | (b) Interest | (c) Rents, Royalties & License Fees | Other Foreign Taxes Paid or Accrued on: (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | (h) Total Foreign Taxes Paid or Accrued | 3. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Canada | | | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| IRS RAR Adj. | | | | 0 | 0 | | | | | 0 | 0 |
| Germany | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,081,294 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,081,294 |

2.9

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 (AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)—Page 2**
**NONCONTROLLED SECTION 902 CORPORATION - OED & SUBSIDIARIES (GERMANY)**

Schedule B, Part II:

| | | | |
|---|---|---|---|
| 1. Total foreign taxes paid or accrued | | 0 | |
| 2. Total taxes deemed paid | | 1,081,294 | |
| 3. Reduction of taxes paid, accrued, or deemed paid | | | |
| 4. Carryback or carryover | | 180,106 | |
| 5. Total foreign taxes | | | 1,261,400 |
| 6. Numerator of Limitation Fraction | | | 1,717,777 |
| 7a. Total taxable income from all sources | | 73,912,144 | |
| 7b. Adjustments to line 7a | | 2,372,429 | |
| 7c. Denominator of Limitation Fraction | | | 76,284,573 |
| 8. Divide line 6 by line 7c | | | 0.0225180 |
| 9. Total U.S. income tax against which credit is allowed | | | 25,869,250 |
| 10. Limitation | | | 582,524 |
| 11. Foreign tax credit | | | 582,524 |

Schedule B, Part III:

| | | | |
|---|---|---|---|
| 1. Credit for taxes on passive income | | 991,414 | |
| 5. Credit for taxes on dividends from noncontrolled Sec. 902 corporation | | 758,622 | |
| 9. Credit for taxes on General Limitation Income | | 3,209,587 | |
| 10. Total | | | 4,959,623 |
| 11. Reduction in credit for international boycott operations | | | 0 |
| 12. Total foreign tax credit | | | 4,959,623 |

Schedule C, Part I:

| 1. Name of Corp. | 2. Incorp. Under the Laws of | 3. Undistrib. E&P for Years Beginning After 1986 | 4. Foreign Taxes Paid or Accrued on E&P | 5. Taxes Deemed Paid | 6. Add Columns 4 and 5 | 7. Dividends Paid and Deemed Paid (a) Functional Currency | 7. (b) U.S. Dollars | 8. Divide Column 7a by Column 3 | 9. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|
| BFI Ltd. | Canada | | | 0 | 0 | | | 0.000000000 | 0 |
| IRS RAR Adj. | | | | | | | | | |
| OED's Subs | Germany | 4,960,474 | 770,369 | 1,392,219 | 2,162,588 | ·2,480,237 | 1,645,328 | 0.500000000 | 1,081,294 |
| OED GmbH | Germany | 49,246,725 | 0 | 0 | 0 | 3,881,842 | 2,243,705 | 0.078824360 | 0 |
| Total | | | | | | | 3,889,033 | | 1,081,294 |

2.10

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 (AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 1**
**NONCONTROLLED SECTION 902 CORPORATION - ATTWOODS, LTD. (U.K.)**

Schedule A

| 1. Foreign Country | 2. Deemed Dividends (a) Exclude Gross-up | 2. Deemed Dividends (b) Gross-up | 3. Other Dividends (a) Exclude Gross-up | 3. Other Dividends (b) Gross-up | 4. Interest | 5. Gross Rents, Royalties & License Fees | 6. Gross Income from Performance of Services | 7. Other | 8. Total |
|---|---|---|---|---|---|---|---|---|---|
| Canada | | | | | | | | 0 | 0 |
| IRS RAR Adj. | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| United Kingdom | 3,773 | 534 | 0 | 0 | 0 | 0 | 0 | 0 | 4,307 |
| | 3,773 | 534 | 0 | 0 | 0 | 0 | 0 | 0 | 4,307 |

| | | | |
|---|---|---|---|
| 9. Definitely Allocable Deductions: | | | |
| Rental, Royalty, and Licensing Expenses: | | | |
| (a) Depreciation, Depletion, and Amortization | | 0 | |
| (b) Other Expenses | | 0 | |
| (c) Expenses Related to Gross Income from Performance of Services | | 0 | |
| (d) Other Definitely Allocable Deductions | | 0 | |
| (e) Total Definitely Allocable Deductions: | | 0 | |
| 10. Apportioned Share of Deductions Not Definitely Allocable: | | 0 | |
| Interest | 719 | | |
| SG&A | 522 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 | 9,819 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 - Appeals Adj. per RAR Issued 4/18/05 | (9,819) | | |
| Non-controlled Section 902 Corporation Basket Loss - Appeals Adjustment per RAR Issued 4/18/05 | 8,240 | | |
| Non-controlled Section 902 Corporation Basket Loss | (6,753) | 2,728 | |
| 11. Total Deductions | | | 2,728 |
| 12. Total Separate Limitation Income | | | 1,579 |

Schedule B, Part I:

| Foreign Country | 1. Credit Claimed for Taxes Paid/Accrued: Date Paid | Date Accrued | 2. Foreign Taxes Paid or Accrued — Tax Withheld at Source on: (a) Dividends | (b) Interest | (c) Rents, Royalties & License Fees | Other Foreign Taxes Paid or Accrued on: (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | (h) Total Foreign Taxes Paid or Accrued | 3. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Canada | | | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| IRS RAR Adj. | | | | 0 | 0 | | | | | 0 | 0 |
| United Kingdom | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 534 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 534 |

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 (AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)—Page 2**
**NONCONTROLLED SECTION 902 CORPORATION - ATTWOODS, LTD. (U.K.)**

Schedule B, Part II:

| | | |
|---|---|---|
| 1. Total foreign taxes paid or accrued | 0 | |
| 2. Total taxes deemed paid | 534 | |
| 3. Reduction of taxes paid, accrued, or deemed paid | 0 | |
| 4. Carryback or carryover | | |
| 5. Total foreign taxes | | 534 |
| 6. Numerator of Limitation Fraction | | 1,579 |
| 7a. Total taxable income from all sources | 73,912,144 | |
| 7b. Adjustments to line 7a | 2,372,429 | |
| 7c. Denominator of Limitation Fraction | | 76,284,573 |
| 8. Divide line 6 by line 7c | | 0.0000207 |
| 9. Total U.S. income tax against which credit is allowed | | 25,869,250 |
| 10. Limitation | | 536 |
| 11. Foreign tax credit | | 534 |

Schedule B, Part III:

| | | |
|---|---|---|
| 1. Credit for taxes on passive income | 991,414 | |
| 5. Credit for taxes on dividends from noncontrolled Sec. 902 corporation | 758,622 | |
| 9. Credit for taxes on General Limitation Income | 3,209,587 | |
| 10. Total | | 4,959,623 |
| 11. Reduction in credit for international boycott operations | | 0 |
| 12. Total foreign tax credit | | 4,959,623 |

Schedule C, Part I:

| 1. Name of Corp. | 2. Incorp. Under the Laws of | 3. Undistrib. E&P for Years Beginning After 1986 | 4. Foreign Taxes Paid or Accrued on E&P | 5. Taxes Deemed Paid | 6. Add Columns 4 and 5 | 7. Dividends Paid and Deemed Paid (a) Functional Currency | 7. (b) U.S. Dollars | 8. Divide Column 7a by Column 3 | 9. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|
| BFI Ltd. | Canada | | | 0 | 0 | | | 0.000000000 | 0 |
| IRS RAR Adj. | | | | | | | | | 0 |
| Attwoods, Ltd. | U.K. | 2,333 | 534 | 0 | 534 | 2,333 | 3,773 | 1.000000000 | 534 |
| Total | | | | | | | | | 534 |

2.12

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 - ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT**
**(AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 1**
**GENERAL LIMITATION INCOME**

Schedule A

| 1. Foreign Country | 2. Deemed Dividends (a) Exclude Gross-up | 2. Deemed Dividends (b) Gross-up | 3. Other Dividends (a) Exclude Gross-up | 3. Other Dividends (b) Gross-up | 4. Interest | 5. Gross Rents, Royalties & License Fees | 6. Gross Income from Performance of Services | 7. Other | 8. Total |
|---|---|---|---|---|---|---|---|---|---|
| Canada | 17,025,455 | 4,334,610 | 0 | 0 | 13,400,615 | 4,941,227 | 0 | 0 | 39,701,907 |
| IRS RAR Adj. | | | | | 65,901 | 9,724,219 | | | 9,790,120 |
| Others | 977,184 | 453,508 | 19,822,993 | 2,797,572 | 32,854,578 | 0 | 0 | 0 | 56,905,835 |
| | 18,002,639 | 4,788,118 | 19,822,993 | 2,797,572 | 46,321,094 | 14,665,446 | 0 | 0 | 106,397,862 |

| | | | | |
|---|---|---|---|---|
| 9. Definitely Allocable Deductions: | | | | |
| Rental, Royalty, and Licensing Expenses: | | | | |
| (a) Depreciation, Depletion, and Amortization | | | 0 | |
| (b) Other Expenses | | | 0 | |
| (c) Expenses Related to Gross Income from Performance of Services | | | 0 | |
| (d) Other Definitely Allocable Deductions | | | 0 | |
| (e) Total Definitely Allocable Deductions: | | | 0 | |
| 10. Apportioned Share of Deductions Not Definitely Allocable: | | | 0 | |
| Interest | 57,110,553 | | | |
| SG&A | 12,888,725 | 69,999,278 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 | | 18,017,327 | | |
| General Limitation Alternative Minimum Taxable Income - Appeals Adjustment per RAR Issued 4/18/05 | | (36,763) | | |
| Non-controlled Section 902 Corporation Basket Loss | | 7,227,188 | | |
| Non-controlled Section 902 Corporation Basket Loss - Appeals Adjustment per RAR Issued 4/18/05 | | 1,689,476 | | |
| 11. Total Deductions | | | | 96,896,506 |
| 12. Total Separate Limitation Income | | | | 9,501,356 |

Schedule B, Part I:

| Foreign Country | 1. Credit Claimed for Taxes Paid/Accrued: Date Paid | Date Accrued | 2. Foreign Taxes Paid or Accrued — Tax Withheld at Source on: (a) Dividends | (b) Interest | (c) Rents, Royalties & License Fees | Other Foreign Taxes Paid or Accrued on: (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | (h) Total Foreign Taxes Paid or Accrued | 3. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Canada | | | 0 | 942,281 | 494,123 | 0 | 0 | 0 | 0 | 1,436,404 | 4,334,610 |
| IRS RAR Adj. | | | (23,832) | (11,588) | 516,609 | | | | | 481,189 | 0 |
| Others | | | 719,264 | 690,330 | 0 | 0 | 0 | 0 | 0 | 1,409,594 | 3,251,080 |
| | 0 | 0 | 695,432 | 1,621,023 | 1,010,732 | 0 | 0 | 0 | 0 | 3,327,187 | 7,585,690 |

2.13

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 - ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT**
**(AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 2**
**GENERAL LIMITATION INCOME**

Schedule B, Part II:

| | | |
|---|---|---|
| 1. Total foreign taxes paid or accrued | 3,327,187 | |
| 2. Total taxes deemed paid | 7,585,690 | |
| 3. Reduction of taxes paid, accrued, or deemed paid | | |
| 4. Carryback or carryover | | |
| 5. Total foreign taxes | | 10,912,877 |
| 6. Numerator of Limitation Fraction | | 9,501,356 |
| 7a. Total taxable income from all sources | 73,912,144 | |
| 7b. Adjustments to line 7a | 2,372,429 | |
| 7c. Denominator of Limitation Fraction | | 76,284,573 |
| 8. Divide line 6 by line 7c | | 0.1245515 |
| 9. Total U.S. income tax against which credit is allowed | | 15,092,073 |
| 10. Limitation | | 1,879,740 |
| 11. Foreign tax credit | | 1,879,740 |

Schedule B, Part III:

| | | |
|---|---|---|
| 1. Credit for taxes on passive income | 683,913 | |
| 5. Credit for taxes on dividends from noncontrolled Sec. 902 corporation | 456,605 | |
| 9. Credit for taxes on General Limitation Income | 1,879,740 | |
| 10. Total | | 3,020,258 |
| 11. Reduction in credit for international boycott operations | | 0 |
| 12. Total foreign tax credit | | 3,020,258 |

Schedule C, Part I:

| 1. Name of Corp. | 2. Incorp. Under the Laws of | 3. Undistrib. E&P for Years Beginning After 1986 | 4. Foreign Taxes Paid or Accrued on E&P | 5. Taxes Deemed Paid | 6. Add Columns 4 and 5 | 7. Dividends Paid and Deemed Paid (a) Functional Currency | 7. (b) U.S. Dollars | 8. Divide Column 7a by Column 3 | 9. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|
| BFI Ltd. | Canada | 94,389,721 | 17,204,853 | 0 | 17,204,853 | 23,780,651 | 17,025,455 | 0.251941112 | 4,334,610 |
| Swire | Hong Kong | 364,330,839 | 7,963,194 | 0 | 7,963,194 | 117,564,000 | 15,177,512 | 0.322684734 | 2,569,601 |
| Waste Care | New Zealand | 37,164,166 | 1,058,854 | 0 | 1,058,854 | 5,650,000 | 3,873,075 | 0.152028166 | 160,976 |
| Fritz Erismann | Switzerland | 2,065,288 | 121,765 | 0 | 121,765 | 1,000,000 | 715,600 | 0.484193972 | 58,958 |
| BFI of PR | Puerto Rico | 10,457,625 | 4,209,502 | 0 | 4,209,502 | 637,723 | 637,723 | 0.060981628 | 256,702 |
| BFI of Ponce | Puerto Rico | 13,324,786 | 10,547,228 | 0 | 10,547,228 | 248,634 | 248,634 | 0.018659512 | 196,806 |
| Attwoods Ltd | U.K. | 35,122 | 8,038 | 0 | 8,038 | 35,122 | 56,806 | 1.000000000 | 8,037 |
| Maas en Waal | Netherlands | 179,974 | 0 | 0 | 0 | 179,974 | 90,827 | 1.000000000 | 0 |
| Total | | | | | | | 37,825,632 | | 7,585,690 |

2.14

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 - ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT**
**(AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 1**
**NONCONTROLLED SECTION 902 CORPORATION - BFI, LTD. (CANADA)**

Schedule A

| | 2. Deemed Dividends | | 3. Other Dividends | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1. Foreign Country | (a) Exclude Gross-up | (b) Gross-up | (a) Exclude Gross-up | (b) Gross-up | 4. Interest | 5. Gross Rents, Royalties & License Fees | 6. Gross Income from Performance of Services | 7. Other | 8. Total |
| Canada | 1,287,641 | 161,647 | 0 | 0 | 139,172 | | 0 | 0 | 1,588,460 |
| IRS RAR Adj. | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Others | | | 0 | 0 | | 0 | 0 | 0 | 0 |
| | 1,287,641 | 161,647 | 0 | 0 | 139,172 | 0 | 0 | 0 | 1,588,460 |

| | | | |
|---|---|---|---|
| 9. Definitely Allocable Deductions: | | | |
| Rental, Royalty, and Licensing Expenses: | | | |
| (a) Depreciation, Depletion, and Amortization | | 0 | |
| (b) Other Expenses | | 0 | |
| (c) Expenses Related to Gross Income from Performance of Services | | 0 | |
| (d) Other Definitely Allocable Deductions | | 0 | |
| (e) Total Definitely Allocable Deductions: | | 0 | |
| 10. Apportioned Share of Deductions Not Definitely Allocable: | | 0 | |
| Interest | 265,342 | | |
| SG&A | 192,415 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 | 3,621,087 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 - Appeals Adj. per RAR Issued 4/18/05 | (3,621,087) | | |
| Non-Cont. Sec. 902 Limitation Alternative Minimum Taxable Income-Appeals Adjustment per RAR Issued 4/18/( | (1,631) | | |
| Non-controlled Section 902 Corporation Basket Loss - Appeals Adjustment per RAR Issued 4/18/05 | 3,038,988 | | |
| Non-controlled Section 902 Corporation Basket Loss | (2,490,439) | 1,004,675 | |
| 11. Total Deductions | | | 1,004,675 |
| 12. Total Separate Limitation Income | | | 583,784 |

Schedule B, Part I:

| | 1. Credit Claimed for Taxes Paid/Accrued | | 2. Foreign Taxes Paid or Accrued | | | | | | | | 3. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Tax Withheld at Source on: | | | Other Foreign Taxes Paid or Accrued on: | | | | | |
| Foreign Country | Date Paid | Date Accrued | (a) Dividends | (b) Interest | (c) Rents, Royalties & License Fees | (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | (h) Total Foreign Taxes Paid or Accrued | |
| Canada | | | 0 | 13,917 | 0 | 0 | 0 | 0 | 0 | 13,917 | 161,647 |
| IRS RAR Adj. | | | | 0 | 0 | | | | | 0 | 0 |
| Others | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 0 | 13,917 | 0 | 0 | 0 | 0 | 0 | 13,917 | 161,647 |

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 - ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT**
**(AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 2**
**NONCONTROLLED SECTION 902 CORPORATION - BFI, LTD. (CANADA)**

Schedule B, Part II:

| | | |
|---|---|---|
| 1. Total foreign taxes paid or accrued | 13,917 | |
| 2. Total taxes deemed paid | 161,647 | |
| 3. Reduction of taxes paid, accrued, or deemed paid | | |
| 4. Carryback or carryover | 0 | |
| 5. Total foreign taxes | | 175,564 |
| 6. Numerator of Limitation Fraction | | 583,784 |
| 7a. Total taxable income from all sources | 73,912,144 | |
| 7b. Adjustments to line 7a | 2,372,429 | |
| 7c. Denominator of Limitation Fraction | | 76,284,573 |
| 8. Divide line 6 by line 7c | | 0.0076527 |
| 9. Total U.S. income tax against which credit is allowed | | 15,092,073 |
| 10. Limitation | | 115,496 |
| 11. Foreign tax credit | | 115,496 |

Schedule B, Part III:

| | | |
|---|---|---|
| 1. Credit for taxes on passive income | 683,913 | |
| 5. Credit for taxes on dividends from noncontrolled Sec. 902 corporation | 456,605 | |
| 9. Credit for taxes on General Limitation Income | 1,879,740 | |
| 10. Total | | 3,020,258 |
| 11. Reduction in credit for international boycott operations | | 0 |
| 12. Total foreign tax credit | | 3,020,258 |

Schedule C, Part I:

| 1. Name of Corp. | 2. Incorp. Under the Laws of | 3. Undistrib. E&P for Years Beginning After 1986 | 4. Foreign Taxes Paid or Accrued on E&P | 5. Taxes Deemed Paid | 6. Add Columns 4 and 5 | 7. Dividends Paid and Deemed Paid (a) Functional Currency | (b) U.S. Dollars | 8. Divide Column 7a by Column 3 | 9. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|
| BFI Ltd. | Canada | 4,699,414 | 422,233 | 0 | 422,233 | 1,799,113 | 1,287,641 | 0.382837733 | 161,647 |
| Other | | | | 0 | 0 | | | | |
| Total | | | | | | | | | 161,647 |

216

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 - ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT**
**(AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 1**
**NONCONTROLLED SECTION 902 CORPORATION - OED & SUBSIDIARIES (GERMANY)**

Schedule A

| | 2. Deemed Dividends | | 3. Other Dividends | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1. Foreign Country | (a) Exclude Gross-up | (b) Gross-up | (a) Exclude Gross-up | (b) Gross-up | 4. Interest | 5. Gross Rents, Royalties & License Fees | 6. Gross Income from Performance of Services | 7. Other | 8. Total |
| Canada | | | | | | | | 0 | 0 |
| IRS RAR Adj. | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Germany | 1,645,328 | 1,081,294 | 2,243,705 | 0 | 251,933 | 0 | 0 | (535,483) | 4,686,777 |
| | 1,645,328 | 1,081,294 | 2,243,705 | 0 | 251,933 | 0 | 0 | (535,483) | 4,686,777 |

| | | | |
|---|---|---|---|
| 9. Definitely Allocable Deductions: | | | |
| Rental, Royalty, and Licensing Expenses: | | | |
| (a) Depreciation, Depletion, and Amortization | | 0 | |
| (b) Other Expenses | | 0 | |
| (c) Expenses Related to Gross Income from Performance of Services | | 0 | |
| (d) Other Definitely Allocable Deductions | | 0 | |
| (e) Total Definitely Allocable Deductions: | | 0 | |
| 10. Apportioned Share of Deductions Not Definitely Allocable: | | 0 | |
| Interest | 782,923 | | |
| SG&A | 587,743 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 | 10,684,446 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 - Appeals Adj. per RAR Issued 4/18/05 | (10,604,317) | | |
| Non-Cont. Sec. 902 Limitation Alternative Minimum Taxable Income-Appeals Adjustment per RAR Issued 4/18/( | (4,814) | | |
| Non-controlled Section 902 Corporation Basket Loss - Appeals Adjustment per RAR Issued 4/18/05 | 8,886,540 | | |
| Non-controlled Section 902 Corporation Basket Loss | (7,348,334) | 2,964,186 | |
| 11. Total Deductions | | | 2,964,186 |
| 12. Total Separate Limitation Income | | | 1,722,591 |

Schedule B, Part I:

| | 1. Credit Claimed for Taxes Paid/Accrued | | 2. Foreign Taxes Paid or Accrued | | | | | | | | 3. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Tax Withheld at Source on: | | | Other Foreign Taxes Paid or Accrued on: | | | | | |
| Foreign Country | Date Paid | Date Accrued | (a) Dividends | (b) Interest | (c) Rents, Royalties & License Fees | (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | (h) Total Foreign Taxes Paid or Accrued | |
| Canada | | | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| IRS RAR Adj. | | | | 0 | 0 | | | | | 0 | 0 |
| Germany | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,081,294 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,081,294 |

217

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 - ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT**
**(AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 2**
**NONCONTROLLED SECTION 902 CORPORATION - OED & SUBSIDIARIES (GERMANY)**

Schedule B, Part II:

| | | |
|---|---|---|
| | 0 | |
| 1. Total foreign taxes paid or accrued | 1,081,294 | |
| 2. Total taxes deemed paid | 180,106 | |
| 3. Reduction of taxes paid, accrued, or deemed paid | | 1,261,400 |
| 4. Carryback or carryover | | 1,722,591 |
| 5. Total foreign taxes | 73,912,144 | |
| 6. Numerator of Limitation Fraction | 2,372,429 | |
| 7a. Total taxable income from all sources | | 76,284,573 |
| 7b. Adjustments to line 7a | | 0.0225611 |
| 7c. Denominator of Limitation Fraction | | 15,092,073 |
| 8. Divide line 6 by line 7c | | 340,796 |
| 9. Total U.S. income tax against which credit is allowed | | 340,796 |
| 10. Limitation | | |
| 11. Foreign tax credit | 683,913 | |

Schedule B, Part III:

| | | |
|---|---|---|
| | 456,605 | |
| 1. Credit for taxes on passive income | 1,879,740 | |
| 5. Credit for taxes on dividends from noncontrolled Sec. 902 corporation | | 3,020,258 |
| 9. Credit for taxes on General Limitation Income | | 0 |
| 10. Total | | 3,020,258 |
| 11. Reduction in credit for international boycott operations | | |
| 12. Total foreign tax credit | | |

Schedule C, Part I:

| 1. Name of Corp. | 2. Incorp. Under the Laws of | 3. Undistrib. E&P for Years Beginning After 1986 | 4. Foreign Taxes Paid or Accrued on E&P | 5. Taxes Deemed Paid | 6. Add Columns 4 and 5 | 7. Dividends Paid and Deemed Paid (a) Functional Currency | 7. (b) U.S. Dollars | 8. Divide Column 7a by Column 3 | 9. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|
| BFI Ltd. | Canada | | | 0 | 0 | | | 0.000000000 | 0 |
| IRS RAR Adj. | | | | | | | | | |
| OED's Subs | Germany | 4,960,474 | 770,369 | 1,392,219 | 2,162,588 | 2,480,237 | 1,645,328 | 0.500000000 | 1,081,294 |
| OED GmbH | Germany | 49,246,725 | 0 | 0 | 0 | 3,881,842 | 2,243,705 | 0.078824360 | 0 |
| Total | | | | | | | 3,889,033 | | 1,081,294 |

2.18

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 - ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT**
**(AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 1**
**NONCONTROLLED SECTION 902 CORPORATION - ATTWOODS, LTD. (U.K.)**

Schedule A

| 1. Foreign Country | 2. Deemed Dividends (a) Exclude Gross-up | 2. Deemed Dividends (b) Gross-up | 3. Other Dividends (a) Exclude Gross-up | 3. Other Dividends (b) Gross-up | 4. Interest | 5. Gross Rents, Royalties & License Fees | 6. Gross Income from Performance of Services | 7. Other | 8. Total |
|---|---|---|---|---|---|---|---|---|---|
| Canada | | | | | | | | 0 | 0 |
| IRS RAR Adj. | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| United Kingdom | 3,773 | 534 | 0 | 0 | 0 | 0 | 0 | 0 | 4,307 |
| | 3,773 | 534 | 0 | 0 | 0 | 0 | 0 | 0 | 4,307 |

| | | | |
|---|---|---|---|
| 9. Definitely Allocable Deductions: | | | |
| Rental, Royalty, and Licensing Expenses: | | | |
| (a) Depreciation, Depletion, and Amortization | | 0 | |
| (b) Other Expenses | | 0 | |
| (c) Expenses Related to Gross Income from Performance of Services | | 0 | |
| (d) Other Definitely Allocable Deductions | | 0 | |
| (e) Total Definitely Allocable Deductions: | | 0 | |
| 10. Apportioned Share of Deductions Not Definitely Allocable: | | 0 | |
| Interest | 719 | | |
| SG&A | 522 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 | 9,819 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 - Appeals Adj. per RAR Issued 4/18/05 | (9,819) | | |
| Non-Cont. Sec. 902 Limitation Alternative Minimum Taxable Income-Appeals Adjustment per RAR Issued 4/18/( | (4) | | |
| Non-controlled Section 902 Corporation Basket Loss - Appeals Adjustment per RAR Issued 4/18/05 | 8,240 | | |
| Non-controlled Section 902 Corporation Basket Loss | (6,753) | 2,724 | |
| 11. Total Deductions | | | 2,724 |
| 12. Total Separate Limitation Income | | | 1,583 |

Schedule B, Part I:

| Foreign Country | 1. Credit Claimed for Taxes Paid/Accrued: Date Paid | Date Accrued | 2. Foreign Taxes Paid or Accrued — Tax Withheld at Source on: (a) Dividends | (b) Interest | (c) Rents, Royalties & License Fees | Other Foreign Taxes Paid or Accrued on: (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | (h) Total Foreign Taxes Paid or Accrued | 3. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Canada | | | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| IRS RAR Adj. | | | | 0 | 0 | | | | | 0 | 0 |
| United Kingdom | | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 534 |
| | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 534 |

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 - ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT**
**(AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)–Page 2**
**NONCONTROLLED SECTION 902 CORPORATION - ATTWOODS, LTD. (U.K.)**

Schedule B, Part II:

| | | |
|---|---|---|
| | 0 | |
| | 534 | |
| 1. Total foreign taxes paid or accrued | | |
| 2. Total taxes deemed paid | 0 | |
| 3. Reduction of taxes paid, accrued, or deemed paid | | 534 |
| 4. Carryback or carryover | | 1,583 |
| 5. Total foreign taxes | 73,912,144 | |
| 6. Numerator of Limitation Fraction | 2,372,429 | |
| 7a. Total taxable income from all sources | | 76,284,573 |
| 7b. Adjustments to line 7a | | 0.0000208 |
| 7c. Denominator of Limitation Fraction | | 15,092,073 |
| 8. Divide line 6 by line 7c | | 313 |
| 9. Total U.S. income tax against which credit is allowed | | 313 |
| 10. Limitation | | |
| 11. Foreign tax credit | 683,913 | |

Schedule B, Part III:

| | | |
|---|---|---|
| | 456,606 | |
| 1. Credit for taxes on passive income | 1,879,740 | |
| 6. Credit for taxes on dividends from noncontrolled Sec. 902 corporation | | 3,020,258 |
| 9. Credit for taxes on General Limitation Income | | 0 |
| 10. Total | | 3,020,258 |
| 11. Reduction in credit for international boycott operations | | |
| 12. Total foreign tax credit | | |

Schedule C, Part I:

| 1. Name of Corp. | 2. Incorp. Under the Laws of | 3. Undistrib. E&P for Years Beginning After 1986 | 4. Foreign Taxes Paid or Accrued on E&P | 5. Taxes Deemed Paid | 6. Add Columns 4 and 5 | 7. Dividends Paid and Deemed Paid (a) Functional Currency | 7. (b) U.S. Dollars | 8. Divide Column 7a by Column 3 | 9. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|
| BFI Ltd. | Canada | | | 0 | 0 | | | 0.000000000 | 0 |
| IRS RAR Adj. | | | | | | | | | 0 |
| Attwoods, Ltd. | U.K. | 2,333 | 534 | 0 | 534 | 2,333 | 3,773 | 1.000000000 | 534 |
| Total | | | | | | | | | 534 |

2.20

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 - ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT**
**(AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 1**
**PASSIVE LIMITATION INCOME**

Schedule A

| 1. Foreign Country | 2. Deemed Dividends (a) Exclude Gross-up | (b) Gross-up | 3. Other Dividends (a) Exclude Gross-up | (b) Gross-up | 4. Interest | 5. Gross Rents, Royalties & License Fees | 6. Gross Income from Performance of Services | 7. Other | 8. Total |
|---|---|---|---|---|---|---|---|---|---|
| Canada | | | | | 23,842 | | | | 23,842 |
| IRS RAR Adj. | 6,986,809 | 988,666 | | | | | | | 7,975,475 |
| Others | 267,400 | 364 | | | 11,661 | | | | 279,425 |
| | 7,254,209 | 989,030 | 0 | 0 | 35,503 | 0 | 0 | 0 | 8,278,742 |

| | | | |
|---|---|---|---|
| 9. Definitely Allocable Deductions: | | | |
| Rental, Royalty, and Licensing Expenses: | | | |
| (a) Depreciation, Depletion, and Amortization | | 0 | |
| (b) Other Expenses | | 0 | |
| (c) Expenses Related to Gross Income from Performance of Services | | 0 | |
| (d) Other Definitely Allocable Deductions | | 0 | |
| (e) Total Definitely Allocable Deductions: | | 0 | |
| 10. Apportioned Share of Deductions Not Definitely Allocable: | | | |
| Interest | 580,941 | | |
| SG&A | 1,002,863 | | |
| Foreign Source Portion of Net Operating Loss Carryback from FY7/99 | 35,602 | | |
| Passive Limitation Alternative Minimum Taxable Income - Appeals Adjustment per RAR Issued 4/18/05 | (27,992) | | |
| Non-controlled Section 902 Corporation Basket Loss - Appeals Adjustment per RAR Issued 4/18/05 | 612,080 | | |
| Non-controlled Section 902 Corporation Basket Loss | 2,618,334 | 4,821,828 | |
| 11. Total Deductions | | | 4,821,828 |
| 12. Total Separate Limitation Income | | | 3,456,914 |

Schedule B, Part I:

| Foreign Country | 1. Credit Claimed for Taxes Paid/Accrued: Date Paid | Date Accrued | 2. Foreign Taxes Paid or Accrued — Tax Withheld at Source on: (a) Dividends | (b) Interest | (c) Rents, Royalties & License Fees | Other Foreign Taxes Paid or Accrued on: (d) Section 863(b) Income | (e) Foreign Branch Income | (f) Services Income | (g) Other | (h) Total Foreign Taxes Paid or Accrued | 3. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Canada | | | | 2,384 | | | | | | 2,384 | 0 |
| IRS RAR Adj. | | | | | | | | | | 0 | 988,666 |
| Others | | | | | | | | | | 0 | 364 |
| | 0 | 0 | 0 | 2,384 | 0 | 0 | 0 | 0 | 0 | 2,384 | 989,030 |

2.21

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**YEAR ENDED SEPTEMBER 30, 1997**
**FORM 1118 - ALTERNATIVE MINIMUM TAX FOREIGN TAX CREDIT**
**(AS AMENDED DUE TO CLAIM FOR CAPITAL LOSS)--Page 2**
**PASSIVE LIMITATION INCOME**

Schedule B, Part II:

| | | |
|---|---|---|
| 1. Total foreign taxes paid or accrued | 2,384 | |
| 2. Total taxes deemed paid | 989,030 | |
| 3. Reduction of taxes paid, accrued, or deemed paid | | |
| 4. Carryback or carryover | 0 | |
| 5. Total foreign taxes | | 991,414 |
| 6. Numerator of Limitation Fraction | | 3,456,914 |
| 7a. Total taxable income from all sources | 73,912,144 | |
| 7b. Adjustments to line 7a | 2,372,429 | |
| 7c. Denominator of Limitation Fraction | | 76,284,573 |
| 8. Divide line 6 by line 7c | | 0.045316029 |
| 9. Total U.S. income tax against which credit is allowed | | 15,092,073 |
| 10. Limitation | | 683,913 |
| 11. Foreign tax credit | | 683,913 |

Schedule B, Part III:

| | | |
|---|---|---|
| 1. Credit for taxes on passive income | 683,913 | |
| 5. Credit for taxes on dividends from noncontrolled Sec. 902 corporation | 456,605 | |
| 9. Credit for taxes on General Limitation Income | 1,879,740 | |
| 10. Total | | 3,020,258 |
| 11. Reduction in credit for international boycott operations | | 0 |
| 12. Total foreign tax credit | | 3,020,258 |

Schedule C, Part I:

| 1. Name of Corp. | 2. Incorp. Under the Laws of | 3. Undistrib. E&P for Years Beginning After 1986 | 4. Foreign Taxes Paid or Accrued on E&P | 5. Taxes Deemed Paid | 6. Add Columns 4 and 5 | 7. Dividends Paid and Deemed Paid (a) Functional Currency | (b) U.S. Dollars | 8. Divide Column 7a by Column 3 | 9. Tax Deemed Paid |
|---|---|---|---|---|---|---|---|---|---|
| BFI Ltd. | Canada | | | 0 | 0 | | | 0.000000000 | 0 |
| IRS RAR Adj. | U.K. | 4,319,778 | 988,666 | 0 | 988,666 | 4,319,778 | 6,986,809 | 1.000000000 | 988,666 |
| Others | Taiwan | 169,009 | 364 | 0 | 364 | 169,009 | 5,909 | 1.000000000 | 364 |
| Others | Various | 243,504,330 | 0 | 0 | 0 | 243,504,330 | 261,491 | 1.000000000 | 0 |
| Total | | | | | | | 7,254,209 | | 989,030 |

2.22

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**ALTERNATIVE MINIMUM TAX - CORPORATIONS (FORM 4626) DETAIL**
**YEAR ENDED SEPTEMBER 30, 1997**

| | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss | |
|---|---|---|---|---|
| 1 Taxable income or (loss) before net operating loss deduction | | 233,007,080 | | 233,007,080 |
| 2 **Adjustments and preferences:** | | | | |
| 2a Depreciation of post-1986 property | 78,051,501 | | 78,051,501 | |
| 2s Other adjustments | 715,793 | 78,767,294 | 715,793 | 78,767,294 |
| 3 Pre-adjustment alternative minimum taxable income (AMTI) | | 311,774,374 | | 311,774,374 |
| 4 **Adjusted current earnings (ACE) adjustment:** | | | | |
| 4a ACE from line 10 of the worksheet on page 11 of the instructions | | 316,195,567 | | 316,195,567 |
| 4b Subtract line 3 from line 4a. If line 3 exceeds line 4a, enter the difference as a negative amount. | | 4,421,193 | | 4,421,193 |
| 4c Mulitply line 4b by 75%. Enter the result as a positive amount. | | 3,315,895 | | 3,315,895 |
| 4d Enter the excess, if any, of the corporation's total increases in AMTI from prior year ACE adjustments over its total reductions in AMTI from prior year ACE adjustments. | | 749,982,228 | | 749,982,228 |
| 4e ACE adjustment. - If line 4b is zero or more, enter the amount from line 4c. - If line 4b is less than zero, enter the smaller of line 4c or line 4d as a negative amount | | 3,315,895 | | 3,315,895 |
| 5 Combine lines 3 and 4e. If zero or less, stop here; the corporation does not owe any AMT. | | 315,090,269 | | 315,090,269 |
| 6 Alternative tax net operating loss deduction | | 97,887,552 | 80,923,602 | 178,811,154 |
| 7 **Alternative minimum taxable income** Subtract line 6 from line 5. | | 217,202,717 | | 136,279,115 |
| 9 **Exemption phase-out** (if line 7 is $310,000 or more, skip lines 8a and 8b and enter -0- on line 8c): | | | | |
| 9a Subtract $150,000 from line 7. If zero or less, enter -0-. | | 217,052,717 | | 136,129,115 |
| 9b Mulitply line 8a by 25%. | | 54,263,179 | | 34,032,279 |
| 9c Exemption. Subtract line 8b from $40,000. If zero or less, enter -0-. | | - | | - |
| 10 Subtract line 8c from line 7. If zero or less, enter -0-. | | 217,202,717 | | 136,279,115 |
| 11 Mulitply line 9 by 20%. | | 43,440,543 | | 27,255,823 |
| 12 Alternative minimum tax foreign tax credit (AMTFTC) | | 3,020,258 | | 3,020,258 |
| 13 Tentative minimum tax. Subtract line 11 from line 10. | | 40,420,285 | | 24,235,565 |
| 14 Regular tax liability before all credits except the foreign tax credit and possessions tax credit. | | 49,170,234 | | 20,909,628 |
| 15 **Alternative minimum tax.** Subtract line 13 from line 12. If zero or less, enter -0-. Enter here and on Form 1120 Schedule J, line 4, or the appropriate line of the corporation's income tax return. | | - | | 3,325,937 |

2.23

Form **8827**

Department of the Treasury
Internal Revenue Service

**Credit for Prior Year Minimum Tax - Corporations**

▶ Attach to the corporation's tax return.

OMB No. 1545-1257

**1996**

Name: Browning Ferris Industries Inc and Subsidiaries

Employer identification number: 74-1673682

| | | | |
|---|---|---|---|
| 1 | Alternative minimum tax for 1995. Enter the amount from line 15 of the 1995 Form 4626 | 1 | -0- |
| 2 | Minimum tax credit carryforward from 1995. Enter the amount from line 9 of the 1995 Form 8827 | 2 | -0- |
| 3 | Enter the total of any 1995 unallowed orphan drug credit, 1995 unallowed nonconventional source fuel credit, and 1995 unallowed qualified electric vehicle credit. See instructions | 3 | -0- |
| 4 | Add lines 1, 2, and 3 | 4 | -0- |
| 5 | Enter the corporation's 1996 regular income tax liability minus allowable tax credits. See instructions | 5 | 20,909,628 |
| 6 | Enter the tentative minimum tax from line 13 of the 1996 Form 4626 | 6 | 24,235,565 |
| 7 | Subtract line 6 from line 5. If zero or less, enter -0- | 7 | -0- |
| 8 | **Minimum tax credit.** Enter the **smaller** of line 4 or line 7. Also enter this amount on the appropriate line of the corporation's income tax return (e.g., Form 1120, Schedule J, line 4e). If the corporation had a post-1986 ownership change or has preacquisition excess credits, see instructions | 8 | -0- |
| 9 | Minimum tax credit carryforward to 1997. Subtract line 8 from line 4. See instructions | 9 | -0- |

**For Paperwork Reduction Act Notice, see Instructions.** Form **8827** (1996)

JXB

F 10/25/96

As Amended Due To Claim for Capital Loss

224

| Form 3610 (Rev. March 1986) | Department of the Treasury -- Internal Revenue Service **Audit Statement** | Symbols AP:FW:HOU:DM:SJC |
|---|---|---|
| Name of Taxpayer Browning-Ferris Industries, Inc. | SSN or EIN 74-1673682 | Date Prepared 04/06/05 |
| Kind of Tax Income | | Docket Number |

| Tax Period Ended | DEFICIENCY (OVERASSESSMENT) (Increase or decrease in Tax and Penalties) TAX | IRC SECTION 6662 | | | |
|---|---|---|---|---|---|
| 9/30/1996 | (1,014,022) | - | | | |
| 9/30/1997 | 19,079,286 | - | | | |
| 9/30/1998 | 3,519,979 | - | | | |
| 7/31/1999 | None | None | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

[ X ] Interest for 199609, 199709 & 199809 will be computed under sections 6611(f) & 6601(d) of the Internal Revenue Code.
(Year)

[ X ] Interest for 9/30/96 is subject to the General Agreement on Tariffs & Trade.

[ X ] Interest for 9/30/97 will be computed under Rev. Rul. 99-40 (Sequa). See form 2220 for 9/30/98.

[ X ] Interest for 9/30/96 & 9/30/97 is subject to the provisions of IRC Section 6621(c ). The applicable date will be determined based upon the Revenue Agent Report dated 9/03/2002.

Disk Id: BFIAppADJUSTS.XLS, BFIFTC96, BFIFTC97-2, BFIFTC98, BFIAppSettlement.CT

Form 3610 (Rev. 3-86)

R ceived Corp. Tax Dept. R 2005

31

APR 22 2005 11:24AM APPEALS 281-462-8827 p.1

**Joint Committee Case**
**Spread Sheet Analysis**

Taxpayer's Name
Browning-Ferris Industries, Inc.

| Item | Years | 09/30/1996 | 09/30/1997 | 09/30/1998 | 07/31/1999 |
|---|---|---|---|---|---|
| A. | Taxable income (loss) per return as filed | 231,469,821 | 211,881,172 | 412,759,986 | (145,907,722) |
| B. | Adjustments: | | | | |
| | 1. Prior (RAR, 1120X) | | | | |
| | 2. Current (except carrybacks) | 12,355,347 | 21,125,908 | 47,769,581 | 67,736,388 |
| C. | Taxable income before NOL or CL deduction | 243,825,168 | 233,007,080 | 460,529,567 | (78,171,334) |
| D. | NOL or CL deduction: | | | | |
| | Carryback from 9907 | | (78,171,334) | | |
| E. | Corrected taxable income | 243,825,168 | 154,835,746 | 460,529,567 | (78,171,334) |
| F. | Tax on line E. before credits | 85,338,809 | 54,192,512 | 161,185,348 | |
| G. | Credits utilized (Sched. Att'd) | | | | |
| | Foreign tax credit - current | 12,000,161 | 5,022,278 | 87,738,489 | |
| | Non Conventional Fuel Credit | 2,101,885 | 6,385,577 | 3,521,547 | |
| | Foreign tax credit - c.b. 9809 | 374,426 | | | |
| | Foreign tax credit - c.b. 9709 due to 9907 | 2,475,778 | | | |
| | Foreign tax credit - c.f. 9709 due to 9907 | | | 3,775,711 | |
| H. | Balance of tax | 68,386,559 | 42,784,657 | 66,149,601 | 0 |

BFIAppADJUSTS.XLS
4/22/2005

Substitute F5278

3.2

**Joint Committee Case**
**Spread Sheet Analysis**

Taxpayer's Name
Browning-Ferris Industries, Inc.

| | (Continuation sheet) | 09/30/1996 | 09/30/1997 | 09/30/1998 | 07/31/1999 |
|---|---|---|---|---|---|
| H. | Balance of tax (prior pg.) | 68,386,559 | 42,784,657 | 66,149,601 | 0 |
| I. | Other tax (specify) | | | | |
| | Investment Credit Recapture | 674 | | | |
| | Environmental Tax | 321,238 | | | |
| J. | Total corrected tax liability | 68,708,471 | 42,784,657 | 66,149,601 | 0 |
| K. | Total tax paid per return | 69,722,493 | 56,414,662 | 72,128,421 | 0 |
| L. | Prior deficiency (overassessment) | | | | |
| M. | Tentative Refunds | | | | |
| | Tentative Allowance - 9907 | | (32,709,291) | (9,498,799) | |
| N. | Net tax paid | 69,722,493 | 23,705,371 | 62,629,622 | 0 |
| O. | Deficiency (overassessment) | (1,014,022) | 19,079,286 | 3,519,979 | 0 |

BFIAppADJUSTS.XLS
4/22/2005

Substitute F5278

3.3

Page 11
4/5/2005

# BROWNING-FERRIS INDUSTRIES, INC.
Capital Gains / Losses

| 5701 # | | 199609 | 199709 | 199809 | 199907 |
|---|---|---|---|---|---|
| | Current yr. net ST capital gain/loss per return | (2,200,797) | (4,314,461) | (44,079) | (932,535,531) |
| 44 | Audit adjustment | | 419,363 | | |
| 71 | Audit adjustment | | | | 901,660,007 |
| | Corrected net STCG | (2,200,797) | (3,895,098) | (44,079) | (30,875,524) |
| | | | | | |
| | Current yr. net LT capital gain/loss per return | 75,055 | (68,275,445) | 76,032,590 | 164,147,568 |
| 28 | Audit adjustment | | | (1,531,596) | |
| 44 | Audit adjustment | | 30,671,658 | | |
| 48 | Audit adjustment | | | 7,541,929 | |
| 76 | Audit adjustment | | | (12,520,910) | (4,234,305) |
| 78 | Audit adjustment | | | (28,296,915) | (711,430) |
| | Corrected net LTCG | 75,055 | (37,603,787) | 41,225,098 | 159,201,833 |
| | | | | | |
| | Capital Loss c/f per return | (33,616,596) | | | |
| | Adjustment | (11,342,503) | | | |
| | Capital Loss c/f as correct | (44,959,099) | (47,084,841) | (88,583,726) | (47,402,707) |
| | | | | | |
| | Capital Loss c/f to subsequent year | (47,084,841) | (88,583,726) | (47,402,707) | - |
| | | | | | |
| | Capital Gain as redetermined | | | | 80,923,602 |
| | Capital Gain per return | | | | - |
| | Adjustment | | | | 80,923,602 |

BFIAppADJUSTS.XLS

3.4

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

**ISSUE No. 71**

**ISSUE:**

1. Are the taxpayer's subsidiaries entitled to an aggregate capital loss deduction in the amount of $901,660,007 on the sale of the class B common stock of the six SPE for the tax year ending July 31, 1999?

2. Does section 357(b) apply to disallow the transaction?

3. Does section 357(c) apply to the transaction?

**ADJUSTMENTS:**

SEE ATTACHEMENT 1 for details per subsidiary.

| | 199907 |
|---|---|
| Short Term Capital Loss Per Return | (901,660,007) |
| Short Term Capital Loss Per Examination | 0 |
| Adjustment | 901,660,007 |
| | |
| Capital Loss Carryover per Return | 811,110,031 |
| Capital Loss Carryover per Examination | 0 |
| Adjustment | 811,110,031 |

**FACTS:**

In July of 1999, BFI, Inc. (parent) used the following subsidiaries for a transaction described in Notice 2001-17 and Notice 2001-33. These entities and the type of contingent liabilities that were transferred are:

| | |
|---|---|
| 1. Browning-Ferris Industries Europe, Inc. | Non Environmental Liabilities |
| 2. Browning-Ferris Industries Services Group, Inc. | Environmental Liabilities |
| 3. Browning-Ferris Industries Asia Pacific, Inc. | Environmental Liabilities |
| 4. BFI Energy Systems of Boston, Inc. | Environmental Liabilities |
| 5. BFI Trans River (LP), Inc. | Environmental Liabilities |
| 6. BFI Energy Systems of Plymouth, Inc. | Environmental Liabilities |

**PROMISSORY NOTES**

Each of the BFI, Inc. subsidiaries that transferred contingent liabilities to the six special purpose entities also transferred a promissory note. These notes were created by the formalization of intercompany account receivables. They were all similar as to terms and conditions. The following example of the terms is one that was transferred to BFI Asia Pacific, Inc.

Promissory note dated 07/07/01
Signed by Eileen Schuler, Vice President

Note was issued by Browning-Ferris Financial Services, Inc. to Browning-Ferris Industries, Inc. in the amount of $69,879,810 at 8% interest. The note could not be prepaid without advance consent of the obligee. They would have to pay the total amount due under the note in order to prepay it. The principal sum and any interest outstanding will be due and payable in full 12 years from the date hereof.

**CONTRIBUTION AGREEMENTS**

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

**CONTRIBUTION AGREEMENTS.**

The following contribution agreement was selected from BFI Asia Pacific, Inc as an example of terms and conditions.

Dated 07/07/1999
Signed by Eileen B. Schuler, Vice President for Cecos International, Inc.
Signed by Eileen B. Schuler, Vice President for Browning-Ferris Industries Asia Pacific, Inc.

CECOS International Inc. (Contributor)
Browning-Ferris Industries Asia Pacific, Inc. (Company)

Contributor gave note from Browning Ferris Financial Services Inc. to Browning-Ferris Industries, Inc. for $69,879,810 at 8% interest and transferred contingent liabilities representing costs associated with hazardous waste management, as well as other post-closure costs including leachate management, ground water monitoring, cover management, property management and administrative expenses. The site names were:

| | |
|---|---|
| Aber Road | Williamsburg, OH |
| Calcasieu | Sulphur, LA |
| Livingston | Livingston, LA |
| Niagara Falls | Niagra Falls, NY |

The Class B Common Stock of Browning-Ferris Industries Asia Pacific, Inc. was not registered and had restrictions on the sale. It was subject to the right of first refusal by the holders of the Class Common stock of the company to repurchase the stock unless that right is waived.

**ADMINISTRATIVE SERVICES AGREEMENT**

On July 7, 1999 Browning-Ferris Industries, Inc. (BFI) and each of the six special purpose entities entered into an Administrative Services Agreement for various services. Some of these services are:

Administrative and General Expenditures
Technical Assistance
Tax Matters
Registration and Transfer of Recipient Securities
SEC Filings
Investor Relations
Audit
Treasury and Banking

**STOCK PURCHASE AND SALE AGREEMENT**

Each of the subsidiaries that received Class B common stock from one of the SPE in the Contribution agreement entered into a Stock Purchase and Sale Agreement with one of the accommodating parties who purchased the class B common stock from them. Each of the accommodating parties had an ongoing business relationship with Allied Waste although most did not have a business relationship with BFI. The accommodating parties' ownership of the SPE is shown below.

Class B Stock Ownership of the six SPE

| Purchaser | BFI Trans River | BFI Asia-Pacific | BFI Services Group | BFI Energy Systems of Boston | BFI Energy Systems of Plymouth | BFI Europe |
|---|---|---|---|---|---|---|

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Comcor | 37% | 90% | | 37% | 98% | |
| Environmental Power Strategies | | | 99% | | | |
| Herst & Associates | 18% | 3% | 1% | 18% | 1% | |
| Nelson Perel | 23% | 3% | | 22% | | |
| Tim Webster | 22% | 4% | | 23% | | |
| Foster Environmental | | | | | 1% | |
| Willis Coroon Corp. | | | | | | 100% |

Each of the SPE had 111 shares of Class B Common Stock outstanding except for BFI Services Group that had 74 shares of Class B Common Stock outstanding. The number of shares sold, the amount received on the sale and the tax loss taken by each of the entities are shown in attachment 2.

Each of the Stock Purchase and Sale Agreements appeared identical and were dated July 9th, 1999. They noted the SPE stock being sold, the subsidiary selling the stock and which accommodating party was buying the stock. The agreement noted that the Stock was subject to provisions set out in the Company's amended and restated articles of incorporation. It was also restricted on transferability set out in the Contribution Agreement. The parent waived the right of first refusal for a few specific entities.

The Class B Common Stock was not registered under the Securities Act of 1933 and could not be resold without registration or representation that the stock is still exempt from registration.

On page 4 of the agreement it notes in item 5a. that:

> To the maximum extent permitted by applicable law, Seller and BFI, jointly and severally, shall indemnify, defend and hold the Purchaser harmless against any liability, loss, cost, or expense of any kind (other that the potential loss of the Purchaser's original investment in the Sale Stock), or any increase in any such liability, to the extent that such liability loss, cost or expense directly or indirectly results from, arises out of, or is related to Purchaser's owning or holding the Sale Stock.

## REVOLVING CREDIT AGREEMENT

Each of the six special purpose subsidiaries had a revolving credit agreement with Browning-Ferris Industries Inc. at 6.5 % interest to take care of cash flow needs. The total amount they could borrow under the agreement varied between the subsidiaries. They could be prepaid at any time.

## AMENDED AND RESTATED ARTICLES OF INCORPORATION

Each of the six special purpose subsidiaries amended their articles of incorporation on July 7, 1999 to create the shares of the class B common stock. The articles also included the put and call features for the redemption of the shares by a call by the company on or after July 7, 2004 and a put by the purchaser on or after July 7, 2005. The maximum amounts to be paid on redemption would be:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
|---|---|---|
| BFI Europe, Inc. | 16,848 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| | TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | |
| Entity Name: | Various | Issue Number: 71 |

| | | |
|---|---|---|
| BFI Energy Systems of Boston, Inc. | 1,263 | 139,638 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

**INDIVIDUALS INTERVIEWED**

Selected interviews are addressed here. Not all questions that were asked have been included in this section. The Allied Waste, Inc. personnel and the third party purchaser interviews were transcribed by a court reporter. For all of the questions and answers, please refer to the transcripts. The information has been summarized below for the Allied Waste, Inc. personnel. The transcript from the court report for the purchasers of the class B common stock that were interviewed has not been received. The questions and responses were prepared from notes taken during the interviews.

**INDIVIDUALS FORMERLY WITH BFI, INC.**

**Bruce Ranck, former President and CEO of BFI, Inc.**

Q: In 1999, what was your position with the company?

A: In early 1999, he was President and CEO.

Q: Are you familiar with these transactions which took place in July of 1999?

A: Not specifically.

Q: How did you become aware of the transactions?

A: He knows that they occurred.

Q: When did you become aware of the transactions?

A: He guessed it was April or May when he heard of this transaction.

Q: Whose idea was it to initiate these transactions? (Allied or BFI?)

A: Allied.

Q: Would BFI have implemented these transactions without Allied's acquisition of BFI?

A: Not at that time.

Q: Were there any written agreements related to these transactions between Allied and BFI?

A: He does not know.

Q: Were you the person that gave the final approval to implement this transaction for BFI? If not, who?

A: Ultimately, he was the person based on the advice of legal and financial people. It would not jeopardize BFI.

Q: Were there any discussions that the sale of the Class B Common Stock to the third parties would trigger a taxable event outside the consolidated group?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: No.

Q: Had you ever considered any similar transaction with these contingent liabilities before these were done in July of 1999?

A: They had looked at similar transactions a couple of years prior to 1999. They were not appropriate for BFI at that time.

Q: Who paid the fees to AA?

A: Was not BFI.

Q: Who paid the fees to Latham & Watkins?

A: Was not BFI.

Q: Was BFI involved in a joint engagement with Allied for the services of Latham & Watkins?

A: He does not know.

Q: What would have happened if the BFI shareholders had not approved the merger?

A: The shareholder support was overwhelming. They were happy with the buyout.

**Jeff Curtis, former Chief Financial Officer of BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Senior Vice President and Chief Financial Officer.

Q: Who did you report to?

A: Bruce Ranck, President and CEO.

Q: Are you familiar with these transactions which took place in July of 1999?

A: In a general sense of the type of transaction being considered.

Q: How did you become aware of the transaction?

A: After the merger agreement. Allied requested BFI to implement the transactions.

Q: Whose idea was it to initiate these transactions? Allied or BFI?

A: Requested to be done on behalf of Allied.

Q: Was there a separate agreement regarding this transaction between BFI and Allied? Other than the merger agreement.

A: Not that he was aware of. Allied wanted to run the environmental different than BFI.

Q: Who paid the fees to AA?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: Not aware.

Q: Who paid the fees to Latham & Watkins?

A: Not aware.

Q: Was BFI involved in a joint engagement with Allied for the services of Latham & Watkins?

A: Assume that they did.

**Eileen Schuler, Assistant Corporate Secretary of BFI, Inc.**

Q: In 1999, what was your position with the company?
A: Assistant Corporate Secretary, BFI, Inc. Officer of various subsidiaries

Q: Are you familiar with these transactions which took place in July of 1999?
A: Most of them.

Q: How did you become aware of the transaction?
A: She was informed by Eddie Norwood and Mr. Ranck. She was involved in the preparation of the documents.

Q: Were there any written agreements related to these transactions between Allied and BFI?

A: Not that she was aware.

Q: Who was the person authorized to give the final go ahead to implement this transaction?

A: CEO, Mr. Ranck wanted her to work on the transaction.

Q: Who paid the fees to AA?

A: She believes that BFI did. She executed the engagement letter with AA.

Q: Who paid the fees to Latham & Watkins?

A: She is not certain.

Q: When did the BFI shareholders approve the merger?

A: The meeting was in July.

**Walt Stone, former Assistant Treasurer with BFI, Inc.**

Q: In 1999, what was your position with the company?
A: Divisional VP, Assistant Treasurer

Q: How did you become aware of the transaction?
A: He was aware, but did not participate.

Q: Who was involved in the transaction initially?
A: Folks at Allied. Dale Parker

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: Were any alternatives for structuring this transaction considered? What were they? Did you consider other types of transactions in 1998?

A: Yes, Bruce Jernigan and Ron Long met with AA consulting regarding similar transactions in 1998 on some contingent liabilities.

Q: Who paid the fees to AA?
A: Does not know.

Q: Who paid the fees to Latham & Watkins?
A: Does not know.

**Rich Oakley, former Vice President Engineering, BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Divisional Vice President, Engineering.

Q: Are you familiar with these transactions which took place in July of 1999?

A: Second hand.

Q: Was the management of any of these contingent liabilities under your control? If so, which?

A: Accrual Active Landfills.

Q: How many people were involved in the management of these liabilities?

A: Environmental 1-2 per site.

Q: How many of these people were with the headquarters function?

A: Six.

Q: How many were in the field?

A: Environmental estimate of 100.

**Bruce Jernigan, former Division Vice President of Environmental Remediation and Closure Activities with BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Divisional Vice President Environmental Remediation and Closure Activities.

Q: Are you familiar with these transactions which took place in July of 1999?

A: No

Q: Do you know what COMCOR Environmental Ltd. does?

A: No.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: Do you know what Herst & Associates does?

A: No.

Q: Do you know what Foster Environmental does?

A: No.

Q: Do you know what Power Strategies Energy LLC does?

A: Yes

Q: Do you know what Nelson Perel and Tim Webster do?

A: No.

Q: Did BFI ever consider any transactions similar to this prior to this transaction?

A: Various risk portfolio transfers in 1998 that were neutral to BFI then. Similar to 351. BFI uses a performance ROGA (Return on Gross Assets). The 1998 351 was either slightly positive or negative to ROGA then. No potential tax benefit to BFI at that time.

Only the concept was being considered. Bruce Ranck, CEO wanted a risk transfer type of transaction. In 1998 there were various types of transactions between BFI and third parties considered. Considered were sale or gifting of closed sites to third parties. They picked several to go forward with. It was beneficial after close. He gave the example of a golf course down by the Astrodome.

Q: Was the management of any of these contingent liabilities under your control? If so, which?

A: Remedial Sites, Superfund Liabilities, Closed sites.

Q: How many people were involved in the management of these liabilities?

A: Total of 100 US and International. Headquarters 7-9 professional.

**INTERVIEW WITH ALLIED WASTE, INC. PERSONNEL**

Mr. Rochford was only familiar with the BFI Europe transaction. That was the one used for the automobile, general liability and workman's compensation liabilities. Willis Corroon Corporation of Arizona was their insurance broker and had a business relationship with Allied Waste, Inc. He stated that BFI, Inc. handled the insurance claims in house. Allied Waste claims were handled by their insurance carrier AIG. After the merger they transferred the remaining BFI claims to a third party administrator.

For the complete questions and answers, please see the court reporter's transcript.

**Dale Parker, Tax Manager with Allied Waste, Inc.**

Mr. Parker stated that after the announcement of the purchase of BFI, Inc. meetings were held with Allied Waste, Inc. management and Arthur Andersen representatives to discuss the handling of the liabilities. He stated that Allied Waste, Inc. and BFI, Inc. jointly engaged Latham & Watkins to assist in the transactions. Latham & Watkins then engaged Arthur Andersen. All of the invoices from these firms were sent to Allied Waste, Inc. and paid after the merger. None of the fees were deducted on the short period BFI, Inc. return.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

For the complete questions and answers, please see the court reporter's transcript.

**Doug Borro, Director of Engineering for Allied Waste, Inc.**

Mr. Borro was familiar with all of the environmental liabilities transferred to the five special purpose subsidiaries. He was responsible for the due diligence done on the BFI, Inc. purchase. He selected all of the third party purchasers of the stock. Allied had a business relationship with all of the purchasers. He stated that five entities were used so that the liabilities could be segregated by type. For example, the superfund liabilities went to one entity. Mr. Borro stated that BFI had 200 people manage all of the liabilities which was different that Allied Waste's structure.

He stated that BFI had looked at a similar transaction to this one in 1998 along with several other types of transactions. Allied Waste senior management had communicated with the principals at BFI and reached an agreement that this would take place.

Mr. Borro stated that among the options that BFI considered in 1998 was the outright sale of the land companies and liabilities, two Environmental Remedial Management Initiative (ERMI) options and an insurance policy. The two ERMI options were different as too the amount of ownership interests that would be sold.

After the purchase of BFI he participated in the Strategic Action Committee (SAC) of each of the entities. The SAC handles projects at the sites and the selection of consultants for specific projects.

For the complete questions and answers, please see the court reporter's transcript.

**INTERVIEWS WITH THIRD PARTY PURCHASERS OF THE CLASS B COMMON STOCK**

**John Jacobs, Executive Vice President with Willis Corporation of Arizona**

Q: In 1999, what was your position with Willis Corroon Corporation of Arizona? Which entity?

A: Executive Vice President of Arizona entity.

Q: How long had you been in that position?

A: 21 years.

Q: Who did you report to?

A: Micheal C. Metzger

Q: What is the business function of Willis Corroon Corporation of Arizona?

A: Insurance Broker.

Q: How did you become aware of this transaction?

A: After Allied Waste hired them, they did a study on the BFI insurance liabilities in May or June of 1999. They were hired 1/1/99 by Allied.

Q: Who was the insurance carrier on these liabilities for BFI, Inc.?

A: AIG Insurance.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: Do you still own this stock?

A: Yes

**Ward Herst with Herst and Associates regarding purchase of Class B Common Stock**

Q: In 1999, what was your position with Herst and Associates?

A: Manager

Q: How long had you been in that position?

A: Since 1998. Prior to that he was an employee.

Q: What is the business function of Herst and Associates?

A: Environmental Groundwater and Soil Consulting.

Q: Are you familiar with these transactions which took place in July of 1999 by BFI Inc. and the subsequent sale of the Class B Common Stock of various BFI, Inc. subsidiaries to Herst and Associates?

A: Only with Item 5. (purchase of Class B Common Stock.)

Q: How did you become aware of this transaction?

A: Doug Borro with Allied Waste.

Q: Did you do the negotiations for your company for the purchase of the class B common stock?

A: Yes.

Q: Who did you negotiate with at Allied?

A: Doug Borro.

Q: Did you do any negotiations with anyone from BFI?

A: Not verbal.

Q: What information was furnished to you regarding this investment?

A: Purchase and Sale Agreement.

Q: Did you attend any meetings regarding this transaction?

A: Meeting in Scottsdale.

Q: With who? Who else was there?

A: Arthur Andersen. Lowell Griffin.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: How did you communicate with Allied/BFI on this transaction?

A: Verbal, then Purchase and Sale Agreement.

Q: Did your company have any involvement prior to this transaction with these liabilities at BFI?

A: Not Herst and Associates. Only as an employee of other company.

Q: Did your company have any involvement prior to this transaction with Allied?

A: Environmental consulting services to Allied ERMI entities.

Q: How were you paid for this?

A: Various.

Q: Did you feel that you had any risk in purchasing this stock? What was your risk?

A: Only risk was that the liabilities could not be settled for less. Only investment was $2000 per entity.

**Ron Poland with Comcor Environmental Ltd. regarding the purchase of the Class B Common Stock.**

Q: In 1999, what was your position with Comcor Environmental Ltd.?

A: He was an equity investor of Comcor Environmental Ltd.

Q: What is the business function of Comcor Environmental Ltd.?

A: Gas Wells and Management.

Q: Are you familiar with these transactions which took place in July of 1999 by BFI Inc. and the subsequent sale of the Class B Common Stock of various BFI, Inc. subsidiaries to Comcor Environmental Ltd.?

A: The four environmental subsidiaries.

Q: How did you become aware of this transaction?

A: Doug Borro.

Q: What information was furnished to you regarding this investment?

A: Landfill.

Q: Did you receive a prospectus or private placement memorandum?

A: Narrative.

Q: Did you attend any meetings regarding this transaction?

A: No, telephone.

Q: When did you become involved in the implementation of the transaction?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: Midyear 1999.
Q: Did your company have any involvement prior to this transaction with these liabilities at BFI?

A: No.

Q: Did your company have any involvement prior to this transaction with Allied?

A: Gas Recovery Systems did.

Q: Has your company ever participated in this type of transaction for any other company beside Allied/BFI?

A: No.

Q: How is your company normally paid for it's services?

A: This is the only equity interest.

General Question responses.

Gas Recovery Systems earns approximately $2,000,000 per year. They made an offer for 32 sites of BFI for long term power purchase agreements.

**ARTHUR ANDERSEN**

Arthur Andersen was issued a summons to provide in whatever form, paper or electronic retention, the following with respect to the transactions described in the attached opinions dated August 24, 2000 from Arthur Anderson LLP to David C. Boatwright, Esq. with Latham & Watkins:

1. All correspondence between Arthur Anderson LLP and Browning-Ferris Industries, Inc. or it's subsidiaries regarding the implementation of the transactions described in the attached opinions.

2. All correspondence between Arthur Anderson LLP and Allied Waste Industries, Inc. or it's subsidiaries; regarding the implementation of the transactions described in the attached opinions.

3. All correspondence between Arthur Anderson LLP and all other third parties that participated in or assisted in the implementation of the transactions described in the attached opinions.

4. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to Browning-Ferris Industries, Inc. or it's subsidiaries concerning the promotion, sale and implementation of the transactions described in the attached opinions.

5. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to Allied Waste Industries, Inc. or it's subsidiaries concerning the promotion, sale and implementation of the transactions described in the attached opinions.

6. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to all other third parties that participated in or assisted in the implementation of the transactions.

7. All memos, notes of meetings, telephone conferences and email correspondence concerning the promotion, sale and implementation of the transactions reflected in the attached opinions.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

8. All other valuations and/or computations prepared such as cash flow analysis, projected tax savings and/or benefit analysis concerning the promotion, sale and implementation of the transactions reflected in the attached opinions.

The information provided was reviewed and the majority of the information was opinions, purchase and sale agreements, cash flow analysis, etc. Andersen also provided email and transcripts of telephone conversations

STRATEGIC ACTION COMMITTEE

**BFI Europe, Inc.**
The Strategic Action Committee (SAC) was authorized in the board meeting on June 28, 2000. At this meeting they also selected Cunningham Lindsey Claims Management, Inc. as the Third Party Administrator for these liabilities with the contract inception of September 30, 1999. An audit had been done by Cunningham Lindsey on the insurance claims and inventory of the claims. It stated that 70% of the BFI claims had been closed since the merger.

In the board meeting on May 16, 2001 they approved an annual consulting fee to Willis Corroon of $30,000.

**BFI Trans River (LP), Inc.**
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or litigation matters.

**BFI Asia Pacific, Inc.**
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the facilities.

**BFI Services Group, Inc.**
The Strategic Action Committee ( SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations. Some discussion related to Power Strategies wanting to get out of its contracts and sell the class B common stock that it owned.

**BFI Energy Systems of Plymouth, Inc.**
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the sites.

**BFI Energy Systems of Boston, Inc.**
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the sites.

**FINANCIAL STATEMENT PRESENTATION VS. TAX TREATMENT**

These transactions were recorded as follows:

| | BOOK | TAX |
|---|---|---|
| Promissory Notes Transferred | $902,561,661 | $902,561,661 |
| Contingent Liabilities Transferred | ($901,660,007) | 0 |
| Basis | $901,654 | $902,561,661 |
| Amount Realized | $901,654 | $901,654 |
| Gain(Loss) | 0 | ($901,660,007) |

The above amounts do not reflect the $1,750,000 paid to the promoter, Arthur Andersen LLP, for assistance on the structure of the transaction, or the $130,400 paid to the law firm of Latham & Watkins for the tax opinion on the transaction.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| | TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | |
| Entity Name: | Various | Issue Number: 71 |

As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999.

**LAW AND ARGUMENT**

The taxpayer provided a tax opinion prepared by the promoter, Arthur Andersen, for each of the six entities used in the transaction. The tax opinions stated that:

1. The Contributors' contributions to BFI Trans River of notes, subject to the contractual assumption of the Contributors' contingent environmental obligations, in exchange for all of the Class B common stock of BFI Trans River should, more likely than not, qualify for nonrecognition of gain or loss under Section 351(a) of the Internal Revenue Code of 1986, as amended (the "Code"). Unless otherwise noted, all Section references are to the Code.

2. The Contributors' tax bases in the Class B common stock of BFI Trans River should, more likely than not, equal the tax bases in the notes contributed to BFI Trans River, and should, more likely than not, not be reduced by the amount of the contingent environmental obligations assumed by BFI Trans River.

3. Losses on the sales of the Class B common stock of BFI Trans River by the Contributors should, more likely than not, not be duplicated losses within the meaning of Treasury Regulation Section 1.1502-20(c)(1)(iii), not be disallowed under the anti-avoidance or anti-stuffing rules of Treas. Reg. Section 1.1502-20(e), and not be disallowed under the intercompany transaction rules of Treas. Reg. Section 1.1502-13.

4. The Contributors' contributions of notes to BFI Trans River in exchange for its Class B common stock should, more likely than not, not be an acquisition made to evade or avoid income tax within the meaning of Section 269.

The promoter, Arthur Andersen, was paid $1,750,000 to assist in structuring these six transactions. Their opinion is self serving. The taxpayer paid the law firm of Latham & Watkins $130,504 for a tax opinion on these six transactions. These opinions have not been provided by the taxpayer and will not be addressed.

**PRIMARY POSITION**

**DOES SECTION 357(b) APPLY TO DISALLOW THE LOSS?**

I.R.C. section 351(a) provides that no gain or loss shall be recognized if property is transferred to a corporation by a person solely in exchange for stock in such corporation and immediately after the exchange such person is in control of the corporation.

I.R.C. section 351(b) provides that if I.R.C. section 351(a) would apply to an exchange but for the fact that there is received, in addition to the stock permitted to be received under I.R.C. section 351(a), other property or money, then, gain (if any) to such recipient shall be recognized, but not in excess of the amount of money received, plus the fair market value of such other property received, and no loss to such recipient shall be recognized.

Regulation 1.357-1(c) *Tax avoidance purpose.* The benefits of section 357(a) do not extend to any exchange involving an assumption of liabilities where it appears that the principal purpose of the taxpayer with respect to such assumption was to avoid Federal income tax on the exchange, or, if not such purpose, was not a bona fide business purpose. In such cases, the total amount of liabilities assumed or acquired pursuant to such exchange (and not merely a particular liability with respect to which the tax avoidance purpose existed) shall, for the purpose of determining the amount of gain to be recognized upon the exchange in which the liabilities are assumed or acquired, be treated as money received by the taxpayer upon the exchange. Thus, if in the example set forth in paragraph (b) of this section, the principal purpose of the assumption of the $4,000 liability was to avoid tax on the exchange, or was not a bona fide business purpose, then the amount of gain recognized would be $5,000. In any suit or proceeding where the burden is on the taxpayer to prove that an assumption of liabilities is not to be treated as "other property or money"

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

under section 357, which is the case if the Commissioner determines that the taxpayer's purpose with respect thereto was a purpose to avoid Federal income tax on the exchange or was not a bona fide business purpose, and the taxpayer contests such determination by litigation, the taxpayer must sustain such burden by the clear preponderance of the evidence. Thus, the taxpayer must prove his case by such a clear preponderance of all the evidence that the absence of a purpose to avoid Federal income tax on the exchange, or the presence of a bona fide business purpose, is unmistakable. [Reg. §1.357-1.]

I.R.C. section 357(b) provides that if, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption was made, it appears that the principal purpose of the taxpayer with respect to the assumption described in I.R.C. section 357(a) was a purpose to avoid Federal income tax on the exchange, or if not such a purpose, was not a bona fide business purpose, then such assumption shall, for purposes of I.R.C. section 351, be considered as money received by the taxpayer on the exchange.

I.R.C. section 357(c)(2) provides that I.R.C. section 357(c)(1) shall not apply to any exchange (A) to which I.R.C. section 357(b)(1) applies, or (B) which is pursuant to a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(G) where no former shareholder of the transferor corporation receives any consideration for his stock.

**REVENUE RULING 95-74**

The relevant facts of Revenue Ruling 95-74 are:

***

Corporation P is an accrual basis, Calendar-year Corporation engaged in various ongoing businesses, one of which includes the operation of a manufacturing plant (the Manufacturing Business). The plant is located on land purchased by P many years before. The land was not contaminated by any hazardous waste when P purchased it. However, as a result of plant operations, certain environmental liabilities, such as potential soil and groundwater remediation, are now [*2] associated with the land.

In Year 1, for bona fide business purposes, P engages in an exchange to which @ 351 of the Internal Revenue Code applies by transferring substantially all of the assets associated with the Manufacturing Business, including the manufacturing plant and the land on which the plant is located, to a newly formed corporation, S, in exchange for all of the stock of S and for S's assumption of the liabilities associated with the Manufacturing Business, including the environmental liabilities associated with the land. P has no plan or intention to dispose of (or have S issue) any S stock. S is an accrual basis, calendar-year taxpayer.

Therefore, on these facts, the Internal Revenue Service will not follow the decision in Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946). Accordingly, the contingent environmental liabilities assumed from P are deductible as business expenses under @ 162 or are capitalized under @ 263, as appropriate, by S under S's method of accounting (determined as if S has owned the land for the period and in the same manner [*12] as it was owned by P).

***

Revenue Ruling 95-74 does not apply in this case. The taxpayer did not transfer the assets that were related to the creation of the contingent liabilities. The taxpayer transferred the liabilities and sold the stock as part of a planned, structured transaction.

The stated business purpose for the transactions between the members of the BFI, Inc. consolidated group was to move the liabilities in each of the subsidiaries into the six entities to better manage them. These liabilities were environmental, automobile accident, workers compensation and general liability claims. The sale of the class B common stock to the investors allegedly gave the investors a financial incentive to help manage the liabilities through ownership of the Class B Common Stock. If there is a legitimate business purpose, it must outweigh the tax avoidance motive of the transaction.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

If isolating the management of these liabilities was a true business purpose, then this could have been accomplished by other means without restructuring each of the six subsidiaries existing corporate structure. This simply could have been accomplished by creating a separate management division within the consolidated group, and transferring the management responsibility of the liabilities in question, and providing incentives to each of the investors through a new or revised contract. Also, the only asset transferred with the liabilities were the intercompany receivables that were formalized into a promissory note. The note and the liabilities never left the consolidated group. In addition, the incentive through the equity investment by each of the investors had a limit to the upside they could receive from the investment. The most that the companies would have to pay to redeem the stock was:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
|---|---|---|
| BFI Europe, Inc. | 16,848 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |
| BFI Energy Systems of Boston, Inc. | 1,258 | 139,638 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

The taxpayer has a potential tax savings from the transactions of $315,581,003 (901,660,007 X 35%). The taxpayer did not transfer any trade or business assets to which the assumed liabilities related to the special purpose entities. The only assets transferred were promissory notes created by the formalization of intercompany receivables in an amount slightly in excess of the liabilities assumed. In return, each of the six special purpose entities assumed the liabilities and issued to the various BFI, Inc. subsidiaries shares of class B common stock having a fair market value equal to the difference between the face amount of the note and the present value of the liabilities. These subsidiaries immediately sold the stock to outside purchasers under a prearranged agreement and claimed a capital loss on the consolidated tax return of $901,660,007.

The promissory notes were created specifically for these transactions by formalizing intercompany accounts receivable and the contingent liabilities were on the balance sheet of BFI, Inc. and it's subsidiaries prior to the transfer. After the transfer, the liabilities were on the balance sheet of the six special purpose entities which were still part of the consolidated return. The consolidated company had no book loss or economic loss as a result of the transaction. The loss was due to the contingent liabilities having no tax basis. At the time the promissory notes and contingent liabilities were transferred to each of the entities, they had no employees. After the transfer of the notes and liabilities, they had no employees. Services were still performed by employees of other entities or subcontracted to outside parties. These liabilities were being managed by the BFI, Inc. consolidated group at the time of the exchange and continued to be managed by the BFI, Inc. consolidated group.

The taxpayer had no economic loss on the sale of the stock. As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999. The tax basis in the stock differed from the book basis because the contingent liabilities assumed by each of the six special purpose entities in the transaction did not impact the tax basis of the class B common stock. There was no gain or loss on the financial statement or books of BFI, Inc. or it's subsidiaries. The class B common stock purchased by each of the purchasers was restricted from resale. The purchased needed permission of each of the entities in order to sell the stock. The purchasers could put the stock to the entities several years later under a defined pricing formula which capped the amount the entities would have to pay to repurchase the stock. The entities could call the stock in the year after the purchasers put option under the same pricing formula. BFI, Inc. and the special purpose entities did not lose control of the stock. It was not freely transferable by the purchasers and could be subsequently called

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Ron Poland with Comcor Environmental Ltd was interviewed regarding the purchase of the class B common stock of four of the environmental entities. Comcor Environmental is involved with gas wells and management. Mr. Poland stated that he learned of the transactions from Doug Borro at Allied Waste, Inc. Comcor had no involvement with any of these liabilities before the transactions, but subsequently Gas Recovery Systems has bid on 32 long term gas purchase contracts with the BFI sites. Gas Recovery Systems earns approximately $2,000,000 per year. Comcor was involved with liabilities of Allied Waste, Inc. This was the only equity interest held by the company.

Ward Herst with Ward Herst and Associates was interviewed regarding the purchase of the class B common stock for the five environmental entities. Ward Herst and Associates are consultants for environmental groundwater and soil. Mr. Herst heard of the transactions from Doug Borro at Allied Waste, Inc. He did no negotiations with any one from BFI. Ward Herst and Associates had no previous involvement with these liabilities although Mr. Herst did as an employee of another company. Herst and Associates did have involvement with Allied Waste, Inc. liabilities in the similar transaction that Allied had done in prior years. Mr. Herst stated that his company's only risk was that the liabilities could not be reduced, but that his investment was limited to $2,000 per entity.

John Jacobs with Willis Corroon Corporation of Arizona was interviewed regarding Willis purchase of the class B common stock of the BFI Europe, Inc which had been transferred the non environmental liabilities. Willis Corroon was an insurance broker. The company was hired in the beginning of 1999 by Allied Waste, Inc. to handle it's insurance. Willis Corroon did a study for Allied Waste on the BFI insurance and related liabilities in May or June of 1999.

The principal purpose of the transfer of the promissory notes and the liability assumptions by each of the six entities was to create a high basis, low value stock, that the taxpayer could sell under a prearranged plan to the purchasers and take a loss on the stock sale. BFI would also receive a double deduction when the liabilities are paid. This is not a bona fide business purpose.

Mr. Bruce Ranck, former President and CEO of BFI, Inc. stated that BFI had considered several types of transactions in 1998 related to the contingent liabilities and rejected this type of transaction as it was not right for BFI at that time. He indicated that BFI would not have participated in such these transactions in July of 1999 except for the merger with Allied Waste, Inc. Allied had approached BFI in April or May regarding these transactions. Mr. Ranck checked with legal and financial personal to insure that it would not jeopardize BFI than approved the implementation of the deal without performing any due diligence. The transaction was implemented by Allied personal with little involvement of BFI officers or personal. Allied paid all fees related to the transaction to Arthur Andersen or Latham & Watkins even though the work was completed prior to the merger.

Mr. Bruce Jernigan, former Divisional Vice President Environmental Remediation and Closure Activities for BFI, Inc. was interviewed and stated that BFI considered various risk portfolio transfers in 1998 including a transaction similar to the IRC 351 transfer declined to participate in any such transactions. BFI used a performance ROGA (Return on Gross Assets) to measure the gain to the company. The 1998 concepts did not meet its ROGA test and there were no potential tax benefits to BFI at that time. Bruce Ranck, CEO wanted a risk transfer type of transaction.

Documents obtained from Arthur Andersen demonstrate that the transaction was originally scheduled for implementation in September 1999. The documents show that Arthur Andersen and Allied personnel discussed a possibility of a change in the tax law in 1999 and that BFI needed to get this deal completed in order to obtain the favorable tax treatment. Arthur Andersen also addressed the potential capital gains from divestitures after the merger in some of the documents. Andersen and Allied prepared responses to anticipated questions from BFI concerning why the transaction should be implemented when it had previously been rejected by BFI management and what risks BFI faced if the transactions were completed before the merger and the merger was not approved by the shareholders. Arthur Andersen and Allied noted that all that BFI had done was to transfer contingent liabilities within the consolidated group and if necessary, BFI could repurchase the class B common stock from the investors and reverse the deal.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| | TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | |
| Entity Name: | Various | Issue Number: 71 |

Mr. Dale Parker, Tax Manager for Allied Waste, Inc., stated that a joint engagement by Allied Waste, Inc. and BFI, INC. was made for the law firm of Latham & Watkins to assist with the transactions. Latham & Watkins then engaged Arthur Andersen. There is an engagement letter between Latham & Watkins and Arthur Andersen. We have not been provided any engagement letters between Allied Waste and BFI for Latham and Watkins. We have an engagement letter signed between Arthur Andersen and BFI, Inc. to assist with the structure of these transactions. This was signed after the transactions had been completed and after the BFI shareholders had approved the merger. Mr. Ranck, former President and CEO of BFI, Inc. stated that he had no knowledge of a joint engagement letter with Allied for Latham & Watkins services and that BFI had not paid any fees related to these transactions. Ms. Schuler, Assistant Corporate Secretary with BFI, Inc. had signed an engagement letter dated June 16, 1999. She had signed the document on July 23, 1999.

These transactions were recorded as follows for book vs. tax treatment:

| | BOOK | TAX |
|---|---|---|
| Promissory Notes Transferred | $902,561,661 | $902,561,661 |
| Contingent Liabilities Transferred | ($901,660,007) | 0 |
| Basis | $901,654 | $902,561,661 |
| Amount Realized | $901,654 | $901,654 |
| Gain(Loss) | 0 | ($901,660,007) |

The above amounts do not reflect the $1,750,000 paid to the promoter, Arthur Andersen LLP, for assistance on the structure of the transaction, or the $130,400 paid to the law firm of Latham & Watkins for the tax opinion on the transaction. As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999.

**CONCLUSION**

The capital loss claimed on the return should be disallowed under IRC 357(b)(1)(B) as the principal purpose of the transactions was for tax avoidance purposes. BFI, Inc. had no business purpose and would not have done this transaction without the pending merger with Allied Waste, Inc. If the merger had not been approved by the BFI, Inc. shareholders BFI could have reversed the transactions. Additionally, the rush to do the transactions due to the fear that the tax laws would be changed to prohibit the tax benefits from these abusive transactions shows the principal purpose of the transactions for tax avoidance purposes.

Each of the steps in this transaction was structured to enable BFI, Inc. and it's Subsidiaries to deduct the capital loss on its return. The consolidated corporation will also receive another deduction when the contingent liabilities are deducted when paid. The taxpayer had no economic loss on the transaction and would benefit from a double deduction when the liabilities accrue for tax and are paid.

Therefore the transaction is a taxable event under section 1001 and the basis in the stock to the various Rust International, Inc. subsidiaries is the fair market value of the stock or $901,654 as determined under section 1012. This results in no gain or loss on the sale of the stock to the purchasers. Therefore the capital loss of $901,660,007 is disallowed.

**1ST ALTERNATIVE POSITION**

**DOES SECTION 357(c)(3) APPLY TO THE TRANSACTION?**

I.R.C. section 351(a) provides that no gain or loss shall be recognized if property is transferred to a corporation by a person solely in exchange for stock in such corporation and immediately after the exchange such person is in control of the corporation.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

I.R.C. section 351(b) provides that if I.R.C. section 351(a) would apply to an exchange but for the fact that there is received, in addition to the stock permitted to be received under I.R.C. section 351(a), other property or money, then, gain (if any) to such recipient shall be recognized, but not in excess of the amount of money received, plus the fair market value of such other property received, and no loss to such recipient shall be recognized.

I.R.C. section 357(a) provides that, except as provided in I.R.C. section 357(b), if the taxpayer receives property which would be permitted to be received under I.R.C. section 351 without the recognition of gain if it were the sole consideration and, as part of the consideration, another party to the exchange assumes a liability of the taxpayer, then such assumption shall not be treated as money or other property and shall not prevent the exchange from being within the provisions of I.R.C. section 351.

I.R.C. section 357(b) provides that if, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption was made, it appears that the principal purpose of the taxpayer with respect to the assumption described in I.R.C. section 357(a) was a purpose to avoid Federal income tax on the exchange, or if not such a purpose, was not a bona fide business purpose, then such assumption shall, for purposes of I.R.C. section 351, be considered as money received by the taxpayer on the exchange.

I.R.C. section 357(c)(1) provides that in the case of an exchange (A) to which I.R.C. section 351 applies, or (B) to which I.R.C. section 361 applies by reason of a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(D), if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

I.R.C. section 357(c)(2) provides that I.R.C. section 357(c)(1) shall not apply to any exchange (A) to which I.R.C. section 357(b)(1) applies, or (B) which is pursuant to a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(G) where no former shareholder of the transferor corporation receives any consideration for his stock.

I.R.C. section 357(c)(3)(A) provides that if a taxpayer transfers, in an exchange to which I.R.C. section 351 applies, a liability the payment of which either (i) would give rise to a deduction, or (ii) would be described in I.R.C. section 736(a), then, for purposes of I.R.C. section 357(c)(1), the amount of such liability shall be excluded in determining the amount of liabilities assumed or to which the property transferred is subject.

I.R.C. section 357(c)(3)(B) provides that I.R.C. section 357(c)(3)(A) shall not apply to any liability to the extent that the incurrence of the liability resulted in the creation of, or increase in, the basis of any property.

I.R.C. section 358(a)(1) provides that, in the case of an exchange to which I.R.C. section 351, 354, 355, 356, or 361 applies, the basis of property permitted to be received under such section without the recognition of gain or loss (i.e., the stock of the transferee corporation) shall be the same as that of the property exchanged, decreased by the amount of money received by the taxpayer, and increased by the amount of gain to the taxpayer which was recognized on such exchange.

I.R.C. section 358(d)(1) provides that where, as part of the consideration to the taxpayer, another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition (in the amount of the liability) shall, for purposes of I.R.C. section 358, be treated as money received by the taxpayer on the exchange.

I.R.C. section 358(d)(2) provides that I.R.C. section 358(d)(1) shall not apply to the amount of any liability excluded under I.R.C. section 357(c)(3).

I.R.C. section 368(c) provided that, for purposes of I.R.C. section 351, the term "control" means the ownership of stock possessing at least 80% of the total combined voting power of all classes of stock entitled to vote and at least 80% of the total number of shares of all other classes of stock of the corporation.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

**REVENUE RULING 95-74**

The relevant facts of Revenue Ruling 95-74 are:

***

Corporation P is an accrual basis, Calendar-year Corporation engaged in various ongoing businesses, one of which includes the operation of a manufacturing plant (the Manufacturing Business). The plant is located on land purchased by P many years before. The land was not contaminated by any hazardous waste when P purchased it. However, as a result of plant operations, certain environmental liabilities, such as potential soil and groundwater remediation, are now [*2] associated with the land.

In Year 1, for bona fide business purposes, P engages in an exchange to which @ 351 of the Internal Revenue Code applies by **transferring substantially all of the assets associated with the Manufacturing Business, including the manufacturing plant and the land on which the plant is located, to a newly formed corporation, S, in exchange for all of the stock of S and for S's assumption of the liabilities associated with the Manufacturing Business, including the environmental liabilities associated with the land. P has no plan or intention to dispose of (or have S issue) any S stock. S is an accrual basis, calendar-year taxpayer.**

Therefore, on these facts, the Internal Revenue Service will not follow the decision in Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946). Accordingly, the contingent environmental liabilities assumed from P are deductible as business expenses under @ 162 or are capitalized under @ 263, as appropriate, by S under S's method of accounting (determined as if S has owned the land for the period and in the same manner [*12] as it was owned by P).

***

Revenue Ruling 95-74 does not apply in this case. The taxpayer did not transfer the assets that were related to the creation of the contingent liabilities. The taxpayer transferred the liabilities and sold the stock as part of a planned, structured transaction.

In *Caruth v. United States*, 688 F. Supp. 1139 (N.D. Tex. 1987), *aff'd*, 865 F.2d 644 (5th Cir.1998) the court held that a transfer of property to a controlled corporation must have a business purpose to qualify under §351 (the court further found that the taxpayer did have the requisite purpose).

In order for §358(d)(2) to be applicable, there must be an amount excluded under §357(c)(3)(A). In order for an amount to be excluded under §357(c)(3)(A), §357(c)(1) must be applicable. Section 357(c)(1) is applicable if the sum of the liabilities assumed exceeds the total adjusted basis of the property transferred pursuant to the exchange.

Section 357(c)(1) is not applicable for two reasons, 1) the §351 transaction was for tax avoidance purposes or lacked a bona fide business purpose, and 2) the amount of the liabilities assumed did not exceed the total of the adjusted basis of the property transferred. Consequently the liability excluded under §357(c)(3) is zero.

The stated business purpose for the transactions between the members of the BFI, Inc. consolidated group was to move the liabilities in each of the subsidiaries into the six entities to better manage them. These liabilities were environmental, automobile accident, workers compensation and general liability claims. The sale of the class B common stock to the investors allegedly gave the investors a financial incentive to help manage the liabilities through ownership of the Class B Common Stock. If there is a legitimate business purpose, it must outweigh the tax avoidance motive of the transaction.

If isolating the management of these liabilities was a true business purpose, then this could have been accomplished by other means without restructuring each of the six subsidiaries existing corporate structure. This simply could have been accomplished by creating a separate management division within the consolidated group, and transferring

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| | TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | |
| Entity Name: | Various | Issue Number: 71 |

the management responsibility of the liabilities in question, and providing incentives to each of the investors through a new or revised contract. Also, the only asset transferred with the liabilities were the intercompany receivables that were formalized into a promissory note. The note and the liabilities never left the consolidated group. In addition, the incentive through the equity investment by each of the investors had a limit to the upside they could receive from the investment. The most that the companies would have to pay to redeem the stock was:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
|---|---|---|
| BFI Europe, Inc. | 16,848 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |
| BFI Energy Systems of Boston, Inc. | 1,258 | 139,638 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

The taxpayer has a potential tax savings from the transactions of $315,581,003 (901,660,007 X 35%).

Ron Poland with Comcor Environmental Ltd was interviewed regarding the purchase of the class B common stock of four of the environmental entities. Comcor Environmental is involved with gas wells and management. Mr. Poland stated that he learned of the transactions from Doug Borro at Allied Waste, Inc. Comcor had no involvement with any of these liabilities before the transactions, but subsequently Gas Recovery Systems has bid on 32 long term gas purchase contracts with the BFI sites. Gas Recovery Systems earns approximately $2,000,000 per year. Comcor was involved with liabilities of Allied Waste, Inc.. This was the only equity interest held by the company.

Ward Herst with Ward Herst and Associates was interviewed regarding the purchase of the class B common stock for the five environmental entities. Ward Herst and Associates are consultants for environmental groundwater and soil. Mr. Herst heard of the transactions from Doug Borro at Allied Waste, Inc. He did no negotiations with any one from BFI. Ward Herst and Associates had no previous involvement with these liabilities although Mr. Herst did as an employee of another company. Herst and Associates did have involvement with Allied Waste, Inc. liabilities in the similar transaction that Allied had done in prior years. Mr. Herst stated that his company's only risk was that the liabilities could not be reduced, but that his investment was limited to $2,000 per entity.

John Jacobs with Willis Corroon Corporation of Arizona was interviewed regarding Willis purchase of the class B common stock of the BFI Europe, Inc which had been transferred the non environmental liabilities. Willis Corroon was an insurance broker. The company was hired in the beginning of 1999 by Allied Waste, Inc. to handle it's insurance. Willis Corroon did a study for Allied Waste on the BFI insurance and related liabilities in May or June of 1999.

The principal purpose of the transfer of the promissory notes and the liability assumptions by each of the six entities was to create a high basis, low value stock, that they could sell under a prearranged plan to the purchasers and take a loss on the stock sale. They would also receive a double deduction when the liabilities are paid. This is not a bona fide business purpose.

In this case, no trade or business, or any assets to which the assumed liabilities related, were transferred. The only assets transferred were promissory notes created by the formalization of intercompany receivables in an amount slightly in excess of the liabilities assumed. In return, each of the six special purpose entities assumed the liabilities and issued to the various BFI, Inc. subsidiaries shares of class B common stock having a fair market value equal to the difference between the face amount of the note and the present value of the liabilities. These subsidiaries immediately sold the stock to outside purchasers under a prearranged agreement and claimed a capital loss on the consolidated tax return of ($901,660,007).

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Mr. Bruce Ranck, former President and CEO of BFI, Inc. stated that BFI had considered several types of transactions in 1998 related to the contingent liabilities and rejected this type of transaction as it was not right for BFI at that time. He indicated that BFI would not have participated in such these transactions in July of 1999 except for the Allied Waste, Inc. merger. Allied had approached BFI in April or May regarding these transactions. Mr. Ranck checked with legal and financial personal to insure that it would not jeopardize BFI than approved the implementation of the deal without performing any due diligence. The transaction was implemented by Allied personal with little involvement of BFI officers or personal. Allied paid all fees related to the transaction to Arthur Andersen or Latham & Watkins even though the work was completed prior to the merger.

Mr. Bruce Jernigan, former Divisional Vice President Environmental Remediation and Closure Activities for BFI, Inc. was interviewed and stated that BFI considered various risk portfolio transfers in 1998 including a transaction similar to the IRC 351 transfer declined to participate in any such transactions. BFI used a performance ROGA (Return on Gross Assets) to measure the gain to the company. The 1998 concepts did not meet its ROGA test and there were no potential tax benefits to BFI at that time. Bruce Ranck, CEO wanted a risk transfer type of transaction.

Documents obtained from Arthur Andersen demonstrate that the transaction was originally scheduled for implementation in September 1999. The documents show that Arthur Andersen and Allied personnel discussed a possibility of a change in the tax law in 1999 and that BFI needed to get this deal completed in order to obtain the favorable tax treatment. Arthur Andersen also addressed the potential capital gains from divestitures after the merger in some of the documents. Andersen and Allied prepared responses to anticipated questions from BFI concerning why the transaction should be implemented when it had previously been rejected by BFI management and what risks BFI faced if the transactions were completed before the merger and the merger was not approved by the shareholders. Arthur Andersen and Allied noted that all that BFI had done was to transfer contingent liabilities within the consolidated group and if necessary, BFI could repurchase the class B common stock from the investors and reverse the deal.

Mr. Dale Parker, Tax Manager for Allied Waste, Inc., stated that a joint engagement by Allied Waste, Inc. and BFI, INC. was made for the law firm of Latham & Watkins to assist with the transactions. Latham & Watkins then engaged Arthur Andersen. There is an engagement letter between Latham & Watkins and Arthur Andersen. We have not been provided any engagement letters between Allied Waste and BFI for Latham and Watkins. We have an engagement letter signed between Arthur Andersen and BFI, Inc. to assist with the structure of these transactions. This was signed after the transactions had been completed and after the BFI shareholders had approved the merger. Mr. Ranck, former President and CEO of BFI, Inc. stated that he had no knowledge of a joint engagement letter with Allied for Latham & Watkins services and that BFI had not paid any fees related to these transactions. Ms. Schuler, Assistant Corporate Secretary with BFI, Inc. had signed an engagement letter dated June 16, 1999. She had signed the document on July 23, 1999.

Revenue Ruling 95-74 does not apply to this transaction as there is no transfer of a trade or business and there is a plan to sell the stock immediately after the transfer. Therefore, the taxpayer is subject to <u>Holdcroft Transp. Co. v. Commissioner</u>, 153 F.2d 323 (8th Cir. 1946), that the assumption of the liability is part of the cost of acquiring the transferred asset and so the payment of the liability does not give rise to a deductible expense for the transferee. The liability is not within the scope of section 357(c)(3)(A)(i), its assumption is therefore not within the scope of section 358(d)(2), and the general rule of section 358(d)(1) applies to reduce the stock basis by the amount of the liability.

**CONCLUSION**

The capital loss claimed on the return should be disallowed as the liabilities are not within the scope of 357(c)(3)(A)(i), therefore section 358(d)(2) does not prevent the application of section 358(d)(1) to reduce the basis in the stock by the amount of the transferred liabilities. Therefore, the basis in the stock to the various Rust International, Inc. subsidiaries was $901,654, the same as the amount they received on the sale of the stock to the purchasers, resulting in no gain or loss on the stock sale.

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**9/30/97 FORM 1120X EXPLANATION OF CHANGES**

**ATTACHMENT 5**

**COPY OF 7/30/99 FORM 1120X CLAIM FOR REFUND**

Form **1120X** (Rev. December 2004) Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ 7/30/99 (Enter month and year.)

Please Type or Print

Name: Browning-Ferris Industries, Inc. & Subsidiaries

Employer identification number: 74-1673682

Number, street, and room or suite no. (If a P.O. box, see instructions.): 15880 N Greenway-Hayden Loop, Suite 100

City or town, state, and ZIP code: Scottsdale, AZ 85260

Telephone number (optional): 480.627.2736

Enter name and address used on original return (If same as above, write "Same."): Browning-Ferris Industries, Inc. & Subsidiaries, 757 N. Eldridge, Houston, TX 77079

Internal Revenue Service Center where original return was filed ▶ Austin, TX

**Fill in applicable items and use Part II on the back to explain any changes**

| **Part I** Income and Deductions (see instructions) | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income (Form 1120 or 1120-A, line 11) | 1 | 3,193,591,494 | (80,923,602) | 3,112,667,892 |
| 2 Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 3,271,762,828 | 0 | 3,271,762,828 |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | (78,171,334) | (80,923,602) | (159,094,936) |
| 4 Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 0 | 0 | 0 |

**Payments and Credits** (see instructions)

| | | | | |
|---|---|---|---|---|
| 5a Overpayment in prior year allowed as a credit | 5a | 0 | 0 | 0 |
| b Estimated tax payments | 5b | 90,500,000 | 0 | 90,500,000 |
| c Refund applied for on Form 4466 | 5c | 80,000,000 | 0 | 80,000,000 |
| d Subtract line 5c from the sum of lines 5a and 5b | 5d | 10,500,000 | 0 | 10,500,000 |
| e Tax deposited with Form 7004 | 5e | 0 | 0 | 0 |
| f Credit from Form 2439 | 5f | 0 | 0 | 0 |
| g Credit for Federal tax on fuels | 5g | 5,447 | 0 | 5,447 |
| 6 Tax deposited or paid with (or after) the filing of the original return | 6 | | | 0 |
| 7 Add lines 5d through 6, column (c) | 7 | | | 10,505,447 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 10,505,447 |
| 9 Subtract line 8 from line 7 | 9 | | | 0 |

**Tax Due or Overpayment** (see instructions)

| | | |
|---|---|---|
| 10 **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "United States Treasury" ▶ | 10 | 0 |
| 11 **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 0 |
| 12 Enter the amount of line 11 you want: Credited to 20__ estimated tax ▶ Refunded ▶ | 12 | 0 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer | Date 5/12/05 | ▶ VP Title

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see Carryback Claims on page 3, and check here . . . . ▶ ☐

Total Income (line 1) decreased due to the capital loss requested in this claim for refund applicable to the taxable year ended July 30, 1999. Please refer to Attachment 1 for an explanation of the change in Total Income.

Taxable Income (line 3) has decreased due to the capital loss requested in line 1 as explained above.

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**7/30/99 FORM 1120X EXPLANATION OF CHANGES**
**INDEX OF ATTACHMENTS**

1 Explanation of Changes

2 As Amended Schedules

3 IRS Audit Statement (Form 3610)

4 IRS Examination Report (Form 886A)

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**7/30/99 FORM 1120X EXPLANATION OF CHANGE**
**ATTACHMENT 1**

The bases for the changes requested in this claim for refund are set forth below. The term "Claimant" as used herein refers to Browning-Ferris Industries, Inc. and the members of its consolidated group as appropriate. Unless otherwise indicated, section ("§") references are to the Internal Revenue Code of 1986 ("IRC"), as amended, as in effect for the year in issue. Based on the changes set forth below, Claimant is entitled to a refund of $-0- or such greater amount as is legally refundable. In addition, Claimant asserts that it is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, its alternative minimum tax, environmental tax, net operating loss deductions and net operating loss carrybacks and carryovers, capital loss deductions and capital loss carrybacks and carryovers, and tax credits and tax credit carrybacks and carryovers) affecting this year. Claimant also requests a refund of all related interest, penalties, or additions to tax that have been overpaid. Claimant also requests statutory interest on any overpayment as provided by law (including, but not limited to, the benefit of offsetting, interest netting, and the net interest rate of zero on periods of overlapping underpayment and overpayments).

Claimant incurred an aggregate capital loss of $901,660,007 on the sale by certain members of Claimant's consolidated return group (hereinafter referred to as the "BFI Entities") of Class B Common Stock in six liability management companies, as shown on attached Exhibit 1, to unrelated investors during the taxable year ended July 30, 1999 (the "1999 tax year"). As a result, Claimant is entitled to offset this capital loss against capital gain net income of $80,923,602 in the 1999 tax year. This results in a reduction in Claimant's taxable income for the 1999 tax year in the amount of $80,923,602 or such other proper amount as provided by law.

On July 30, 1999, Allied Waste Industries, Inc. ("Allied") acquired substantially all of the outstanding stock of Claimant. Prior to the acquisition, Claimant utilized a large in-house staff to manage the liabilities arising from its operations. In contrast, Allied utilized a small in-house staff and outsourced most of its environmental management, risk management and other expertise.

In July 1999, shortly before the close of the acquisition, Claimant restructured the management of its contingent liabilities in a manner consistent with Allied's outsourcing approach and to provide a legal structure that would foster the effective management of the liabilities. As a replacement for Claimant's heavily staffed internal departments, Claimant established six separate liability management companies based on the specific expertise needed for the management of the liabilities and compliance with applicable regulatory laws, as shown on Exhibit 2. In order to consolidate the liabilities into the corresponding liability management companies, the BFI Entities contributed certain notes in an aggregate amount of $902,561,661 to the liability management companies in exchange for (i) Class B Common Stock, and (ii) the assumption by the liability management companies of contingent liabilities in the aggregate amount of $901,660,007. The above transactions were tax-free exchanges pursuant to § 351.

Each of the BFI Entities then sold their shares of Class B Common Stock to environmental and insurance consultants with considerable expertise in the liabilities managed by the respective liability management company (hereinafter referred to the "Consulting Investors"). See identities of Consulting Investors at Exhibit 2. The ownership of the stock provides an equity incentive for the Consulting Investors to aggressively identify and take advantage of cost-saving opportunities in managing the liabilities.

The aggregate amount realized by the BFI Entities on the sale of the Class B Common Stock during the 1999 tax year was $901,654. The BFI Entities' tax basis in the Class B Common Stock was a substitute basis equal to the sum of the tax basis of the property which the BFI Entities contributed to the liability management companies and unreduced by the liability management companies' assumption of the liabilities in accordance with § 358. As shown on Exhibit 1, the BFI Entities' aggregate tax basis in the Class B Common Stock was $902,561,661. The liabilities do not reduce stock basis because they are excluded under § 357(c)(3) and, therefore, § 358(d)(2) applies. Alternatively, the liabilities are not taken into account under § 358(d) because such contingent liabilities are not "liabilities" for federal income tax purposes. Consequently, as shown on Exhibit 1, the BFI Entities' sales of the Class B Common Stock resulted in an aggregate capital loss of $901,660,007 in the 1999 tax year.

Claimant's deduction of the capital loss resulting from the sale of the Class B Common Stock during the 1999 tax year was disallowed by the Internal Revenue Service's (the "Service") examination team. The disallowance of the capital loss is reflected in Issue 71 of the Examination Report dated May 31, 2002 and revised September 3, 2002. The disallowance of the capital loss is incorrect and without merit. Claimant hereby incorporates by reference all documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to the Service.

As a result of the changes herein, Claimant's tax liability is reduced by $-0- or such greater amount as is legally refundable.

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**FORM 1120X EXPLANATION OF CHANGES**
**ATTACHMENT 1**
**EXHIBIT 1**

| Shares Sold of: | Seller | Seller's FEIN | Sales Price | Basis | Gain (Loss) |
|---|---|---|---|---|---|
| Browning-Ferris Industries Europe, Inc. | Browning-Ferris Industries, Inc. | 74-1673682 | 155,840 | 155,995,840 | (155,840,000) |
| **Entity Total** | | | **155,840** | **155,995,840** | **(155,840,000)** |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries, Inc. | 74-1673682 | 121 | 120,120 | (119,999) |
| BFI Trans River (LP), Inc. | Attwoods of North America, Inc. | 98-0066273 | 2,022 | 2,022,020 | (2,019,998) |
| BFI Trans River (LP), Inc. | BFI Waste Systems of New Jersey, Inc. | 22-1755133 | 9,842 | 9,849,840 | (9,839,998) |
| BFI Trans River (LP), Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 72,871 | 72,952,880 | (72,880,009) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 6,552 | 6,556,550 | (6,549,998) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 4,949 | 4,954,950 | (4,950,001) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 941 | 940,940 | (939,999) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 2,563 | 2,562,560 | (2,559,997) |
| BFI Trans River (LP), Inc. | CECOS International, Inc. (New York) | 16-1069544 | 1,417 | 1,421,420 | (1,420,003) |
| BFI Trans River (LP), Inc. | Woodlake Sanitary Service, Inc. | 41-0673360 | 28 | 30,030 | (30,002) |
| **Entity Total** | | | **101,306** | **101,411,310** | **(101,310,004)** |
| BFI Energy Systems of Plymouth, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 278,417 | 278,698,420 | (278,420,003) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 16,125 | 16,126,110 | (16,109,985) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 49,040 | 49,099,050 | (49,050,010) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 4,164 | 4,164,160 | (4,159,996) |
| BFI Energy Systems of Plymouth, Inc. | International Disposal Corp. of California | 94-2229685 | 6,063 | 6,066,060 | (6,059,997) |
| BFI Energy Systems of Plymouth, Inc. | New Morgan Landfill Company, Inc. | 23-2645522 | 15,991 | 16,016,000 | (16,000,009) |
| **Entity Total** | | | **369,800** | **370,169,800** | **(369,800,000)** |
| Browning-Ferris Industries Asia Pacific, Inc. | CECOS International, Inc. (New York) | 16-1069544 | 69,810 | 69,879,810 | (69,810,000) |
| **Entity Total** | | | **69,810** | **69,879,810** | **(69,810,000)** |
| BFI Services Group, Inc. | BFI Waste Systems of New Jersey, Inc. | 22-1755133 | 7,436 | 7,437,430 | (7,429,992) |
| BFI Services Group, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 138,661 | 138,808,670 | (138,670,009) |
| BFI Services Group, Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 314 | 310,310 | (309,996) |
| BFI Services Group, Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 7,072 | 7,077,070 | (7,069,998) |
| BFI Services Group, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 21,084 | 21,111,090 | (21,090,006) |
| BFI Services Group, Inc. | Browning-Ferris, Inc. (MD) | 74-1990096 | 6,181 | 6,176,170 | (6,169,989) |
| BFI Services Group, Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 11,210 | 11,221,210 | (11,210,000) |
| BFI Services Group, Inc. | Woodlake Sanitary Service, Inc. | 41-0673360 | 1,860 | 1,871,870 | (1,870,010) |
| **Entity Total** | | | **193,820** | **194,013,820** | **(193,820,000)** |
| BFI Energy Systems of Boston, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 830 | 830,830 | (830,000) |
| BFI Energy Systems of Boston, Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 5,670 | 5,675,670 | (5,670,000) |
| BFI Energy Systems of Boston, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 4,580 | 4,584,580 | (4,580,000) |
| **Entity Total** | | | **11,080** | **11,091,080** | **(11,080,000)** |
| **Combined Entities Total** | | | **901,656** | **902,561,660** | **(901,660,004)** |

1.4

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**FORM 1120X EXPLANATION OF CHANGE**
**ATTACHMENT 1**
**EXHIBIT 2**

| Liability Management Company | Description of Liabilities Assumed | Consulting Investors |
|---|---|---|
| BFI Services Group, Inc. | Routine post-closure costs associated with closed landfills | Foster Environmental<br>Herst & Associates<br>Power Strategies, Inc. |
| Browning-Ferris Industries Asia Pacific, Inc. | Costs associated with hazardous waste management | COMCOR Environmental, Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Energy Systems of Boston, Inc. | Remediation costs associated with chemical waste management | COMCOR Environmental Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Trans River (LP), Inc. | Transaction costs for Superfund matters, remediation costs, potential legal settlements, and related legal and engineering costs | COMCOR Environmental Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Energy Systems of Plymouth, Inc. | Closing costs, capping costs and storm water control costs associated with operating active landfills | COMCOR Environmental Ltd.<br>Foster Environmental<br>Herst & Associates |
| Browning-Ferris Industries Europe, Inc. | Contingent Insurance Liabilities (auto, general, and workman's compensation) | Willis Corroon Corp. of Arizona |

1.5

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**FORM 1120X DETAIL**
**YEAR ENDED JULY 30, 1999**

| | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss | |
|---|---|---|---|---|
| 1a Gross receipts or sales | | 3,909,425,714 | | 3,909,425,714 |
| 1b Less returns & allowances | | 0 | | 0 |
| 1c Balance | | 3,909,425,714 | | 3,909,425,714 |
| 2 Cost of goods sold | | 1,432,781,981 | | 1,432,781,981 |
| 3 Gross profit | | 2,476,643,733 | | 2,476,643,733 |
| 4 Dividends | | 4,133,968 | | 4,133,968 |
| 5 Interest | | 518,208,385 | | 518,208,385 |
| 6 Gross rents | | (84,974) | | (84,974) |
| 7 Gross royalties | | | | 0 |
| 8 Capital gain net income | | 80,923,602 | (80,923,602) | 0 |
| 9 Net gain or (loss) from Form 4797 | | (51,182,136) | | (51,182,136) |
| 10 Other income | | 164,948,916 | | 164,948,916 |
| 11 **Total income** | | 3,193,591,494 | | 3,112,667,892 |
| 12 Compensation of officers | | 7,558,922 | | 7,558,922 |
| 13a Salaries and wages | 728,161,650 | | 728,161,650 | |
| 13b Less employment credits | 0 | | 0 | |
| 13c Balance | | 728,161,650 | | 728,161,650 |
| 14 Repairs and maintenance | | 72,083,077 | | 72,083,077 |
| 15 Bad debts | | 15,586,472 | | 15,586,472 |
| 16 Rents | | 32,789,476 | | 32,789,476 |
| 17 Taxes and licenses | | 93,842,650 | | 93,842,650 |
| 18 Interest | | 616,523,420 | | 616,523,420 |
| 19 Charitable contributions | | 0 | | 0 |
| 20 Depreciation | 327,244,598 | | 327,244,598 | |
| 21a Less Depreciation claimed on Sch. A and elsewhere | 0 | | 0 | |
| 21b | | 327,244,598 | | 327,244,598 |
| 22 Depletion | | 0 | | 0 |
| 23 Advertising | | 7,858,285 | | 7,858,285 |
| 24 Pension, profit-sharing, etc. plans | | 73,448,675 | | 73,448,675 |
| 25 Employee benefit programs | | 32,965,225 | | 32,965,225 |
| 26 Other deductions | | 1,263,720,378 | | 1,263,720,378 |
| 27 **Total deductions** | | 3,271,762,828 | | 3,271,762,828 |
| 28 Taxable income before NOL & spec. ded. | | (78,171,334) | | (159,094,936) |
| 29a Net operating loss deduction | | | 0 | |
| 29b Special deductions | | | 0 | |
| 29c | | 0 | | 0 |
| 30 **Taxable income** | | (78,171,334) | | (159,094,936) |
| 31 **Total tax (Schedule J, Line 10)** | | 0 | | 0 |
| 32a Overpayment from previous year | 0 | | 0 | |
| 32b Estimated tax payments & Backup withholding | 90,500,000 | | 90,500,000 | |
| 32c Less refund applied for on Form 4466 | (80,000,000) | | (80,000,000) | |
| 32d Balance | 10,500,000 | | 10,500,000 | |
| 32e Tax deposited with Form 7004 | | | 0 | |
| 32f Credit for tax paid on undistributed capital gains | | | 0 | |
| 32g Credit for Federal tax on fuels | 5,447 | 10,505,447 | 5,447 | 10,505,447 |
| 33 Estimated tax penalty | | | | |
| 34 Tax due | | 0 | | 0 |
| 35 Overpayment | | 10,505,447 | | 10,505,447 |
| 36 Credited to following year/Refunded | 10,500,000 | 5,447 | 10,500,000 | 5,447 |

2.1

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**FORM 1120X DETAIL**
**YEAR ENDED JULY 30, 1999**

| | | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss |
|---|---|---|---|---|
| **Schedule J--Tax computation** | | | | |
| 1 Check if member of controlled group | | N/A | | N/A |
| 2a Share of $50,000, $25,000, and $9,925,000 bracket amt. | | | | |
| 2b Share of (1) additional 5% tax, (2) additional 3% tax | | | | |
| 3 Income tax | | 0 | | 0 |
| 4a Foreign tax credit | 0 | | 0 | |
| 4b Possessions tax credit | 0 | | 0 | |
| 4c Nonconventional source fuel credit | 0 | | 0 | |
| 4d General business credit | 0 | | 0 | |
| 4e Credit for prior year minimum tax | 0 | | 0 | |
| 5 Total--add Lines 4a through 4e | | 0 | | 0 |
| 6 Subtract line 5 from line 3 | | 0 | | 0 |
| 7 Personal holding company tax | | 0 | | 0 |
| 8 Recapture taxes | | 0 | | 0 |
| 9 Alternative minimum tax | | 0 | | 0 |
| 10 Total tax | | 0 | | 0 |

2.2

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**ALTERNATIVE MINIMUM TAX - CORPORATIONS (FORM 4626) DETAIL**
**YEAR ENDED JULY 30, 1999**

| | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss | |
|---|---|---|---|---|
| 1 Taxable income or (loss) before net operating loss deduction | | (78,171,334) | (80,923,602) | (159,094,936) |
| 2 **Adjustments and preferences:** | | | | |
| 2a Depreciation of post-1986 property | 18,714,881 | | 18,714,881 | |
| 2e Adjusted gain or loss | (22,787,113) | | (22,787,113) | |
| 2m Depletion | 485,527 | | 485,527 | |
| 2r Other adjustments and preferences | - | (3,586,705) | - | (3,586,705) |
| 3 Pre-adjustment alternative minimum taxable income (AMTI) | | (81,758,039) | | (162,681,641) |
| 4 **Adjusted current earnings (ACE) adjustment:** | | | | |
| 4a ACE from line 10 of the worksheet on page 11 of the instructions | | (103,264,056) | | (184,187,658) |
| 4b Subtract line 3 from line 4a. If line 3 exceeds line 4a, enter the difference as a negative amount. | | (21,506,017) | | (21,506,017) |
| 4c Mulitply line 4b by 75%. Enter the result as a positive amount. | | 16,129,513 | | (16,129,513) |
| 4d Enter the excess, if any, of the corporation's total increases in AMTI from prior year ACE adjustments over its total reductions in AMTI from prior year ACE adjustments. | | 36,509,701 | | 36,509,701 |
| 4e ACE adjustment.<br>- If line 4b is zero or more, enter the amount from line 4c.<br>- If line 4b is less than zero, enter the smaller of line 4c or line 4d as a negative amount | | (16,129,513) | | (16,129,513) |
| 5 Combine lines 3 and 4e. If zero or less, stop here; the corporation does not owe any AMT. | | (97,887,552) | | (178,811,154) |
| 6 Alternative tax net operating loss deduction | | - | | - |
| 7 **Alternative minimum taxable income** Subtract line 6 from line 5. | | - | | - |
| 9 **Exemption phase-out** (If line 7 is $310,000 or more, skip lines 8a and 8b and enter -0- on line 8c): | | | | |
| 9a Subtract $150,000 from line 7. If zero or less, enter -0-. | | - | | - |
| 9b Mulitply line 8a by 25%. | | - | | - |
| 9c Exemption. Subtract line 8b from $40,000. If zero or less, enter -0-. | | - | | - |
| 10 Subtract line 8c from line 7. If zero or less, enter -0-. | | - | | - |
| 11 Mulitply line 9 by 20%. | | - | | - |
| 12 Alternative minimum tax foreign tax credit (AMTFTC) | | - | | - |
| 13 Tentative minimum tax. Subtract line 11 from line 10. | | - | | - |
| 14 Regular tax liability before all credits except the foreign tax credit and possessions tax credit. | | - | | - |
| 15 **Alternative minimum tax.** Subtract line 13 from line 12. If zero or less, enter -0-. Enter here and on Form 1120 Schedule J, line 4, or the appropriate line of the corporation's income tax return. | | - | | - |

SCHEDULE D (Form 1120)

Department of the Treasury Internal Revenue Service

# Capital Gains and Losses

To be filed with Forms 1120, 1120-A, 1120-IC-DISC, 1120-F, 1120-FSC, 1120-H, 1120-L, 1120-ND, 1120-PC, 1120-POL, 1120-REIT, 1120-RIC, 1120-SF, 990-C, and certain Forms 990-T

OMB No. 1545-0123

1998

Name: BROWNING FERRIS INDUSTRIES, INC.& SUBSIDIARIES

Employer identification number: 74-1673682

## Part I Short-Term Capital Gains and Losses - Assets Held One Year or Less

| | (a) Kind of property and description (Example, 100 shares of Z Co.) | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Sales price (see instructions) | (e) Cost or other basis (see instructions) | (f) Gain or (loss) ((d) less (e)) |
|---|---|---|---|---|---|---|
| 1 | As Previously Adjusted per | Audit Statement Dated April 6, 2005 | | | | (78,278,228) |
| | Claim for Refund due to | | | | | (901,660,007) |
| | Capital Loss | | | | | |
| 2 | Short-term capital gain from installment sales from Form 6252, line 26 or 37 | | | | 2 | |
| 3 | Short-term gain or (loss) from like-kind exchanges from Form 8824 | | | | 3 | |
| 4 | Unused capital loss carryover (attach computation) . Stmt .254. | | | | 4 | ( ) |
| 5 | Net short-term capital gain or (loss). Combine lines 1 through 4. | | | | 5 | |

## Part II Long-Term Capital Gains and Losses - Assets Held More Than One Year

| | (a) | (b) | (c) | (d) | (e) | (f) |
|---|---|---|---|---|---|---|
| 6 | As Previously Adjusted per | Audit Statement Dated April 6, 2005 | | | | 159,201,830 |
| 7 | Enter gain from Form 4797, column (g), line 7 or 9 | | | | 7 | |
| 8 | Long-term capital gain from installment sales from Form 6252, line 26 or 37 | | | | 8 | |
| 9 | Long-term gain or (loss) from like-kind exchanges from Form 8824 | | | | 9 | |
| 10 | Net long-term capital gain or (loss). Combine lines 6 through 9 | | | | 10 | 159,201,830 |

## Part III Summary of Parts I and II

| | | | |
|---|---|---|---|
| 11 | Enter excess of net short-term capital gain (line 5) over net long-term capital loss (line 10) | 11 | |
| 12 | Net capital gain. Enter excess of net long-term capital gain (line 10) over net short-term capital loss (line 5) | 12 | |
| 13 | Add lines 11 and 12. Enter here and on Form 1120, page 1, line 8, or the proper line on other returns | 13 | NONE |

Note: *If losses exceed gains, see* Capital losses *in the instructions below.*

## Instructions

*Section references are to the Internal Revenue Code unless otherwise noted.*

### Purpose of Schedule

Use Schedule D to report sales and exchanges of capital assets and gains on distributions to shareholders of appreciated capital assets.

Report sales, exchanges, and distributions of property other than capital assets on Form 4797, Sales of Business Property. Include on Form 4797 a sale, exchange, or distribution of property used in a trade or business; involuntary conversions (from other than casualties or thefts); gain from the disposition of oil, gas, or geothermal property; and the section 291 adjustment to section 1250 property. See the instructions for Form 4797 for details.

If property is involuntary converted because of a casualty or theft, use Form 4684, Casualties and Thefts.

### Parts I and II

Generally, a corporation must report sales and exchanges even if there is no gain or loss. Use Part I to report the sale, exchange, or distribution of capital assets held one year or less. Use Part II to report the sale, exchange, or distribution of capital assets held more than one year. Use the trade dates for the dates of acquisition and sale of stocks and bonds on an exchange or over-the-counter market.

**What is a capital asset?** Each item of property the corporation held (whether or not connected with its trade or business) is a capital asset except:

1. Assets properly included in inventory or property held mainly for sale to customers.

2. Depreciable or real property used in the trade or business.

3. Certain copyrights; literary, musical, or artistic compositions; letters or memoranda; or similar property.

4. Accounts or notes receivable acquired in the ordinary course of trade or business for services rendered or from the sale of property described in 1 above.

5. U.S. Government publications, including the Congressional Record, that the corporation received from the Government, other than by purchase at the normal sales price, or that the corporation got from another taxpayer who had received it in a similar way, if the corporation's basis is determined by reference to the previous owner's basis.

**Capital losses.** Capital losses are allowed only to the extent of capital gains. A net capital loss is carried back 3 years and forward 5 years as a short-term capital loss. Carry back a capital loss to the extent it does not increase or produce a net operating loss in the tax year to which it is carried. Foreign expropriation capital losses cannot be carried back, but are carried forward 10 years. A net capital loss for a regulated investment company is carried forward 8 years.

Paperwork Reduction Act Notice, see page 1 of the Instructions for Forms 1120 and 1120-A. Schedule D (Form 1120) 1998

As Amended due to Claim for Capital Loss

2.4

| | | | |
|---|---|---|---|
| Form 3610<br>(Rev. March 1986) | Department of the Treasury -- Internal Revenue Service<br>**Audit Statement** | | Symbols<br>AP:FW:HOU:DM:SJC |
| Name of Taxpayer<br>Browning-Ferris Industries, Inc. | | SSN or EIN<br>74-1673682 | Date Prepared<br>04/06/05 |
| Kind of Tax<br>Income | | | Docket Number |

| Tax Period Ended | DEFICIENCY (OVERASSESSMENT) (Increase or decrease in Tax and Penalties) TAX | IRC SECTION 6662 | | | |
|---|---|---|---|---|---|
| 9/30/1996 | (1,014,022) | - | | | |
| 9/30/1997 | 19,079,286 | - | | | |
| 9/30/1998 | 3,519,979 | - | | | |
| 7/31/1999 | None | None | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

[X] Interest for 199609, 199709 & 199809 will be computed under sections 6611(f) & 6601(d) of the Internal Revenue Code.
(Year)

[X] Interest for 9/30/96 is subject to the General Agreement on Tariffs & Trade.

[X] Interest for 9/30/97 will be computed under Rev. Rul. 99-40 (Sequa). See form 2220 for 9/30/98.

[X] Interest for 9/30/96 & 9/30/97 is subject to the provisions of IRC Section 6621(c ). The applicable date will be determined based upon the Revenue Agent Report dated 9/03/2002.

APR 2005 Received Corp. Tax Dept.

Disk Id: BFIAppADJUSTS.XLS, BFIFTC96, BFIFTC97-2, BFIFTC98, BFIAppSettlement.CT



3.1

Joint Committee Case
Spread Sheet Analysis

Taxpayer's Name
Browning-Ferris Industries, Inc.

| Item | Years | 09/30/1996 | 09/30/1997 | 09/30/1998 | 07/31/1999 |
|---|---|---|---|---|---|
| A. | Taxable income (loss) per return as filed | 231,469,821 | 211,881,172 | 412,759,986 | (145,907,722) |
| B. | Adjustments: | | | | |
| | 1. Prior (RAR, 1120X) | | | | |
| | 2. Current (except carrybacks) | 12,355,347 | 21,125,908 | 47,769,581 | 67,736,388 |
| C. | Taxable income before NOL or CL deduction | 243,825,168 | 233,007,080 | 460,529,567 | (78,171,334) |
| D. | NOL or CL deduction: | | | | |
| | Carryback from 9907 | | (78,171,334) | | |
| E. | Corrected taxable income | 243,825,168 | 154,835,746 | 460,529,567 | (78,171,334) |
| F. | Tax on line E. before credits | 85,338,809 | 54,182,512 | 161,185,348 | |
| G. | Credits utilized (Sched. Att'd) | | | | |
| | Foreign tax credit - current | 12,000,161 | 5,022,278 | 87,738,489 | |
| | Non Conventional Fuel Credit | 2,101,885 | 6,385,577 | 3,521,547 | |
| | Foreign tax credit - c.b. 9809 | 374,426 | | | |
| | Foreign tax credit - c.b. 9709 due to 9907 | 2,475,778 | | | |
| | Foreign tax credit - c.f. 9709 due to 9907 | | | 3,775,711 | |
| H. | Balance of tax | 68,386,559 | 42,784,657 | 66,149,601 | 0 |

BFIAppADJUSTS.XLS
4/22/2005

Substitute F5278

3.2

| Joint Committee Case Spread Sheet Analysis | | Taxpayer's Name Browning-Ferris Industries, Inc. | | | |
|---|---|---|---|---|---|
| | (Continuation sheet) | 09/30/1996 | 09/30/1997 | 09/30/1998 | 07/31/1999 |
| H. | Balance of tax (prior pg.) | 68,386,559 | 42,784,657 | 66,149,601 | 0 |
| I. | Other tax (specify) | | | | |
| | Investment Credit Recapture | 674 | | | |
| | Environmental Tax | 321,238 | | | |
| J. | Total corrected tax liability | 68,708,471 | 42,784,657 | 66,149,601 | 0 |
| K. | Total tax paid per return | 69,722,493 | 56,414,662 | 72,128,421 | 0 |
| L. | Prior deficiency (overassessment) | | | | |
| M. | Tentative Refunds | | | | |
| | Tentative Allowance - 9907 | | (32,709,291) | (9,498,799) | |
| N. | Net tax paid | 69,722,493 | 23,705,371 | 62,629,622 | 0 |
| O. | Deficiency (overassessment) | (1,014,022) | 19,079,286 | 3,519,979 | 0 |

BFIAppADJUSTS.XLS
4/22/2005

Substitute F5278

3.3

Page 11
4/5/2005

BROWNING-FERRIS INDUSTRIES, INC.
Capital Gains / Losses

| 5701 # | | 199609 | 199709 | 199809 | 199907 |
|---|---|---|---|---|---|
| | Current yr. net ST capital gain/loss per return | (2,200,797) | (4,314,461) | (44,079) | (932,535,531) |
| 44 | Audit adjustment | | 419,363 | | |
| 71 | Audit adjustment | | | | 901,660,007 |
| | Corrected net STCG | (2,200,797) | (3,895,098) | (44,079) | (30,875,524) |
| | | | | | |
| | Current yr. net LT capital gain/loss per return | 75,055 | (68,275,445) | 76,032,590 | 164,147,568 |
| 28 | Audit adjustment | | | (1,531,596) | |
| 44 | Audit adjustment | | 30,671,658 | | |
| 48 | Audit adjustment | | | 7,541,929 | |
| 76 | Audit adjustment | | | (12,520,910) | (4,234,305) |
| 78 | Audit adjustment | | | (28,296,915) | (711,430) |
| | Corrected net LTCG | 75,055 | (37,603,787) | 41,225,098 | 159,201,833 |
| | | | | | |
| | Capital Loss c/f per return | (33,616,596) | | | |
| | Adjustment | (11,342,503) | | | |
| | Capital Loss c/f as correct | (44,959,099) | (47,084,841) | (88,583,726) | (47,402,707) |
| | | | | | |
| | Capital Loss c/f to subsequent year | (47,084,841) | (88,583,726) | (47,402,707) | - |
| | | | | | |
| | Capital Gain as redetermined | | | | 80,923,602 |
| | Capital Gain per return | | | | - |
| | Adjustment | | | | 80,923,602 |

BFIAppADJUSTS.XLS

3.4

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

ISSUE No. 71

**ISSUE:**

1. Are the taxpayer's subsidiaries entitled to an aggregate capital loss deduction in the amount of $901,660,007 on the sale of the class B common stock of the six SPE for the tax year ending July 31, 1999?

2. Does section 357(b) apply to disallow the transaction?

3. Does section 357(c) apply to the transaction?

**ADJUSTMENTS:**

SEE ATTACHMENT 1 for details per subsidiary.

| | 199907 |
|---|---|
| Short Term Capital Loss Per Return | (901,660,007) |
| Short Term Capital Loss Per Examination | 0 |
| Adjustment | 901,660,007 |
| | |
| Capital Loss Carryover per Return | 811,110,031 |
| Capital Loss Carryover per Examination | 0 |
| Adjustment | 811,110,031 |

**FACTS:**

In July of 1999, BFI, Inc. (parent) used the following subsidiaries for a transaction described in Notice 2001-17 and Notice 2001-33. These entities and the type of contingent liabilities that were transferred are:

| | |
|---|---|
| 1. Browning-Ferris Industries Europe, Inc. | Non Environmental Liabilities |
| 2. Browning-Ferris Industries Services Group, Inc. | Environmental Liabilities |
| 3. Browning-Ferris Industries Asia Pacific, Inc. | Environmental Liabilities |
| 4. BFI Energy Systems of Boston, Inc. | Environmental Liabilities |
| 5. BFI Trans River (LP), Inc. | Environmental Liabilities |
| 6. BFI Energy Systems of Plymouth, Inc. | Environmental Liabilities |

**PROMISSORY NOTES**

Each of the BFI, Inc. subsidiaries that transferred contingent liabilities to the six special purpose entities also transferred a promissory note. These notes were created by the formalization of intercompany account receivables. They were all similar as to terms and conditions. The following example of the terms is one that was transferred to BFI Asia Pacific, Inc.

Promissory note dated 07/07/01
Signed by Eileen Schuler, Vice President

Note was issued by Browning-Ferris Financial Services, Inc. to Browning-Ferris Industries, Inc. in the amount of $69,379,810 at 8% interest. The note could not be prepaid without advance consent of the obligee. They would have to pay the total amount due under the note in order to prepay it. The principal sum and any interest outstanding will be due and payable in full 12 years from the date hereof.

**CONTRIBUTION AGREEMENTS**

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

**CONTRIBUTION AGREEMENTS**

The following contribution agreement was selected from BFI Asia Pacific, Inc as an example of terms and conditions.

Dated 07/07/1999
Signed by Eileen B. Schuler, Vice President for Cecos International, Inc.
Signed by Eileen B. Schuler, Vice President for Browning-Ferris Industries Asia Pacific, Inc.

CECOS International Inc. (Contributor)
Browning-Ferris Industries Asia Pacific, Inc. (Company)

Contributor gave note from Browning Ferris Financial Services Inc. to Browning-Ferris Industries, Inc. for $69,879,810 at 8% interest and transferred contingent liabilities representing costs associated with hazardous waste management, as well as other post-closure costs including leachate management, ground water monitoring, cover management, property management and administrative expenses. The site names were:

| | |
|---|---|
| Aber Road | Williamsburg, OH |
| Calcasieu | Sulphur, LA |
| Livingston | Livingston, LA |
| Niagara Falls | Niagra Falls, NY |

The Class B Common Stock of Browning-Ferris Industries Asia Pacific, Inc. was not registered and had restrictions on the sale. It was subject to the right of first refusal by the holders of the Class Common stock of the company to repurchase the stock unless that right is waived.

**ADMINISTRATIVE SERVICES AGREEMENT**

On July 7, 1999 Browning-Ferris Industries, Inc. (BFI) and each of the six special purpose entities entered into an Administrative Services Agreement for various services. Some of these services are:

Administrative and General Expenditures
Technical Assistance
Tax Matters
Registration and Transfer of Recipient Securities
SEC Filings
Investor Relations
Audit
Treasury and Banking

**STOCK PURCHASE AND SALE AGREEMENT**

Each of the subsidiaries that received Class B common stock from one of the SPE in the Contribution agreement entered into a Stock Purchase and Sale Agreement with one of the accommodating parties who purchased the class B common stock from them. Each of the accommodating parties had an ongoing business relationship with Allied Waste although most did not have a business relationship with BFI. The accommodating parties' ownership of the SPE is shown below.

Class B Stock Ownership of the six SPE

| Purchaser | BFI Trans River | BFI Asia-Pacific | BFI Services Group | BFI Energy Systems of Boston | BFI Energy Systems of Plymouth | BFI Europe |
|---|---|---|---|---|---|---|

| Department of the Treasury - Internal Revenue Service | Form 886-A |
|---|---|

000342

4.2

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Comcor | 37% | 90% | | 37% | 98% | |
| Environmental Power Strategies | | | 99% | | | |
| Hurst & Associates | 18% | 3% | 1% | 18% | 1% | |
| Nelson Perol | 23% | 3% | | 22% | | |
| Tim Webster | 22% | 4% | | 23% | | |
| Foster Environmental | | | | | 1% | |
| Willis Coroon Corp. | | | | | | 100% |

Each of the SPE had 111 shares of Class B Common Stock outstanding except for BFI Services Group that had 74 shares of Class B Common Stock outstanding. The number of shares sold, the amount received on the sale and the tax loss taken by each of the entities are shown in attachment 2.

Each of the Stock Purchase and Sale Agreements appeared identical and were dated July 9th, 1999. They noted the SPE stock being sold, the subsidiary selling the stock and which accommodating party was buying the stock. The agreement noted that the Stock was subject to provisions set out in the Company's amended and restated articles of incorporation. It was also restricted on transferability set out in the Contribution Agreement. The parent waived the right of first refusal for a few specific entities.

The Class B Common Stock was not registered under the Securities Act of 1933 and could not be resold without registration or representation that the stock is still exempt from registration.

On page 4 of the agreement it notes in item 5a. that:

> To the maximum extent permitted by applicable law, Seller and BFI, jointly and severally, shall indemnify, defend and hold the Purchaser harmless against any liability, loss, cost, or expense of any kind (other that the potential loss of the Purchaser's original investment in the Sale Stock), or any increase in any such liability, to the extent that such liability loss, cost or expense directly or indirectly results from, arises out of, or is related to Purchaser's owning or holding the Sale Stock.

REVOLVING CREDIT AGREEMENT

Each of the six special purpose subsidiaries had a revolving credit agreement with Browning-Ferris Industries Inc. at 6.5 % interest to take care of cash flow needs. The total amount they could borrow under the agreement varied between the subsidiaries. They could be prepaid at any time.

AMENDED AND RESTATED ARTICLES OF INCORPORATION

Each of the six special purpose subsidiaries amended their articles of incorporation on July 7, 1999 to create the shares of the class B common stock. The articles also included the put and call features for the redemption of the shares by a call by the company on or after July 7, 2004 and a put by the purchaser on or after July 7, 2005. The maximum amounts to be paid on redemption would be:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
|---|---|---|
| BFI Europe, Inc. | 16,848 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

| | | |
|---|---|---|
| BFI Energy Systems of Boston, Inc. | 1,268 | 139,638 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

**INDIVIDUALS INTERVIEWED**

Selected interviews are addressed here. Not all questions that were asked have been included in this section. The Allied Waste, Inc. personnel and the third party purchaser interviews were transcribed by a court reporter. For all of the questions and answers, please refer to the transcripts. The information has been summarized below for the Allied Waste, Inc. personnel. The transcript from the court report for the purchasers of the class B common stock that were interviewed has not been received. The questions and responses were prepared from notes taken during the interviews.

**INDIVIDUALS FORMERLY WITH BFI, INC.**

**Bruce Ranck, former President and CEO of BFI, Inc.**

Q: In 1999, what was your position with the company?

A: In early 1999, he was President and CEO.

Q: Are you familiar with these transactions which took place in July of 1999?

A: Not specifically.

Q: How did you become aware of the transactions?

A: He knows that they occurred.

Q: When did you become aware of the transactions?

A: He guessed it was April or May when he heard of this transaction.

Q: Whose idea was it to initiate these transactions? (Allied or BFI?)

A: Allied.

Q: Would BFI have implemented these transactions without Allied's acquisition of BFI?

A: Not at that time.

Q: Were there any written agreements related to these transactions between Allied and BFI?

A: He does not know.

Q: Were you the person that gave the final approval to implement this transaction for BFI? If not, who?

A: Ultimately, he was the person based on the advice of legal and financial people. It would not jeopardize BFI.

Q: Were there any discussions that the sale of the Class B Common Stock to the third parties would trigger a taxable event outside the consolidated group?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: No.

Q: Had you ever considered any similar transaction with these contingent liabilities before these were done in July of 1999?

A: They had looked at similar transactions a couple of years prior to 1999. They were not appropriate for BFI at that time.

Q: Who paid the fees to AA?

A: Was not BFI.

Q: Who paid the fees to Latham & Watkins?

A: Was not BFI.

Q: Was BFI involved in a joint engagement with Allied for the services of Latham & Watkins?

A: He does not know.

Q: What would have happened if the BFI shareholders had not approved the merger?

A: The shareholder support was overwhelming. They were happy with the buyout.

**Jeff Curtis, former Chief Financial Officer of BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Senior Vice President and Chief Financial Officer.

Q: Who did you report to?

A: Bruce Ranck, President and CEO.

Q: Are you familiar with these transactions which took place in July of 1999?

A: In a general sense of the type of transaction being considered.

Q: How did you become aware of the transaction?

A: After the merger agreement. Allied requested BFI to implement the transactions.

Q: Whose idea was it to initiate these transactions? Allied or BFI?

A: Requested to be done on behalf of Allied.

Q: Was there a separate agreement regarding this transaction between BFI and Allied? Other than the merger agreement.

A: Not that he was aware of. Allied wanted to run the environmental different than BFI.

Q: Who paid the fees to AA?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: Not aware.

Q: Who paid the fees to Latham & Watkins?

A: Not aware.

Q: Was BFI involved in a joint engagement with Allied for the services of Latham & Watkins?

A: Assume that they did.

**Eileen Schuler, Assistant Corporate Secretary of BFI, Inc.**

Q: In 1999, what was your position with the company?
A: Assistant Corporate Secretary, BFI, Inc. Officer of various subsidiaries

Q: Are you familiar with these transactions which took place in July of 1999?
A: Most of them.

Q: How did you become aware of the transaction?
A: She was informed by Eddie Norwood and Mr. Ranck. She was involved in the preparation of the documents.

Q: Were there any written agreements related to these transactions between Allied and BFI?

A: Not that she was aware.

Q: Who was the person authorized to give the final go ahead to implement this transaction?

A: CEO, Mr. Ranck wanted her to work on the transaction.

Q: Who paid the fees to AA?

A: She believes that BFI did. She executed the engagement letter with AA.

Q: Who paid the fees to Latham & Watkins?

A: She is not certain.

Q: When did the BFI shareholders approve the merger?

A: The meeting was in July.

**Walt Stone, former Assistant Treasurer with BFI, Inc.**

Q: In 1999, what was your position with the company?
A: Divisional VP, Assistant Treasurer

Q: How did you become aware of the transaction?
A: He was aware, but did not participate.

Q: Who was involved in the transaction initially?
A: Folks at Allied. Dale Parker

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: Were any alternatives for structuring this transaction considered? What were they? Did you consider other types of transactions in 1998?

A: Yes, Bruce Jernigan and Ron Long met with AA consulting regarding similar transactions in 1998 on some contingent liabilities.

Q: Who paid the fees to AA?
A: Does not know.

Q: Who paid the fees to Latham & Watkins?
A: Does not know.

**Rich Oakley, former Vice President Engineering, BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Divisional Vice President, Engineering.

Q: Are you familiar with these transactions which took place in July of 1999?

A: Second hand.

Q: Was the management of any of these contingent liabilities under your control? If so, which?

A: Accrual Active Landfills.

Q: How many people were involved in the management of these liabilities?

A: Environmental 1-2 per site.

Q: How many of these people were with the headquarters function?

A: Six.

Q: How many were in the field?

A: Environmental estimate of 100.

**Bruce Jernigan, former Division Vice President of Environmental Remediation and Closure Activities with BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Divisional Vice President Environmental Remediation and Closure Activities.

Q: Are you familiar with these transactions which took place in July of 1999?

A: No

Q: Do you know what COMCOR Environmental Ltd. does?

A: No.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| | TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | |
| Entity Name: | Various | Issue Number: 71 |

Q: Do you know what Herst & Associates does?

A: No.

Q: Do you know what Foster Environmental does?

A: No.

Q: Do you know what Power Strategies Energy LLC does?

A: Yes

Q: Do you know what Nelson Perel and Tim Webster do?

A: No.

Q: Did BFI ever consider any transactions similar to this prior to this transaction?

A: Various risk portfolio transfers in 1998 that were neutral to BFI then. Similar to 351. BFI uses a performance ROGA (Return on Gross Assets). The 1998 351 was either slightly positive or negative to ROGA then. No potential tax benefit to BFI at that time.

Only the concept was being considered. Bruce Ranck, CEO wanted a risk transfer type of transaction. In 1998 there were various types of transactions between BFI and third parties considered. Considered were sale or gifting of closed sites to third parties. They picked several to go forward with. It was beneficial after close. He gave the example of a golf course down by the Astrodome.

Q: Was the management of any of these contingent liabilities under your control? If so, which?

A: Remedial Sites, Superfund Liabilities, Closed sites.

Q: How many people were involved in the management of these liabilities?

A: Total of 100 US and International. Headquarters 7-9 professional.

**INTERVIEW WITH ALLIED WASTE, INC. PERSONNEL**

Mr. Rochford was only familiar with the BFI Europe transaction. That was the one used for the automobile, general liability and workman's compensation liabilities. Willis Corroon Corporation of Arizona was their insurance broker and had a business relationship with Allied Waste, Inc. He stated that BFI, Inc. handled the insurance claims in house. Allied Waste claims were handled by their insurance carrier AIG. After the merger they transferred the remaining BFI claims to a third party administrator.

For the complete questions and answers, please see the court reporter's transcript.

**Dale Parker, Tax Manager with Allied Waste, Inc.**

Mr. Parker stated that after the announcement of the purchase of BFI, Inc. meetings were held with Allied Waste, Inc. management and Arthur Andersen representatives to discuss the handling of the liabilities. He stated that Allied Waste, Inc. and BFI, Inc. jointly engaged Latham & Watkins to assist in the transactions. Latham & Watkins then engaged Arthur Andersen. All of the invoices from these firms were sent to Allied Waste, Inc. and paid after the merger. None of the fees were deducted on the short period BFI, Inc. return.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

For the complete questions and answers, please see the court reporter's transcript.

**Doug Borro, Director of Engineering for Allied Waste, Inc.**

Mr. Borro was familiar with all of the environmental liabilities transferred to the five special purpose subsidiaries. He was responsible for the due diligence done on the BFI, Inc. purchase. He selected all of the third party purchasers of the stock. Allied had a business relationship with all of the purchasers. He stated that five entities were used so that the liabilities could be segregated by type. For example, the superfund liabilities went to one entity. Mr. Borro stated that BFI had 200 people manage all of the liabilities which was different that Allied Waste's structure.

He stated that BFI had looked at a similar transaction to this one in 1998 along with several other types of transactions. Allied Waste senior management had communicated with the principals at BFI and reached an agreement that this would take place.

Mr. Borro stated that among the options that BFI considered in 1998 was the outright sale of the land companies and liabilities, two Environmental Remedial Management Initiative (ERMI) options and an insurance policy. The two ERMI options were different as too the amount of ownership interests that would be sold.

After the purchase of BFI he participated in the Strategic Action Committee (SAC) of each of the entities. The SAC handles projects at the sites and the selection of consultants for specific projects.

For the complete questions and answers, please see the court reporter's transcript.

INTERVIEWS WITH THIRD PARTY PURCHASERS OF THE CLASS B COMMON STOCK

**John Jacobs, Executive Vice President with Willis Corporation of Arizona**

Q: In 1999, what was your position with Willis Corroon Corporation of Arizona? Which entity?

A: Executive Vice President of Arizona entity.

Q: How long had you been in that position?

A: 21 years.

Q: Who did you report to?

A: Micheal C. Metzger

Q: What is the business function of Willis Corroon Corporation of Arizona?

A: Insurance Broker.

Q: How did you become aware of this transaction?

A: After Allied Waste hired them, they did a study on the BFI insurance liabilities in May or June of 1999. They were hired 1/1/99 by Allied.

Q: Who was the insurance carrier on these liabilities for BFI, Inc.?

A: AIG Insurance.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: Do you still own this stock?

A: Yes

**Ward Herst with Herst and Associates regarding purchase of Class B Common Stock**

Q: In 1999, what was your position with Herst and Associates?

A: Manager

Q: How long had you been in that position?

A: Since 1998. Prior to that he was an employee.

Q: What is the business function of Herst and Associates?

A: Environmental Groundwater and Soil Consulting.

Q: Are you familiar with these transactions which took place in July of 1999 by BFI Inc. and the subsequent sale of the Class B Common Stock of various BFI, Inc. subsidiaries to Herst and Associates?

A: Only with Item 5. (purchase of Class B Common Stock.)

Q: How did you become aware of this transaction?

A: Doug Borro with Allied Waste.

Q: Did you do the negotiations for your company for the purchase of the class B common stock?

A: Yes.

Q: Who did you negotiate with at Allied?

A: Doug Borro.

Q: Did you do any negotiations with anyone from BFI?

A: Not verbal.

Q: What information was furnished to you regarding this investment?

A: Purchase and Sale Agreement.

Q: Did you attend any meetings regarding this transaction?

A: Meeting in Scottsdale.

Q: With who? Who else was there?

A: Arthur Andersen. Lowell Griffin.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: How did you communicate with Allied/BFI on this transaction?

A: Verbal, then Purchase and Sale Agreement.

Q: Did your company have any involvement prior to this transaction with these liabilities at BFI?

A: Not Herst and Associates. Only as an employee of other company.

Q: Did your company have any involvement prior to this transaction with Allied?

A: Environmental consulting services to Allied ERMI entities.

Q: How were you paid for this?

A: Various.

Q: Did you feel that you had any risk in purchasing this stock? What was your risk?

A: Only risk was that the liabilities could not be settled for less. Only investment was $2000 per entity.

**Ron Poland with Comcor Environmental Ltd. regarding the purchase of the Class B Common Stock.**

Q: In 1999, what was your position with Comcor Environmental Ltd.?

A: He was an equity investor of Comcor Environmental Ltd.

Q: What is the business function of Comcor Environmental Ltd.?

A: Gas Wells and Management.

Q: Are you familiar with these transactions which took place in July of 1999 by BFI Inc. and the subsequent sale of the Class B Common Stock of various BFI, Inc. subsidiaries to Comcor Environmental Ltd.?

A: The four environmental subsidiaries.

Q: How did you become aware of this transaction?

A: Doug Borro.

Q: What information was furnished to you regarding this investment?

A: Landfill.

Q: Did you receive a prospectus or private placement memorandum?

A: Narrative.

Q: Did you attend any meetings regarding this transaction?

A: No, telephone.

Q: When did you become involved in the implementation of the transaction?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: Midyear 1999.
Q: Did your company have any involvement prior to this transaction with these liabilities at BFI?

A: No.

Q: Did your company have any involvement prior to this transaction with Allied?

A: Gas Recovery Systems did.

Q: Has your company ever participated in this type of transaction for any other company beside Allied/BFI?

A: No.

Q: How is your company normally paid for it's services?

A: This is the only equity interest.

General Question responses.

Gas Recovery Systems earns approximately $2,000,000 per year. They made an offer for 32 sites of BFI for long term power purchase agreements.

**ARTHUR ANDERSEN**

Arthur Andersen was issued a summons to provide in whatever form, paper or electronic retention, the following with respect to the transactions described in the attached opinions dated August 24, 2000 from Arthur Anderson LLP to David C. Boatwright, Esq. with Latham & Watkins:

1. All correspondence between Arthur Anderson LLP and Browning-Ferris Industries, Inc. or it's subsidiaries regarding the implementation of the transactions described in the attached opinions.

2. All correspondence between Arthur Anderson LLP and Allied Waste Industries, Inc. or it's subsidiaries; regarding the implementation of the transactions described in the attached opinions.

3. All correspondence between Arthur Anderson LLP and all other third parties that participated in or assisted in the implementation of the transactions described in the attached opinions.

4. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to Browning-Ferris Industries, Inc. or it's subsidiaries concerning the promotion, sale and implementation of the transactions described in the attached opinions.

5. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to Allied Waste Industries, Inc. or it's subsidiaries concerning the promotion, sale and implementation of the transactions described in the attached opinions.

6. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to all other third parties that participated in or assisted in the implementation of the transactions.

7. All memos, notes of meetings, telephone conferences and email correspondence concerning the promotion, sale and implementation of the transactions reflected in the attached opinions.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

8. All other valuations and/or computations prepared such as cash flow analysis, projected tax savings and/or benefit analysis concerning the promotion, sale and implementation of the transactions reflected in the attached opinions.

The information provided was reviewed and the majority of the information was opinions, purchase and sale agreements, cash flow analysis, etc. Andersen also provided email and transcripts of telephone conversations

STRATEGIC ACTION COMMITTEE

BFI Europe, Inc.
The Strategic Action Committee (SAC) was authorized in the board meeting on June 28, 2000. At this meeting they also selected Cunningham Lindsey Claims Management, Inc. as the Third Party Administrator for these liabilities with the contract inception of September 30, 1999. An audit had been done by Cunningham Lindsey on the insurance claims and inventory of the claims. It stated that 70% of the BFI claims had been closed since the merger.

In the board meeting on May 16, 2001 they approved an annual consulting fee to Willis Corroon of $30,000.

BFI Trans River (LP), Inc.
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or litigation matters.

BFI Asia Pacific, Inc.
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the facilities.

BFI Services Group, Inc.
The Strategic Action Committee ( SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations. Some discussion related to Power Strategies wanting to get out of its contracts and sell the class B common stock that it owned.

BFI Energy Systems of Plymouth, Inc.
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the sites.

BFI Energy Systems of Boston, Inc.
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the sites.

FINANCIAL STATEMENT PRESENTATION VS. TAX TREATMENT

These transactions were recorded as follows:

| | BOOK | TAX |
|---|---|---|
| Promissory Notes Transferred | $902,561,661 | $902,561,661 |
| Contingent Liabilities Transferred | ($901,660,007) | 0 |
| Basis | $901,654 | $902,561,661 |
| Amount Realized | $901,654 | $901,654 |
| Gain(Loss) | 0 | ($901,660,007) |

The above amounts do not reflect the $1,750,000 paid to the promoter, Arthur Andersen LLP, for assistance on the structure of the transaction, or the $130,400 paid to the law firm of Latham & Watkins for the tax opinion on the transaction.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999.

**LAW AND ARGUMENT**

The taxpayer provided a tax opinion prepared by the promoter, Arthur Andersen, for each of the six entities used in the transaction. The tax opinions stated that:

1. The Contributors' contributions to BFI Trans River of notes, subject to the contractual assumption of the Contributors' contingent environmental obligations, in exchange for all of the Class B common stock of BFI Trans River should, more likely than not, qualify for nonrecognition of gain or loss under Section 351(a) of the Internal Revenue Code of 1986, as amended (the "Code"). Unless otherwise noted, all Section references are to the Code.

2. The Contributors' tax bases in the Class B common stock of BFI Trans River should, more likely than not, equal the tax bases in the notes contributed to BFI Trans River, and should, more likely than not, not be reduced by the amount of the contingent environmental obligations assumed by BFI Trans River.

3. Losses on the sales of the Class B common stock of BFI Trans River by the Contributors should, more likely than not, not be duplicated losses within the meaning of Treasury Regulation Section 1.1502-20(c)(1)(iii), not be disallowed under the anti-avoidance or anti-stuffing rules of Treas. Reg. Section 1.1502-20(e), and not be disallowed under the intercompany transaction rules of Treas. Reg. Section 1.1502-13.

4. The Contributors' contributions of notes to BFI Trans River in exchange for its Class B common stock should, more likely than not, not be an acquisition made to evade or avoid income tax within the meaning of Section 269.

The promoter, Arthur Andersen, was paid $1,750,000 to assist in structuring these six transactions. Their opinion is self serving. The taxpayer paid the law firm of Latham & Watkins $130,504 for a tax opinion on these six transactions. These opinions have not been provided by the taxpayer and will not be addressed.

**PRIMARY POSITION**

**DOES SECTION 357(b) APPLY TO DISALLOW THE LOSS?**

I.R.C. section 351(a) provides that no gain or loss shall be recognized if property is transferred to a corporation by a person solely in exchange for stock in such corporation and immediately after the exchange such person is in control of the corporation.

I.R.C. section 351(b) provides that if I.R.C. section 351(a) would apply to an exchange but for the fact that there is received, in addition to the stock permitted to be received under I.R.C. section 351(a), other property or money, then, gain (if any) to such recipient shall be recognized, but not in excess of the amount of money received, plus the fair market value of such other property received, and no loss to such recipient shall be recognized.

Regulation 1.357-1(c) *Tax avoidance purpose.* The benefits of section 357(a) do not extend to any exchange involving an assumption of liabilities where it appears that the principal purpose of the taxpayer with respect to such assumption was to avoid Federal income tax on the exchange, or, if not such purpose, was not a bona fide business purpose. In such cases, the total amount of liabilities assumed or acquired pursuant to such exchange (and not merely a particular liability with respect to which the tax avoidance purpose existed) shall, for the purpose of determining the amount of gain to be recognized upon the exchange in which the liabilities are assumed or acquired, be treated as money received by the taxpayer upon the exchange. Thus, if in the example set forth in paragraph (b) of this section, the principal purpose of the assumption of the $4,000 liability was to avoid tax on the exchange, or was not a bona fide business purpose, then the amount of gain recognized would be $5,000. In any suit or proceeding where the burden is on the taxpayer to prove that an assumption of liabilities is not to be treated as "other property or money"

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

under section 357, which is the case if the Commissioner determines that the taxpayer's purpose with respect thereto was a purpose to avoid Federal income tax on the exchange or was not a bona fide business purpose, and the taxpayer contests such determination by litigation, the taxpayer must sustain such burden by the clear preponderance of the evidence. Thus, the taxpayer must prove his case by such a clear preponderance of all the evidence that the absence of a purpose to avoid Federal income tax on the exchange, or the presence of a bona fide business purpose, is unmistakable. [Reg. §1.357-1.]

I.R.C. section 357(b) provides that if, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption was made, it appears that the principal purpose of the taxpayer with respect to the assumption described in I.R.C. section 357(a) was a purpose to avoid Federal income tax on the exchange, or if not such a purpose, was not a bona fide business purpose, then such assumption shall, for purposes of I.R.C. section 351, be considered as money received by the taxpayer on the exchange.

I.R.C. section 357(c)(2) provides that I.R.C. section 357(c)(1) shall not apply to any exchange (A) to which I.R.C. section 357(b)(1) applies, or (B) which is pursuant to a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(G) where no former shareholder of the transferor corporation receives any consideration for his stock.

**REVENUE RULING 95-74**

The relevant facts of Revenue Ruling 95-74 are:

***

Corporation P is an accrual basis, Calendar-year Corporation engaged in various ongoing businesses, one of which includes the operation of a manufacturing plant (the Manufacturing Business). The plant is located on land purchased by P many years before. The land was not contaminated by any hazardous waste when P purchased it. However, as a result of plant operations, certain environmental liabilities, such as potential soil and groundwater remediation, are now [*2] associated with the land.

In Year 1, for bona fide business purposes, P engages in an exchange to which @ 351 of the Internal Revenue Code applies by transferring substantially all of the assets associated with the Manufacturing Business, including the manufacturing plant and the land on which the plant is located, to a newly formed corporation, S, in exchange for all of the stock of S and for S's assumption of the liabilities associated with the Manufacturing Business, including the environmental liabilities associated with the land. P has no plan or intention to dispose of (or have S issue) any S stock. S is an accrual basis, calendar-year taxpayer.

Therefore, on these facts, the Internal Revenue Service will not follow the decision in Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946). Accordingly, the contingent environmental liabilities assumed from P are deductible as business expenses under @ 162 or are capitalized under @ 263, as appropriate, by S under S's method of accounting (determined as if S has owned the land for the period and in the same manner [*12] as it was owned by P).

***

Revenue Ruling 95-74 does not apply in this case. The taxpayer did not transfer the assets that were related to the creation of the contingent liabilities. The taxpayer transferred the liabilities and sold the stock as part of a planned, structured transaction.

The stated business purpose for the transactions between the members of the BFI, Inc. consolidated group was to move the liabilities in each of the subsidiaries into the six entities to better manage them. These liabilities were environmental, automobile accident, workers compensation and general liability claims. The sale of the class B common stock to the investors allegedly gave the investors a financial incentive to help manage the liabilities through ownership of the Class B Common Stock. If there is a legitimate business purpose, it must outweigh the tax avoidance motive of the transaction.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

If isolating the management of these liabilities was a true business purpose, then this could have been accomplished by other means without restructuring each of the six subsidiaries existing corporate structure. This simply could have been accomplished by creating a separate management division within the consolidated group, and transferring the management responsibility of the liabilities in question, and providing incentives to each of the investors through a new or revised contract. Also, the only asset transferred with the liabilities were the intercompany receivables that were formalized into a promissory note. The note and the liabilities never left the consolidated group. In addition, the incentive through the equity investment by each of the investors had a limit to the upside they could receive from the investment. The most that the companies would have to pay to redeem the stock was:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
|---|---|---|
| BFI Europe, Inc. | 16,848 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |
| BFI Energy Systems of Boston, Inc. | 1,258 | 139,638 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

The taxpayer has a potential tax savings from the transactions of $315,581,003 (901,660,007 X 35%).
The taxpayer did not transfer any trade or business assets to which the assumed liabilities related to the special purpose entities. The only assets transferred were promissory notes created by the formalization of intercompany receivables in an amount slightly in excess of the liabilities assumed. In return, each of the six special purpose entities assumed the liabilities and issued to the various BFI, Inc. subsidiaries shares of class B common stock having a fair market value equal to the difference between the face amount of the note and the present value of the liabilities. These subsidiaries immediately sold the stock to outside purchasers under a prearranged agreement and claimed a capital loss on the consolidated tax return of $901,660,007.

The promissory notes were created specifically for these transactions by formalizing intercompany accounts receivable and the contingent liabilities were on the balance sheet of BFI, Inc. and it's subsidiaries prior to the transfer. After the transfer, the liabilities were on the balance sheet of the six special purpose entities which were still part of the consolidated return. The consolidated company had no book loss or economic loss as a result of the transaction. The loss was due to the contingent liabilities having no tax basis. At the time the promissory notes and contingent liabilities were transferred to each of the entities, they had no employees. After the transfer of the notes and liabilities, they had no employees. Services were still performed by employees of other entities or subcontracted to outside parties. These liabilities were being managed by the BFI, Inc. consolidated group at the time of the exchange and continued to be managed by the BFI, Inc. consolidated group.

The taxpayer had no economic loss on the sale of the stock. As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999.
The tax basis in the stock differed from the book basis because the contingent liabilities assumed by each of the six special purpose entities in the transaction did not impact the tax basis of the class B common stock. There was no gain or loss on the financial statement or books of BFI, Inc. or it's subsidiaries. The class B common stock purchased by each of the purchasers was restricted from resale. The purchased needed permission of each of the entities in order to sell the stock. The purchasers could put the stock to the entities several years later under a defined pricing formula which capped the amount the entities would have to pay to repurchase the stock. The entities could call the stock in the year after the purchasers put option under the same pricing formula. BFI, Inc. and the special purpose entities did not lose control of the stock. It was not freely transferable by the purchasers and could be subsequently called

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Ron Poland with Comcor Environmental Ltd was interviewed regarding the purchase of the class B common stock of four of the environmental entities. Comcor Environmental is involved with gas wells and management. Mr. Poland stated that he learned of the transactions from Doug Borro at Allied Waste, Inc. Comcor had no involvement with any of these liabilities before the transactions, but subsequently Gas Recovery Systems has bid on 32 long term gas purchase contracts with the BFI sites. Gas Recovery Systems earns approximately $2,000,000 per year. Comcor was involved with liabilities of Allied Waste, Inc. This was the only equity interest held by the company.

Ward Herst with Ward Herst and Associates was interviewed regarding the purchase of the class B common stock for the five environmental entities. Ward Herst and Associates are consultants for environmental groundwater and soil. Mr. Herst heard of the transactions from Doug Borro at Allied Waste, Inc. He did no negotiations with any one from BFI. Ward Herst and Associates had no previous involvement with these liabilities although Mr. Herst did as an employee of another company. Herst and Associates did have involvement with Allied Waste, Inc. liabilities in the similar transaction that Allied had done in prior years. Mr. Herst stated that his company's only risk was that the liabilities could not be reduced, but that his investment was limited to $2,000 per entity.

John Jacobs with Willis Corroon Corporation of Arizona was interviewed regarding Willis purchase of the class B common stock of the BFI Europe, Inc which had been transferred the non environmental liabilities. Willis Corroon was an insurance broker. The company was hired in the beginning of 1999 by Allied Waste, Inc. to handle it's insurance. Willis Corroon did a study for Allied Waste on the BFI insurance and related liabilities in May or June of 1999.

The principal purpose of the transfer of the promissory notes and the liability assumptions by each of the six entities was to create a high basis, low value stock, that the taxpayer could sell under a prearranged plan to the purchasers and take a loss on the stock sale. BFI would also receive a double deduction when the liabilities are paid. This is not a bona fide business purpose.

Mr. Bruce Ranck, former President and CEO of BFI, Inc. stated that BFI had considered several types of transactions in 1998 related to the contingent liabilities and rejected this type of transaction as it was not right for BFI at that time. He indicated that BFI would not have participated in such these transactions in July of 1999 except for the merger with Allied Waste, Inc. Allied had approached BFI in April or May regarding these transactions. Mr. Ranck checked with legal and financial personal to insure that it would not jeopardize BFI than approved the implementation of the deal without performing any due diligence. The transaction was implemented by Allied personal with little involvement of BFI officers or personal. Allied paid all fees related to the transaction to Arthur Andersen or Latham & Watkins even though the work was completed prior to the merger.

Mr. Bruce Jernigan, former Divisional Vice President Environmental Remediation and Closure Activities for BFI, Inc. was interviewed and stated that BFI considered various risk portfolio transfers in 1998 including a transaction similar to the IRC 351 transfer declined to participate in any such transactions. BFI used a performance ROGA (Return on Gross Assets) to measure the gain to the company. The 1998 concepts did not meet its ROGA test and there were no potential tax benefits to BFI at that time. Bruce Ranck, CEO wanted a risk transfer type of transaction.

Documents obtained from Arthur Andersen demonstrate that the transaction was originally scheduled for implementation in September 1999. The documents show that Arthur Andersen and Allied personnel discussed a possibility of a change in the tax law in 1999 and that BFI needed to get this deal completed in order to obtain the favorable tax treatment. Arthur Andersen also addressed the potential capital gains from divestitures after the merger in some of the documents. Andersen and Allied prepared responses to anticipated questions from BFI concerning why the transaction should be implemented when it had previously been rejected by BFI management and what risks BFI faced if the transactions were completed before the merger and the merger was not approved by the shareholders. Arthur Andersen and Allied noted that all that BFI had done was to transfer contingent liabilities within the consolidated group and if necessary, BFI could repurchase the class B common stock from the investors and reverse the deal.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Mr. Dale Parker, Tax Manager for Allied Waste, Inc., stated that a joint engagement by Allied Waste, Inc. and BFI, INC. was made for the law firm of Latham & Watkins to assist with the transactions. Latham & Watkins then engaged Arthur Andersen. There is an engagement letter between Latham & Watkins and Arthur Andersen. We have not been provided any engagement letters between Allied Waste and BFI for Latham and Watkins. We have an engagement letter signed between Arthur Andersen and BFI, Inc. to assist with the structure of these transactions. This was signed after the transactions had been completed and after the BFI shareholders had approved the merger. Mr. Ranck, former President and CEO of BFI, Inc. stated that he had no knowledge of a joint engagement letter with Allied for Latham & Watkins services and that BFI had not paid any fees related to these transactions. Ms. Schuler, Assistant Corporate Secretary with BFI, Inc. had signed an engagement letter dated June 16, 1999. She had signed the document on July 23, 1999.

These transactions were recorded as follows for book vs. tax treatment:

| | BOOK | TAX |
|---|---|---|
| Promissory Notes Transferred | $902,561,661 | $902,561,661 |
| Contingent Liabilities Transferred | ($901,660,007) | 0 |
| Basis | $901,654 | $902,561,661 |
| Amount Realized | $901,654 | $901,654 |
| Gain(Loss) | 0 | ($901,660,007) |

The above amounts do not reflect the $1,750,000 paid to the promoter, Arthur Andersen LLP, for assistance on the structure of the transaction, or the $130,400 paid to the law firm of Latham & Watkins for the tax opinion on the transaction. As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999.

**CONCLUSION**

The capital loss claimed on the return should be disallowed under IRC 357(b)(1)(B) as the principal purpose of the transactions was for tax avoidance purposes. BFI, Inc. had no business purpose and would not have done this transaction without the pending merger with Allied Waste, Inc. If the merger had not been approved by the BFI, Inc. shareholders BFI could have reversed the transactions. Additionally, the rush to do the transactions due to the fear that the tax laws would be changed to prohibit the tax benefits from these abusive transactions shows the principal purpose of the transactions for tax avoidance purposes.

Each of the steps in this transaction was structured to enable BFI, Inc. and it's Subsidiaries to deduct the capital loss on its return. The consolidated corporation will also receive another deduction when the contingent liabilities are deducted when paid. The taxpayer had no economic loss on the transaction and would benefit from a double deduction when the liabilities accrue for tax and are paid.

Therefore the transaction is a taxable event under section 1001 and the basis in the stock to the various Rust International, Inc. subsidiaries is the fair market value of the stock or $901,654 as determined under section 1012. This results in no gain or loss on the sale of the stock to the purchasers. Therefore the capital loss of $901,660,007 is disallowed.

**1ST ALTERNATIVE POSITION**

**DOES SECTION 357(c)(3) APPLY TO THE TRANSACTION?**

I.R.C. section 351(a) provides that no gain or loss shall be recognized if property is transferred to a corporation by a person solely in exchange for stock in such corporation and immediately after the exchange such person is in control of the corporation.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| | TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | |
| Entity Name: | Various | Issue Number: 71 |

I.R.C. section 351(b) provides that if I.R.C. section 351(a) would apply to an exchange but for the fact that there is received, in addition to the stock permitted to be received under I.R.C. section 351(a), other property or money, then, gain (if any) to such recipient shall be recognized, but not in excess of the amount of money received, plus the fair market value of such other property received, and no loss to such recipient shall be recognized.

I.R.C. section 357(a) provides that, except as provided in I.R.C. section 357(b), if the taxpayer receives property which would be permitted to be received under I.R.C. section 351 without the recognition of gain if it were the sole consideration and, as part of the consideration, another party to the exchange assumes a liability of the taxpayer, then such assumption shall not be treated as money or other property and shall not prevent the exchange from being within the provisions of I.R.C. section 351.

I.R.C. section 357(b) provides that if, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption was made, it appears that the principal purpose of the taxpayer with respect to the assumption described in I.R.C. section 357(a) was a purpose to avoid Federal income tax on the exchange, or if not such a purpose, was not a bona fide business purpose, then such assumption shall, for purposes of I.R.C. section 351, be considered as money received by the taxpayer on the exchange.

I.R.C. section 357(c)(1) provides that in the case of an exchange (A) to which I.R.C. section 351 applies, or (B) to which I.R.C. section 361 applies by reason of a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(D), if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

I.R.C. section 357(c)(2) provides that I.R.C. section 357(c)(1) shall not apply to any exchange (A) to which I.R.C. section 357(b)(1) applies, or (B) which is pursuant to a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(G) where no former shareholder of the transferor corporation receives any consideration for his stock.

I.R.C. section 357(c)(3)(A) provides that if a taxpayer transfers, in an exchange to which I.R.C. section 351 applies, a liability the payment of which either (i) would give rise to a deduction, or (ii) would be described in I.R.C. section 736(a), then, for purposes of I.R.C. section 357(c)(1), the amount of such liability shall be excluded in determining the amount of liabilities assumed or to which the property transferred is subject.

I.R.C. section 357(c)(3)(B) provides that I.R.C. section 357(c)(3)(A) shall not apply to any liability to the extent that the incurrence of the liability resulted in the creation of, or increase in, the basis of any property.

I.R.C. section 358(a)(1) provides that, in the case of an exchange to which I.R.C. section 351, 354, 355, 356, or 361 applies, the basis of property permitted to be received under such section without the recognition of gain or loss (i.e., the stock of the transferee corporation) shall be the same as that of the property exchanged, decreased by the amount of money received by the taxpayer, and increased by the amount of gain to the taxpayer which was recognized on such exchange.

I.R.C. section 358(d)(1) provides that where, as part of the consideration to the taxpayer, another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition (in the amount of the liability) shall, for purposes of I.R.C. section 358, be treated as money received by the taxpayer on the exchange.

I.R.C. section 358(d)(2) provides that I.R.C. section 358(d)(1) shall not apply to the amount of any liability excluded under I.R.C. section 357(c)(3).

I.R.C. section 368(c) provided that, for purposes of I.R.C. section 351, the term "control" means the ownership of stock possessing at least 80% of the total combined voting power of all classes of stock entitled to vote and at least 80% of the total number of shares of all other classes of stock of the corporation.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

**REVENUE RULING 95-74**

The relevant facts of Revenue Ruling 95-74 are:

***

Corporation P is an accrual basis, Calendar-year Corporation engaged in various ongoing businesses, one of which includes the operation of a manufacturing plant (the Manufacturing Business). The plant is located on land purchased by P many years before. The land was not contaminated by any hazardous waste when P purchased it. However, as a result of plant operations, certain environmental liabilities, such as potential soil and groundwater remediation, are now [*2] associated with the land.

In Year 1, for bona fide business purposes, P engages in an exchange to which @ 351 of the Internal Revenue Code applies by transferring substantially all of the assets associated with the Manufacturing Business, including the manufacturing plant and the land on which the plant is located, to a newly formed corporation, S, in exchange for all of the stock of S and for S's assumption of the liabilities associated with the Manufacturing Business, including the environmental liabilities associated with the land. P has no plan or intention to dispose of (or have S issue) any S stock. S is an accrual basis, calendar-year taxpayer.

Therefore, on these facts, the Internal Revenue Service will not follow the decision in Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946). Accordingly, the contingent environmental liabilities assumed from P are deductible as business expenses under @ 162 or are capitalized under @ 263, as appropriate, by S under S's method of accounting (determined as if S has owned the land for the period and in the same manner [*12] as it was owned by P).

***

Revenue Ruling 95-74 does not apply in this case. The taxpayer did not transfer the assets that were related to the creation of the contingent liabilities. The taxpayer transferred the liabilities and sold the stock as part of a planned, structured transaction.

In *Caruth v. United States*, 688 F. Supp. 1139 (N.D. Tex. 1987), *aff'd*, 865 F.2d 644 (5th Cir.1998) the court held that a transfer of property to a controlled corporation must have a business purpose to qualify under §351 (the court further found that the taxpayer did have the requisite purpose).

In order for §358(d)(2) to be applicable, there must be an amount excluded under §357(c)(3)(A). In order for an amount to be excluded under §357(c)(3)(A), §357(c)(1) must be applicable. Section 357(c)(1) is applicable if the sum of the liabilities assumed exceeds the total adjusted basis of the property transferred pursuant to the exchange.

Section 357(c)(1) is not applicable for two reasons, 1) the §351 transaction was for tax avoidance purposes or lacked a bona fide business purpose, and 2) the amount of the liabilities assumed did not exceed the total of the adjusted basis of the property transferred. Consequently the liability excluded under §357(c)(3) is zero.

The stated business purpose for the transactions between the members of the BFI, Inc. consolidated group was to move the liabilities in each of the subsidiaries into the six entities to better manage them. These liabilities were environmental, automobile accident, workers compensation and general liability claims. The sale of the class B common stock to the investors allegedly gave the investors a financial incentive to help manage the liabilities through ownership of the Class B Common Stock. If there is a legitimate business purpose, it must outweigh the tax avoidance motive of the transaction.

If isolating the management of these liabilities was a true business purpose, then this could have been accomplished by other means without restructuring each of the six subsidiaries existing corporate structure. This simply could have been accomplished by creating a separate management division within the consolidated group, and transferring

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

the management responsibility of the liabilities in question, and providing incentives to each of the investors through a new or revised contract. Also, the only asset transferred with the liabilities were the intercompany receivables that were formalized into a promissory note. The note and the liabilities never left the consolidated group. In addition, the incentive through the equity investment by each of the investors had a limit to the upside they could receive from the investment. The most that the companies would have to pay to redeem the stock was:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
|---|---|---|
| BFI Europe, Inc. | 16,648 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |
| BFI Energy Systems of Boston, Inc. | 1,258 | 139,638 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

The taxpayer has a potential tax savings from the transactions of $315,581,003 (901,660,007 X 35%).

Ron Poland with Comcor Environmental Ltd was interviewed regarding the purchase of the class B common stock of four of the environmental entities. Comcor Environmental is involved with gas wells and management. Mr. Poland stated that he learned of the transactions from Doug Borro at Allied Waste, Inc. Comcor had no involvement with any of these liabilities before the transactions, but subsequently Gas Recovery Systems has bid on 32 long term gas purchase contracts with the BFI sites. Gas Recovery Systems earns approximately $2,000,000 per year. Comcor was involved with liabilities of Allied Waste, Inc.. This was the only equity interest held by the company.

Ward Herst with Ward Herst and Associates was interviewed regarding the purchase of the class B common stock for the five environmental entities. Ward Herst and Associates are consultants for environmental groundwater and soil. Mr. Herst heard of the transactions from Doug Borro at Allied Waste, Inc. He did no negotiations with any one from BFI. Ward Herst and Associates had no previous involvement with these liabilities although Mr. Herst did as an employee of another company. Herst and Associates did have involvement with Allied Waste, Inc. liabilities in the similar transaction that Allied had done in prior years. Mr. Herst stated that his company's only risk was that the liabilities could not be reduced, but that his investment was limited to $2,000 per entity.

John Jacobs with Willis Corroon Corporation of Arizona was interviewed regarding Willis purchase of the class B common stock of the BFI Europe, Inc which had been transferred the non environmental liabilities. Willis Corroon was an insurance broker. The company was hired in the beginning of 1999 by Allied Waste, Inc. to handle it's insurance. Willis Corroon did a study for Allied Waste on the BFI insurance and related liabilities in May or June of 1999.

The principal purpose of the transfer of the promissory notes and the liability assumptions by each of the six entities was to create a high basis, low value stock, that they could sell under a prearranged plan to the purchasers and take a loss on the stock sale. They would also receive a double deduction when the liabilities are paid . This is not a bona fide business purpose.

In this case, no trade or business, or any assets to which the assumed liabilities related, were transferred. The only assets transferred were promissory notes created by the formalization of intercompany receivables in an amount slightly in excess of the liabilities assumed. In return, each of the six special purpose entities assumed the liabilities and issued to the various BFI, Inc. subsidiaries shares of class B common stock having a fair market value equal to the difference between the face amount of the note and the present value of the liabilities. These subsidiaries immediately sold the stock to outside purchasers under a prearranged agreement and claimed a capital loss on the consolidated tax return of ($901,660,007).

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Mr. Bruce Ranck, former President and CEO of BFI, Inc. stated that BFI had considered several types of transactions in 1998 related to the contingent liabilities and rejected this type of transaction as it was not right for BFI at that time. He indicated that BFI would not have participated in such these transactions in July of 1999 except for the Allied Waste, Inc. merger. Allied had approached BFI in April or May regarding these transactions. Mr. Ranck checked with legal and financial personal to insure that it would not jeopardize BFI than approved the implementation of the deal without performing any due diligence. The transaction was implemented by Allied personal with little involvement of BFI officers or personal. Allied paid all fees related to the transaction to Arthur Andersen or Latham & Watkins even though the work was completed prior to the merger.

Mr. Bruce Jernigan, former Divisional Vice President Environmental Remediation and Closure Activities for BFI, Inc. was interviewed and stated that BFI considered various risk portfolio transfers in 1998 including a transaction similar to the IRC 351 transfer declined to participate in any such transactions. BFI used a performance ROGA (Return on Gross Assets) to measure the gain to the company. The 1998 concepts did not meet its ROGA test and there were no potential tax benefits to BFI at that time. Bruce Ranck, CEO wanted a risk transfer type of transaction.

Documents obtained from Arthur Andersen demonstrate that the transaction was originally scheduled for implementation in September 1999. The documents show that Arthur Andersen and Allied personnel discussed a possibility of a change in the tax law in 1999 and that BFI needed to get this deal completed in order to obtain the favorable tax treatment. Arthur Andersen also addressed the potential capital gains from divestitures after the merger in some of the documents. Andersen and Allied prepared responses to anticipated questions from BFI concerning why the transaction should be implemented when it had previously been rejected by BFI management and what risks BFI faced if the transactions were completed before the merger and the merger was not approved by the shareholders. Arthur Andersen and Allied noted that all that BFI had done was to transfer contingent liabilities within the consolidated group and if necessary, BFI could repurchase the class B common stock from the investors and reverse the deal.

Mr. Dale Parker, Tax Manager for Allied Waste, Inc., stated that a joint engagement by Allied Waste, Inc. and BFI, INC. was made for the law firm of Latham & Watkins to assist with the transactions. Latham & Watkins then engaged Arthur Andersen. There is an engagement letter between Latham & Watkins and Arthur Andersen. We have not been provided any engagement letters between Allied Waste and BFI for Latham and Watkins. We have an engagement letter signed between Arthur Andersen and BFI, Inc. to assist with the structure of these transactions. This was signed after the transactions had been completed and after the BFI shareholders had approved the merger. Mr. Ranck, former President and CEO of BFI, Inc. stated that he had no knowledge of a joint engagement letter with Allied for Latham & Watkins services and that BFI had not paid any fees related to these transactions. Ms. Schuler, Assistant Corporate Secretary with BFI, Inc. had signed an engagement letter dated June 16, 1999. She had signed the document on July 23, 1999.

Revenue Ruling 95-74 does not apply to this transaction as there is no transfer of a trade or business and there is a plan to sell the stock immediately after the transfer. Therefore, the taxpayer is subject to Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946), that the assumption of the liability is part of the cost of acquiring the transferred asset and so the payment of the liability does not give rise to a deductible expense for the transferee. The liability is not within the scope of section 357(c)(3)(A)(i), its assumption is therefore not within the scope of section 358(d)(2), and the general rule of section 358(d)(1) applies to reduce the stock basis by the amount of the liability.

**CONCLUSION**

The capital loss claimed on the return should be disallowed as the liabilities are not within the scope of 357(c)(3)(A)(i), therefore section 358(d)(2) does not prevent the application of section 358(d)(1) to reduce the basis in the stock by the amount of the transferred liabilities. Therefore, the basis in the stock to the various Rust International, Inc. subsidiaries was $901,654, the same as the amount they received on the sale of the stock to the purchasers, resulting in no gain or loss on the stock sale.

# Exhibit
# B

**Internal Revenue Service**
Appeals Office
8701 South Gessner, Suite 750
STOP 8000 HAL
Houston, TX 77074-2942

**CERTIFIED MAIL**

Date: May 10, 2005

7004 1160 0005 3767 7563

**Department of the Treasury**

**Person to Contact:**
Dominic Mastracchio
Employee ID Number: 76-42516
Tel: 281-721-7273

**Taxpayer Identification Number:**
74-1673682
**Kind of Tax:**
Income

| **Tax Period(s) Ended:** | **Amount Claimed:** |
|---|---|
| September 30, 1997 | $18,549,092 |
| September 30, 1998 | $9,711,514 |
| July 30, 1999 | $-0- |

**Date Claims Received:**
May 6, 2005

Browning-Ferris Industries, Inc. and Subsidiaries
15880 N. Greenway-Hayden Loop
Scottsdale, AZ 85260

Attn: Dale L. Parker

Browning-Ferris Industries, Inc.:

This letter is your legal notice that we have fully disallowed your claims listed above.

Your claims for refund or credit for the tax periods ending September 30, 1997, September 30, 1998, and July 30, 1999 have been disallowed in full for the reasons stated in the attached.

If you wish to bring suit or proceedings for the recovery of any tax, penalties, or other moneys for which this disallowance notice is issued, you may do so by filing suit with the United States District Court having jurisdiction, or the United States Claims Court. The law permits you to do this within 2 years from the mailing of this letter. However, if you signed a Form 2297, Waiver of Statutory Notice of Claim Disallowance, the period for bringing suit began on the date you filed the waiver.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter. Thank you for your cooperation.

Sincerely,

Dominic Mastracchio
Appeals Team Case Leader

cc: Robert Denvir

Letter 906 (DO) (Rev. 6-2000)
Cat No. 14978B

## ATTACHMENT

On May 5, 2005, you filed a claim for the taxable year ending September 30, 1997 in the amount of $18,549,092, a claim for the taxable year ending September 30, 1998 in the amount of $9,711,514, and a claim for the taxable year ending July 30, 1999 in the amount of $-0-. These claims have been disallowed in full.

199709 Claim -

1. Your claim for refund for the tax year ending September 30, 1997 requests an additional net operating loss carryback from the taxable year ending July 30, 1999 to the taxable year ending September 30, 1997. The additional net operating loss carryback is disallowed in full. The additional net operating loss carryback arises from the claimed capital loss on the sale of Class B Common Stock in Browning-Ferris Industries, Inc., BFI Trans River (LP), Inc., BFI Energy Systems of Plymouth, Inc., Browning-Ferris Industries Asia Pacific, Inc., BFI Services Group, Inc., and BFI Energy Systems of Boston, Inc. during the taxable year ending July 30, 1999. It is determined that the capital loss from the sale of Class B Commons Stock in Browning-Ferris Industries, Inc., BFI Trans River (LP), Inc., BFI Energy Systems of Plymouth, Inc., Browning-Ferris Industries Asia Pacific, Inc., BFI Services Group, Inc., and BFI Energy Systems of Boston, Inc. is disallowed in full and as a result, there is no capital loss related to this sale that creates an additional net operating loss carryback to the taxable year ending September 30, 1997. See also the reasons set forth in Issue 71 of the Examination Report dated May 31, 2002 and revised September 3, 2002.

199809 Claim -

1. Your claim for refund for the tax year ending September 30, 1998 requests a minimum tax credit carryover to the taxable year ending September 30, 1998. The minimum tax credit carryover is disallowed in full. The minimum tax credit carryover arises from the claimed capital loss on the sale of Class B Common Stock in Browning-Ferris Industries, Inc., BFI Trans River (LP), Inc., BFI Energy Systems of Plymouth, Inc., Browning-Ferris Industries Asia Pacific, Inc., BFI Services Group, Inc., and BFI Energy Systems of Boston, Inc. during the taxable year ending July 30, 1999. It is determined that the capital loss from the sale of Class B Commons Stock in Browning-Ferris Industries, Inc., BFI Trans River (LP), Inc., BFI Energy Systems of Plymouth, Inc., Browning-Ferris Industries Asia Pacific, Inc., BFI Services Group, Inc., and BFI Energy Systems of Boston, Inc. is disallowed in full and as a result, there is no capital loss related to this sale that creates a minimum tax credit carryover to the taxable year ending September 30, 1998. See also the reasons set forth in Issue 71 of the Examination Report dated May 31, 2002 and revised September 3, 2002.

199907 Claim -

1. Your claim for refund for the tax year ending July 30, 1999 requests an additional capital loss in the taxable year ending July 30, 1999. The additional capital loss is disallowed in full. The claimed capital loss relates to the sale of Class B Common Stock in Browning-Ferris Industries, Inc., BFI Trans River (LP), Inc., BFI Energy Systems of Plymouth, Inc., Browning-Ferris Industries Asia Pacific, Inc., BFI Services Group, Inc., and BFI Energy Systems of Boston, Inc. during the taxable year ending July 30, 1999. It is determined that the capital loss from the sale of Class B Commons Stock in Browning-Ferris Industries, Inc., BFI Trans River (LP), Inc., BFI Energy Systems of Plymouth, Inc., Browning-Ferris Industries Asia Pacific, Inc., BFI Services Group, Inc., and BFI Energy Systems of Boston, Inc. is disallowed in full. See also the reasons

set forth in Issue 71 of the Examination Report dated May 31, 2002 and revised September 3, 2002.

# Exhibit C

Form **1120X** (Rev. December 2004) Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ 9/30/98 (Enter month and year.)

Please Type or Print

Name: Browning-Ferris Industries, Inc. & Subsidiaries

Employer identification number: 74-1673682

Number, street, and room or suite no. (If a P.O. box, see instructions.): 15880 N Greenway-Hayden Loop, Suite 100

City or town, state, and ZIP code: Scottsdale, AZ 85260

Telephone number (optional): 480.627.2736

Enter name and address used on original return (If same as above, write "Same.")

Browning-Ferris Industries, Inc. & Subsidiaries, 757 N. Eldridge, Houston, TX 77079

Internal Revenue Service Center where original return was filed ▶ Austin, TX

## Fill in applicable items and use Part II on the back to explain any changes

**Part I** **Income and Deductions** (see instructions)

| | | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|---|
| 1 | Total income (Form 1120 or 1120-A, line 11) | 1 | 4,409,436,882 | 0 | 4,409,436,882 |
| 2 | Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 3,948,907,315 | 0 | 3,948,907,315 |
| 3 | Taxable income. Subtract line 2 from line 1 | 3 | 460,529,567 | 0 | 460,529,567 |
| 4 | Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 66,149,601 | (9,711,514) | 56,438,087 |

**Payments and Credits** (see instructions)

| | | | (a) | (b) | (c) |
|---|---|---|---|---|---|
| 5a | Overpayment in prior year allowed as a credit | 5a | 46,086,008 | 0 | 46,086,008 |
| b | Estimated tax payments | 5b | 100,000,000 | 0 | 100,000,000 |
| c | Refund applied for on Form 4466 | 5c | 54,584,807 | 0 | 54,584,807 |
| d | Subtract line 5c from the sum of lines 5a and 5b | 5d | 91,501,201 | 0 | 91,501,201 |
| e | Tax deposited with Form 7004 | 5e | 0 | 0 | 0 |
| f | Credit from Form 2439 | 5f | 0 | 0 | 0 |
| g | Credit for Federal tax on fuels | 5g | 0 | 0 | 0 |
| 6 | Tax deposited or paid with (or after) the filing of the original return | 6 | | | 3,519,979 |
| 7 | Add lines 5d through 6, column (c) | 7 | | | 95,021,180 |
| 8 | Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 28,871,579 |
| 9 | Subtract line 8 from line 7 | 9 | | | 66,149,601 |

**Tax Due or Overpayment** (see instructions)

| | | | |
|---|---|---|---|
| 10 | **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the **"United States Treasury"** ▶ | 10 | 0 |
| 11 | **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 9,711,514 |
| 12 | Enter the amount of line 11 you want: **Credited to 20__ estimated tax** ▶ **Refunded** ▶ | 12 | 9,711,514 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer | Date 5/2/05 | ▶ VP Title

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

**For Privacy Act and Paperwork Reduction Act Notice, see page 4.**

ISA STF FED4298F.1

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . . . ▶ ☐

Federal Income Tax (line 4) decreased due to a Prior Year Minimum Tax Credit attributable to the taxable year ended September 30, 1997. Please refer to Attachment 1 for an explanation of the change in taxable income and tax.

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**9/30/98 FORM 1120X EXPLANATION OF CHANGES**
**INDEX OF ATTACHMENTS**

1 Explanation of Changes

2 As Amended Schedules

3 IRS Audit Statement (Form 3610)

4 IRS Examination Report (Form 886A)

5 Copy of 7/30/99 Claim for Refund (Form 1120X)

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**9/30/98 FORM 1120X EXPLANATION OF CHANGES**
**ATTACHMENT 1**

The bases for the changes requested in this claim for refund are set forth below. The term "Claimant" as used herein refers to Browning-Ferris Industries, Inc. and the members of its consolidated group as appropriate. Unless otherwise indicated, section ("§") references are to the Internal Revenue Code of 1986 ("IRC"), as amended, as in effect for the year in issue. Based on the changes set forth below, Claimant is entitled to a refund of $9,711,514 or such greater amount as is legally refundable. In addition, Claimant asserts that it is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, its alternative minimum tax, environmental tax, net operating loss deductions and net operating loss carrybacks and carryovers, capital loss deductions and capital loss carrybacks and carryovers, and tax credits and tax credit carrybacks and carryovers) affecting this year. Claimant also requests a refund of all related interest, penalties, or additions to tax that have been overpaid. Claimant also requests statutory interest on any overpayment as provided by law (including, but not limited to, the benefit of offsetting, interest netting, and the net interest rate of zero on periods of overlapping underpayment and overpayments).

Claimant incurred an aggregate capital loss of $901,660,007 on the sale by certain members of Claimant's consolidated return group (hereinafter referred to as the "BFI Entities") of Class B Common Stock in six liability management companies, as shown on attached Exhibit 1, to unrelated investors during the taxable year ended July 30, 1999 (the "1999 tax year"). Claimant is entitled to offset this capital loss against capital gain net income of $80,923,602 in the 1999 tax year and, as a result, is entitled to an additional net operating loss carryback from the 1999 tax year to its taxable year ending September 30, 1997 (the "1997 tax year") in the

amount of $80,923,602 or such other proper amount as provided by law. As a result thereof, Claimant is entitled to a credit in the taxable year ending September 30, 1998 (the "1998 tax year") for prior year minimum tax of $9,711,514 or such other proper amount as provided by law, consisting of prior year alternative minimum tax of $3,325,937 and prior year unallowed nonconventional source fuel credit of $6,385,577. This results in a reduction in Claimant's taxable income for the 1998 tax year in the amount of $9,711,514 or such other proper amount as provided by law.

On July 30, 1999, Allied Waste Industries, Inc. ("Allied") acquired substantially all of the outstanding stock of Claimant. Prior to the acquisition, Claimant utilized a large in-house staff to manage the liabilities arising from its operations. In contrast, Allied utilized a small in-house staff and outsourced most of its environmental management, risk management and other expertise.

In July 1999, shortly before the close of the acquisition, Claimant restructured the management of its contingent liabilities in a manner consistent with Allied's outsourcing approach and to provide a legal structure that would foster the effective management of the liabilities. As a replacement for Claimant's heavily staffed internal departments, Claimant established six separate liability management companies based on the specific expertise needed for the management of the liabilities and compliance with applicable regulatory laws, as shown on Exhibit 2. In order to consolidate the liabilities into the corresponding liability management companies, the BFI Entities contributed certain notes in an aggregate amount of $902,561,661 to the liability management companies in exchange for (i) Class B Common Stock, and (ii) the assumption by the liability management companies of contingent liabilities in the aggregate amount of $901,660,007. The above transactions were tax-free exchanges pursuant to § 351.

Each of the BFI Entities then sold their shares of Class B Common Stock to environmental and insurance consultants with considerable expertise in the liabilities managed by the respective liability management company (hereinafter referred to the "Consulting Investors"). See identities of Consulting Investors at Exhibit 2. The ownership of the stock provides an equity incentive for the Consulting Investors to aggressively identify and take advantage of cost-saving opportunities in managing the liabilities.

The aggregate amount realized by the BFI Entities on the sale of the Class B Common Stock during the 1999 tax year was $901,654. The BFI Entities' tax basis in the Class B Common Stock was a substitute basis equal to the sum of the tax basis of the property which the BFI Entities contributed to the liability management companies and unreduced by the liability management companies' assumption of the liabilities in accordance with § 358. As shown on Exhibit 1, the BFI Entities' aggregate tax basis in the Class B Common Stock was $902,561,661. The liabilities do not reduce stock basis because they are excluded under § 357(c)(3) and, therefore, § 358(d)(2) applies. Alternatively, the liabilities are not taken into account under § 358(d) because such contingent liabilities are not "liabilities" for federal income tax purposes. Consequently, as shown on Exhibit 1, the BFI Entities' sales of the Class B Common Stock resulted in an aggregate capital loss of $901,660,007 in the 1999 tax year.

Claimant's deduction of the capital loss resulting from the sale of the Class B Common Stock during the 1999 tax year was disallowed by the Internal Revenue Service's (the "Service") examination team. The disallowance of the capital loss is reflected in Issue 71 of the Examination Report dated May 31, 2002 and revised September 3, 2002. The disallowance of the capital loss is incorrect and without merit. Claimant hereby incorporates by reference all

documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to the Service.

As a result of the changes herein, Claimant's tax liability is reduced by $9,711,514 or such greater amount as is legally refundable.

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**FORM 1120X EXPLANATION OF CHANGES**
**ATTACHMENT 1**
**EXHIBIT 1**

| Shares Sold of: | Seller | Seller's FEIN | Sales Price | Basis | Gain (Loss) |
|---|---|---|---|---|---|
| Browning-Ferris Industries Europe, Inc. | Browning-Ferris Industries, Inc. | 74-1673682 | 155,840 | 155,995,840 | (155,840,000) |
| **Entity Total** | | | **155,840** | **155,995,840** | **(155,840,000)** |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries, Inc. | 74-1673682 | 121 | 120,120 | (119,999) |
| BFI Trans River (LP), Inc. | Attwoods of North America, Inc. | 98-0066273 | 2,022 | 2,022,020 | (2,019,998) |
| BFI Trans River (LP), Inc. | BFI Waste Systems of New Jersey, Inc. | 22-1755133 | 9,842 | 9,849,840 | (9,839,998) |
| BFI Trans River (LP), Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 72,871 | 72,952,880 | (72,880,009) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 6,552 | 6,556,550 | (6,549,998) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 4,949 | 4,954,950 | (4,950,001) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 941 | 940,940 | (939,999) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 2,563 | 2,562,560 | (2,559,997) |
| BFI Trans River (LP), Inc. | CECOS International, Inc. (New York) | 16-1069544 | 1,417 | 1,421,420 | (1,420,003) |
| BFI Trans River (LP), Inc. | Woodlake Sanitary Service, Inc. | 41-0673360 | 28 | 30,030 | (30,002) |
| **Entity Total** | | | **101,306** | **101,411,310** | **(101,310,004)** |
| BFI Energy Systems of Plymouth, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 278,417 | 278,698,420 | (278,420,003) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 16,125 | 16,126,110 | (16,109,985) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 49,040 | 49,099,050 | (49,050,010) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 4,164 | 4,164,160 | (4,159,996) |
| BFI Energy Systems of Plymouth, Inc. | International Disposal Corp. of California | 94-2229685 | 6,063 | 6,066,060 | (6,059,997) |
| BFI Energy Systems of Plymouth, Inc. | New Morgan Landfill Company, Inc. | 23-2645522 | 15,991 | 16,016,000 | (16,000,009) |
| **Entity Total** | | | **369,800** | **370,169,800** | **(369,800,000)** |
| Browning-Ferris Industries Asia Pacific, Inc. | CECOS International, Inc. (New York) | 16-1069544 | 69,810 | 69,879,810 | (69,810,000) |
| **Entity Total** | | | **69,810** | **69,879,810** | **(69,810,000)** |
| BFI Services Group, Inc. | BFI Waste Systems of New Jersey, Inc. | 22-1755133 | 7,438 | 7,437,430 | (7,429,992) |
| BFI Services Group, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 138,661 | 138,808,670 | (138,670,009) |
| BFI Services Group, Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 314 | 310,310 | (309,996) |
| BFI Services Group, Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 7,072 | 7,077,070 | (7,069,998) |
| BFI Services Group, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 21,084 | 21,111,090 | (21,090,006) |
| BFI Services Group, Inc. | Browning-Ferris, Inc. (MD) | 74-1990096 | 6,181 | 6,176,170 | (6,169,989) |
| BFI Services Group, Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 11,210 | 11,221,210 | (11,210,000) |
| BFI Services Group, Inc. | Woodlake Sanitary Service, Inc. | 41-0673360 | 1,860 | 1,871,870 | (1,870,010) |
| **Entity Total** | | | **193,820** | **194,013,820** | **(193,820,000)** |
| BFI Energy Systems of Boston, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 830 | 830,830 | (830,000) |
| BFI Energy Systems of Boston, Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 5,670 | 5,675,670 | (5,670,000) |
| BFI Energy Systems of Boston, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 4,580 | 4,584,580 | (4,580,000) |
| **Entity Total** | | | **11,080** | **11,091,080** | **(11,080,000)** |
| **Combined Entities Total** | | | **901,656** | **902,561,660** | **(901,660,004)** |

1.5

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**FORM 1120X EXPLANATION OF CHANGE**
**ATTACHMENT 1**
**EXHIBIT 2**

| Liability Management Company | Description of Liabilities Assumed | Consulting Investors |
|---|---|---|
| BFI Services Group, Inc. | Routine post-closure costs associated with closed landfills | Foster Environmental<br>Herst & Associates<br>Power Strategies, Inc. |
| Browning-Ferris Industries Asia Pacific, Inc. | Costs associated with hazardous waste management | COMCOR Environmental, Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Energy Systems of Boston, Inc. | Remediation costs associated with chemical waste management | COMCOR Environmental Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Trans River (LP), Inc. | Transaction costs for Superfund matters, remediation costs, potential legal settlements, and related legal and engineering costs | COMCOR Environmental Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Energy Systems of Plymouth, Inc. | Closing costs, capping costs and storm water control costs associated with operating active landfills | COMCOR Environmental Ltd.<br>Foster Environmental<br>Herst & Associates |
| Browning-Ferris Industries Europe, Inc. | Contingent Insurance Liabilities (auto, general, and workman's compensation) | Willis Corroon Corp. of Arizona |

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**FORM 1120X DETAIL**
**YEAR ENDED SEPTEMBER 30, 1998**

| Line | Item | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss | |
|---|---|---|---|---|---|
| 1a | Gross receipts or sales | | 4,590,792,120 | | 4,590,792,120 |
| 1b | Less returns & allowances | | 0 | | 0 |
| 1c | Balance | | 4,590,792,120 | | 4,590,792,120 |
| 2 | Cost of goods sold | | 1,644,127,667 | | 1,644,127,667 |
| 3 | Gross profit | | 2,946,664,453 | | 2,946,664,453 |
| 4 | Dividends | | 279,266,199 | | 279,266,199 |
| 5 | Interest | | 736,323,697 | | 736,323,697 |
| 6 | Gross rents | | 18,371,853 | | 18,371,853 |
| 7 | Gross royalties | | 6,225,669 | | 6,225,669 |
| 8 | Capital gain net income | | | | 0 |
| 9 | Net gain or (loss) from Form 4797 | | 14,072,448 | | 14,072,448 |
| 10 | Other income | | 408,512,563 | | 408,512,563 |
| 11 | **Total income** | | 4,409,436,882 | | 4,409,436,882 |
| 12 | Compensation of officers | | 8,389,693 | | 8,389,693 |
| 13a | Salaries and wages | 930,895,046 | | 930,895,046 | |
| 13b | Less employment credits | 0 | | 0 | |
| 13c | Balance | | 930,895,046 | | 930,895,046 |
| 14 | Repairs and maintenance | | 78,885,364 | | 78,885,364 |
| 15 | Bad debts | | 17,836,904 | | 17,836,904 |
| 16 | Rents | | 76,706,683 | | 76,706,683 |
| 17 | Taxes and licenses | | 124,257,320 | | 124,257,320 |
| 18 | Interest | | 818,712,215 | | 818,712,215 |
| 19 | Charitable contributions | | 3,649,383 | | 3,649,383 |
| 20 | Depreciation | 408,168,875 | | 408,168,875 | |
| 21a | Less Depreciation claimed on Sch. A and elsewhere | 0 | | 0 | |
| 21b | | | 408,168,875 | | 408,168,875 |
| 22 | Depletion | | 7,396 | | 7,396 |
| 23 | Advertising | | 12,045,102 | | 12,045,102 |
| 24 | Pension, profit-sharing, etc. plans | | 81,783,120 | | 81,783,120 |
| 25 | Employee benefit programs | | 69,324,038 | | 69,324,038 |
| 26 | Other deductions | | 1,318,243,572 | | 1,318,243,572 |
| 27 | **Total deductions** | | 3,948,904,711 | | 3,948,904,711 |
| 28 | Taxable income before NOL & spec. ded. | | 460,532,171 | | 460,532,171 |
| 29a | Net operating loss deduction | 0 | | 0 | |
| 29b | Special deductions | 2,604 | | 2,604 | |
| 29c | | | 2,604 | | 2,604 |
| 30 | **Taxable income** | | 460,529,567 | | 460,529,567 |
| 31 | **Total tax (Schedule J, Line 10)** | | 66,149,601 | | 56,438,087 |
| 32a | Overpayment from previous year | 46,086,008 | | 46,086,008 | |
| 32b | Estimated tax payments & Backup withholding | 100,000,000 | | 100,000,000 | |
| 32c | Less refund applied for on Form 4466 | (45,086,008) | | (45,086,008) | |
| | Less refund applied for on Form 1139 | (9,498,799) | | (9,498,799) | |
| 32d | Balance | 91,501,201 | | 91,501,201 | |
| 32e | Tax deposited with Form 7004 | | | 0 | |
| 32f | Credit for tax paid on undistributed capital gains | | | 0 | |
| 32g | Credit for Federal tax on fuels | 0 | | 0 | |
| 32h | Tax deposited or paid with (or after) the filing of the original return (Paid per Appeals RAR issued 4/18/05) | 3,519,979 | 95,021,180 | 3,519,979 | 95,021,180 |
| 33 | Estimated tax penalty | | | | |
| 34 | Tax due | | 0 | | 0 |
| 35 | Overpayment (As Originally Filed) | | 28,871,579 | | 28,871,579 |
| 36 | Credited to following year/Refunded | 0 | 28,871,579 | 0 | 28,871,579 |
| | Underpayment per Revenue Agent Report | | 0 | | 0 |
| | Refund for Prior Year Minimum Tax Credit due to Claim for Contingent Liability Capital Loss | | | | 9,711,514 |

2.1

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**FORM 1120X DETAIL**
**YEAR ENDED SEPTEMBER 30, 1998**

| | | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss | |
|---|---|---|---|---|---|
| **Schedule J–Tax computation** | | | | | |
| 1 | Check if member of controlled group | | N/A | | N/A |
| 2a | Share of $50,000, $25,000, and $9,925,000 bracket amt. | | | | |
| 2b | Share of (1) additional 5% tax, (2) additional 3% tax | | | | |
| 3 | Income tax | | 161,185,348 | | 161,185,348 |
| 4a | Foreign tax credit | 91,514,200 | | 91,514,200 | |
| 4b | Possessions tax credit | 0 | | 0 | |
| 4c | Nonconventional source fuel credit | 3,521,547 | | 3,521,547 | |
| 4d | General business credit | 0 | | 0 | |
| 4e | Credit for prior year minimum tax | | | 9,711,514 | |
| 5 | Total–add Lines 4a through 4e | | 95,035,747 | | 104,747,261 |
| 6 | Subtract line 5 from line 3 | | 66,149,601 | | 56,438,087 |
| 7 | Personal holding company tax | | 0 | | 0 |
| 8 | Recapture taxes | | 0 | | 0 |
| 9 | Alternative minimum tax | | 0 | | 0 |
| 10 | Total tax | | 66,149,601 | | 56,438,087 |

2.2

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**ALTERNATIVE MINIMUM TAX - CORPORATIONS (FORM 4626) DETAIL**
**YEAR ENDED SEPTEMBER 30, 1998**

| | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss | |
|---|---|---|---|---|
| 1 Taxable income or (loss) before net operating loss deduction | | 460,529,567 | | 460,529,567 |
| 2 **Adjustments and preferences:** | | | | |
| 2a Depreciation of post-1986 property | 29,660,156 | | 29,660,156 | |
| 2e Adjusted gain or loss | (95,981) | | (95,981) | |
| 2m Depletion | 357,356 | | 357,356 | |
| 2s Other adjustments and preferences | - | 29,921,531 | - | 29,921,531 |
| 3 Pre-adjustment alternative minimum taxable income (AMTI) | | 490,451,098 | | 490,451,098 |
| 4 **Adjusted current earnings (ACE) adjustment:** | | | | |
| 4a ACE from line 10 of the worksheet on page 11 of the instructions | | 507,958,518 | | 507,958,518 |
| 4b Subtract line 3 from line 4a. If line 3 exceeds line 4a, enter the difference as a negative amount. | | 17,507,420 | | 17,507,420 |
| 4c Mulitply line 4b by 75%. Enter the result as a positive amount. | | 13,130,565 | | 13,130,565 |
| 4d Enter the excess, if any, of the corporation's total increases in AMTI from prior year ACE adjustments over its total reductions in AMTI from prior year ACE adjustments. | | 23,379,136 | | 23,379,136 |
| 4e ACE adjustment.<br>- If line 4b is zero or more, enter the amount from line 4c.<br>- If line 4b is less than zero, enter the smaller of line 4c or line 4d as a negative amount | | 13,130,565 | | 13,130,565 |
| 5 Combine lines 3 and 4e. If zero or less, stop here; the corporation does not owe any AMT. | | 503,581,663 | | 503,581,663 |
| 6 Alternative tax net operating loss deduction | | - | | - |
| 7 **Alternative minimum taxable income** Subtract line 6 from line 5. | | 503,581,663 | | 503,581,663 |
| 9 **Exemption phase-out** (If line 7 is $310,000 or more, skip lines 8a and 8b and enter -0- on line 8c): | | | | |
| 9a Subtract $150,000 from line 7. If zero or less, enter -0-. | | 503,431,663 | | 503,431,663 |
| 9b Mulitply line 8a by 25%. | | 125,857,916 | | 125,857,916 |
| 9c Exemption. Subtract line 8b from $40,000. If zero or less, enter -0-. | | - | | - |
| 10 Subtract line 8c from line 7. If zero or less, enter -0-. | | 503,581,663 | | 503,581,663 |
| 11 Mulitply line 9 by 20%. | | 100,716,333 | | 100,716,333 |
| 12 Alternative minimum tax foreign tax credit (AMTFTC) | | 52,632,359 | | 52,632,359 |
| 13 Tentative minimum tax. Subtract line 11 from line 10. | | 48,083,974 | | 48,083,974 |
| 14 Regular tax liability before all credits except the foreign tax credit and possessions tax credit. | | 69,671,148 | | 69,671,148 |
| 15 **Alternative minimum tax.** Subtract line 13 from line 12. If zero or less, enter -0-. Enter here and on Form 1120 Schedule J, line 4, or the appropriate line of the corporation's income tax return. | | - | | - |

Form **8827**

Department of the Treasury
Internal Revenue Service

**Credit . . Prior Year Minimum Tax-Corp . . tions**

▶ Attach to the corporation's tax return.

OMB No. 1545-1257

**1997**

Name: Browning Ferris Industries Inc and Subsidiaries

Employer identification number: 74-1673682

| | | | |
|---|---|---|---|
| 1 | Alternative minimum tax for 1996. Enter the amount from line 15 of the 1996 Form 4626 | 1 | 3,325,937 |
| 2 | Minimum tax credit carryforward from 1996. Enter the amount from line 9 of the 1996 Form 8827 | 2 | -0- |
| 3 | Enter the total of any 1996 unallowed nonconventional source fuel credit and 1996 unallowed qualified electric vehicle credit. See instructions | 3 | 6,385,577 |
| 4 | Add lines 1, 2, and 3 | 4 | 9,711,514 |
| 5 | Enter the corporation's 1997 regular income tax liability minus allowable tax credits. See instructions | 5 | 66,149,601 |
| 6 | Enter the tentative minimum tax from line 13 of the 1997 Form 4626 | 6 | 48,083,974 |
| 7 | Subtract line 6 from line 5. If zero or less, enter -0- | 7 | 18,065,627 |
| 8 | **Minimum tax credit.** Enter the **smaller** of line 4 or line 7. Also enter this amount on the appropriate line of the corporation's income tax return (e.g., Form 1120, Schedule J, line 4e). If the corporation had a post-1986 ownership change or has preacquisition excess credits, see instructions | 8 | 9,711,514 |
| 9 | **Minimum tax credit carryforward to 1998.** Subtract line 8 from line 4. See instructions | 9 | -0- |

## General Instructions

Section references are to the Internal Revenue Code.

### Purpose of Form

Form 8827 is used by corporations to figure the minimum tax credit, if any, for alternative minimum tax (AMT) incurred in prior tax years and to figure any minimum tax credit carry-forward.

### Who should File

Form 8827 should be filed by corporations that had:

- An AMT liability in 1996;
- A minimum tax credit carryforward from 1996 to 1997; or
- A nonconventional source fuel credit or qualified electric vehicle credit not allowed for 1996 (see the Instructions for line 3).

## Specific Instructions

### Line 3

Enter the total of any nonconventional source fuel credit and qualified electric vehicle credit not allowed for 1996 solely because of the limitations under sections 29(b)(6)(B) and 30(b)(3)(B).

### Line 5

Enter the corporation's 1997 regular income tax liability (as defined in section 26(b)) minus any credits allowed under Subchapter A, Part IV, subparts B, D, E, and F of the Internal Revenue Code (e.g., if you are filing Form 1120, subtract any credits on Schedule J, lines 4a through 4d, from the amount on Schedule J, line3).

### Line 8

If the corporation had a post-1986 ownership change (as defined in section 382(g)), the amount of pre-change minimum tax credits that can be applied against the corporation's tax for any tax year ending after the ownership change may be limited. See section 383 and the related regulations. To figure the amount of the pre-change credit, the corporation must allocate the credit for the change year between the pre-change period and the post-change period. The corporation must use the same method of allocation (ratable allocation or closing-of-the-books) for purposes of sections 382 and 383. See Regulations section 1.382-6 for details. Also, preacquisition excess credits of one corporation generally cannot be used to offset the tax attributable to recognized built-in gains of another corporation. See section 384 for details.

If either limit applies, attach a computation of the minimum tax credit allowed. Enter that amount on line 8. Write "Sec. 383" or "Sec. 384" on the dotted line to the left of the line 8 entry space.

### Line 9

Keep a record of this amount to carry forward and use in future years.

**Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. You are required to give us the information. We need it to ensure that you are complying with these laws and to allow us to figure and collect the right amount of tax.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated average time is 1 hour.

If you have comments concerning the accuracy of this time estimate or suggestions for making this form simpler, we would be happy to hear from you. See the instructions for the tax return with which this form is filed.

B
2/11/97

As Amended Due To Claim For Capital Loss



2.4

| Form 3610 (Rev. March 1986) | Department of the Treasury -- Internal Revenue Service **Audit Statement** | | Symbols AP:FW:HOU:DM:SJC |
|---|---|---|---|
| Name of Taxpayer Browning-Ferris Industries, Inc. | | SSN or EIN 74-1673682 | Date Prepared 04/06/05 |
| Kind of Tax Income | | | Docket Number |

| Tax Period Ended | DEFICIENCY (OVERASSESSMENT) (Increase or decrease in Tax and Penalties) | | | | |
|---|---|---|---|---|---|
| | TAX | IRC SECTION 6662 | | | |
| 9/30/1996 | (1,014,022) | - | | | |
| 9/30/1997 | 19,079,286 | - | | | |
| 9/30/1998 | 3,519,979 | - | | | |
| 7/31/1999 | None | None | | | |

[X] Interest for 199609, 199709 & 199809 will be computed under sections 6611(f) & 6601(d) of the Internal Revenue Code.
*(Year)*

[X] Interest for 9/30/96 is subject to the General Agreement on Tariffs & Trade.

[X] Interest for 9/30/97 will be computed under Rev. Rul. 99-40 (Sequa). See form 2220 for 9/30/98.

[X] Interest for 9/30/96 & 9/30/97 is subject to the provisions of IRC Section 6621(c ). The applicable date will be determined based upon the Revenue Agent Report dated 9/03/2002.

APR 2005 Received Corp. Tax Dept.

Disk Id: BFIAppADJUSTS.XLS, BFIFTC96, BFIFTC97-2, BFIFTC98, BFIAppSettlement.CT

Form 3610 (Rev. 3-86)

3.1

**Joint Committee Case**
**Spread Sheet Analysis**

Taxpayer's Name
Browning-Ferris Industries, Inc.

| Item | Years | 09/30/1996 | 09/30/1997 | 09/30/1998 | 07/31/1999 |
|---|---|---|---|---|---|
| A. | Taxable income (loss) per return as filed | 231,469,821 | 211,881,172 | 412,759,986 | (145,907,722) |
| B. | Adjustments: | | | | |
| | 1. Prior (RAR, 1120X) | | | | |
| | 2. Current (except carrybacks) | 12,355,347 | 21,125,908 | 47,769,581 | 67,736,388 |
| C. | Taxable income before NOL or CL deduction | 243,825,168 | 233,007,080 | 460,529,567 | (78,171,334) |
| D. | NOL or CL deduction: | | | | |
| | Carryback from 9907 | | (78,171,334) | | |
| E. | Corrected taxable income | 243,825,168 | 154,835,746 | 460,529,567 | (78,171,334) |
| F. | Tax on line E. before credits | 85,338,809 | 54,192,512 | 161,185,348 | |
| G. | Credits utilized (Sched. Att'd) | | | | |
| | Foreign tax credit - current | 12,000,161 | 5,022,278 | 87,738,489 | |
| | Non Conventional Fuel Credit | 2,101,885 | 6,385,577 | 3,521,547 | |
| | Foreign tax credit - c.b. 9809 | 374,426 | | | |
| | Foreign tax credit - c.b. 9709 due to 9907 | 2,475,778 | | | |
| | Foreign tax credit - c.f. 9709 due to 9907 | | | 3,775,711 | |
| H. | Balance of tax | 68,386,559 | 42,784,657 | 66,149,601 | 0 |

BFIAppADJUSTS.XLS
4/22/2005

Substitute F5278

3.2

**Joint Committee Case**
**Spread Sheet Analysis**

Taxpayer's Name
Browning-Ferris Industries, Inc.

| | (Continuation sheet) | 09/30/1996 | 09/30/1997 | 09/30/1998 | 07/31/1999 |
|---|---|---|---|---|---|
| H. | Balance of tax (prior pg.) | 68,386,559 | 42,784,657 | 66,149,601 | 0 |
| I. | Other tax (specify) | | | | |
| | Investment Credit Recapture | 674 | | | |
| | Environmental Tax | 321,238 | | | |
| J. | Total corrected tax liability | 68,708,471 | 42,784,657 | 66,149,601 | 0 |
| K. | Total tax paid per return | 69,722,493 | 56,414,662 | 72,128,421 | 0 |
| L. | Prior deficiency (overassessment) | | | | |
| M. | Tentative Refunds | | | | |
| | Tentative Allowance - 9907 | | (32,709,291) | (9,498,799) | |
| N. | Net tax paid | 69,722,493 | 23,705,371 | 62,629,622 | 0 |
| O. | Deficiency (overassessment) | (1,014,022) | 19,079,286 | 3,519,979 | 0 |

BFIAppADJUSTS.XLS
4/22/2005

Substitute F5278

3.3

Page 11
4/5/2005

BROWNING-FERRIS INDUSTRIES, INC.
Capital Gains /
Losses

| 5701 # | | 199609 | 199709 | 199809 | 199907 |
|---|---|---|---|---|---|
| | Current yr. net ST capital gain/loss per return | (2,200,797) | (4,314,461) | (44,079) | (932,535,531) |
| 44 | Audit adjustment | | 419,363 | | |
| 71 | Audit adjustment | | | | 901,660,007 |
| | Corrected net STCG | (2,200,797) | (3,895,098) | (44,079) | (30,875,524) |
| | | | | | |
| | Current yr. net LT capital gain/loss per return | 75,055 | (68,275,445) | 76,032,590 | 164,147,568 |
| 28 | Audit adjustment | | | (1,531,596) | |
| 44 | Audit adjustment | | 30,671,658 | | |
| 48 | Audit adjustment | | | 7,541,929 | |
| 76 | Audit adjustment | | | (12,520,910) | (4,234,305) |
| 78 | Audit adjustment | | | (28,296,915) | (711,430) |
| | Corrected net LTCG | 75,055 | (37,603,787) | 41,225,098 | 159,201,833 |
| | | | | | |
| | Capital Loss c/f per return | (33,616,596) | | | |
| | Adjustment | (11,342,503) | | | |
| | Capital Loss c/f as correct | (44,959,099) | (47,084,841) | (88,583,726) | (47,402,707) |
| | | | | | |
| | Capital Loss c/f to subsequent year | (47,084,841) | (88,583,726) | (47,402,707) | - |
| | | | | | |
| | Capital Gain as redetermined | | | | |
| | Capital Gain per return | | | | 80,923,602 |
| | Adjustment | | | | - |
| | | | | | 80,923,602 |

BFIAppADJUSTS.XLS

3.4

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

ISSUE No. 71

**ISSUE:**

1. Are the taxpayer's subsidiaries entitled to an aggregate capital loss deduction in the amount of $901,660,007 on the sale of the class B common stock of the six SPE for the tax year ending July 31, 1999?

2. Does section 357(b) apply to disallow the transaction?

3. Does section 357(c) apply to the transaction?

**ADJUSTMENTS:**

SEE ATTACHEMENT 1 for details per subsidiary.

| | 199907 |
|---|---|
| Short Term Capital Loss Per Return | (901,660,007) |
| Short Term Capital Loss Per Examination | 0 |
| Adjustment | 901,660,007 |
| | |
| Capital Loss Carryover per Return | 811,110,031 |
| Capital Loss Carryover per Examination | 0 |
| Adjustment | 811,110,031 |

**FACTS:**

In July of 1999, BFI, Inc. (parent) used the following subsidiaries for a transaction described in Notice 2001-17 and Notice 2001-33. These entities and the type of contingent liabilities that were transferred are:

| | |
|---|---|
| 1. Browning-Ferris Industries Europe, Inc. | Non Environmental Liabilities |
| 2. Browning-Ferris Industries Services Group, Inc. | Environmental Liabilities |
| 3. Browning-Ferris Industries Asia Pacific, Inc. | Environmental Liabilities |
| 4. BFI Energy Systems of Boston, Inc. | Environmental Liabilities |
| 5. BFI Trans River (LP), Inc. | Environmental Liabilities |
| 6. BFI Energy Systems of Plymouth, Inc. | Environmental Liabilities |

**PROMISSORY NOTES**

Each of the BFI, Inc. subsidiaries that transferred contingent liabilities to the six special purpose entities also transferred a promissory note. These notes were created by the formalization of intercompany account receivables. They were all similar as to terms and conditions. The following example of the terms is one that was transferred to BFI Asia Pacific, Inc.

Promissory note dated 07/07/01
Signed by Eileen Schuler, Vice President

Note was issued by Browning-Ferris Financial Services, Inc. to Browning-Ferris Industries, Inc. in the amount of $69,879,810 at 8% interest. The note could not be prepaid without advance consent of the obligee. They would have to pay the total amount due under the note in order to prepay it. The principal sum and any interest outstanding will be due and payable in full 12 years from the date hereof.

**CONTRIBUTION AGREEMENTS**

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

**CONTRIBUTION AGREEMENTS**

The following contribution agreement was selected from BFI Asia Pacific, Inc as an example of terms and conditions.

Dated 07/07/1999
Signed by Eileen B. Schuler, Vice President for Cecos International, Inc.
Signed by Eileen B. Schuler, Vice President for Browning-Ferris Industries Asia Pacific, Inc.

CECOS International Inc. (Contributor)
Browning-Ferris Industries Asia Pacific, Inc. (Company)

Contributor gave note from Browning Ferris Financial Services Inc. to Browning-Ferris Industries, Inc. for $69,879,810 at 8% interest and transferred contingent liabilities representing costs associated with hazardous waste management, as well as other post-closure costs including leachate management, ground water monitoring, cover management, property management and administrative expenses. The site names were:

| | |
|---|---|
| Aber Road | Williamsburg, OH |
| Calcasieu | Sulphur, LA |
| Livingston | Livingston, LA |
| Niagara Falls | Niagra Falls, NY |

The Class B Common Stock of Browning-Ferris Industries Asia Pacific, Inc. was not registered and had restrictions on the sale. It was subject to the right of first refusal by the holders of the Class Common stock of the company to repurchase the stock unless that right is waived.

**ADMINISTRATIVE SERVICES AGREEMENT**

On July 7, 1999 Browning-Ferris Industries, Inc. (BFI) and each of the six special purpose entities entered into an Administrative Services Agreement for various services. Some of these services are:

Administrative and General Expenditures
Technical Assistance
Tax Matters
Registration and Transfer of Recipient Securities
SEC Filings
Investor Relations
Audit
Treasury and Banking

**STOCK PURCHASE AND SALE AGREEMENT**

Each of the subsidiaries that received Class B common stock from one of the SPE in the Contribution agreement entered into a Stock Purchase and Sale Agreement with one of the accommodating parties who purchased the class B common stock from them. Each of the accommodating parties had an ongoing business relationship with Allied Waste although most did not have a business relationship with BFI. The accommodating parties' ownership of the SPE is shown below.

Class B Stock Ownership of the six SPE

| Purchaser | BFI Trans River | BFI Asia-Pacific | BFI Services Group | BFI Energy Systems of Boston | BFI Energy Systems of Plymouth | BFI Europe |
|---|---|---|---|---|---|---|



000343

4.2

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Comcor Environmental | 37% | 90% | | 37% | 98% | |
| Power Strategies | | | 99% | | | |
| Herst & Associates | 18% | 3% | 1% | 18% | 1% | |
| Nelson Perel | 23% | 3% | | 22% | | |
| Tim Webster | 22% | 4% | | 23% | | |
| Foster Environmental | | | | | 1% | |
| Willis Corona Corp. | | | | | | 100% |

Each of the SPE had 111 shares of Class B Common Stock outstanding except for BFI Services Group that had 74 shares of Class B Common Stock outstanding. The number of shares sold, the amount received on the sale and the tax loss taken by each of the entities are shown in attachment 2.

Each of the Stock Purchase and Sale Agreements appeared identical and were dated July 9th, 1999. They noted the SPE stock being sold, the subsidiary selling the stock and which accommodating party was buying the stock. The agreement noted that the Stock was subject to provisions set out in the Company's amended and restated articles of incorporation. It was also restricted on transferability set out in the Contribution Agreement. The parent waived the right of first refusal for a few specific entities.

The Class B Common Stock was not registered under the Securities Act of 1933 and could not be resold without registration or representation that the stock is still exempt from registration.

On page 4 of the agreement it notes in item 5a. that:

> To the maximum extent permitted by applicable law, Seller and BFI, jointly and severally, shall indemnify, defend and hold the Purchaser harmless against any liability, loss, cost, or expense of any kind (other that the potential loss of the Purchaser's original investment in the Sale Stock), or any increase in any such liability, to the extent that such liability loss, cost or expense directly or indirectly results from, arises out of, or is related to Purchaser's owning or holding the Sale Stock.

**REVOLVING CREDIT AGREEMENT**

Each of the six special purpose subsidiaries had a revolving credit agreement with Browning-Ferris Industries Inc. at 6.5 % interest to take care of cash flow needs. The total amount they could borrow under the agreement varied between the subsidiaries. They could be prepaid at any time.

**AMENDED AND RESTATED ARTICLES OF INCORPORATION**

Each of the six special purpose subsidiaries amended their articles of incorporation on July 7, 1999 to create the shares of the class B common stock. The articles also included the put and call features for the redemption of the shares by a call by the company on or after July 7, 2004 and a put by the purchaser on or after July 7, 2005. The maximum amounts to be paid on redemption would be:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
|---|---|---|
| BFI Europe, Inc. | 16,848 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

| | | |
|---|---|---|
| BFI Energy Systems of Boston, Inc. | 1,258 | 139,638 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

**INDIVIDUALS INTERVIEWED**

Selected interviews are addressed here. Not all questions that were asked have been included in this section. The Allied Waste, Inc. personnel and the third party purchaser interviews were transcribed by a court reporter. For all of the questions and answers, please refer to the transcripts. The information has been summarized below for the Allied Waste, Inc. personnel. The transcript from the court report for the purchasers of the class B common stock that were interviewed has not been received. The questions and responses were prepared from notes taken during the interviews.

**INDIVIDUALS FORMERLY WITH BFI, INC.**

**Bruce Ranck, former President and CEO of BFI, Inc.**

Q: In 1999, what was your position with the company?

A: In early 1999, he was President and CEO.

Q: Are you familiar with these transactions which took place in July of 1999?

A: Not specifically.

Q: How did you become aware of the transactions?

A: He knows that they occurred.

Q: When did you become aware of the transactions?

A: He guessed it was April or May when he heard of this transaction.

Q: Whose idea was it to initiate these transactions? (Allied or BFI?)

A: Allied.

Q: Would BFI have implemented these transactions without Allied's acquisition of BFI?

A: Not at that time.

Q: Were there any written agreements related to these transactions between Allied and BFI?

A: He does not know.

Q: Were you the person that gave the final approval to implement this transaction for BFI? If not, who?

A: Ultimately, he was the person based on the advice of legal and financial people. It would not jeopardize BFI.

Q: Were there any discussions that the sale of the Class B Common Stock to the third parties would trigger a taxable event outside the consolidated group?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: No.

Q: Had you ever considered any similar transaction with these contingent liabilities before these were done in July of 1999?

A: They had looked at similar transactions a couple of years prior to 1999. They were not appropriate for BFI at that time.

Q: Who paid the fees to AA?

A: Was not BFI.

Q: Who paid the fees to Latham & Watkins?

A: Was not BFI.

Q: Was BFI involved in a joint engagement with Allied for the services of Latham & Watkins?

A: He does not know.

Q: What would have happened if the BFI shareholders had not approved the merger?

A: The shareholder support was overwhelming. They were happy with the buyout.

**Jeff Curtis, former Chief Financial Officer of BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Senior Vice President and Chief Financial Officer.

Q: Who did you report to?

A: Bruce Ranck, President and CEO.

Q: Are you familiar with these transactions which took place in July of 1999?

A: In a general sense of the type of transaction being considered.

Q: How did you become aware of the transaction?

A: After the merger agreement. Allied requested BFI to implement the transactions.

Q: Whose idea was it to initiate these transactions? Allied or BFI?

A: Requested to be done on behalf of Allied.

Q: Was there a separate agreement regarding this transaction between BFI and Allied? Other than the merger agreement.

A: Not that he was aware of. Allied wanted to run the environmental different than BFI.

Q: Who paid the fees to AA?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: Not aware.

Q: Who paid the fees to Latham & Watkins?

A: Not aware.

Q: Was BFI involved in a joint engagement with Allied for the services of Latham & Watkins?

A: Assume that they did.

**Eileen Schuler, Assistant Corporate Secretary of BFI, Inc.**

Q: In 1999, what was your position with the company?
A: Assistant Corporate Secretary, BFI, Inc. Officer of various subsidiaries

Q: Are you familiar with these transactions which took place in July of 1999?
A: Most of them.

Q: How did you become aware of the transaction?
A: She was informed by Eddie Norwood and Mr. Ranck. She was involved in the preparation of the documents.

Q: Were there any written agreements related to these transactions between Allied and BFI?

A: Not that she was aware.

Q: Who was the person authorized to give the final go ahead to implement this transaction?

A: CEO, Mr. Ranck wanted her to work on the transaction.

Q: Who paid the fees to AA?

A: She believes that BFI did. She executed the engagement letter with AA.

Q: Who paid the fees to Latham & Watkins?

A: She is not certain.

Q: When did the BFI shareholders approve the merger?

A: The meeting was in July.

**Walt Stone, former Assistant Treasurer with BFI, Inc.**

Q: In 1999, what was your position with the company?
A: Divisional VP, Assistant Treasurer

Q: How did you become aware of the transaction?
A: He was aware, but did not participate.

Q: Who was involved in the transaction initially?
A: Folks at Allied. Dale Parker

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: Were any alternatives for structuring this transaction considered? What were they? Did you consider other types of transactions in 1998?

A: Yes, Bruce Jernigan and Ron Long met with AA consulting regarding similar transactions in 1998 on some contingent liabilities.

Q: Who paid the fees to AA?
A: Does not know.

Q: Who paid the fees to Latham & Watkins?
A: Does not know.

**Rich Oakley, former Vice President Engineering, BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Divisional Vice President, Engineering.

Q: Are you familiar with these transactions which took place in July of 1999?

A: Second hand.

Q: Was the management of any of these contingent liabilities under your control? If so, which?

A: Accrual Active Landfills.

Q: How many people were involved in the management of these liabilities?

A: Environmental 1-2 per site.

Q: How many of these people were with the headquarters function?

A: Six.

Q: How many were in the field?

A: Environmental estimate of 100.

**Bruce Jernigan, former Division Vice President of Environmental Remediation and Closure Activities with BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Divisional Vice President Environmental Remediation and Closure Activities.

Q: Are you familiar with these transactions which took place in July of 1999?

A: No

Q: Do you know what COMCOR Environmental Ltd. does?

A: No.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: Do you know what Herst & Associates does?

A: No.

Q: Do you know what Foster Environmental does?

A: No.

Q: Do you know what Power Strategies Energy LLC does?

A: Yes

Q: Do you know what Nelson Perel and Tim Webster do?

A: No.

Q: Did BFI ever consider any transactions similar to this prior to this transaction?

A: Various risk portfolio transfers in 1998 that were neutral to BFI then. Similar to 351. BFI uses a performance ROGA (Return on Gross Assets). The 1998 351 was either slightly positive or negative to ROGA then. No potential tax benefit to BFI at that time.

Only the concept was being considered. Bruce Ranck, CEO wanted a risk transfer type of transaction. In 1998 there were various types of transactions between BFI and third parties considered. Considered were sale or gifting of closed sites to third parties. They picked several to go forward with. It was beneficial after close. He gave the example of a golf course down by the Astrodome.

Q: Was the management of any of these contingent liabilities under your control? If so, which?

A: Remedial Sites, Superfund Liabilities, Closed sites.

Q: How many people were involved in the management of these liabilities?

A: Total of 100 US and International. Headquarters 7-9 professional.

**INTERVIEW WITH ALLIED WASTE, INC. PERSONNEL**

Mr. Rochford was only familiar with the BFI Europe transaction. That was the one used for the automobile, general liability and workman's compensation liabilities. Willis Corroon Corporation of Arizona was their insurance broker and had a business relationship with Allied Waste, Inc. He stated that BFI, Inc. handled the insurance claims in house. Allied Waste claims were handled by their insurance carrier AIG. After the merger they transferred the remaining BFI claims to a third party administrator.

For the complete questions and answers, please see the court reporter's transcript.

**Dale Parker, Tax Manager with Allied Waste, Inc.**

Mr. Parker stated that after the announcement of the purchase of BFI, Inc. meetings were held with Allied Waste, Inc. management and Arthur Anderson representatives to discuss the handling of the liabilities. He stated that Allied Waste, Inc. and BFI, Inc. jointly engaged Latham & Watkins to assist in the transactions. Latham & Watkins then engaged Arthur Andersen. All of the invoices from these firms were sent to Allied Waste, Inc. and paid after the merger. None of the fees were deducted on the short period BFI, Inc. return.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

For the complete questions and answers, please see the court reporter's transcript.

**Doug Borro, Director of Engineering for Allied Waste, Inc.**

Mr. Borro was familiar with all of the environmental liabilities transferred to the five special purpose subsidiaries. He was responsible for the due diligence done on the BFI, Inc. purchase. He selected all of the third party purchasers of the stock. Allied had a business relationship with all of the purchasers. He stated that five entities were used so that the liabilities could be segregated by type. For example, the superfund liabilities went to one entity. Mr. Borro stated that BFI had 200 people manage all of the liabilities which was different that Allied Waste's structure.

He stated that BFI had looked at a similar transaction to this one in 1998 along with several other types of transactions. Allied Waste senior management had communicated with the principals at BFI and reached an agreement that this would take place.

Mr. Borro stated that among the options that BFI considered in 1998 was the outright sale of the land companies and liabilities, two Environmental Remedial Management Initiative (ERMI) options and an insurance policy. The two ERMI options were different as too the amount of ownership interests that would be sold.

After the purchase of BFI he participated in the Strategic Action Committee (SAC) of each of the entities. The SAC handles projects at the sites and the selection of consultants for specific projects.

For the complete questions and answers, please see the court reporter's transcript.

**INTERVIEWS WITH THIRD PARTY PURCHASERS OF THE CLASS B COMMON STOCK**

**John Jacobs, Executive Vice President with Willis Corporation of Arizona**

Q: In 1999, what was your position with Willis Corroon Corporation of Arizona? Which entity?

A: Executive Vice President of Arizona entity.

Q: How long had you been in that position?

A: 21 years.

Q: Who did you report to?

A: Micheal C. Metzger

Q: What is the business function of Willis Corroon Corporation of Arizona?

A: Insurance Broker.

Q: How did you become aware of this transaction?

A: After Allied Waste hired them, they did a study on the BFI insurance liabilities in May or June of 1999. They were hired 1/1/99 by Allied.

Q: Who was the insurance carrier on these liabilities for BFI, Inc.?

A: AIG Insurance.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: Do you still own this stock?

A: Yes

**Ward Herst with Herst and Associates regarding purchase of Class B Common Stock**

Q: In 1999, what was your position with Herst and Associates?

A: Manager

Q: How long had you been in that position?

A: Since 1998. Prior to that he was an employee.

Q: What is the business function of Herst and Associates?

A: Environmental Groundwater and Soil Consulting.

Q: Are you familiar with these transactions which took place in July of 1999 by BFI Inc. and the subsequent sale of the Class B Common Stock of various BFI, Inc. subsidiaries to Herst and Associates?

A: Only with Item 5. (purchase of Class B Common Stock.)

Q: How did you become aware of this transaction?

A: Doug Borro with Allied Waste.

Q: Did you do the negotiations for your company for the purchase of the class B common stock?

A: Yes.

Q: Who did you negotiate with at Allied?

A: Doug Borro.

Q: Did you do any negotiations with anyone from BFI?

A: Not verbal.

Q: What information was furnished to you regarding this investment?

A: Purchase and Sale Agreement.

Q: Did you attend any meetings regarding this transaction?

A: Meeting in Scottsdale.

Q: With who? Who else was there?

A: Arthur Andersen. Lowell Griffin.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: How did you communicate with Allied/BFI on this transaction?

A: Verbal, then Purchase and Sale Agreement.

Q: Did your company have any involvement prior to this transaction with these liabilities at BFI?

A: Not Herst and Associates. Only as an employee of other company.

Q: Did your company have any involvement prior to this transaction with Allied?

A: Environmental consulting services to Allied ERMI entities.

Q: How were you paid for this?

A: Various.

Q: Did you feel that you had any risk in purchasing this stock? What was your risk?

A: Only risk was that the liabilities could not be settled for less. Only investment was $2000 per entity.

**Ron Poland with Comcor Environmental Ltd. regarding the purchase of the Class B Common Stock.**

Q: In 1999, what was your position with Comcor Environmental Ltd.?

A: He was an equity investor of Comcor Environmental Ltd.

Q: What is the business function of Comcor Environmental Ltd.?

A: Gas Wells and Management.

Q: Are you familiar with these transactions which took place in July of 1999 by BFI Inc. and the subsequent sale of the Class B Common Stock of various BFI, Inc. subsidiaries to Comcor Environmental Ltd.?

A: The four environmental subsidiaries.

Q: How did you become aware of this transaction?

A: Doug Borro.

Q: What information was furnished to you regarding this investment?

A: Landfill.

Q: Did you receive a prospectus or private placement memorandum?

A: Narrative.

Q: Did you attend any meetings regarding this transaction?

A: No, telephone.

Q: When did you become involved in the implementation of the transaction?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: Midyear 1999.
Q: Did your company have any involvement prior to this transaction with these liabilities at BFI?

A: No.

Q: Did your company have any involvement prior to this transaction with Allied?

A: Gas Recovery Systems did.

Q: Has your company ever participated in this type of transaction for any other company beside Allied/BFI?

A: No.

Q: How is your company normally paid for it's services?

A: This is the only equity interest.

General Question responses.

Gas Recovery Systems earns approximately $2,000,000 per year. They made an offer for 32 sites of BFI for long term power purchase agreements.

**ARTHUR ANDERSEN**

Arthur Andersen was issued a summons to provide in whatever form, paper or electronic retention, the following with respect to the transactions described in the attached opinions dated August 24, 2000 from Arthur Anderson LLP to David C. Boatwright, Esq. with Latham & Watkins:

1. All correspondence between Arthur Anderson LLP and Browning-Ferris Industries, Inc. or it's subsidiaries regarding the implementation of the transactions described in the attached opinions.

2. All correspondence between Arthur Anderson LLP and Allied Waste Industries, Inc. or it's subsidiaries; regarding the implementation of the transactions described in the attached opinions.

3. All correspondence between Arthur Anderson LLP and all other third parties that participated in or assisted in the implementation of the transactions described in the attached opinions.

4. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to Browning-Ferris Industries, Inc. or it's subsidiaries concerning the promotion, sale and implementation of the transactions described in the attached opinions.

5. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to Allied Waste Industries, Inc. or it's subsidiaries concerning the promotion, sale and implementation of the transactions described in the attached opinions.

6. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to all other third parties that participated in or assisted in the implementation of the transactions.

7. All memos, notes of meetings, telephone conferences and email correspondence concerning the promotion, sale and implementation of the transactions reflected in the attached opinions.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| | TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | |
| Entity Name: | Various | Issue Number: 71 |

8. All other valuations and/or computations prepared such as cash flow analysis, projected tax savings and/or benefit analysis concerning the promotion, sale and implementation of the transactions reflected in the attached opinions.

The information provided was reviewed and the majority of the information was opinions, purchase and sale agreements, cash flow analysis, etc. Andersen also provided email and transcripts of telephone conversations

STRATEGIC ACTION COMMITTEE

BFI Europe, Inc.
The Strategic Action Committee (SAC) was authorized in the board meeting on June 28, 2000. At this meeting they also selected Cunningham Lindsey Claims Management, Inc. as the Third Party Administrator for these liabilities with the contract inception of September 30, 1999. An audit had been done by Cunningham Lindsey on the insurance claims and inventory of the claims. It stated that 70% of the BFI claims had been closed since the merger.

In the board meeting on May 16, 2001 they approved an annual consulting fee to Willis Corroon of $30,000.

BFI Trans River (LP), Inc.
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or litigation matters.

BFI Asia Pacific, Inc.
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the facilities.

BFI Services Group, Inc.
The Strategic Action Committee ( SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations. Some discussion related to Power Strategies wanting to get out of its contracts and sell the class B common stock that it owned.

BFI Energy Systems of Plymouth, Inc.
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the sites.

BFI Energy Systems of Boston, Inc.
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the sites.

FINANCIAL STATEMENT PRESENTATION VS. TAX TREATMENT

These transactions were recorded as follows:

| | BOOK | TAX |
|---|---|---|
| Promissory Notes Transferred | $902,561,661 | $902,561,661 |
| Contingent Liabilities Transferred | ($901,660,007) | 0 |
| Basis | $901,654 | $902,561,661 |
| Amount Realized | $901,654 | $901,654 |
| Gain(Loss) | 0 | ($901,660,007) |

The above amounts do not reflect the $1,750,000 paid to the promoter, Arthur Andersen LLP, for assistance on the structure of the transaction, or the $130,400 paid to the law firm of Latham & Watkins for the tax opinion on the transaction.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999.

**LAW AND ARGUMENT**

The taxpayer provided a tax opinion prepared by the promoter, Arthur Andersen, for each of the six entities used in the transaction. The tax opinions stated that:

1. The Contributors' contributions to BFI Trans River of notes, subject to the contractual assumption of the Contributors' contingent environmental obligations, in exchange for all of the Class B common stock of BFI Trans River should, more likely than not, qualify for nonrecognition of gain or loss under Section 351(a) of the Internal Revenue Code of 1986, as amended (the "Code"). Unless otherwise noted, all Section references are to the Code.

2. The Contributors' tax bases in the Class B common stock of BFI Trans River should, more likely than not, equal the tax bases in the notes contributed to BFI Trans River, and should, more likely than not, not be reduced by the amount of the contingent environmental obligations assumed by BFI Trans River.

3. Losses on the sales of the Class B common stock of BFI Trans River by the Contributors should, more likely than not, not be duplicated losses within the meaning of Treasury Regulation Section 1.1502-20(c)(1)(iii), not be disallowed under the anti-avoidance or anti-stuffing rules of Treas. Reg. Section 1.1502-20(e), and not be disallowed under the intercompany transaction rules of Treas. Reg. Section 1.1502-13.

4. The Contributors' contributions of notes to BFI Trans River in exchange for its Class B common stock should, more likely than not, not be an acquisition made to evade or avoid income tax within the meaning of Section 269.

The promoter, Arthur Andersen, was paid $1,750,000 to assist in structuring these six transactions. Their opinion is self serving. The taxpayer paid the law firm of Latham & Watkins $130,504 for a tax opinion on these six transactions. These opinions have not been provided by the taxpayer and will not be addressed.

**PRIMARY POSITION**

**DOES SECTION 357(b) APPLY TO DISALLOW THE LOSS?**

I.R.C. section 351(a) provides that no gain or loss shall be recognized if property is transferred to a corporation by a person solely in exchange for stock in such corporation and immediately after the exchange such person is in control of the corporation.

I.R.C. section 351(b) provides that if I.R.C. section 351(a) would apply to an exchange but for the fact that there is received, in addition to the stock permitted to be received under I.R.C. section 351(a), other property or money, then, gain (if any) to such recipient shall be recognized, but not in excess of the amount of money received, plus the fair market value of such other property received, and no loss to such recipient shall be recognized.

Regulation 1.357-1(c) *Tax avoidance purpose.* The benefits of section 357(a) do not extend to any exchange involving an assumption of liabilities where it appears that the principal purpose of the taxpayer with respect to such assumption was to avoid Federal income tax on the exchange, or, if not such purpose, was not a bona fide business purpose. In such cases, the total amount of liabilities assumed or acquired pursuant to such exchange (and not merely a particular liability with respect to which the tax avoidance purpose existed) shall, for the purpose of determining the amount of gain to be recognized upon the exchange in which the liabilities are assumed or acquired, be treated as money received by the taxpayer upon the exchange. Thus, if in the example set forth in paragraph (b) of this section, the principal purpose of the assumption of the $4,000 liability was to avoid tax on the exchange, or was not a bona fide business purpose, then the amount of gain recognized would be $5,000. In any suit or proceeding where the burden is on the taxpayer to prove that an assumption of liabilities is not to be treated as "other property or money"

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

under section 357, which is the case if the Commissioner determines that the taxpayer's purpose with respect thereto was a purpose to avoid Federal income tax on the exchange or was not a bona fide business purpose, and the taxpayer contests such determination by litigation, the taxpayer must sustain such burden by the clear preponderance of the evidence. Thus, the taxpayer must prove his case by such a clear preponderance of all the evidence that the absence of a purpose to avoid Federal income tax on the exchange, or the presence of a bona fide business purpose, is unmistakable. [Reg. §1.357-1.]

I.R.C. section 357(b) provides that if, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption was made, it appears that the principal purpose of the taxpayer with respect to the assumption described in I.R.C. section 357(a) was a purpose to avoid Federal income tax on the exchange, or if not such a purpose, was not a bona fide business purpose, then such assumption shall, for purposes of I.R.C. section 351, be considered as money received by the taxpayer on the exchange.

I.R.C. section 357(c)(2) provides that I.R.C. section 357(c)(1) shall not apply to any exchange (A) to which I.R.C. section 357(b)(1) applies, or (B) which is pursuant to a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(G) where no former shareholder of the transferor corporation receives any consideration for his stock.

**REVENUE RULING 95-74**

The relevant facts of Revenue Ruling 95-74 are:

***

Corporation P is an accrual basis, Calendar-year Corporation engaged in various ongoing businesses, one of which includes the operation of a manufacturing plant (the Manufacturing Business). The plant is located on land purchased by P many years before. The land was not contaminated by any hazardous waste when P purchased it. However, as a result of plant operations, certain environmental liabilities, such as potential soil and groundwater remediation, are now [*2] associated with the land.

In Year 1, for bona fide business purposes, P engages in an exchange to which @ 351 of the Internal Revenue Code applies by transferring substantially all of the assets associated with the Manufacturing Business, including the manufacturing plant and the land on which the plant is located, to a newly formed corporation, S, in exchange for all of the stock of S and for S's assumption of the liabilities associated with the Manufacturing Business, including the environmental liabilities associated with the land. P has no plan or intention to dispose of (or have S issue) any S stock. S is an accrual basis, calendar-year taxpayer.

Therefore, on these facts, the Internal Revenue Service will not follow the decision in Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946). Accordingly, the contingent environmental liabilities assumed from P are deductible as business expenses under @ 162 or are capitalized under @ 263, as appropriate, by S under S's method of accounting (determined as if S has owned the land for the period and in the same manner [*12] as it was owned by P).

***

Revenue Ruling 95-74 does not apply in this case. The taxpayer did not transfer the assets that were related to the creation of the contingent liabilities. The taxpayer transferred the liabilities and sold the stock as part of a planned, structured transaction.

The stated business purpose for the transactions between the members of the BFI, Inc. consolidated group was to move the liabilities in each of the subsidiaries into the six entities to better manage them. These liabilities were environmental, automobile accident, workers compensation and general liability claims. The sale of the class B common stock to the investors allegedly gave the investors a financial incentive to help manage the liabilities through ownership of the Class B Common Stock. If there is a legitimate business purpose, it must outweigh the tax avoidance motive of the transaction.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
| --- | --- | --- |
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

If isolating the management of these liabilities was a true business purpose, then this could have been accomplished by other means without restructuring each of the six subsidiaries existing corporate structure. This simply could have been accomplished by creating a separate management division within the consolidated group, and transferring the management responsibility of the liabilities in question, and providing incentives to each of the investors through a new or revised contract. Also, the only asset transferred with the liabilities were the intercompany receivables that were formalized into a promissory note. The note and the liabilities never left the consolidated group. In addition, the incentive through the equity investment by each of the investors had a limit to the upside they could receive from the investment. The most that the companies would have to pay to redeem the stock was:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
| --- | --- | --- |
| BFI Europe, Inc. | 16,848 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |
| BFI Energy Systems of Boston, Inc. | 1,258 | 139,638 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

The taxpayer has a potential tax savings from the transactions of $315,581,003 (901,660,007 X 35%).
The taxpayer did not transfer any trade or business assets to which the assumed liabilities related to the special purpose entities. The only assets transferred were promissory notes created by the formalization of intercompany receivables in an amount slightly in excess of the liabilities assumed. In return, each of the six special purpose entities assumed the liabilities and issued to the various BFI, Inc. subsidiaries shares of class B common stock having a fair market value equal to the difference between the face amount of the note and the present value of the liabilities. These subsidiaries immediately sold the stock to outside purchasers under a prearranged agreement and claimed a capital loss on the consolidated tax return of $901,660,007.

The promissory notes were created specifically for these transactions by formalizing intercompany accounts receivable and the contingent liabilities were on the balance sheet of BFI, Inc. and it's subsidiaries prior to the transfer. After the transfer, the liabilities were on the balance sheet of the six special purpose entities which were still part of the consolidated return. The consolidated company had no book loss or economic loss as a result of the transaction. The loss was due to the contingent liabilities having no tax basis. At the time the promissory notes and contingent liabilities were transferred to each of the entities, they had no employees. After the transfer of the notes and liabilities, they had no employees. Services were still performed by employees of other entities or subcontracted to outside parties. These liabilities were being managed by the BFI, Inc. consolidated group at the time of the exchange and continued to be managed by the BFI, Inc. consolidated group.

The taxpayer had no economic loss on the sale of the stock. As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999.
The tax basis in the stock differed from the book basis because the contingent liabilities assumed by each of the six special purpose entities in the transaction did not impact the tax basis of the class B common stock. There was no gain or loss on the financial statement or books of BFI, Inc. or it's subsidiaries. The class B common stock purchased by each of the purchasers was restricted from resale. The purchased needed permission of each of the entities in order to sell the stock. The purchasers could put the stock to the entities several years later under a defined pricing formula which capped the amount the entities would have to pay to repurchase the stock. The entities could call the stock in the year after the purchasers put option under the same pricing formula. BFI, Inc. and the special purpose entities did not lose control of the stock. It was not freely transferable by the purchasers and could be subsequently called

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
| --- | --- | --- |
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Ron Poland with Comcor Environmental Ltd was interviewed regarding the purchase of the class B common stock of four of the environmental entities. Comcor Environmental is involved with gas wells and management. Mr. Poland stated that he learned of the transactions from Doug Borro at Allied Waste, Inc. Comcor had no involvement with any of these liabilities before the transactions, but subsequently Gas Recovery Systems has bid on 32 long term gas purchase contracts with the BFI sites. Gas Recovery Systems earns approximately $2,000,000 per year. Comcor was involved with liabilities of Allied Waste, Inc. This was the only equity interest held by the company.

Ward Herst with Ward Herst and Associates was interviewed regarding the purchase of the class B common stock for the five environmental entities. Ward Herst and Associates are consultants for environmental groundwater and soil. Mr. Herst heard of the transactions from Doug Borro at Allied Waste, Inc. He did no negotiations with any one from BFI. Ward Herst and Associates had no previous involvement with these liabilities although Mr. Herst did as an employee of another company. Herst and Associates did have involvement with Allied Waste, Inc. liabilities in the similar transaction that Allied had done in prior years. Mr. Herst stated that his company's only risk was that the liabilities could not be reduced, but that his investment was limited to $2,000 per entity.

John Jacobs with Willis Corroon Corporation of Arizona was interviewed regarding Willis purchase of the class B common stock of the BFI Europe, Inc which had been transferred the non environmental liabilities. Willis Corroon was an insurance broker. The company was hired in the beginning of 1999 by Allied Waste, Inc. to handle it's insurance. Willis Corroon did a study for Allied Waste on the BFI insurance and related liabilities in May or June of 1999.

The principal purpose of the transfer of the promissory notes and the liability assumptions by each of the six entities was to create a high basis, low value stock, that the taxpayer could sell under a prearranged plan to the purchasers and take a loss on the stock sale. BFI would also receive a double deduction when the liabilities are paid. This is not a bona fide business purpose.

Mr. Bruce Ranck, former President and CEO of BFI, Inc. stated that BFI had considered several types of transactions in 1998 related to the contingent liabilities and rejected this type of transaction as it was not right for BFI at that time. He indicated that BFI would not have participated in such these transactions in July of 1999 except for the merger with Allied Waste, Inc. Allied had approached BFI in April or May regarding these transactions. Mr. Ranck checked with legal and financial personal to insure that it would not jeopardize BFI than approved the implementation of the deal without performing any due diligence. The transaction was implemented by Allied personal with little involvement of BFI officers or personal. Allied paid all fees related to the transaction to Arthur Andersen or Latham & Watkins even though the work was completed prior to the merger.

Mr. Bruce Jernigan, former Divisional Vice President Environmental Remediation and Closure Activities for BFI, Inc. was interviewed and stated that BFI considered various risk portfolio transfers in 1998 including a transaction similar to the IRC 351 transfer declined to participate in any such transactions. BFI used a performance ROGA (Return on Gross Assets) to measure the gain to the company. The 1998 concepts did not meet its ROGA test and there were no potential tax benefits to BFI at that time. Bruce Ranck, CEO wanted a risk transfer type of transaction.

Documents obtained from Arthur Andersen demonstrate that the transaction was originally scheduled for implementation in September 1999. The documents show that Arthur Andersen and Allied personnel discussed a possibility of a change in the tax law in 1999 and that BFI needed to get this deal completed in order to obtain the favorable tax treatment. Arthur Andersen also addressed the potential capital gains from divestitures after the merger in some of the documents. Andersen and Allied prepared responses to anticipated questions from BFI concerning why the transaction should be implemented when it had previously been rejected by BFI management and what risks BFI faced if the transactions were completed before the merger and the merger was not approved by the shareholders. Arthur Andersen and Allied noted that all that BFI had done was to transfer contingent liabilities within the consolidated group and if necessary, BFI could repurchase the class B common stock from the investors and reverse the deal.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Mr. Dale Parker, Tax Manager for Allied Waste, Inc., stated that a joint engagement by Allied Waste, Inc. and BFI, INC. was made for the law firm of Latham & Watkins to assist with the transactions. Latham & Watkins then engaged Arthur Andersen. There is an engagement letter between Latham & Watkins and Arthur Andersen. We have not been provided any engagement letters between Allied Waste and BFI for Latham and Watkins. We have an engagement letter signed between Arthur Andersen and BFI, Inc. to assist with the structure of these transactions. This was signed after the transactions had been completed and after the BFI shareholders had approved the merger. Mr. Ranck, former President and CEO of BFI, Inc. stated that he had no knowledge of a joint engagement letter with Allied for Latham & Watkins services and that BFI had not paid any fees related to these transactions. Ms. Schuler, Assistant Corporate Secretary with BFI, Inc. had signed an engagement letter dated June 16, 1999. She had signed the document on July 23, 1999.

These transactions were recorded as follows for book vs. tax treatment:

| | BOOK | TAX |
|---|---|---|
| Promissory Notes Transferred | $902,561,661 | $902,561,661 |
| Contingent Liabilities Transferred | ($901,660,007) | 0 |
| Basis | $901,654 | $902,561,661 |
| Amount Realized | $901,654 | $901,654 |
| Gain(Loss) | 0 | ($901,660,007) |

The above amounts do not reflect the $1,750,000 paid to the promoter, Arthur Andersen LLP, for assistance on the structure of the transaction, or the $130,400 paid to the law firm of Latham & Watkins for the tax opinion on the transaction. As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999.

**CONCLUSION**

The capital loss claimed on the return should be disallowed under IRC 357(b)(1)(B) as the principal purpose of the transactions was for tax avoidance purposes. BFI, Inc. had no business purpose and would not have done this transaction without the pending merger with Allied Waste, Inc. If the merger had not been approved by the BFI, Inc. shareholders BFI could have reversed the transactions. Additionally, the rush to do the transactions due to the fear that the tax laws would be changed to prohibit the tax benefits from these abusive transactions shows the principal purpose of the transactions for tax avoidance purposes.

Each of the steps in this transaction was structured to enable BFI, Inc. and it's Subsidiaries to deduct the capital loss on its return. The consolidated corporation will also receive another deduction when the contingent liabilities are deducted when paid. The taxpayer had no economic loss on the transaction and would benefit from a double deduction when the liabilities accrue for tax and are paid.

Therefore the transaction is a taxable event under section 1001 and the basis in the stock to the various Rust International, Inc. subsidiaries is the fair market value of the stock or $901,654 as determined under section 1012. This results in no gain or loss on the sale of the stock to the purchasers. Therefore the capital loss of $901,660,007 is disallowed.

**1ST ALTERNATIVE POSITION**

**DOES SECTION 357(c)(3) APPLY TO THE TRANSACTION?**

I.R.C. section 351(a) provides that no gain or loss shall be recognized if property is transferred to a corporation by a person solely in exchange for stock in such corporation and immediately after the exchange such person is in control of the corporation.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

I.R.C. section 351(b) provides that if I.R.C. section 351(a) would apply to an exchange but for the fact that there is received, in addition to the stock permitted to be received under I.R.C. section 351(a), other property or money, then, gain (if any) to such recipient shall be recognized, but not in excess of the amount of money received, plus the fair market value of such other property received, and no loss to such recipient shall be recognized.

I.R.C. section 357(a) provides that, except as provided in I.R.C. section 357(b), if the taxpayer receives property which would be permitted to be received under I.R.C. section 351 without the recognition of gain if it were the sole consideration and, as part of the consideration, another party to the exchange assumes a liability of the taxpayer, then such assumption shall not be treated as money or other property and shall not prevent the exchange from being within the provisions of I.R.C. section 351.

I.R.C. section 357(b) provides that if, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption was made, it appears that the principal purpose of the taxpayer with respect to the assumption described in I.R.C. section 357(a) was a purpose to avoid Federal income tax on the exchange, or if not such a purpose, was not a bona fide business purpose, then such assumption shall, for purposes of I.R.C. section 351, be considered as money received by the taxpayer on the exchange.

I.R.C. section 357(c)(1) provides that in the case of an exchange (A) to which I.R.C. section 351 applies, or (B) to which I.R.C. section 361 applies by reason of a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(D), if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

I.R.C. section 357(c)(2) provides that I.R.C. section 357(c)(1) shall not apply to any exchange (A) to which I.R.C. section 357(b)(1) applies, or (B) which is pursuant to a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(G) where no former shareholder of the transferor corporation receives any consideration for his stock.

I.R.C. section 357(c)(3)(A) provides that if a taxpayer transfers, in an exchange to which I.R.C. section 351 applies, a liability the payment of which either (i) would give rise to a deduction, or (ii) would be described in I.R.C. section 736(a), then, for purposes of I.R.C. section 357(c)(1), the amount of such liability shall be excluded in determining the amount of liabilities assumed or to which the property transferred is subject.

I.R.C. section 357(c)(3)(B) provides that I.R.C. section 357(c)(3)(A) shall not apply to any liability to the extent that the incurrence of the liability resulted in the creation of, or increase in, the basis of any property.

I.R.C. section 358(a)(1) provides that, in the case of an exchange to which I.R.C. section 351, 354, 355, 356, or 361 applies, the basis of property permitted to be received under such section without the recognition of gain or loss (i.e., the stock of the transferee corporation) shall be the same as that of the property exchanged, decreased by the amount of money received by the taxpayer, and increased by the amount of gain to the taxpayer which was recognized on such exchange.

I.R.C. section 358(d)(1) provides that where, as part of the consideration to the taxpayer, another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition (in the amount of the liability) shall, for purposes of I.R.C. section 358, be treated as money received by the taxpayer on the exchange.

I.R.C. section 358(d)(2) provides that I.R.C. section 358(d)(1) shall not apply to the amount of any liability excluded under I.R.C. section 357(c)(3).

I.R.C. section 368(c) provided that, for purposes of I.R.C. section 351, the term "control" means the ownership of stock possessing at least 80% of the total combined voting power of all classes of stock entitled to vote and at least 80% of the total number of shares of all other classes of stock of the corporation.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

**REVENUE RULING 95-74**

The relevant facts of Revenue Ruling 95-74 are:

***

Corporation P is an accrual basis, Calendar-year Corporation engaged in various ongoing businesses, one of which includes the operation of a manufacturing plant (the Manufacturing Business). The plant is located on land purchased by P many years before. The land was not contaminated by any hazardous waste when P purchased it. However, as a result of plant operations, certain environmental liabilities, such as potential soil and groundwater remediation, are now [*2] associated with the land.

In Year 1, for bona fide business purposes, P engages in an exchange to which @ 351 of the Internal Revenue Code applies **by transferring substantially all of the assets associated with the Manufacturing Business, including the manufacturing plant and the land on which the plant is located, to a newly formed corporation, S, in exchange for all of the stock of S and for S's assumption of the liabilities associated with the Manufacturing Business, including the environmental liabilities associated with the land. P has no plan or intention to dispose of (or have S issue) any S stock. S is an accrual basis, calendar-year taxpayer.**

Therefore, on these facts, the Internal Revenue Service will not follow the decision in Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946). Accordingly, the contingent environmental liabilities assumed from P are deductible as business expenses under @ 162 or are capitalized under @ 263, as appropriate, by S under S's method of accounting (determined as if S has owned the land for the period and in the same manner [*12] as it was owned by P).

***

Revenue Ruling 95-74 does not apply in this case. The taxpayer did not transfer the assets that were related to the creation of the contingent liabilities. The taxpayer transferred the liabilities and sold the stock as part of a planned, structured transaction.

In *Caruth v. United States*, 688 F. Supp. 1139 (N.D. Tex. 1987), *aff'd*, 865 F.2d 644 (5th Cir.1998) the court held that a transfer of property to a controlled corporation must have a business purpose to qualify under §351 (the court further found that the taxpayer did have the requisite purpose).

In order for §358(d)(2) to be applicable, there must be an amount excluded under §357(c)(3)(A). In order for an amount to be excluded under §357(c)(3)(A), §357(c)(1) must be applicable. Section 357(c)(1) is applicable if the sum of the liabilities assumed exceeds the total adjusted basis of the property transferred pursuant to the exchange.

Section 357(c)(1) is not applicable for two reasons, 1) the §351 transaction was for tax avoidance purposes or lacked a bona fide business purpose, and 2) the amount of the liabilities assumed did not exceed the total of the adjusted basis of the property transferred. Consequently the liability excluded under §357(c)(3) is zero.

The stated business purpose for the transactions between the members of the BFI, Inc. consolidated group was to move the liabilities in each of the subsidiaries into the six entities to better manage them. These liabilities were environmental, automobile accident, workers compensation and general liability claims. The sale of the class B common stock to the investors allegedly gave the investors a financial incentive to help manage the liabilities through ownership of the Class B Common Stock. If there is a legitimate business purpose, it must outweigh the tax avoidance motive of the transaction.

If isolating the management of these liabilities was a true business purpose, then this could have been accomplished by other means without restructuring each of the six subsidiaries existing corporate structure. This simply could have been accomplished by creating a separate management division within the consolidated group, and transferring

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

the management responsibility of the liabilities in question, and providing incentives to each of the investors through a new or revised contract. Also, the only asset transferred with the liabilities were the intercompany receivables that were formalized into a promissory note. The note and the liabilities never left the consolidated group. In addition, the incentive through the equity investment by each of the investors had a limit to the upside they could receive from the investment. The most that the companies would have to pay to redeem the stock was:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
|---|---|---|
| BFI Europe, Inc. | 16,848 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |
| BFI Energy Systems of Boston, Inc. | 1,258 | 139,638 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

The taxpayer has a potential tax savings from the transactions of $315,581,003 (901,660,007 X 35%).

Ron Poland with Comcor Environmental Ltd was interviewed regarding the purchase of the class B common stock of four of the environmental entities. Comcor Environmental is involved with gas wells and management. Mr. Poland stated that he learned of the transactions from Doug Borro at Allied Waste, Inc. Comcor had no involvement with any of these liabilities before the transactions, but subsequently Gas Recovery Systems has bid on 32 long term gas purchase contracts with the BFI sites. Gas Recovery Systems earns approximately $2,000,000 per year. Comcor was involved with liabilities of Allied Waste, Inc.. This was the only equity interest held by the company.

Ward Herst with Ward Herst and Associates was interviewed regarding the purchase of the class B common stock for the five environmental entities. Ward Herst and Associates are consultants for environmental groundwater and soil. Mr. Herst heard of the transactions from Doug Borro at Allied Waste, Inc. He did no negotiations with any one from BFI. Ward Herst and Associates had no previous involvement with these liabilities although Mr. Herst did as an employee of another company. Herst and Associates did have involvement with Allied Waste, Inc. liabilities in the similar transaction that Allied had done in prior years. Mr. Herst stated that his company's only risk was that the liabilities could not be reduced, but that his investment was limited to $2,000 per entity.

John Jacobs with Willis Corroon Corporation of Arizona was interviewed regarding Willis purchase of the class B common stock of the BFI Europe, Inc which had been transferred the non environmental liabilities. Willis Corroon was an insurance broker. The company was hired in the beginning of 1999 by Allied Waste, Inc. to handle it's insurance. Willis Corroon did a study for Allied Waste on the BFI insurance and related liabilities in May or June of 1999.

The principal purpose of the transfer of the promissory notes and the liability assumptions by each of the six entities was to create a high basis, low value stock, that they could sell under a prearranged plan to the purchasers and take a loss on the stock sale. They would also receive a double deduction when the liabilities are paid . This is not a bona fide business purpose.

In this case, no trade or business, or any assets to which the assumed liabilities related, were transferred. The only assets transferred were promissory notes created by the formalization of intercompany receivables in an amount slightly in excess of the liabilities assumed. In return, each of the six special purpose entities assumed the liabilities and issued to the various BFI, Inc. subsidiaries shares of class B common stock having a fair market value equal to the difference between the face amount of the note and the present value of the liabilities. These subsidiaries immediately sold the stock to outside purchasers under a prearranged agreement and claimed a capital loss on the consolidated tax return of ($901,660,007).

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Mr. Bruce Ranck, former President and CEO of BFI, Inc. stated that BFI had considered several types of transactions in 1998 related to the contingent liabilities and rejected this type of transaction as it was not right for BFI at that time. He indicated that BFI would not have participated in such these transactions in July of 1999 except for the Allied Waste, Inc. merger. Allied had approached BFI in April or May regarding these transactions. Mr. Ranck checked with legal and financial personal to insure that it would not jeopardize BFI than approved the implementation of the deal without performing any due diligence. The transaction was implemented by Allied personal with little involvement of BFI officers or personal. Allied paid all fees related to the transaction to Arthur Andersen or Latham & Watkins even though the work was completed prior to the merger.

Mr. Bruce Jernigan, former Divisional Vice President Environmental Remediation and Closure Activities for BFI, Inc. was interviewed and stated that BFI considered various risk portfolio transfers in 1998 including a transaction similar to the IRC 351 transfer declined to participate in any such transactions. BFI used a performance ROGA (Return on Gross Assets) to measure the gain to the company. The 1998 concepts did not meet its ROGA test and there were no potential tax benefits to BFI at that time. Bruce Ranck, CEO wanted a risk transfer type of transaction.

Documents obtained from Arthur Andersen demonstrate that the transaction was originally scheduled for implementation in September 1999. The documents show that Arthur Andersen and Allied personnel discussed a possibility of a change in the tax law in 1999 and that BFI needed to get this deal completed in order to obtain the favorable tax treatment. Arthur Andersen also addressed the potential capital gains from divestitures after the merger in some of the documents. Andersen and Allied prepared responses to anticipated questions from BFI concerning why the transaction should be implemented when it had previously been rejected by BFI management and what risks BFI faced if the transactions were completed before the merger and the merger was not approved by the shareholders. Arthur Andersen and Allied noted that all that BFI had done was to transfer contingent liabilities within the consolidated group and if necessary, BFI could repurchase the class B common stock from the investors and reverse the deal:

Mr. Dale Parker, Tax Manager for Allied Waste, Inc., stated that a joint engagement by Allied Waste, Inc. and BFI, INC. was made for the law firm of Latham & Watkins to assist with the transactions. Latham & Watkins then engaged Arthur Andersen. There is an engagement letter between Latham & Watkins and Arthur Andersen. We have not been provided any engagement letters between Allied Waste and BFI for Latham and Watkins. We have an engagement letter signed between Arthur Andersen and BFI, Inc. to assist with the structure of these transactions. This was signed after the transactions had been completed and after the BFI shareholders had approved the merger. Mr. Ranck, former President and CEO of BFI, Inc. stated that he had no knowledge of a joint engagement letter with Allied for Latham & Watkins services and that BFI had not paid any fees related to these transactions. Ms. Schuler, Assistant Corporate Secretary with BFI, Inc. had signed an engagement letter dated June 16, 1999. She had signed the document on July 23, 1999.

Revenue Ruling 95-74 does not apply to this transaction as there is no transfer of a trade or business and there is a plan to sell the stock immediately after the transfer. Therefore, the taxpayer is subject to Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946), that the assumption of the liability is part of the cost of acquiring the transferred asset and so the payment of the liability does not give rise to a deductible expense for the transferee. The liability is not within the scope of section 357(c)(3)(A)(i), its assumption is therefore not within the scope of section 358(d)(2), and the general rule of section 358(d)(1) applies to reduce the stock basis by the amount of the liability.

**CONCLUSION**

The capital loss claimed on the return should be disallowed as the liabilities are not within the scope of 357(c)(3)(A)(i), therefore section 358(d)(2) does not prevent the application of section 358(d)(1) to reduce the basis in the stock by the amount of the transferred liabilities. Therefore, the basis in the stock to the various Rust International, Inc. subsidiaries was $901,654, the same as the amount they received on the sale of the stock to the purchasers, resulting in no gain or loss on the stock sale.

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**9/30/98 FORM 1120X EXPLANATION OF CHANGES**

**ATTACHMENT 5**

**COPY OF 7/30/99 FORM 1120X CLAIM FOR REFUND**

Form **1120X**
(Rev. December 2004)
Department of the Treasury
Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ 7/30/99
(Enter month and year.)

Please Type or Print

Name: Browning-Ferris Industries, Inc. & Subsidiaries
Employer identification number: 74-1673682
Number, street, and room or suite no. (If a P.O. box, see instructions.): 15880 N Greenway-Hayden Loop, Suite 100
City or town, state, and ZIP code: Scottsdale, AZ 85260
Telephone number (optional): 480.627.2736

Enter name and address used on original return (If same as above, write "Same."): Browning-Ferris Industries, Inc. & Subsidiaries, 757 N. Eldridge, Houston, TX 77079

Internal Revenue Service Center where original return was filed ▶ Austin, TX

**Fill in applicable items and use Part II on the back to explain any changes**

| **Part I** Income and Deductions (see instructions) | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income (Form 1120 or 1120-A, line 11) | 1 | 3,193,591,494 | (80,923,602) | 3,112,667,892 |
| 2 Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 3,271,762,828 | 0 | 3,271,762,828 |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | (78,171,334) | (80,923,602) | (159,094,936) |
| 4 Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 0 | 0 | 0 |

**Payments and Credits** (see instructions)

| | | (a) | (b) | (c) |
|---|---|---|---|---|
| 5a Overpayment in prior year allowed as a credit | 5a | 0 | 0 | 0 |
| b Estimated tax payments | 5b | 90,500,000 | 0 | 90,500,000 |
| c Refund applied for on Form 4466 | 5c | 80,000,000 | 0 | 80,000,000 |
| d Subtract line 5c from the sum of lines 5a and 5b | 5d | 10,500,000 | 0 | 10,500,000 |
| e Tax deposited with Form 7004 | 5e | 0 | 0 | 0 |
| f Credit from Form 2439 | 5f | 0 | 0 | 0 |
| g Credit for Federal tax on fuels | 5g | 5,447 | 0 | 5,447 |

| | | |
|---|---|---|
| 6 Tax deposited or paid with (or after) the filing of the original return | 6 | 0 |
| 7 Add lines 5d through 6, column (c) | 7 | 10,505,447 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | 8 | 10,505,447 |
| 9 Subtract line 8 from line 7 | 9 | 0 |

**Tax Due or Overpayment** (see instructions)

| | | |
|---|---|---|
| 10 **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "**United States Treasury**" ▶ | 10 | 0 |
| 11 **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | 0 |
| 12 Enter the amount of line 11 you want: **Credited to 20__ estimated tax** ▶ **Refunded** ▶ | 12 | 0 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer | 5/12/05 Date | ▶ VP Title

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN
Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here . . . . . . . . . . ▶ ☐

Total Income (line 1) decreased due to the capital loss requested in this claim for refund applicable to the taxable year ended July 30, 1999. Please refer to Attachment 1 for an explanation of the change in Total Income.

Taxable Income (line 3) has decreased due to the capital loss requested in line 1 as explained above.

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**7/30/99 FORM 1120X EXPLANATION OF CHANGES**
**INDEX OF ATTACHMENTS**

1 Explanation of Changes

2 As Amended Schedules

3 IRS Audit Statement (Form 3610)

4 IRS Examination Report (Form 886A)

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**7/30/99 FORM 1120X EXPLANATION OF CHANGE**
**ATTACHMENT 1**

The bases for the changes requested in this claim for refund are set forth below. The term "Claimant" as used herein refers to Browning-Ferris Industries, Inc. and the members of its consolidated group as appropriate. Unless otherwise indicated, section ("§") references are to the Internal Revenue Code of 1986 ("IRC"), as amended, as in effect for the year in issue. Based on the changes set forth below, Claimant is entitled to a refund of $-0- or such greater amount as is legally refundable. In addition, Claimant asserts that it is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, its alternative minimum tax, environmental tax, net operating loss deductions and net operating loss carrybacks and carryovers, capital loss deductions and capital loss carrybacks and carryovers, and tax credits and tax credit carrybacks and carryovers) affecting this year. Claimant also requests a refund of all related interest, penalties, or additions to tax that have been overpaid. Claimant also requests statutory interest on any overpayment as provided by law (including, but not limited to, the benefit of offsetting, interest netting, and the net interest rate of zero on periods of overlapping underpayment and overpayments).

Claimant incurred an aggregate capital loss of $901,660,007 on the sale by certain members of Claimant's consolidated return group (hereinafter referred to as the "BFI Entities") of Class B Common Stock in six liability management companies, as shown on attached Exhibit 1, to unrelated investors during the taxable year ended July 30, 1999 (the "1999 tax year"). As a result, Claimant is entitled to offset this capital loss against capital gain net income of $80,923,602 in the 1999 tax year. This results in a reduction in Claimant's taxable income for the 1999 tax year in the amount of $80,923,602 or such other proper amount as provided by law.

On July 30, 1999, Allied Waste Industries, Inc. ("Allied") acquired substantially all of the outstanding stock of Claimant. Prior to the acquisition, Claimant utilized a large in-house staff to manage the liabilities arising from its operations. In contrast, Allied utilized a small in-house staff and outsourced most of its environmental management, risk management and other expertise.

In July 1999, shortly before the close of the acquisition, Claimant restructured the management of its contingent liabilities in a manner consistent with Allied's outsourcing approach and to provide a legal structure that would foster the effective management of the liabilities. As a replacement for Claimant's heavily staffed internal departments, Claimant established six separate liability management companies based on the specific expertise needed for the management of the liabilities and compliance with applicable regulatory laws, as shown on Exhibit 2. In order to consolidate the liabilities into the corresponding liability management companies, the BFI Entities contributed certain notes in an aggregate amount of $902,561,661 to the liability management companies in exchange for (i) Class B Common Stock, and (ii) the assumption by the liability management companies of contingent liabilities in the aggregate amount of $901,660,007. The above transactions were tax-free exchanges pursuant to § 351.

Each of the BFI Entities then sold their shares of Class B Common Stock to environmental and insurance consultants with considerable expertise in the liabilities managed by the respective liability management company (hereinafter referred to the "Consulting Investors"). See identities of Consulting Investors at Exhibit 2. The ownership of the stock provides an equity incentive for the Consulting Investors to aggressively identify and take advantage of cost-saving opportunities in managing the liabilities.

The aggregate amount realized by the BFI Entities on the sale of the Class B Common Stock during the 1999 tax year was $901,654. The BFI Entities' tax basis in the Class B Common Stock was a substitute basis equal to the sum of the tax basis of the property which the BFI Entities contributed to the liability management companies and unreduced by the liability management companies' assumption of the liabilities in accordance with § 358. As shown on Exhibit 1, the BFI Entities' aggregate tax basis in the Class B Common Stock was $902,561,661. The liabilities do not reduce stock basis because they are excluded under § 357(c)(3) and, therefore, § 358(d)(2) applies. Alternatively, the liabilities are not taken into account under § 358(d) because such contingent liabilities are not "liabilities" for federal income tax purposes. Consequently, as shown on Exhibit 1, the BFI Entities' sales of the Class B Common Stock resulted in an aggregate capital loss of $901,660,007 in the 1999 tax year.

Claimant's deduction of the capital loss resulting from the sale of the Class B Common Stock during the 1999 tax year was disallowed by the Internal Revenue Service's (the "Service") examination team. The disallowance of the capital loss is reflected in Issue 71 of the Examination Report dated May 31, 2002 and revised September 3, 2002. The disallowance of the capital loss is incorrect and without merit. Claimant hereby incorporates by reference all documents, letters, schedules, explanations, protests, and other correspondence on this issue supplied to the Service.

As a result of the changes herein, Claimant's tax liability is reduced by $-0- or such greater amount as is legally refundable.

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**FORM 1120X EXPLANATION OF CHANGES**
**ATTACHMENT 1**
**EXHIBIT 1**

| Shares Sold of: | Seller | Seller's FEIN | Sales Price | Basis | Gain (Loss) |
|---|---|---|---|---|---|
| Browning-Ferris Industries Europe, Inc. | Browning-Ferris Industries, Inc. | 74-1673682 | 155,840 | 155,995,840 | (155,840,000) |
| **Entity Total** | | | **155,840** | **155,995,840** | **(155,840,000)** |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries, Inc. | 74-1673682 | 121 | 120,120 | (119,999) |
| BFI Trans River (LP), Inc. | Attwoods of North America, Inc. | 98-0066273 | 2,022 | 2,022,020 | (2,019,998) |
| BFI Trans River (LP), Inc. | BFI Waste Systems of New Jersey, Inc. | 22-1755133 | 9,842 | 9,849,840 | (9,839,998) |
| BFI Trans River (LP), Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 72,871 | 72,952,880 | (72,880,009) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 6,552 | 6,556,550 | (6,549,998) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 4,949 | 4,954,950 | (4,950,001) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 941 | 940,940 | (939,999) |
| BFI Trans River (LP), Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 2,563 | 2,562,560 | (2,559,997) |
| BFI Trans River (LP), Inc. | CECOS International, Inc. (New York) | 16-1069544 | 1,417 | 1,421,420 | (1,420,003) |
| BFI Trans River (LP), Inc. | Woodlake Sanitary Service, Inc. | 41-0673360 | 28 | 30,030 | (30,002) |
| **Entity Total** | | | **101,306** | **101,411,310** | **(101,310,004)** |
| BFI Energy Systems of Plymouth, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 278,417 | 278,698,420 | (278,420,003) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 16,125 | 16,126,110 | (16,109,985) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 49,040 | 49,099,050 | (49,050,010) |
| BFI Energy Systems of Plymouth, Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 4,164 | 4,164,160 | (4,159,996) |
| BFI Energy Systems of Plymouth, Inc. | International Disposal Corp. of California | 94-2229685 | 6,063 | 6,066,060 | (6,059,997) |
| BFI Energy Systems of Plymouth, Inc. | New Morgan Landfill Company, Inc. | 23-2645522 | 15,991 | 16,016,000 | (16,000,009) |
| **Entity Total** | | | **369,800** | **370,169,800** | **(369,800,000)** |
| Browning-Ferris Industries Asia Pacific, Inc. | CECOS International, Inc. (New York) | 16-1069544 | 69,810 | 69,879,810 | (69,810,000) |
| **Entity Total** | | | **69,810** | **69,879,810** | **(69,810,000)** |
| BFI Services Group, Inc. | BFI Waste Systems of New Jersey, Inc. | 22-1755133 | 7,438 | 7,437,430 | (7,429,992) |
| BFI Services Group, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 138,661 | 138,808,670 | (138,670,009) |
| BFI Services Group, Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 314 | 310,310 | (309,996) |
| BFI Services Group, Inc. | Browning-Ferris Industries of California, Inc. | 95-2772010 | 7,072 | 7,077,070 | (7,069,998) |
| BFI Services Group, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 21,084 | 21,111,090 | (21,090,006) |
| BFI Services Group, Inc. | Browning-Ferris, Inc. (MD) | 74-1990096 | 6,181 | 6,176,170 | (6,169,989) |
| BFI Services Group, Inc. | Browning-Ferris Industries, Inc. (Mass) | 04-1254350 | 11,210 | 11,221,210 | (11,210,000) |
| BFI Services Group, Inc. | Woodlake Sanitary Service, Inc. | 41-0673360 | 1,860 | 1,871,870 | (1,870,010) |
| **Entity Total** | | | **193,820** | **194,013,820** | **(193,820,000)** |
| BFI Energy Systems of Boston, Inc. | BFI Waste Systems of North America, Inc. | 41-1696636 | 830 | 830,830 | (830,000) |
| BFI Energy Systems of Boston, Inc. | Browning-Ferris Industries Chem. Services | 74-1362353 | 5,670 | 5,675,670 | (5,670,000) |
| BFI Energy Systems of Boston, Inc. | Browning-Ferris Industries of Ohio, Inc. | 74-6186941 | 4,580 | 4,584,580 | (4,580,000) |
| **Entity Total** | | | **11,080** | **11,091,080** | **(11,080,000)** |
| **Combined Entities Total** | | | **901,656** | **902,561,660** | **(901,660,004)** |

1.4

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**EMPLOYER IDENTIFICATION NUMBER 74-1673682**
**FORM 1120X EXPLANATION OF CHANGE**
**ATTACHMENT 1**
**EXHIBIT 2**

| Liability Management Company | Description of Liabilities Assumed | Consulting Investors |
|---|---|---|
| BFI Services Group, Inc. | Routine post-closure costs associated with closed landfills | Foster Environmental<br>Herst & Associates<br>Power Strategies, Inc. |
| Browning-Ferris Industries Asia Pacific, Inc. | Costs associated with hazardous waste management | COMCOR Environmental, Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Energy Systems of Boston, Inc. | Remediation costs associated with chemical waste management | COMCOR Environmental Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Trans River (LP), Inc. | Transaction costs for Superfund matters, remediation costs, potential legal settlements, and related legal and engineering costs | COMCOR Environmental Ltd.<br>Herst & Associates<br>Nelson Perel<br>Tim Webster |
| BFI Energy Systems of Plymouth, Inc. | Closing costs, capping costs and storm water control costs associated with operating active landfills | COMCOR Environmental Ltd.<br>Foster Environmental<br>Herst & Associates |
| Browning-Ferris Industries Europe, Inc. | Contingent Insurance Liabilities (auto, general, and workman's compensation) | Willis Corroon Corp. of Arizona |

1.5

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**FORM 1120X DETAIL**
**YEAR ENDED JULY 30, 1999**

| | | | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss |
|---|---|---|---|---|---|
| 1a | Gross receipts or sales | | 3,909,425,714 | | 3,909,425,714 |
| 1b | Less returns & allowances | | 0 | | 0 |
| 1c | Balance | | 3,909,425,714 | | 3,909,425,714 |
| 2 | Cost of goods sold | | 1,432,781,981 | | 1,432,781,981 |
| 3 | Gross profit | | 2,476,643,733 | | 2,476,643,733 |
| 4 | Dividends | | 4,133,968 | | 4,133,968 |
| 5 | Interest | | 518,208,385 | | 518,208,385 |
| 6 | Gross rents | | (84,974) | | (84,974) |
| 7 | Gross royalties | | | | 0 |
| 8 | Capital gain net income | | 80,923,602 | (80,923,602) | 0 |
| 9 | Net gain or (loss) from Form 4797 | | (51,182,136) | | (51,182,136) |
| 10 | Other income | | 164,948,916 | | 164,948,916 |
| 11 | **Total income** | | 3,193,591,494 | | 3,112,667,892 |
| 12 | Compensation of officers | | 7,558,922 | | 7,558,922 |
| 13a | Salaries and wages | 728,161,650 | | 728,161,650 | |
| 13b | Less employment credits | 0 | | 0 | |
| 13c | Balance | | 728,161,650 | | 728,161,650 |
| 14 | Repairs and maintenance | | 72,063,077 | | 72,063,077 |
| 15 | Bad debts | | 15,586,472 | | 15,586,472 |
| 16 | Rents | | 32,789,476 | | 32,789,476 |
| 17 | Taxes and licenses | | 93,842,650 | | 93,842,650 |
| 18 | Interest | | 616,523,420 | | 616,523,420 |
| 19 | Charitable contributions | | 0 | | 0 |
| 20 | Depreciation | 327,244,598 | | 327,244,598 | |
| 21a | Less Depreciation claimed on Sch. A and elsewhere | 0 | | 0 | |
| 21b | | | 327,244,598 | | 327,244,598 |
| 22 | Depletion | | 0 | | 0 |
| 23 | Advertising | | 7,858,285 | | 7,858,285 |
| 24 | Pension, profit-sharing, etc. plans | | 73,448,675 | | 73,448,675 |
| 25 | Employee benefit programs | | 32,965,225 | | 32,965,225 |
| 26 | Other deductions | | 1,263,720,378 | | 1,263,720,378 |
| 27 | **Total deductions** | | 3,271,762,828 | | 3,271,762,828 |
| 28 | Taxable income before NOL & spec. ded. | | (78,171,334) | | (159,094,936) |
| 29a | Net operating loss deduction | | | 0 | |
| 29b | Special deductions | | | 0 | |
| 29c | | | 0 | | 0 |
| 30 | **Taxable income** | | (78,171,334) | | (159,094,936) |
| 31 | **Total tax (Schedule J, Line 10)** | | 0 | | 0 |
| 32a | Overpayment from previous year | 0 | | 0 | |
| 32b | Estimated tax payments & Backup withholding | 90,500,000 | | 90,500,000 | |
| 32c | Less refund applied for on Form 4466 | (80,000,000) | | (80,000,000) | |
| 32d | Balance | 10,500,000 | | 10,500,000 | |
| 32e | Tax deposited with Form 7004 | | | 0 | |
| 32f | Credit for tax paid on undistributed capital gains | | | 0 | |
| 32g | Credit for Federal tax on fuels | 5,447 | 10,505,447 | 5,447 | 10,505,447 |
| 33 | Estimated tax penalty | | | | |
| 34 | Tax due | | 0 | | 0 |
| 35 | Overpayment | | 10,505,447 | | 10,505,447 |
| 36 | Credited to following year/Refunded | 10,500,000 | 5,447 | 10,500,000 | 5,447 |

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**FORM 1120X DETAIL**
**YEAR ENDED JULY 30, 1999**

| | | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss | |
|---|---|---|---|---|---|
| **Schedule J--Tax computation** | | | | | |
| 1 | Check if member of controlled group | | N/A | | N/A |
| 2a | Share of $50,000, $25,000, and $9,925,000 bracket amt. | | | | |
| 2b | Share of (1) additional 5% tax, (2) additional 3% tax | | | | |
| 3 | Income tax | | 0 | | 0 |
| 4a | Foreign tax credit | 0 | | 0 | |
| 4b | Possessions tax credit | 0 | | 0 | |
| 4c | Nonconventional source fuel credit | 0 | | 0 | |
| 4d | General business credit | 0 | | 0 | |
| 4e | Credit for prior year minimum tax | 0 | | 0 | |
| 5 | Total--add Lines 4a through 4e | | 0 | | 0 |
| 6 | Subtract line 5 from line 3 | | 0 | | 0 |
| 7 | Personal holding company tax | | 0 | | 0 |
| 8 | Recapture taxes | | 0 | | 0 |
| 9 | Alternative minimum tax | | 0 | | 0 |
| 10 | Total tax | | 0 | | 0 |

**BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES**
**ALTERNATIVE MINIMUM TAX - CORPORATIONS (FORM 4626) DETAIL**
**YEAR ENDED JULY 30, 1999**

| | Per Audit Statement Dated April 6, 2005 | | As Amended due to Claim for Capital Loss | |
|---|---|---|---|---|
| 1 Taxable income or (loss) before net operating loss deduction | | (78,171,334) | (80,923,602) | (159,094,936) |
| 2 **Adjustments and preferences:** | | | | |
| 2a Depreciation of post-1986 property | 18,714,881 | | 18,714,881 | |
| 2e Adjusted gain or loss | (22,787,113) | | (22,787,113) | |
| 2m Depletion | 485,527 | | 485,527 | |
| 2r Other adjustments and preferences | - | (3,586,705) | - | (3,586,705) |
| 3 Pre-adjustment alternative minimum taxable income (AMTI) | | (81,758,039) | | (162,681,641) |
| 4 **Adjusted current earnings (ACE) adjustment:** | | | | |
| 4a ACE from line 10 of the worksheet on page 11 of the instructions | | (103,264,056) | | (184,187,658) |
| 4b Subtract line 3 from line 4a. If line 3 exceeds line 4a, enter the difference as a negative amount. | | (21,506,017) | | (21,506,017) |
| 4c Mulitply line 4b by 75%. Enter the result as a positive amount. | | 16,129,513 | | (16,129,513) |
| 4d Enter the excess, if any, of the corporation's total increases in AMTI from prior year ACE adjustments over its total reductions in AMTI from prior year ACE adjustments. | | 36,509,701 | | 36,509,701 |
| 4e ACE adjustment. - If line 4b is zero or more, enter the amount from line 4c. - If line 4b is less than zero, enter the smaller of line 4c or line 4d as a negative amount | | (16,129,513) | | (16,129,513) |
| 5 Combine lines 3 and 4e. If zero or less, stop here; the corporation does not owe any AMT. | | (97,887,552) | | (178,811,154) |
| 6 Alternative tax net operating loss deduction | | - | | - |
| 7 **Alternative minimum taxable income** Subtract line 6 from line 5. | | - | | - |
| 9 **Exemption phase-out** (if line 7 is $310,000 or more, skip lines 8a and 8b and enter -0- on line 8c): | | | | |
| 9a Subtract $150,000 from line 7. If zero or less, enter -0-. | | - | | - |
| 9b Mulitply line 8a by 25%. | | - | | - |
| 9c Exemption. Subtract line 8b from $40,000. If zero or less, enter -0-. | | - | | - |
| 10 Subtract line 8c from line 7. If zero or less, enter -0-. | | - | | - |
| 11 Mulitply line 9 by 20%. | | - | | - |
| 12 Alternative minimum tax foreign tax credit (AMTFTC) | | - | | - |
| 13 Tentative minimum tax. Subtract line 11 from line 10. | | - | | - |
| 14 Regular tax liability before all credits except the foreign tax credit and possessions tax credit. | | - | | - |
| 15 **Alternative minimum tax.** Subtract line 13 from line 12. If zero or less, enter -0-. Enter here and on Form 1120 Schedule J, line 4, or the appropriate line of the corporation's income tax return. | | - | | - |

SCHEDULE D (Form 1120)

Department of the Treasury Internal Revenue Service

# Capital Gains and Losses

To be filed with Forms 1120, 1120-A, 1120-IC-DISC, 1120-F, 1120-FSC, 1120-H, 1120-L, 1120-ND, 1120-PC, 1120-POL, 1120-REIT, 1120-RIC, 1120-SF, 990-C, and certain Forms 990-T

OMB No. 1545-0123

1998

Name: BROWNING FERRIS INDUSTRIES, INC.& SUBSIDIARIES

Employer identification number: 74-1673682

## Part I Short-Term Capital Gains and Losses - Assets Held One Year or Less

| (a) Kind of property and description (Example, 100 shares of Z Co.) | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Sales price (see instructions) | (e) Cost or other basis (see instructions) | (f) Gain or (loss) ((d) less (e)) |
|---|---|---|---|---|---|
| 1 As Previously Adjusted per | Audit Statement Dated April 6, 2005 | | | | (78,278,228) |
| | | | | | |
| Claim for Refund due to | | | | | |
| Capital Loss | | | | | (901,660,007) |

| | | |
|---|---|---|
| 2 Short-term capital gain from installment sales from Form 6252, line 26 or 37 | 2 | |
| 3 Short-term gain or (loss) from like-kind exchanges from Form 8824 | 3 | |
| 4 Unused capital loss carryover (attach computation) . Stmt .254. | 4 | ( ) |
| 5 Net short-term capital gain or (loss). Combine lines 1 through 4. | 5 | |

## Part II Long-Term Capital Gains and Losses - Assets Held More Than One Year

| (a) | (b) | (c) | (d) | (e) | (f) |
|---|---|---|---|---|---|
| 6 As Previously Adjusted per | Audit Statement Dated April 6, 2005 | | | | 159,201,830 |

| | | |
|---|---|---|
| 7 Enter gain from Form 4797, column (g), line 7 or 9 | 7 | |
| 8 Long-term capital gain from installment sales from Form 6252, line 26 or 37 | 8 | |
| 9 Long-term gain or (loss) from like-kind exchanges from Form 8824 | 9 | |
| 10 Net long-term capital gain or (loss). Combine lines 6 through 9 | 10 | 159,201,830 |

## Part III Summary of Parts I and II

| | | |
|---|---|---|
| 11 Enter excess of net short-term capital gain (line 5) over net long-term capital loss (line 10) | 11 | |
| 12 Net capital gain. Enter excess of net long-term capital gain (line 10) over net short-term capital loss (line 5) | 12 | |
| 13 Add lines 11 and 12. Enter here and on Form 1120, page 1, line 8, or the proper line on other returns | 13 | NONE |

**Note:** *If losses exceed gains, see* Capital losses *in the instructions below.*

## Instructions

*Section references are to the Internal Revenue Code unless otherwise noted.*

### Purpose of Schedule

Use Schedule D to report sales and exchanges of capital assets and gains on distributions to shareholders of appreciated capital assets.

Report sales, exchanges, and distributions of property other than capital assets on Form 4797, Sales of Business Property. Include on Form 4797 a sale, exchange, or distribution of property used in a trade or business; involuntary conversions (from other than casualties or thefts); gain from the disposition of oil, gas, or geothermal property; and the section 291 adjustment to section 1250 property. See the instructions for Form 4797 for details.

If property is involuntary converted because of a casualty or theft, use Form 4684, Casualties and Thefts.

### Parts I and II

Generally, a corporation must report sales and exchanges even if there is no gain or loss. Use Part I to report the sale, exchange, or distribution of capital assets held one year or less. Use Part II to report the sale, exchange, or distribution of capital assets held more than one year. Use the trade dates for the dates of acquisition and sale of stocks and bonds on an exchange or over-the-counter market.

**What is a capital asset?** Each item of property the corporation held (whether or not connected with its trade or business) is a capital asset except:

1. Assets property included in inventory or property held mainly for sale to customers.

2. Depreciable or real property used in the trade or business.

3. Certain copyrights; literary, musical, or artistic compositions; letters or memoranda; or similar property.

4. Accounts or notes receivable acquired in the ordinary course of trade or business for services rendered or from the sale of property described in 1 above.

5. U.S. Government publications, including the Congressional Record, that the corporation received from the Government, other than by purchase at the normal sales price, or that the corporation got from another taxpayer who had received it in a similar way, if the corporation's basis is determined by reference to the previous owner's basis.

**Capital losses.** Capital losses are allowed only to the extent of capital gains. A net capital loss is carried back 3 years and forward 5 years as a short-term capital loss. Carry back a capital loss to the extent it does not increase or produce a net operating loss in the tax year to which it is carried. Foreign expropriation capital losses cannot be carried back, but are carried forward 10 years. A net capital loss for a regulated investment company is carried forward 8 years.



As Amended due to Claim for Capital Loss

2.4

| Form 3610 (Rev. March 1986) | Department of the Treasury -- Internal Revenue Service<br>**Audit Statement** | Symbols<br>AP:FW:HOU:DM:SJC |
|---|---|---|
| Name of Taxpayer<br>Browning-Ferris Industries, Inc. | SSN or EIN<br>74-1673682 | Date Prepared<br>04/06/05 |
| Kind of Tax<br>Income | | Docket Number |

| Tax Period Ended | DEFICIENCY (OVERASSESSMENT) (Increase or decrease in Tax and Penalties) | | | | |
|---|---|---|---|---|---|
| | TAX | IRC SECTION 6662 | | | |
| 9/30/1996 | (1,014,022) | - | | | |
| 9/30/1997 | 19,079,286 | - | | | |
| 9/30/1998 | 3,519,979 | - | | | |
| 7/31/1999 | None | None | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

[X] Interest for 199609, 199709 & 199809 will be computed under sections 6611(f) & 6601(d) of the Internal Revenue Code.
*(Year)*

[X] Interest for 9/30/96 is subject to the General Agreement on Tariffs & Trade.

[X] Interest for 9/30/97 will be computed under Rev. Rul. 99-40 (Sequa). See form 2220 for 9/30/98.

[X] Interest for 9/30/96 & 9/30/97 is subject to the provisions of IRC Section 6621(c ). The applicable date will be determined based upon the Revenue Agent Report dated 9/03/2002.

Disk Id: BFIAppADJUSTS.XLS, BFIFTC96, BFIFTC97-2, BFIFTC98, BFIAppSettlement.CT

Form 3610 (Rev. 3-86)

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 APR 2005 Received Corp. Tax Dept.

3.1

**Joint Committee Case**
**Spread Sheet Analysis**

Taxpayer's Name
Browning-Ferris Industries, Inc.

| Item | Years | 09/30/1996 | 09/30/1997 | 09/30/1998 | 07/31/1999 |
|---|---|---|---|---|---|
| A. | Taxable income (loss) per return as filed | 231,469,821 | 211,881,172 | 412,759,986 | (145,907,722) |
| B. | Adjustments: | | | | |
| | 1. Prior (RAR, 1120X) | | | | |
| | 2. Current (except carrybacks) | 12,355,347 | 21,125,908 | 47,769,581 | 67,736,388 |
| C. | Taxable income before NOL or CL deduction | 243,825,168 | 233,007,080 | 460,529,567 | (78,171,334) |
| D. | NOL or CL deduction: | | | | |
| | Carryback from 9907 | | (78,171,334) | | |
| E. | Corrected taxable income | 243,825,168 | 154,835,746 | 460,529,567 | (78,171,334) |
| F. | Tax on line E. before credits | 85,338,809 | 54,192,512 | 161,185,348 | |
| G. | Credits utilized (Sched. Att'd) | | | | |
| | Foreign tax credit - current | 12,000,161 | 5,022,278 | 87,738,489 | |
| | Non Conventional Fuel Credit | 2,101,885 | 6,385,577 | 3,521,547 | |
| | Foreign tax credit - c.b. 9809 | 374,426 | | | |
| | Foreign tax credit - c.b. 9709 due to 9907 | 2,475,778 | | | |
| | Foreign tax credit - c.f. 9709 due to 9907 | | | 3,775,711 | |
| H. | Balance of tax | 68,386,559 | 42,784,657 | 66,149,601 | 0 |

BFIAppADJUSTS.XLS
4/22/2005

Substitute F5278

3.2

**Joint Committee Case**
**Spread Sheet Analysis**

Taxpayer's Name
Browning-Ferris Industries, Inc.

| | (Continuation sheet) | 09/30/1996 | 09/30/1997 | 09/30/1998 | 07/31/1999 |
|---|---|---|---|---|---|
| H. | Balance of tax (prior pg.) | 68,386,559 | 42,784,657 | 66,149,601 | 0 |
| I. | Other tax (specify) | | | | |
| | Investment Credit Recapture | 674 | | | |
| | Environmental Tax | 321,238 | | | |
| J. | Total corrected tax liability | 68,708,471 | 42,784,657 | 66,149,601 | 0 |
| K. | Total tax paid per return | 69,722,493 | 56,414,662 | 72,128,421 | 0 |
| L. | Prior deficiency (overassessment) | | | | |
| M. | Tentative Refunds | | | | |
| | Tentative Allowance - 9907 | | (32,709,291) | (9,498,799) | |
| N. | Net tax paid | 69,722,493 | 23,705,371 | 62,629,622 | 0 |
| O. | Deficiency (overassessment) | (1,014,022) | 19,079,286 | 3,519,979 | 0 |

Page 11
4/5/2005

BROWNING-FERRIS INDUSTRIES, INC.
Capital Gains /
Losses

| | | | | | |
|---|---|---|---|---|---|
| 5701 # | | | | | |
| | | 199609 | 199709 | 199809 | 199907 |
| | Current yr. net ST capital gain/loss per return | (2,200,797) | (4,314,461) | (44,079) | (932,535,531) |
| 44 | Audit adjustment | | | | |
| 71 | Audit adjustment | | 419,363 | | |
| | Corrected net STCG | | | | 901,660,007 |
| | | (2,200,797) | (3,895,098) | (44,079) | (30,875,524) |
| | Current yr. net LT capital gain/loss per return | 75,055 | (68,275,445) | 76,032,590 | 164,147,568 |
| 28 | Audit adjustment | | | | |
| 44 | Audit adjustment | | | (1,531,596) | |
| 48 | Audit adjustment | | 30,671,658 | | |
| 76 | Audit adjustment | | | 7,541,929 | |
| 78 | Audit adjustment | | | (12,520,910) | (4,234,305) |
| | Corrected net LTCG | | | (28,296,915) | (711,430) |
| | | 75,055 | (37,603,787) | 41,225,098 | 159,201,833 |
| | Capital Loss c/f per return | (33,616,596) | | | |
| | Adjustment | (11,342,503) | | | |
| | Capital Loss c/f as correct | (44,959,099) | (47,084,841) | (88,583,726) | (47,402,707) |
| | Capital Loss c/f to subsequent year | (47,084,841) | (88,583,726) | (47,402,707) | - |
| | Capital Gain as redetermined | | | | |
| | Capital Gain per return | | | | 80,923,602 |
| | Adjustment | | | | - |
| | | | | | 80,923,602 |

BFIAppADJUSTS.XLS

3.4

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

**ISSUE No. 71**

**ISSUE:**

1. Are the taxpayer's subsidiaries entitled to an aggregate capital loss deduction in the amount of $901,660,007 on the sale of the class B common stock of the six SPE for the tax year ending July 31, 1999?

2. Does section 357(b) apply to disallow the transaction?

3. Does section 357(c) apply to the transaction?

**ADJUSTMENTS:**

SEE ATTACHEMENT 1 for details per subsidiary.

| | 199907 |
|---|---|
| Short Term Capital Loss Per Return | (901,660,007) |
| Short Term Capital Loss Per Examination | 0 |
| Adjustment | 901,660,007 |
| | |
| Capital Loss Carryover per Return | 811,110,031 |
| Capital Loss Carryover per Examination | 0 |
| Adjustment | 811,110,031 |

**FACTS:**

In July of 1999, BFI, Inc. (parent) used the following subsidiaries for a transaction described in Notice 2001-17 and Notice 2001-33. These entities and the type of contingent liabilities that were transferred are:

| | |
|---|---|
| 1. Browning-Ferris Industries Europe, Inc. | Non Environmental Liabilities |
| 2. Browning-Ferris Industries Services Group, Inc. | Environmental Liabilities |
| 3. Browning-Ferris Industries Asia Pacific, Inc. | Environmental Liabilities |
| 4. BFI Energy Systems of Boston, Inc. | Environmental Liabilities |
| 5. BFI Trans River (LP), Inc. | Environmental Liabilities |
| 6. BFI Energy Systems of Plymouth, Inc. | Environmental Liabilities |

**PROMISSORY NOTES**

Each of the BFI, Inc. subsidiaries that transferred contingent liabilities to the six special purpose entities also transferred a promissory note. These notes were created by the formalization of intercompany account receivables. They were all similar as to terms and conditions. The following example of the terms is one that was transferred to BFI Asia Pacific, Inc.

Promissory note dated 07/07/01
Signed by Eileen Schuler, Vice President

Note was issued by Browning-Ferris Financial Services, Inc. to Browning-Ferris Industries, Inc. in the amount of $69,879,810 at 8% interest. The note could not be prepaid without advance consent of the obligee. They would have to pay the total amount due under the note in order to prepay it. The principal sum and any interest outstanding will be due and payable in full 12 years from the date hereof.

**CONTRIBUTION AGREEMENTS**

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

**CONTRIBUTION AGREEMENTS**

The following contribution agreement was selected from BFI Asia Pacific, Inc as an example of terms and conditions.

Dated 07/07/1999
Signed by Eileen B. Schuler, Vice President for Cecos International, Inc.
Signed by Eileen B. Schuler, Vice President for Browning-Ferris Industries Asia Pacific, Inc.

CECOS International Inc. (Contributor)
Browning-Ferris Industries Asia Pacific, Inc. (Company)

Contributor gave note from Browning Ferris Financial Services Inc. to Browning-Ferris Industries, Inc. for $69,879,810 at 8% interest and transferred contingent liabilities representing costs associated with hazardous waste management, as well as other post-closure costs including leachate management, ground water monitoring, cover management, property management and administrative expenses. The site names were:

| | |
|---|---|
| Aber Road | Williamsburg, OH |
| Calcasieu | Sulphur, LA |
| Livingston | Livingston, LA |
| Niagara Falls | Niagra Falls, NY |

The Class B Common Stock of Browning-Ferris Industries Asia Pacific, Inc. was not registered and had restrictions on the sale. It was subject to the right of first refusal by the holders of the Class Common stock of the company to repurchase the stock unless that right is waived.

**ADMINISTRATIVE SERVICES AGREEMENT**

On July 7, 1999 Browning-Ferris Industries, Inc. (BFI) and each of the six special purpose entities entered into an Administrative Services Agreement for various services. Some of these services are:

Administrative and General Expenditures
Technical Assistance
Tax Matters
Registration and Transfer of Recipient Securities
SEC Filings
Investor Relations
Audit
Treasury and Banking

**STOCK PURCHASE AND SALE AGREEMENT**

Each of the subsidiaries that received Class B common stock from one of the SPB in the Contribution agreement entered into a Stock Purchase and Sale Agreement with one of the accommodating parties who purchased the class B common stock from them. Each of the accommodating parties had an ongoing business relationship with Allied Waste although most did not have a business relationship with BFI. The accommodating parties' ownership of the SPE is shown below.

Class B Stock Ownership of the six SPE

| Purchaser | BFI Trans River | BFI Asia-Pacific | BFI Services Group | BFI Energy Systems of Boston | BFI Energy Systems of Plymouth | BFI Europe |
|---|---|---|---|---|---|---|



000343

4.2

| | | | | | | |
|---|---|---|---|---|---|---|
| Comcor | 37% | 90% | | 37% | 98% | |
| Environmental Power Strategies | | | 99% | | | |
| Herst & Associates | 18% | 3% | 1% | 18% | 1% | |
| Nelson Porel | 23% | 3% | | 22% | | |
| Tim Webster | 22% | 4% | | 23% | | |
| Foster Environmental | | | | | 1% | |
| Willis Coroon Corp. | | | | | | 100% |

Each of the SPE had 111 shares of Class B Common Stock outstanding except for BFI Services Group that had 74 shares of Class B Common Stock outstanding. The number of shares sold, the amount received on the sale and the tax loss taken by each of the entities are shown in attachment 2.

Each of the Stock Purchase and Sale Agreements appeared identical and were dated July 9th, 1999. They noted the SPE stock being sold, the subsidiary selling the stock and which accommodating party was buying the stock. The agreement noted that the Stock was subject to provisions set out in the Company's amended and restated articles of incorporation. It was also restricted on transferability set out in the Contribution Agreement. The parent waived the right of first refusal for a few specific entities.

The Class B Common Stock was not registered under the Securities Act of 1933 and could not be resold without registration or representation that the stock is still exempt from registration.

On page 4 of the agreement it notes in item 5a. that:

> To the maximum extent permitted by applicable law, Seller and BFI, jointly and severally, shall indemnify, defend and hold the Purchaser harmless against any liability, loss, cost, or expense of any kind (other that the potential loss of the Purchaser's original investment in the Sale Stock), or any increase in any such liability, to the extent that such liability loss, cost or expense directly or indirectly results from, arises out of, or is related to Purchaser's owning or holding the Sale Stock.

**REVOLVING CREDIT AGREEMENT**

Each of the six special purpose subsidiaries had a revolving credit agreement with Browning-Ferris Industries Inc. at 6.5 % interest to take care of cash flow needs. The total amount they could borrow under the agreement varied between the subsidiaries. They could be prepaid at any time.

**AMENDED AND RESTATED ARTICLES OF INCORPORATION**

Each of the six special purpose subsidiaries amended their articles of incorporation on July 7, 1999 to create the shares of the class B common stock. The articles also included the put and call features for the redemption of the shares by a call by the company on or after July 7, 2004 and a put by the purchaser on or after July 7, 2005. The maximum amounts to be paid on redemption would be:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
|---|---|---|
| BFI Europe, Inc. | 16,848 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| | TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | |
| Entity Name: | Various | Issue Number: 71 |

| | | |
|---|---|---|
| BFI Energy Systems of Boston, Inc. | 1,256 | 139,636 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

**INDIVIDUALS INTERVIEWED**

Selected interviews are addressed here. Not all questions that were asked have been included in this section. The Allied Waste, Inc. personnel and the third party purchaser interviews were transcribed by a court reporter. For all of the questions and answers, please refer to the transcripts. The information has been summarized below for the Allied Waste, Inc. personnel. The transcript from the court report for the purchasers of the class B common stock that were interviewed has not been received. The questions and responses were prepared from notes taken during the interviews.

**INDIVIDUALS FORMERLY WITH BFI, INC.**

**Bruce Ranck, former President and CEO of BFI, Inc.**

Q: In 1999, what was your position with the company?

A: In early 1999, he was President and CEO.

Q: Are you familiar with these transactions which took place in July of 1999?

A: Not specifically.

Q: How did you become aware of the transactions?

A: He knows that they occurred.

Q: When did you become aware of the transactions?

A: He guessed it was April or May when he heard of this transaction.

Q: Whose idea was it to initiate these transactions? (Allied or BFI?)

A: Allied.

Q: Would BFI have implemented these transactions without Allied's acquisition of BFI?

A: Not at that time.

Q: Were there any written agreements related to these transactions between Allied and BFI?

A: He does not know.

Q: Were you the person that gave the final approval to implement this transaction for BFI? If not, who?

A: Ultimately, he was the person based on the advice of legal and financial people. It would not jeopardize BFI.

Q: Were there any discussions that the sale of the Class B Common Stock to the third parties would trigger a taxable event outside the consolidated group?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: No.

Q: Had you ever considered any similar transaction with these contingent liabilities before these were done in July of 1999?

A: They had looked at similar transactions a couple of years prior to 1999. They were not appropriate for BFI at that time.

Q: Who paid the fees to AA?

A: Was not BFI.

Q: Who paid the fees to Latham & Watkins?

A: Was not BFI.

Q: Was BFI involved in a joint engagement with Allied for the services of Latham & Watkins?

A: He does not know.

Q: What would have happened if the BFI shareholders had not approved the merger?

A: The shareholder support was overwhelming. They were happy with the buyout.

**Jeff Curtis, former Chief Financial Officer of BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Senior Vice President and Chief Financial Officer.

Q: Who did you report to?

A: Bruce Ranck, President and CEO.

Q: Are you familiar with these transactions which took place in July of 1999?

A: In a general sense of the type of transaction being considered.

Q: How did you become aware of the transaction?

A: After the merger agreement. Allied requested BFI to implement the transactions.

Q: Whose idea was it to initiate these transactions? Allied or BFI?

A: Requested to be done on behalf of Allied.

Q: Was there a separate agreement regarding this transaction between BFI and Allied? Other than the merger agreement.

A: Not that he was aware of. Allied wanted to run the environmental different than BFI.

Q: Who paid the fees to AA?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: Not aware.

Q: Who paid the fees to Latham & Watkins?

A: Not aware.

Q: Was BFI involved in a joint engagement with Allied for the services of Latham & Watkins?

A: Assume that they did.

**Eileen Schuler, Assistant Corporate Secretary of BFI, Inc.**

Q: In 1999, what was your position with the company?
A: Assistant Corporate Secretary, BFI, Inc. Officer of various subsidiaries

Q: Are you familiar with these transactions which took place in July of 1999?
A: Most of them.

Q: How did you become aware of the transaction?
A: She was informed by Eddie Norwood and Mr. Ranck. She was involved in the preparation of the documents.

Q: Were there any written agreements related to these transactions between Allied and BFI?

A: Not that she was aware.

Q: Who was the person authorized to give the final go ahead to implement this transaction?

A: CEO, Mr. Ranck wanted her to work on the transaction.

Q: Who paid the fees to AA?

A: She believes that BFI did. She executed the engagement letter with AA.

Q: Who paid the fees to Latham & Watkins?

A: She is not certain.

Q: When did the BFI shareholders approve the merger?

A: The meeting was in July.

**Walt Stone, former Assistant Treasurer with BFI, Inc.**

Q: In 1999, what was your position with the company?
A: Divisional VP, Assistant Treasurer

Q: How did you become aware of the transaction?
A: He was aware, but did not participate.

Q: Who was involved in the transaction initially?
A: Folks at Allied. Dale Parker

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: Were any alternatives for structuring this transaction considered? What were they? Did you consider other types of transactions in 1998?

A: Yes, Bruce Jernigan and Ron Long met with AA consulting regarding similar transactions in 1998 on some contingent liabilities.

Q: Who paid the fees to AA?
A: Does not know.

Q: Who paid the fees to Latham & Watkins?
A: Does not know.

**Rich Oakley, former Vice President Engineering, BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Divisional Vice President, Engineering.

Q: Are you familiar with these transactions which took place in July of 1999?

A: Second hand.

Q: Was the management of any of these contingent liabilities under your control? If so, which?

A: Accrual Active Landfills.

Q: How many people were involved in the management of these liabilities?

A: Environmental 1-2 per site.

Q: How many of these people were with the headquarters function?

A: Six.

Q: How many were in the field?

A: Environmental estimate of 100.

**Bruce Jernigan, former Division Vice President of Environmental Remediation and Closure Activities with BFI, Inc.**

Q: In 1999, what was your position with the company?

A: Divisional Vice President Environmental Remediation and Closure Activities.

Q: Are you familiar with these transactions which took place in July of 1999?

A: No

Q: Do you know what COMCOR Environmental Ltd. does?

A: No.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: Do you know what Herst & Associates does?

A: No.

Q: Do you know what Foster Environmental does?

A: No.

Q: Do you know what Power Strategies Energy LLC does?

A: Yes

Q: Do you know what Nelson Perel and Tim Webster do?

A: No.

Q: Did BFI ever consider any transactions similar to this prior to this transaction?

A: Various risk portfolio transfers in 1998 that were neutral to BFI then. Similar to 351. BFI uses a performance ROGA (Return on Gross Assets). The 1998 351 was either slightly positive or negative to ROGA then. No potential tax benefit to BFI at that time.

Only the concept was being considered. Bruce Ranck, CEO wanted a risk transfer type of transaction. In 1998 there were various types of transactions between BFI and third parties considered. Considered were sale or gifting of closed sites to third parties. They picked several to go forward with. It was beneficial after close. He gave the example of a golf course down by the Astrodome.

Q: Was the management of any of these contingent liabilities under your control? If so, which?

A: Remedial Sites, Superfund Liabilities, Closed sites.

Q: How many people were involved in the management of these liabilities?

A: Total of 100 US and International. Headquarters 7-9 professional.

**INTERVIEW WITH ALLIED WASTE, INC. PERSONNEL**

Mr. Rochford was only familiar with the BFI Europe transaction. That was the one used for the automobile, general liability and workman's compensation liabilities. Willis Corroon Corporation of Arizona was their insurance broker and had a business relationship with Allied Waste, Inc. He stated that BFI, Inc. handled the insurance claims in house. Allied Waste claims were handled by their insurance carrier AIG. After the merger they transferred the remaining BFI claims to a third party administrator.

For the complete questions and answers, please see the court reporter's transcript.

**Dale Parker, Tax Manager with Allied Waste, Inc.**

Mr. Parker stated that after the announcement of the purchase of BFI, Inc. meetings were held with Allied Waste, Inc. management and Arthur Andersen representatives to discuss the handling of the liabilities. He stated that Allied Waste, Inc. and BFI, Inc. jointly engaged Latham & Watkins to assist in the transactions. Latham & Watkins then engaged Arthur Andersen. All of the invoices from these firms were sent to Allied Waste, Inc. and paid after the merger. None of the fees were deducted on the short period BFI, Inc. return.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

For the complete questions and answers, please see the court reporter's transcript.

**Doug Borro, Director of Engineering for Allied Waste, Inc.**

Mr. Borro was familiar with all of the environmental liabilities transferred to the five special purpose subsidiaries. He was responsible for the due diligence done on the BFI, Inc. purchase. He selected all of the third party purchasers of the stock. Allied had a business relationship with all of the purchasers. He stated that five entities were used so that the liabilities could be segregated by type. For example, the superfund liabilities went to one entity. Mr. Borro stated that BFI had 200 people manage all of the liabilities which was different that Allied Waste's structure.

He stated that BFI had looked at a similar transaction to this one in 1998 along with several other types of transactions. Allied Waste senior management had communicated with the principals at BFI and reached an agreement that this would take place.

Mr. Borro stated that among the options that BFI considered in 1998 was the outright sale of the land companies and liabilities, two Environmental Remedial Management Initiative (ERMI) options and an insurance policy. The two ERMI options were different as too the amount of ownership interests that would be sold.

After the purchase of BFI he participated in the Strategic Action Committee (SAC) of each of the entities. The SAC handles projects at the sites and the selection of consultants for specific projects.

For the complete questions and answers, please see the court reporter's transcript.

**INTERVIEWS WITH THIRD PARTY PURCHASERS OF THE CLASS B COMMON STOCK**

**John Jacobs, Executive Vice President with Willis Corporation of Arizona**

Q: In 1999, what was your position with Willis Corroon Corporation of Arizona? Which entity?

A: Executive Vice President of Arizona entity.

Q: How long had you been in that position?

A: 21 years.

Q: Who did you report to?

A: Micheal C. Metzger

Q: What is the business function of Willis Corroon Corporation of Arizona?

A: Insurance Broker.

Q: How did you become aware of this transaction?

A: After Allied Waste hired them, they did a study on the BFI insurance liabilities in May or June of 1999. They were hired 1/1/99 by Allied.

Q: Who was the insurance carrier on these liabilities for BFI, Inc.?

A: AIG Insurance.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: Do you still own this stock?

A: Yes

**Ward Herst with Herst and Associates regarding purchase of Class B Common Stock**

Q: In 1999, what was your position with Herst and Associates?

A: Manager

Q: How long had you been in that position?

A: Since 1998. Prior to that he was an employee.

Q: What is the business function of Herst and Associates?

A: Environmental Groundwater and Soil Consulting.

Q: Are you familiar with these transactions which took place in July of 1999 by BFI Inc. and the subsequent sale of the Class B Common Stock of various BFI, Inc. subsidiaries to Herst and Associates?

A: Only with Item 5. (purchase of Class B Common Stock.)

Q: How did you become aware of this transaction?

A: Doug Borro with Allied Waste.

Q: Did you do the negotiations for your company for the purchase of the class B common stock?

A: Yes.

Q: Who did you negotiate with at Allied?

A: Doug Borro.

Q: Did you do any negotiations with anyone from BFI?

A: Not verbal.

Q: What information was furnished to you regarding this investment?

A: Purchase and Sale Agreement.

Q: Did you attend any meetings regarding this transaction?

A: Meeting in Scottsdale.

Q: With who? Who else was there?

A: Arthur Andersen. Lowell Griffin.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Q: How did you communicate with Allied/BFI on this transaction?

A: Verbal, then Purchase and Sale Agreement.

Q: Did your company have any involvement prior to this transaction with these liabilities at BFI?

A: Not Herst and Associates. Only as an employee of other company.

Q: Did your company have any involvement prior to this transaction with Allied?

A: Environmental consulting services to Allied ERMI entities.

Q: How were you paid for this?

A: Various.

Q: Did you feel that you had any risk in purchasing this stock? What was your risk?

A: Only risk was that the liabilities could not be settled for less. Only investment was $2000 per entity.

**Ron Poland with Comcor Environmental Ltd. regarding the purchase of the Class B Common Stock.**

Q: In 1999, what was your position with Comcor Environmental Ltd.?

A: He was an equity investor of Comcor Environmental Ltd.

Q: What is the business function of Comcor Environmental Ltd.?

A: Gas Wells and Management.

Q: Are you familiar with these transactions which took place in July of 1999 by BFI Inc. and the subsequent sale of the Class B Common Stock of various BFI, Inc. subsidiaries to Comcor Environmental Ltd.?

A: The four environmental subsidiaries.

Q: How did you become aware of this transaction?

A: Doug Borro.

Q: What information was furnished to you regarding this investment?

A: Landfill.

Q: Did you receive a prospectus or private placement memorandum?

A: Narrative.

Q: Did you attend any meetings regarding this transaction?

A: No, telephone.

Q: When did you become involved in the implementation of the transaction?

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

A: Midyear 1999.

Q: Did your company have any involvement prior to this transaction with these liabilities at BFI?

A: No.

Q: Did your company have any involvement prior to this transaction with Allied?

A: Gas Recovery Systems did.

Q: Has your company ever participated in this type of transaction for any other company beside Allied/BFI?

A: No.

Q: How is your company normally paid for it's services?

A: This is the only equity interest.

General Question responses.

Gas Recovery Systems earns approximately $2,000,000 per year. They made an offer for 32 sites of BFI for long term power purchase agreements.

**ARTHUR ANDERSEN**

Arthur Andersen was issued a summons to provide in whatever form, paper or electronic retention, the following with respect to the transactions described in the attached opinions dated August 24, 2000 from Arthur Anderson LLP to David C. Boatwright, Esq. with Latham & Watkins:

1. All correspondence between Arthur Anderson LLP and Browning-Ferris Industries, Inc. or it's subsidiaries regarding the implementation of the transactions described in the attached opinions.

2. All correspondence between Arthur Anderson LLP and Allied Waste Industries, Inc. or it's subsidiaries; regarding the implementation of the transactions described in the attached opinions.

3. All correspondence between Arthur Anderson LLP and all other third parties that participated in or assisted in the implementation of the transactions described in the attached opinions.

4. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to Browning-Ferris Industries, Inc. or it's subsidiaries concerning the promotion, sale and implementation of the transactions described in the attached opinions.

5. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to Allied Waste Industries, Inc. or it's subsidiaries concerning the promotion, sale and implementation of the transactions described in the attached opinions.

6. All prospectus, power point presentations, promotional materials, opinion letters, presentation materials and other documents (other than the attached opinions) provided to all other third parties that participated in or assisted in the implementation of the transactions.

7. All memos, notes of meetings, telephone conferences and email correspondence concerning the promotion, sale and implementation of the transactions reflected in the attached opinions.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

8. All other valuations and/or computations prepared such as cash flow analysis, projected tax savings and/or benefit analysis concerning the promotion, sale and implementation of the transactions reflected in the attached opinions.

The information provided was reviewed and the majority of the information was opinions, purchase and sale agreements, cash flow analysis, etc. Andersen also provided email and transcripts of telephone conversations

STRATEGIC ACTION COMMITTEE

<u>BFI Europe, Inc.</u>
The Strategic Action Committee (SAC) was authorized in the board meeting on June 28, 2000. At this meeting they also selected Cunningham Lindsey Claims Management, Inc. as the Third Party Administrator for these liabilities with the contract inception of September 30, 1999. An audit had been done by Cunningham Lindsey on the insurance claims and inventory of the claims. It stated that 70% of the BFI claims had been closed since the merger.

In the board meeting on May 16, 2001 they approved an annual consulting fee to Willis Corroon of $30,000.

<u>BFI Trans River (LP), Inc.</u>
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or litigation matters.

<u>BFI Asia Pacific, Inc.</u>
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the facilities.

<u>BFI Services Group, Inc.</u>
The Strategic Action Committee ( SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations. Some discussion related to Power Strategies wanting to get out of its contracts and sell the class B common stock that it owned.

<u>BFI Energy Systems of Plymouth, Inc.</u>
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the sites.

<u>BFI Energy Systems of Boston, Inc.</u>
The Strategic Action Committee (SAC) was authorized in the board meeting on October 21, 1999. Most of the quarterly SAC meetings dealt with budget or ongoing operations at the sites.

<u>FINANCIAL STATEMENT PRESENTATION VS. TAX TREATMENT</u>

These transactions were recorded as follows:

| | BOOK | TAX |
|---|---|---|
| Promissory Notes Transferred | $902,561,661 | $902,561,661 |
| Contingent Liabilities Transferred | ($901,660,007) | 0 |
| Basis | $901,654 | $902,561,661 |
| Amount Realized | $901,654 | $901,654 |
| Gain(Loss) | 0 | ($901,660,007) |

The above amounts do not reflect the $1,750,000 paid to the promoter, Arthur Andersen LLP, for assistance on the structure of the transaction, or the $130,400 paid to the law firm of Latham & Watkins for the tax opinion on the transaction.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999.

**LAW AND ARGUMENT**

The taxpayer provided a tax opinion prepared by the promoter, Arthur Andersen, for each of the six entities used in the transaction. The tax opinions stated that:

1. The Contributors' contributions to BFI Trans River of notes, subject to the contractual assumption of the Contributors' contingent environmental obligations, in exchange for all of the Class B common stock of BFI Trans River should, more likely than not, qualify for nonrecognition of gain or loss under Section 351(a) of the Internal Revenue Code of 1986, as amended (the "Code"). Unless otherwise noted, all Section references are to the Code.

2. The Contributors' tax bases in the Class B common stock of BFI Trans River should, more likely than not, equal the tax bases in the notes contributed to BFI Trans River, and should, more likely than not, not be reduced by the amount of the contingent environmental obligations assumed by BFI Trans River.

3. Losses on the sales of the Class B common stock of BFI Trans River by the Contributors should, more likely than not, not be duplicated losses within the meaning of Treasury Regulation Section 1.1502-20(c)(1)(iii), not be disallowed under the anti-avoidance or anti-stuffing rules of Treas. Reg. Section 1.1502-20(e), and not be disallowed under the intercompany transaction rules of Treas. Reg. Section 1.1502-13.

4. The Contributors' contributions of notes to BFI Trans River in exchange for its Class B common stock should, more likely than not, not be an acquisition made to evade or avoid income tax within the meaning of Section 269.

The promoter, Arthur Andersen, was paid $1,750,000 to assist in structuring these six transactions. Their opinion is self serving. The taxpayer paid the law firm of Latham & Watkins $130,504 for a tax opinion on these six transactions. These opinions have not been provided by the taxpayer and will not be addressed.

**PRIMARY POSITION**

**DOES SECTION 357(b) APPLY TO DISALLOW THE LOSS?**

I.R.C. section 351(a) provides that no gain or loss shall be recognized if property is transferred to a corporation by a person solely in exchange for stock in such corporation and immediately after the exchange such person is in control of the corporation.

I.R.C. section 351(b) provides that if I.R.C. section 351(a) would apply to an exchange but for the fact that there is received, in addition to the stock permitted to be received under I.R.C. section 351(a), other property or money, then, gain (if any) to such recipient shall be recognized, but not in excess of the amount of money received, plus the fair market value of such other property received, and no loss to such recipient shall be recognized.

Regulation 1.357-1(c) *Tax avoidance purpose.* The benefits of section 357(a) do not extend to any exchange involving an assumption of liabilities where it appears that the principal purpose of the taxpayer with respect to such assumption was to avoid Federal income tax on the exchange, or, if not such purpose, was not a bona fide business purpose. In such cases, the total amount of liabilities assumed or acquired pursuant to such exchange (and not merely a particular liability with respect to which the tax avoidance purpose existed) shall, for the purpose of determining the amount of gain to be recognized upon the exchange in which the liabilities are assumed or acquired, be treated as money received by the taxpayer upon the exchange. Thus, if in the example set forth in paragraph (b) of this section, the principal purpose of the assumption of the $4,000 liability was to avoid tax on the exchange, or was not a bona fide business purpose, then the amount of gain recognized would be $5,000. In any suit or proceeding where the burden is on the taxpayer to prove that an assumption of liabilities is not to be treated as "other property or money"

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

under section 357, which is the case if the Commissioner determines that the taxpayer's purpose with respect thereto was a purpose to avoid Federal income tax on the exchange or was not a bona fide business purpose, and the taxpayer contests such determination by litigation, the taxpayer must sustain such burden by the clear preponderance of the evidence. Thus, the taxpayer must prove his case by such a clear preponderance of all the evidence that the absence of a purpose to avoid Federal income tax on the exchange, or the presence of a bona fide business purpose, is unmistakable. [Reg. §1.357-1.]

I.R.C. section 357(b) provides that if, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption was made, it appears that the principal purpose of the taxpayer with respect to the assumption described in I.R.C. section 357(a) was a purpose to avoid Federal income tax on the exchange, or if not such a purpose, was not a bona fide business purpose, then such assumption shall, for purposes of I.R.C. section 351, be considered as money received by the taxpayer on the exchange.

I.R.C. section 357(c)(2) provides that I.R.C. section 357(c)(1) shall not apply to any exchange (A) to which I.R.C. section 357(b)(1) applies, or (B) which is pursuant to a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(G) where no former shareholder of the transferor corporation receives any consideration for his stock.

REVENUE RULING 95-74

The relevant facts of Revenue Ruling 95-74 are:

***

Corporation P is an accrual basis, Calendar-year Corporation engaged in various ongoing businesses, one of which includes the operation of a manufacturing plant (the Manufacturing Business). The plant is located on land purchased by P many years before. The land was not contaminated by any hazardous waste when P purchased it. However, as a result of plant operations, certain environmental liabilities, such as potential soil and groundwater remediation, are now [*2] associated with the land.

In Year 1, for bona fide business purposes, P engages in an exchange to which @ 351 of the Internal Revenue Code applies by transferring substantially all of the assets associated with the Manufacturing Business, including the manufacturing plant and the land on which the plant is located, to a newly formed corporation, S, in exchange for all of the stock of S and for S's assumption of the liabilities associated with the Manufacturing Business, including the environmental liabilities associated with the land. P has no plan or intention to dispose of (or have S issue) any S stock. S is an accrual basis, calendar-year taxpayer.

Therefore, on these facts, the Internal Revenue Service will not follow the decision in Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946). Accordingly, the contingent environmental liabilities assumed from P are deductible as business expenses under @ 162 or are capitalized under @ 263, as appropriate, by S under S's method of accounting (determined as if S has owned the land for the period and in the same manner [*12] as it was owned by P).

***

Revenue Ruling 95-74 does not apply in this case. The taxpayer did not transfer the assets that were related to the creation of the contingent liabilities. The taxpayer transferred the liabilities and sold the stock as part of a planned, structured transaction.

The stated business purpose for the transactions between the members of the BFI, Inc. consolidated group was to move the liabilities in each of the subsidiaries into the six entities to better manage them. These liabilities were environmental, automobile accident, workers compensation and general liability claims. The sale of the class B common stock to the investors allegedly gave the investors a financial incentive to help manage the liabilities through ownership of the Class B Common Stock. If there is a legitimate business purpose, it must outweigh the tax avoidance motive of the transaction.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

If isolating the management of these liabilities was a true business purpose, then this could have been accomplished by other means without restructuring each of the six subsidiaries existing corporate structure. This simply could have been accomplished by creating a separate management division within the consolidated group, and transferring the management responsibility of the liabilities in question, and providing incentives to each of the investors through a new or revised contract. Also, the only asset transferred with the liabilities were the intercompany receivables that were formalized into a promissory note. The note and the liabilities never left the consolidated group. In addition, the incentive through the equity investment by each of the investors had a limit to the upside they could receive from the investment. The most that the companies would have to pay to redeem the stock was:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
|---|---|---|
| BFI Europe, Inc. | 16,848 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |
| BFI Energy Systems of Boston, Inc. | 1,258 | 139,638 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

The taxpayer has a potential tax savings from the transactions of $315,581,003 (901,660,007 X 35%). The taxpayer did not transfer any trade or business assets to which the assumed liabilities related to the special purpose entities. The only assets transferred were promissory notes created by the formalization of intercompany receivables in an amount slightly in excess of the liabilities assumed. In return, each of the six special purpose entities assumed the liabilities and issued to the various BFI, Inc. subsidiaries shares of class B common stock having a fair market value equal to the difference between the face amount of the note and the present value of the liabilities. These subsidiaries immediately sold the stock to outside purchasers under a prearranged agreement and claimed a capital loss on the consolidated tax return of $901,660,007.

The promissory notes were created specifically for these transactions by formalizing intercompany accounts receivable and the contingent liabilities were on the balance sheet of BFI, Inc. and it's subsidiaries prior to the transfer. After the transfer, the liabilities were on the balance sheet of the six special purpose entities which were still part of the consolidated return. The consolidated company had no book loss or economic loss as a result of the transaction. The loss was due to the contingent liabilities having no tax basis. At the time the promissory notes and contingent liabilities were transferred to each of the entities, they had no employees. After the transfer of the notes and liabilities, they had no employees. Services were still performed by employees of other entities or subcontracted to outside parties. These liabilities were being managed by the BFI, Inc. consolidated group at the time of the exchange and continued to be managed by the BFI; Inc. consolidated group.

The taxpayer had no economic loss on the sale of the stock. As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999. The tax basis in the stock differed from the book basis because the contingent liabilities assumed by each of the six special purpose entities in the transaction did not impact the tax basis of the class B common stock. There was no gain or loss on the financial statement or books of BFI, Inc. or it's subsidiaries. The class B common stock purchased by each of the purchasers was restricted from resale. The purchased needed permission of each of the entities in order to sell the stock. The purchasers could put the stock to the entities several years later under a defined pricing formula which capped the amount the entities would have to pay to repurchase the stock. The entities could call the stock in the year after the purchasers put option under the same pricing formula. BFI, Inc. and the special purpose entities did not lose control of the stock. It was not freely transferable by the purchasers and could be subsequently called

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Ron Poland with Comcor Environmental Ltd was interviewed regarding the purchase of the class B common stock of four of the environmental entities. Comcor Environmental is involved with gas wells and management. Mr. Poland stated that he learned of the transactions from Doug Borro at Allied Waste, Inc. Comcor had no involvement with any of these liabilities before the transactions, but subsequently Gas Recovery Systems has bid on 32 long term gas purchase contracts with the BFI sites. Gas Recovery Systems earns approximately $2,000,000 per year. Comcor was involved with liabilities of Allied Waste, Inc. This was the only equity interest held by the company.

Ward Herst with Ward Herst and Associates was interviewed regarding the purchase of the class B common stock for the five environmental entities. Ward Herst and Associates are consultants for environmental groundwater and soil. Mr. Herst heard of the transactions from Doug Borro at Allied Waste, Inc. He did no negotiations with any one from BFI. Ward Herst and Associates had no previous involvement with these liabilities although Mr. Herst did as an employee of another company. Herst and Associates did have involvement with Allied Waste, Inc. liabilities in the similar transaction that Allied had done in prior years. Mr. Herst stated that his company's only risk was that the liabilities could not be reduced, but that his investment was limited to $2,000 per entity.

John Jacobs with Willis Corroon Corporation of Arizona was interviewed regarding Willis purchase of the class B common stock of the BFI Europe, Inc which had been transferred the non environmental liabilities. Willis Corroon was an insurance broker. The company was hired in the beginning of 1999 by Allied Waste, Inc. to handle it's insurance. Willis Corroon did a study for Allied Waste on the BFI insurance and related liabilities in May or June of 1999.

The principal purpose of the transfer of the promissory notes and the liability assumptions by each of the six entities was to create a high basis, low value stock, that the taxpayer could sell under a prearranged plan to the purchasers and take a loss on the stock sale. BFI would also receive a double deduction when the liabilities are paid. This is not a bona fide business purpose.

Mr. Bruce Ranck, former President and CEO of BFI, Inc. stated that BFI had considered several types of transactions in 1998 related to the contingent liabilities and rejected this type of transaction as it was not right for BFI at that time. He indicated that BFI would not have participated in such these transactions in July of 1999 except for the merger with Allied Waste, Inc. Allied had approached BFI in April or May regarding these transactions. Mr. Ranck checked with legal and financial personal to insure that it would not jeopardize BFI than approved the implementation of the deal without performing any due diligence. The transaction was implemented by Allied personal with little involvement of BFI officers or personal. Allied paid all fees related to the transaction to Arthur Andersen or Latham & Watkins even though the work was completed prior to the merger.

Mr. Bruce Jernigan, former Divisional Vice President Environmental Remediation and Closure Activities for BFI, Inc. was interviewed and stated that BFI considered various risk portfolio transfers in 1998 including a transaction similar to the IRC 351 transfer declined to participate in any such transactions. BFI used a performance ROGA (Return on Gross Assets) to measure the gain to the company. The 1998 concepts did not meet its ROGA test and there were no potential tax benefits to BFI at that time. Bruce Ranck, CEO wanted a risk transfer type of transaction.

Documents obtained from Arthur Andersen demonstrate that the transaction was originally scheduled for implementation in September 1999. The documents show that Arthur Andersen and Allied personnel discussed a possibility of a change in the tax law in 1999 and that BFI needed to get this deal completed in order to obtain the favorable tax treatment. Arthur Andersen also addressed the potential capital gains from divestitures after the merger in some of the documents. Andersen and Allied prepared responses to anticipated questions from BFI concerning why the transaction should be implemented when it had previously been rejected by BFI management and what risks BFI faced if the transactions were completed before the merger and the merger was not approved by the shareholders. Arthur Andersen and Allied noted that all that BFI had done was to transfer contingent liabilities within the consolidated group and if necessary, BFI could repurchase the class B common stock from the investors and reverse the deal.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Mr. Dale Parker, Tax Manager for Allied Waste, Inc., stated that a joint engagement by Allied Waste, Inc. and BFI, INC. was made for the law firm of Latham & Watkins to assist with the transactions. Latham & Watkins then engaged Arthur Andersen. There is an engagement letter between Latham & Watkins and Arthur Andersen. We have not been provided any engagement letters between Allied Waste and BFI for Latham and Watkins. We have an engagement letter signed between Arthur Andersen and BFI, Inc. to assist with the structure of these transactions. This was signed after the transactions had been completed and after the BFI shareholders had approved the merger. Mr. Ranck, former President and CEO of BFI, Inc. stated that he had no knowledge of a joint engagement letter with Allied for Latham & Watkins services and that BFI had not paid any fees related to these transactions. Ms. Schuler, Assistant Corporate Secretary with BFI, Inc. had signed an engagement letter dated June 16, 1999. She had signed the document on July 23, 1999.

These transactions were recorded as follows for book vs. tax treatment:

| | BOOK | TAX |
|---|---|---|
| Promissory Notes Transferred | $902,561,661 | $902,561,661 |
| Contingent Liabilities Transferred | ($901,660,007) | 0 |
| Basis | $901,654 | $902,561,661 |
| Amount Realized | $901,654 | $901,654 |
| Gain(Loss) | 0 | ($901,660,007) |

The above amounts do not reflect the $1,750,000 paid to the promoter, Arthur Andersen LLP, for assistance on the structure of the transaction, or the $130,400 paid to the law firm of Latham & Watkins for the tax opinion on the transaction. As there was no gain or loss to the book income or financial statements, no disclosure was made in the form 10K or annual reports for 1999.

**CONCLUSION**

The capital loss claimed on the return should be disallowed under IRC 357(b)(1)(B) as the principal purpose of the transactions was for tax avoidance purposes. BFI, Inc. had no business purpose and would not have done this transaction without the pending merger with Allied Waste, Inc. If the merger had not been approved by the BFI, Inc. shareholders BFI could have reversed the transactions. Additionally, the rush to do the transactions due to the fear that the tax laws would be changed to prohibit the tax benefits from these abusive transactions shows the principal purpose of the transactions for tax avoidance purposes.

Each of the steps in this transaction was structured to enable BFI, Inc. and it's Subsidiaries to deduct the capital loss on its return. The consolidated corporation will also receive another deduction when the contingent liabilities are deducted when paid. The taxpayer had no economic loss on the transaction and would benefit from a double deduction when the liabilities accrue for tax and are paid.

Therefore the transaction is a taxable event under section 1001 and the basis in the stock to the various Rust International, Inc. subsidiaries is the fair market value of the stock or $901,654 as determined under section 1012. This results in no gain or loss on the sale of the stock to the purchasers. Therefore the capital loss of $901,660,007 is disallowed.

**1ST ALTERNATIVE POSITION**

**DOES SECTION 357(c)(3) APPLY TO THE TRANSACTION?**

I.R.C. section 351(a) provides that no gain or loss shall be recognized if property is transferred to a corporation by a person solely in exchange for stock in such corporation and immediately after the exchange such person is in control of the corporation.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

I.R.C. section 351(b) provides that if I.R.C. section 351(a) would apply to an exchange but for the fact that there is received, in addition to the stock permitted to be received under I.R.C. section 351(a), other property or money, then, gain (if any) to such recipient shall be recognized, but not in excess of the amount of money received, plus the fair market value of such other property received, and no loss to such recipient shall be recognized.

I.R.C. section 357(a) provides that, except as provided in I.R.C. section 357(b), if the taxpayer receives property which would be permitted to be received under I.R.C. section 351 without the recognition of gain if it were the sole consideration and, as part of the consideration, another party to the exchange assumes a liability of the taxpayer, then such assumption shall not be treated as money or other property and shall not prevent the exchange from being within the provisions of I.R.C. section 351.

I.R.C. section 357(b) provides that if, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption was made, it appears that the principal purpose of the taxpayer with respect to the assumption described in I.R.C. section 357(a) was a purpose to avoid Federal income tax on the exchange, or if not such a purpose, was not a bona fide business purpose, then such assumption shall, for purposes of I.R.C. section 351, be considered as money received by the taxpayer on the exchange.

I.R.C. section 357(c)(1) provides that in the case of an exchange (A) to which I.R.C. section 351 applies, or (B) to which I.R.C. section 361 applies by reason of a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(D), if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

I.R.C. section 357(c)(2) provides that I.R.C. section 357(c)(1) shall not apply to any exchange (A) to which I.R.C. section 357(b)(1) applies, or (B) which is pursuant to a plan of reorganization within the meaning of I.R.C. section 368(a)(1)(G) where no former shareholder of the transferor corporation receives any consideration for his stock.

I.R.C. section 357(c)(3)(A) provides that if a taxpayer transfers, in an exchange to which I.R.C. section 351 applies, a liability the payment of which either (i) would give rise to a deduction, or (ii) would be described in I.R.C. section 736(a), then, for purposes of I.R.C. section 357(c)(1), the amount of such liability shall be excluded in determining the amount of liabilities assumed or to which the property transferred is subject.

I.R.C. section 357(c)(3)(B) provides that I.R.C. section 357(c)(3)(A) shall not apply to any liability to the extent that the incurrence of the liability resulted in the creation of, or increase in, the basis of any property.

I.R.C. section 358(a)(1) provides that, in the case of an exchange to which I.R.C. section 351, 354, 355, 356, or 361 applies, the basis of property permitted to be received under such section without the recognition of gain or loss (i.e., the stock of the transferee corporation) shall be the same as that of the property exchanged, decreased by the amount of money received by the taxpayer, and increased by the amount of gain to the taxpayer which was recognized on such exchange.

I.R.C. section 358(d)(1) provides that where, as part of the consideration to the taxpayer, another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition (in the amount of the liability) shall, for purposes of I.R.C. section 358, be treated as money received by the taxpayer on the exchange.

I.R.C. section 358(d)(2) provides that I.R.C. section 358(d)(1) shall not apply to the amount of any liability excluded under I.R.C. section 357(c)(3).

I.R.C. section 368(c) provided that, for purposes of I.R.C. section 351, the term "control" means the ownership of stock possessing at least 80% of the total combined voting power of all classes of stock entitled to vote and at least 80% of the total number of shares of all other classes of stock of the corporation.

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

**REVENUE RULING 95-74**

The relevant facts of Revenue Ruling 95-74 are:

***

Corporation P is an accrual basis, Calendar-year Corporation engaged in various ongoing businesses, one of which includes the operation of a manufacturing plant (the Manufacturing Business). The plant is located on land purchased by P many years before. The land was not contaminated by any hazardous waste when P purchased it. However, as a result of plant operations, certain environmental liabilities, such as potential soil and groundwater remediation, are now [*2] associated with the land.

In Year 1, for bona fide business purposes, P engages in an exchange to which @ 351 of the Internal Revenue Code **applies by transferring substantially all of the assets associated with the Manufacturing Business, including the manufacturing plant and the land on which the plant is located, to a newly formed corporation, S, in exchange for all of the stock of S and for S's assumption of the liabilities associated with the Manufacturing Business, including the environmental liabilities associated with the land. P has no plan or intention to dispose of (or have S issue) any S stock. S is an accrual basis, calendar-year taxpayer.**

Therefore, on these facts, the Internal Revenue Service will not follow the decision in Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946). Accordingly, the contingent environmental liabilities assumed from P are deductible as business expenses under @ 162 or are capitalized under @ 263, as appropriate, by S under S's method of accounting (determined as if S has owned the land for the period and in the same manner [*12] as it was owned by P).

***

Revenue Ruling 95-74 does not apply in this case. The taxpayer did not transfer the assets that were related to the creation of the contingent liabilities. The taxpayer transferred the liabilities and sold the stock as part of a planned, structured transaction.

In *Caruth v. United States*, 688 F. Supp. 1139 (N.D. Tex. 1987), *aff'd*, 865 F.2d 644 (5th Cir.1998) the court held that a transfer of property to a controlled corporation must have a business purpose to qualify under §351 (the court further found that the taxpayer did have the requisite purpose).

In order for §358(d)(2) to be applicable, there must be an amount excluded under §357(c)(3)(A). In order for an amount to be excluded under §357(c)(3)(A), §357(c)(1) must be applicable. Section 357(c)(1) is applicable if the sum of the liabilities assumed exceeds the total adjusted basis of the property transferred pursuant to the exchange.

Section 357(c)(1) is not applicable for two reasons, 1) the §351 transaction was for tax avoidance purposes or lacked a bona fide business purpose, and 2) the amount of the liabilities assumed did not exceed the total of the adjusted basis of the property transferred. Consequently the liability excluded under §357(c)(3) is zero.

The stated business purpose for the transactions between the members of the BFI, Inc. consolidated group was to move the liabilities in each of the subsidiaries into the six entities to better manage them. These liabilities were environmental, automobile accident, workers compensation and general liability claims. The sale of the class B common stock to the investors allegedly gave the investors a financial incentive to help manage the liabilities through ownership of the Class B Common Stock. If there is a legitimate business purpose, it must outweigh the tax avoidance motive of the transaction.

If isolating the management of these liabilities was a true business purpose, then this could have been accomplished by other means without restructuring each of the six subsidiaries existing corporate structure. This simply could have been accomplished by creating a separate management division within the consolidated group, and transferring

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

the management responsibility of the liabilities in question, and providing incentives to each of the investors through a new or revised contract. Also, the only asset transferred with the liabilities were the intercompany receivables that were formalized into a promissory note. The note and the liabilities never left the consolidated group. In addition, the incentive through the equity investment by each of the investors had a limit to the upside they could receive from the investment. The most that the companies would have to pay to redeem the stock was:

| SUBSIDIARY | MAXIMUM REDEMPTION PRICE PER SHARE | MAXIMUM REDEMPTION PRICE |
|---|---|---|
| BFI Europe, Inc. | 16,848 | 1,870,128 |
| BFI Trans River (LP), Inc. | 11,743 | 1,303,473 |
| BFI Asia Pacific, Inc. | 7,547 | 837,717 |
| BFI Services Group, Inc. | 33,002 | 2,442,148 |
| BFI Energy Systems of Plymouth, Inc. | 41,977 | 4,659,447 |
| BFI Energy Systems of Boston, Inc. | 1,258 | 139,638 |
| TOTAL MAXIMUM REDEMPTION | | 11,252,551 |

The taxpayer has a potential tax savings from the transactions of $315,581,003 (901,660,007 X 35%).

Ron Poland with Comcor Environmental Ltd was interviewed regarding the purchase of the class B common stock of four of the environmental entities. Comcor Environmental is involved with gas wells and management. Mr. Poland stated that he learned of the transactions from Doug Borro at Allied Waste, Inc. Comcor had no involvement with any of these liabilities before the transactions, but subsequently Gas Recovery Systems has bid on 32 long term gas purchase contracts with the BFI sites. Gas Recovery Systems earns approximately $2,000,000 per year. Comcor was involved with liabilities of Allied Waste, Inc.. This was the only equity interest held by the company.

Ward Herst with Ward Herst and Associates was interviewed regarding the purchase of the class B common stock for the five environmental entities. Ward Herst and Associates are consultants for environmental groundwater and soil. Mr. Herst heard of the transactions from Doug Borro at Allied Waste, Inc. He did no negotiations with any one from BFI. Ward Herst and Associates had no previous involvement with these liabilities although Mr. Herst did as an employee of another company. Herst and Associates did have involvement with Allied Waste, Inc. liabilities in the similar transaction that Allied had done in prior years. Mr. Herst stated that his company's only risk was that the liabilities could not be reduced, but that his investment was limited to $2,000 per entity.

John Jacobs with Willis Corroon Corporation of Arizona was interviewed regarding Willis purchase of the class B common stock of the BFI Europe, Inc which had been transferred the non environmental liabilities. Willis Corroon was an insurance broker. The company was hired in the beginning of 1999 by Allied Waste, Inc. to handle it's insurance. Willis Corroon did a study for Allied Waste on the BFI insurance and related liabilities in May or June of 1999.

The principal purpose of the transfer of the promissory notes and the liability assumptions by each of the six entities was to create a high basis, low value stock, that they could sell under a prearranged plan to the purchasers and take a loss on the stock sale. They would also receive a double deduction when the liabilities are paid. This is not a bona fide business purpose.

In this case, no trade or business, or any assets to which the assumed liabilities related, were transferred. The only assets transferred were promissory notes created by the formalization of intercompany receivables in an amount slightly in excess of the liabilities assumed. In return, each of the six special purpose entities assumed the liabilities and issued to the various BFI, Inc. subsidiaries shares of class B common stock having a fair market value equal to the difference between the face amount of the note and the present value of the liabilities. These subsidiaries immediately sold the stock to outside purchasers under a prearranged agreement and claimed a capital loss on the consolidated tax return of ($901,660,007).

| Form 886-A | EXPLANATION OF ADJUSTMENTS | YEAR(S): 199907 |
|---|---|---|
| TAXPAYER NAME: Browning-Ferris Industries, Inc. & Subsidiaries | | |
| Entity Name: | Various | Issue Number: 71 |

Mr. Bruce Ranck, former President and CEO of BFI, Inc. stated that BFI had considered several types of transactions in 1998 related to the contingent liabilities and rejected this type of transaction as it was not right for BFI at that time. He indicated that BFI would not have participated in such these transactions in July of 1999 except for the Allied Waste, Inc. merger. Allied had approached BFI in April or May regarding these transactions. Mr. Ranck checked with legal and financial personal to insure that it would not jeopardize BFI than approved the implementation of the deal without performing any due diligence. The transaction was implemented by Allied personal with little involvement of BFI officers or personal. Allied paid all fees related to the transaction to Arthur Andersen or Latham & Watkins even though the work was completed prior to the merger.

Mr. Bruce Jernigan, former Divisional Vice President Environmental Remediation and Closure Activities for BFI, Inc. was interviewed and stated that BFI considered various risk portfolio transfers in 1998 including a transaction similar to the IRC 351 transfer declined to participate in any such transactions. BFI used a performance ROGA (Return on Gross Assets) to measure the gain to the company. The 1998 concepts did not meet its ROGA test and there were no potential tax benefits to BFI at that time. Bruce Ranck, CEO wanted a risk transfer type of transaction.

Documents obtained from Arthur Andersen demonstrate that the transaction was originally scheduled for implementation in September 1999. The documents show that Arthur Andersen and Allied personnel discussed a possibility of a change in the tax law in 1999 and that BFI needed to get this deal completed in order to obtain the favorable tax treatment. Arthur Andersen also addressed the potential capital gains from divestitures after the merger in some of the documents. Andersen and Allied prepared responses to anticipated questions from BFI concerning why the transaction should be implemented when it had previously been rejected by BFI management and what risks BFI faced if the transactions were completed before the merger and the merger was not approved by the shareholders. Arthur Andersen and Allied noted that all that BFI had done was to transfer contingent liabilities within the consolidated group and if necessary, BFI could repurchase the class B common stock from the investors and reverse the deal:

Mr. Dale Parker, Tax Manager for Allied Waste, Inc., stated that a joint engagement by Allied Waste, Inc. and BFI, INC. was made for the law firm of Latham & Watkins to assist with the transactions. Latham & Watkins then engaged Arthur Andersen. There is an engagement letter between Latham & Watkins and Arthur Andersen. We have not been provided any engagement letters between Allied Waste and BFI for Latham and Watkins. We have an engagement letter signed between Arthur Andersen and BFI, Inc. to assist with the structure of these transactions. This was signed after the transactions had been completed and after the BFI shareholders had approved the merger. Mr. Ranck, former President and CEO of BFI, Inc. stated that he had no knowledge of a joint engagement letter with Allied for Latham & Watkins services and that BFI had not paid any fees related to these transactions. Ms. Schuler, Assistant Corporate Secretary with BFI, Inc. had signed an engagement letter dated June 16, 1999. She had signed the document on July 23, 1999.

Revenue Ruling 95-74 does not apply to this transaction as there is no transfer of a trade or business and there is a plan to sell the stock immediately after the transfer. Therefore, the taxpayer is subject to Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946), that the assumption of the liability is part of the cost of acquiring the transferred asset and so the payment of the liability does not give rise to a deductible expense for the transferee. The liability is not within the scope of section 357(c)(3)(A)(i), its assumption is therefore not within the scope of section 358(d)(2), and the general rule of section 358(d)(1) applies to reduce the stock basis by the amount of the liability.

**CONCLUSION**
The capital loss claimed on the return should be disallowed as the liabilities are not within the scope of 357(c)(3)(A)(i), therefore section 358(d)(2) does not prevent the application of section 358(d)(1) to reduce the basis in the stock by the amount of the transferred liabilities. Therefore, the basis in the stock to the various Rust International, Inc. subsidiaries was $901,654, the same as the amount they received on the sale of the stock to the purchasers, resulting in no gain or loss on the stock sale.