**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES, | ) | |
| Plaintiff, | ) | No. 05-738 T |
| v. | ) | Judge Thomas C. Wheeler |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUSPENSION OF PROCEEDINGS**

Defendant has moved for a 90-day suspension of all proceedings in this action to await a decision in the appeal of *Coltec Industries Inc. v. United States*, a tax refund case pending before the Court of Appeals for the Federal Circuit. Defendant's stay request should be denied for two principal reasons. First, at this early stage in the proceedings, there is no good reason to delay fact discovery and the other pre-trial proceedings in this complex case pending an uncertain decision in the *Coltec* appeal. To the contrary, judicial efficiency and the interests of justice demand that the pre-trial proceedings in this case continue to proceed so that this action will be ready for resolution as soon as practicable and, therefore, in a posture to benefit from whatever additional legal guidance the Federal Circuit may provide.

Second, the potential benefit, if any, to be derived from the Federal Circuit's decision in *Coltec* is highly speculative because of the fact-intensive nature of the issues in this case and the unique fact pattern in *Coltec*. The instant case also includes an issue not present in *Coltec*, namely defendant's counterclaim for a penalty. Indeed, based on discussion with

Defendant's counsel, plaintiff expects that, even if this Court's decision in favor of the taxpayer in *Coltec* is affirmed on appeal, defendant will put plaintiff to the proof regarding its facts.

**<u>BACKGROUND</u>**

**A. Plaintiff's Case**

On July 8, 2005, Browning Ferris Industries, Inc. and its subsidiaries (collectively, the "Plaintiff" or "BFI") filed their Complaint in this tax refund action. After obtaining two unopposed extensions, defendant filed its original Answer on December 2, 2005 and a First Amended Answer and Counterclaim on December 21, 2005. BFI seeks a refund of erroneously assessed and collected federal income taxes of $18,549,092 for the taxable year ended September 30, 1997 and $9,711,514 for the taxable year ended September 30, 1998. The Government denies that a refund is appropriate and, in turn, seeks a penalty of $5,395,492 and interest of $11,642,703.75 for the taxable year ended September 30, 1997 and interest of $1,145,379.76 for the taxable year ended September 30, 1998.

The issues to be resolved in this case are factually complex and will require extensive pretrial discovery, including written discovery and depositions. The principal issue is whether BFI is entitled to a capital loss in connection with the sale of certain stock in the taxable year ended July 30, 1999, which impacts BFI's federal income tax for the 1997 and 1998 tax years. The subsidiary issues to be resolved, as more fully set forth in the parties' Joint Preliminary Status Report ("JPSR"), fall within three general categories:

1. Whether BFI is entitled to a capital loss on the disposition of certain stock under various provisions of the Internal Revenue Code ("I.R.C.");

2. Whether BFI can establish that the transactions at issue had economic substance and that any losses arising therefrom may properly be deducted for federal income tax purposes; and

3. Whether BFI is liable for an accuracy-related penalty under section 6662 of the I.R.C. for its tax year ended September 30, 1997, attributable to the capital loss claimed on the disposition of stock.

As evidence of the fact-intensive nature of the above issues, the parties have estimated in the JPSR that fact discovery alone will require 10 months. The parties have also estimated in the JPSR that expert discovery will require an additional 5 ½ months beyond the close of fact discovery. Illustrating the complex nature of the issues in this case is the fact that in the underlying audit process preceding the commencement of this action, Internal Revenue Service agents interviewed at least 15 individuals, including many current and former employees of BFI and its affiliates and third parties.

**B. The *Coltec* and *Black & Decker* Cases**

Defendant's motion is premised on *Coltec Industries v. United States*, a case pending before the Court of Appeals for the Federal Circuit. Fed. Cir. No. 05-5111. *Coltec*, also a tax refund case, was tried before the Hon. Susan G. Braden in the U.S. Court of Federal Claims Court during May 2004. On October 29, 2004, Judge Braden issued her decision in favor of the taxpayer. *Coltec*, 62 Fed. Cl. 716 (2004). In reaching that decision, Judge Braden ruled for the taxpayer on the statutory issues under the I.R.C. In addition, Judge Braden ruled that the judicial "economic substance" doctrine should not apply to the transactions at issue, or alternatively, if the doctrine applied, the transactions had sufficient economic substance to satisfy the judicial

doctrine. The government appealed Judge Braden's decision. The Federal Circuit heard oral argument in the *Coltec* case on February 7, 2006.

Defendant's motion also cites the Fourth Circuit's recent decision in another case involving similar legal issues, *Black & Decker Corp. v. United States*, WL 241073 (4th Cir., Feb. 2, 2006). Defendant erroneously suggests that the *Black & Decker* decision was a victory for the government, asserting that the Fourth Circuit "reached conclusions that are at odds with those reached by the Court of Federal Claims in *Coltec*." (Mot. at 2-3). To the contrary, like this Court in *Coltec* and the district court in *Black & Decker*, the Fourth Circuit rejected defendant's primary arguments for disallowing the capital loss under various provisions of the I.R.C., ruling in favor of the taxpayer on those issues. 2006 WL 241073, at *6-10. In addition, the Fourth Circuit reversed the lower court's grant of summary judgment for the taxpayer on the judicially-created "sham transaction" doctrine, concluding that questions of fact existed and remanding the case for a trial on that issue. *Id.*. at *11-12. Thus, the Fourth Circuit's *Black & Decker* decision was far from a victory for defendant, but rather represented the third time (once before Judge Braden in *Coltec* and twice in the *Black & Decker* litigation) that courts have rejected defendant's primary arguments in this case under various provisions of the I.R.C.

## ARGUMENT

Defendant's requested suspension of proceedings will defeat judicial efficiency and contravene the interests of the Court and plaintiff in the "just, speedy, and inexpensive determination of every action." See RCFC 1; see also Rules Committee Note 1 ("the rules are to be both construed and administered to ensure that civil litigation is resolved not only fairly, but without undue cost and delay").

**I. Defendant Bears a Heavy Burden in Seeking to Suspend These Proceedings**

Stays of legal proceedings are generally disfavored. *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1083 (Fed Cir. 1989). As the Federal Circuit has explained, there is a "strong public policy favoring expeditious resolution of litigation." *Id.* As the party seeking the stay, defendant bears the heavy burden of making a clear showing of "hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [it] prays will work damage to someone else." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). In *Landis*, the Supreme Court explained that, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* Defendant has failed to satisfy its heavy burden of making a clear showing for suspension of these proceedings.

**II. Given the Early Stage of this Case, Defendant's Requested Suspension is Counterproductive to Judicial Efficiency**

There is no sound reason, and certainly no pressing need, for a suspension of the proceedings to await a decision in the appeal of *Coltec*. In all likelihood, the instant case will require extensive fact discovery before it can be put into a posture for resolution. Assuming *arguendo* that the Federal Circuit's ruling in *Coltec* helps clarify the law, there is no sound reason *at this early stage of the litigation* to delay fact discovery and the other pre-trial proceedings in this case. Whatever additional legal guidance the Federal Circuit may provide, the factual discovery and development necessary to put this case into a posture for resolution will need to continue. Only then will this case be in a position to benefit from whatever additional legal guidance *Coltec* may provide.

## III. Continuances at the Start of this Case Have Already Delayed the Progression of the Proceedings

Suspension of proceedings is further inappropriate in this case because defendant already has had the benefit of a *de facto* suspension of proceedings since the filing of the Complaint in this action on July 8, 2005. As the result of two unopposed motions for enlargement of time, defendant filed its original answer in this case on December 2, 2005 and its First Amended Answer and Counterclaim on December 21, 2005. Defendant already has had the benefit of a nearly four-month delay of the proceedings in this case since its responsive pleading was originally due on September 6, 2005. Moreover, under the agreed proposed discovery schedule outlined in the parties' JPSR, actual discovery in the case will not commence until after the Court's entry of a scheduling order. Judicial efficiency and the prompt administration of justice, as articulated in this Court's rules, militate against granting the defendant's request for a further delay of the proceedings in this case.

## IV. *Coltec* is Not Likely to Significantly Impact the Discovery Necessary to Put this Case into a Posture for Resolution

The Federal Circuit's ruling in *Coltec* is not likely to have a significant impact on the nature and scope of factual discovery necessary to put this case into a posture for resolution. (Mot. at 3.) While it is impossible to know (and risky to predict) how the Federal Circuit will rule, it is clear that most of the issues in the instant case turn on questions of fact. Indeed, based on discussion with defendant's counsel, plaintiff expects that, even if this Court's decision in favor of the taxpayer in *Coltec* is affirmed on appeal, defendant will put plaintiff to the proof regarding its facts.

In support of its position, defendant argues that "if the [Federal] Circuit agrees with defendant's analysis of the statutory provisions governing plaintiff's basis in the stock of its

newly formed company, very little factual discovery will be necessary." (Mot. at 3 ¶ 3). However, defendant has raised an issue in this case not present in *Coltec*, namely defendant's counterclaim for a penalty. The applicable Treasury Regulations make clear that the imposition of such a penalty is highly case-specific and factually dependent. Under the heading "Facts and circumstances taken into account," the Treasury Regulations provide that "[t]he determination of whether a taxpayer acted with reasonable cause and in good faith is made on a *case-by-case basis*, taking into account *all pertinent facts and circumstances*." Treas. Reg. § 1.6664-4(b)(1) (setting forth the reasonable cause and good faith exception to section 6662 penalties) (emphasis added). Thus, even if as defendant speculates the Federal Circuit fully agrees with defendant's analysis of the applicable statutory provisions in *Coltec*, the separate and distinct issue of the penalty asserted by defendant in plaintiff's case, but not in *Coltec*, will require extensive factual discovery and development.

Similarly, defendant argues that "if the appellate court were to conclude in taxpayer's favor . . . that there is no 'economic substance' doctrine, the scope of necessary factual discovery might also be very limited." (Mot. at 4 ¶ 3). However, the Federal Circuit does not need to reach that question because Judge Braden ruled in her decision that, even if the doctrine applied to the transactions at issue, the transactions satisfied the economic substance doctrine. Moreover, while plaintiff disputes the applicability of I.R.C. section 357(b) to the calculation of basis, defendant's alternative argument under section 357(b) involves substantially similar factual issues (and corresponding discovery) as defendant's argument under the economic substance doctrine. Thus, even if as defendant argues the Federal Circuit rejected the existence of the economic substance doctrine as a general matter, such a ruling will not

necessarily have any significant impact on the nature and scope of discovery in plaintiff's case given defendant's alternative argument under I.R.C. section 357(b).

## CONCLUSION

For all of the foregoing reasons, the Government's motion for a suspension of the proceedings should be denied.

Respectfully submitted,

s/ ROBERT F. DENVIR
Attorney of Record
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 558-5675
Fax: (312) 558-5700

JAMES M. LYNCH
PETER W. POULOS
STEPHEN V. D'AMORE
Of counsel