IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-738 T
(Judge Wheeler)

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

# OPPOSITION BY THE UNITED STATES TO PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE PURSUANT TO RCFC 41(a)(2) AND FOR DISMISSAL OF COUNTERCLAIM PURSUANT TO RCFC 12(b)(1)

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
STUART J. BASSIN
JENNIFER D. SPRIGGS
JACOB E. CHRISTENSEN
Attorneys
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6418
(202) 307-2504 (fax)

# TABLE OF CONTENTS


Page(s):

INTRODUCTION .......... 1

FACTS .......... 4

A. Plaintiff's Historic Dealings With the Service .......... 4

B. Corporate Status of BFI Inc. .......... 8

C. The New Refund Claims .......... 10

D. Plaintiff's Change of Litigating Position .......... 11

ARGUMENT .......... 12

I. RCFC 41(a) Does Not Authorize Voluntary Dismissal Because Dismissal Would Prejudice the United States and Require Dismissal of its Counterclaim .......... 13

II. The Court of Federal Claims Has Subject Matter Jurisdiction Over This Suit .......... 16

A. BFI Inc. Was a Legal Entity at the Time it Filed the First BFI Claims .......... 17

B. BFI Inc. Had Authority to File the First BFI Claims on Behalf of the BFI Consolidated Group .......... 21

C. BFI Has Not Established That Filing of Refund Claims by the Incorrect BFI Subsidiary on Behalf of the BFI Consolidated Group Would Defeat the Court's Subject Matter Jurisdiction Over the Claims of the BFI Consolidated Group .......... 23

III. RCFC 17 and 25 Establish That Substitution of the Appropriate Parties in Interest is the Proper Procedure for Addressing Changes in the Status of an Entity .......... 26

CONCLUSION .......... 27

APPENDIX OF STATUES AND REGULATIONS:

Page(s):

**United States Code:**

26 U.S.C. §7422 .......... 1
28 U.S.C. §1503 .......... 3

**Treasury Regulations:**

Treas. Reg. § 1.6012-2 .......... 4
Treas. Reg. § 301.6402-2 .......... 10
Treas. Reg. § 301.7701-2 .......... 12
Treas. Reg. § 301.7701-3 .......... 20

**Miscellaneous:**

Delaware Corporate Statutes .......... 30

FACTUAL APPENDIX:

Declaration of Martha Goodrich .......... 1

Declaration of Stuart Bassin .......... 3

Complaint .......... 8

First Amended Answer and Counterclaim .......... 17

Reply to Counterclaim .......... 23

Transcript of hearing, dated August 29, 2006 .......... 27

Letter, dated August 31, 2006, from Internal Revenue Service to BFI Waste Systems of America .......... 64

Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, Inc. on May 12, 2005, for period ending Sept. 30, 1997 .......... 65

Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, Inc. on May 12, 2005, for period ending Sept. 30, 1998 .......... 71

Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, Inc. on May 12, 2005, for period ending July 31, 1999 .......... 78

Letter, dated May 2005, requesting immediate disallowance of refund claims .......... 84

Page(s):

Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, LLC on August 22, 2006, for period ending Sept. 30, 1997 .............. 87

Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, LLC on August 22, 2006, for period ending Sept. 30, 1998 .............. 92

Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, LLC on August 22, 2006, for period ending July 31, 1999 ................ 98

Amended U.S. Corporation Income Tax Return filed by BFI Waste Systems on August 22, 2006, for period ending Sept. 30, 1997 .......................................... 104

Amended U.S. Corporation Income Tax Return filed by BFI Waste Systems on August 22, 2006, for period ending Sept. 30, 1998 .......................................... 109

Amended U.S. Corporation Income Tax Return filed by BFI Waste Systems on August 22, 2006, for period ending July 31, 1999 ........................................ 115

Excerpts, Form 10-K filing by Allied Waste Industries, Inc. for 2005 fiscal year ........ 121

Federal Income Tax Return (Form 1120) for Browning Ferris Industries, Inc. for period ending Sept. 30, 1998 .............................................................. 124

Federal Income Tax Return (Form 1120) for Browning Ferris Industries, Inc. and Subsidiaries for period ending Sept. 30, 1999 ............................................ 125

Browning Ferris Industries, Inc., Board resolution, dated December 31, 2004 ............ 126

Certificate of Conversion From A Corporation to a Limited Liability Company for Browning Ferris Industries .................................................... 130

Federal Income Tax Return (Form 1120) for Allied Waste Industries, Inc. and Subsidiaries for 2004 ......................................................................... 135

Corporation Application for Tentative Refund (Form 1139) for Browning-Ferris Industries, Inc., dated July 27, 2000 ....................................................... 158

Correspondence and Check, dated April 25, 2000 ....................................................... 159

Certified documents filed with the Arizona Corporation Commission .......................... 163

Transcript, Deposition of Elaine Kuether ..................................................................... 180

Transcript, Deposition of Dale Parker ........................................................................ 203

TABLE OF AUTHORITIES

Page(s):

FEDERAL CASES

Alumni Association of the University of North Carolina v. United States, 223 Ct. Cl. 765 (1980) ........ 16

American Radiator & Standard Sanitary Corp. v. United States, 318 F.2d 915 (Ct. Cl. 1963) ........ 24

Arthur W. Mires, Trustee v. United States, 2006 WL 3072758 (10th Cir. 2006) ........ 18

Bamdad Mechanic Co. v. United Tech. Corp., 109 F.R.D. 128 (D. Del. 1985) ........ 16

Coltec Industries, Inc. v. United States, 454 F.3d 1340 (Fed. Cir. 2006) ........ 2

Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212 (1947) ........ 15

Daff v. United States, 78 F.3d 1566 (Fed. Cir. 1996) ........ 14

Deuterium Corp. v. United States, 21 Cl. Ct. 132 (1990) ........ 15

Hersloff v. United States, 310 F.2d 947 (Ct. Cl. 1962), cert. denied, 373 U.S. 923 (1963) ........ 20

Levitsky v. United States, 27 Fed. Cl. 235 (1992) ........ 25

Mulholland v. United States, 175 Ct. Cl. 832 (1966) ........ 14

Ottawa Silica Co. v. United States, 699 F.2d 1124, Ct. Cl. 219, 454 F.2d 1379 (Ct. Cl. 1972) ........ 25

Palmer v. United States, 38 Fed. Cl. 316 (1997) ........ 14

Placid Oil Co. v. Ashland Oil, Inc., 792 F.2d 1127 (Em. App. 1986) ........ 16

Schweiger Construction Co. v. United States, 49 Fed. Cl. 188 (2001) ........ 16

Tucker v. Alexander, 275 U.S. 228 (1927) ........ 24

Tyco Laboratories, Inc. v. Koppers Co., Inc., 627 F.2d 54 (7th Cir. 1980) ........ 15

Page(s):

Union Pacific R. Co. v. United States, 182 Ct. Cl. 103, 389 F.2d 437 (Ct. Cl. 1968), *cert denied*, 395 U.S. 944 (1969) ........ 25

United States v. Dalm, 494 U.S. 596 (1990) ........ 22

United States v. Memphis Cotton Oil Co., 288 U.S. 62 (1933) ........ 24

Weathersby v. General Motors Corp., 2006 WL 2865058 (N.D. Miss. 2006) ........ 16

FEDERAL STATUTES & REGULATIONS

26 C.F.R. § 1.6012-2 (2006) ........ 20

26 U.S.C. § 1212 ........ 6

26 U.S.C. § 6532 ........ 7

26 U.S.C. § 7422 ........ 23

28 U.S.C. § 1503 ........ 14

Treas. Reg. § 1.1502-77(a) ........ 7

Treas. Reg. § 301.7701-2(c)(2)(iii)(A) ........ 22

Treas. Reg. § 301.7701-3(g)(1)(iii) ........ 22

Treas. Reg. § 301.6402-2(b)(1) ........ 24

Treas. Reg. § 301-7701 ........ 20, 21

MISCELLANEOUS

9 Wright & Miller, *Federal Practice and Procedure: Civil* § 2364 (1995) ........ 15

Delaware Corporate Statutes ........ 8, 18-19

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-738 T
(Judge Wheeler)

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

OPPOSITION BY THE UNITED STATES
TO PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL
WITHOUT PREJUDICE PURSUANT TO RCFC 41(a)(2) AND FOR
DISMISSAL OF COUNTERCLAIM PURSUANT TO RCFC 12(b)(1)

This is a suit in which plaintiff seeks a refund of more than $28 million in corporate income tax, and the United States has counterclaimed for more than $18 million in penalties. Plaintiff has moved to dismiss its own complaint and the United States' counterclaim. The United States now opposes that motion.

## INTRODUCTION

Plaintiff filed this suit more than one year ago to dispute audit adjustments made by the Internal Revenue Service (the "Service") arising out of plaintiff's execution of a widely-marketed tax shelter transaction, commonly called the "contingent liability tax shelter transaction," designed by the former Arthur Andersen accounting firm. Taxpayers like the

plaintiff executed the contingent liability tax shelter transaction in hopes of generating artificial capital losses for tax purposes (without corresponding economic losses). They then sought to apply those losses against income and gains they had earned from their other operations, thereby reducing their federal income tax liability. Recently, the Court of Appeals for the Federal Circuit rejected a suit brought by another similarly-situated Andersen client that executed a very similar contingent liability transaction and claimed that it had successfully manufactured similar losses. *Coltec Industries, Inc v United States*, 454 F.3d 1340 (Fed. Cir. 2006). That ruling largely disposes of the substantive arguments plaintiff can advance in support of its claims for the disputed capital losses and other tax benefits arising from its contingent liability tax shelter transaction–at least in the Federal Circuit.

Following issuance of the Federal Circuit's *Coltec* ruling, plaintiff first raised the highly unusual contention that this Court lacks subject matter jurisdiction over the suit plaintiff itself had brought. According to plaintiff, the Court lacks jurisdiction here because the refund claim filed as a prerequisite to this suit is a legal nullity which did not satisfy the jurisdictional claim for refund requirement because Browning-Ferris Industries, Inc.–the entity which filed the refund claim–had allegedly liquidated at the end of 2004. In late August 2006, two other Browning Ferris entities filed substantially similar refund claims addressing the tax treatment of the same contingent liability tax shelter transaction and seeking the same tax benefits. Apparently, plaintiff now wants to dismiss this suit and to litigate its new claims in another forum–*i.e.*, a forum not bound by the *Coltec* decision.

To pursue that forum-shopping strategy, plaintiff has now taken the highly unusual step of seeking dismissal of its own lawsuit under RCFC 41(a)(2) and dismissal of the counterclaim asserted by the United States under RCFC 12(b)(1). (Interestingly, plaintiff has not moved for dismissal of the complaint under RCFC 12(b)(1) for lack of subject matter jurisdiction). Plaintiff's brief contends (at 3) that courts "generally allow voluntary dismissal [under RCFC 41(a)(2)]–without regard to the plaintiff's motives–unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." In addition, plaintiff argues (at 3) that it is entitled to dismissal "as a matter of right" upon a showing that the Court lacks subject matter jurisdiction over this suit and the counterclaim asserted by the United States. Plaintiff's brief focuses upon its contention that the entity which filed the refund claim underlying this suit lost the legal capacity to file a claim on behalf of the consolidated group when it was "converted" into a limited liability corporation under Delaware law. According to plaintiff, a valid refund claim could be filed on behalf of the consolidated group only by another BFI subsidiary and, as a result, the refund claim underlying this suit is a legal nullity.

As discussed below, plaintiff's motion fails for several reasons. First, RCFC 41(a) does not authorize voluntary dismissal of this suit absent an order of the Court. Such an order is inappropriate here because plaintiff's forum-shopping effort will unfairly prejudice the United States and deprive the Court of jurisdiction over the United States' $18.2 million counterclaim. Plaintiff likewise has not demonstrated that the Court lacks subject matter jurisdiction over this suit under any of the theories it has advanced. In fact, as a matter of both Delaware corporate law and federal income tax law, Browning-Ferris Industries, Inc., existed as a corporate entity at

the time it filed the original refund claim and continues to exist. Further, the conversion into a limited liability company under state law did not, as plaintiff contends, deprive it of the power to file the refund claim on behalf of the BFI Consolidated Group. Any necessary changes in the "real party in interest" amongst plaintiff's many subsidiaries may be easily addressed through the routine procedures for substitution of parties under RCFC 17 and 25(c).

## FACTS

### A. Plaintiff's Historic Dealings with the Service.

During the years in suit, 1997 and 1998,[1] Browning- Ferris Industries, Inc. ("BFI Inc.")[2] was the parent company of a large corporate group consisting of more than 100 subsidiary

---

[1] BFI Inc. filed federal income tax returns for the BFI Consolidated Group on a fiscal year basis with each year ending on September 30. When the BFI Consolidated Group was acquired by Allied, its fiscal year closed on the date of acquisition–July 31, 1999–and a final federal income tax return was filed (by BFI Inc.) for the period from October 1, 1998 to July 31, 1999. Thereafter, neither BFI Inc. nor the BFI Consolidated Group filed federal income tax returns separate from Allied. (Goodrich decl., ¶ 6; Fact App. at 2.)

[2] Confusion can arise because several of the entities implicated by the instant motion have similar names. In the interest of clarity, this brief uses the following conventions:

| Short Form | Entity |
|---|---|
| BFI Consolidated Group | Affiliated group of related companies which filed the consolidated federal income tax return for the years in suit |
| BFI Inc. | Browning-Ferris Industries, Inc., a Delaware corporation |
| BFI LLC | Browning-Ferris Industries, LLC., a Delaware limited liability corporation |
| Plaintiff | Generic reference to the group of entities seeking to obtain tax benefits from the contingent liability tax shelter transaction |

corporations engaged in the waste disposal business, which filed consolidated federal income tax returns in the name of "Browning-Ferris Industries, Inc. & Subsidiaries" and the employer identification number of 74-1673682 (the "BFI Consolidated Group"). All of the members of the consolidated group of subsidiaries previously authorized BFI Inc. to act on their behalf with respect to all federal income tax matters. That authorization was not modified or revoked for the years in suit until August 2006. On August 24, 2006, plaintiff filed a request with the Service to designate BFI Waste Systems of North America, Inc. as the substitute agent for the BFI Consolidated Group, and the Service approved that request on August 30, 2006. (Proposed Findings 1-3.)

During July 1999, BFI Inc. and the other members of the BFI Consolidated Group were acquired by a competitor, Allied Waste Industries, Inc. (Allied), which itself headed its own large corporate group filing a consolidated return. On the eve of the formal acquisition, BFI Inc. and several of its subsidiaries executed the contingent liability tax shelter transaction at the core of the instant dispute. Following the acquisition, BFI Inc. filed a final return on behalf of its consolidated group for the period up to the acquisition, claiming more than $900 million in capital loss deductions arising out of the contingent liability transaction. For the post-acquisition years, Allied, Allied's subsidiaries, and the former members of the BFI Consolidated Group filed a single consolidated return in the name of "Allied Waste Industries, Inc. and Subsidiaries." Those Allied returns sought to apply more than $700 million in capital losses purportedly manufactured by the contingent liability tax shelter transaction to offset capital gains earned by the Allied group from the sale of assets previously held by members of the BFI Consolidated

Group, thereby allegedly reducing the Allied group's tax liability for those years by several hundred million dollars.[3] (Proposed Findings 4-7.)

Following the acquisition, BFI Inc. continued to act as the agent for the BFI Consolidated Group with respect to matters related to its pre-acquisition tax liabilities. During 2000, BFI Inc. submitted documents to the Service seeking adjustments of the BFI Consolidated Group's income and tax liability for pre-acquisition years arising out of the contingent liability tax shelter transaction at issue in this case. During 2005, BFI Inc. resolved a long-standing controversy with the Service involving international taxation of the BFI Consolidated Group for pre-acquisition years. (Proposed Finding 8.)

The Service conducted an audit of the BFI Consolidated Group's tax returns for its final years of independent operation–including the 1997 and 1998 tax years involved in this litigation. At the conclusion of that audit, the Service disallowed the tax benefits from the contingent liability transaction claimed by plaintiff. Allied paid these deficiencies on behalf of BFI Inc. for 1997 and 1998 in the amounts of $19,079,286 and $3,519,979, respectively, in April 2005. (Proposed Findings 9-10.)

---

3

Under federal income tax law, corporations can generally apply capital losses, like those allegedly generated by the contingent liability transaction, against gains generated in the three preceding years and the five succeeding five years under Section 1212(a). Thus, although the contingent liability transaction took place during the BFI Consolidated Group's 1999 tax year, the purported tax benefits attributable to the transaction appear on returns for other years. The BFI Consolidated Group has availed itself of approximately $100 million of the claimed capital losses related to the contingent liability transaction in its 1997 and 1998 tax years, and Allied (in its capacity as the parent of the BFI Consolidated Group) has sought to apply approximately $720 million of the remaining capital losses against its taxable income earned in its 1999 through 2002 tax years. (Goodrich decl., ¶ 9; Fact App. at 2.)

On or about May 6, 2005, plaintiff filed formal claims in the name of "Browning-Ferris Industries, Inc. & Subsidiaries" (using the employer identification number of 74-1673682), seeking a refund of $18.5 million for 1997 and $9.7 million for 1998 (the "First BFI Claims"). These refund claims were signed, under penalty of perjury, by Dale Parker–Allied's vice president for taxes–and were cited in the original complaint in this case. In those refund claims, plaintiff contended that the BFI Consolidated Group was entitled to a tax refund because the Service's disallowance of the claimed $901.6 million capital loss from the contingent liability tax shelter transaction was improper. Plaintiff contemporaneously requested the Service to immediately disallow the First BFI Claims,[4] and the Service denied the First BFI Claims on May 10, 2005, by a letter issued to "Browning-Ferris Industries, Inc. and Subsidiaries." (Proposed Findings 11-12.)

On July 8, 2005, plaintiff filed the instant suit challenging the Service's disallowance of the First BFI Claims. The complaint asserted that–

> 3. BFI [Browning-Ferris Industries, Inc. & Subsidiaries] is a corporation organized under the laws of the State of Delaware. BFI's employer identification number is 74-1673682.
>
> 4. BFI was the common parent of an affiliated group of corporations that filed consolidated federal income tax returns for the tax years at issue. Pursuant to Treas. Reg. §1.1502-77(a), BFI is duly authorized to act in its own name with respect to all matters relating to the tax liability of the affiliated group of corporations of which it was the common parent for all periods relevant to this action.
>
> *   *   *

4 A taxpayer may request immediate disallowance of a refund claim in order to expedite litigation. Section 6532(a)(1) requires either the passage of six months or the disallowance of the claim before suit can be filed.

> 16(e). On or about May 5, 2005, BFI timely filed a timely claim for refund of . . . taxes paid for the 1997 tax year with the IRS. . . .

(Proposed Finding 13.)[5] The complaint was signed by counsel.[6] The United States filed its amended answer on December 21, 2005, asserting a counterclaim to recover assessed restricted plaintiff's 1997 and 1998 years of more than $18 million, plus statutory interest. Plaintiff filed a reply on December 29, 2005, which denied liability on the counterclaim and asserted various "Affirmative Defenses and Other Matter," but which did not challenge the Court's jurisdiction over the counterclaim. (Proposed Findings 13-15.)

B. Corporate Status of BFI Inc.

BFI Inc. was formed as a Delaware corporation during 1970. At the end of 2004, Allied decided to convert BFI Inc. from a Delaware corporation into a Delaware limited liability company (LLC)[7] because it believed that the conversion would reduce its tax liabilities. BFI's Board of Directors adopted a resolution authorizing the conversion, which stated–

> RESOLVED, that after the time the Certificate of Conversion becomes effective the converted Company shall continue to exist as a limited liability company . . . and the laws of the State of Delaware shall apply to the convert Company to the same extent as prior to [the conversion]; and

---

5 Allied's filings with the Securities and Exchange Commission, dated 2005, reported the filing of the claims and the complaint as actions "we" had taken. (Allied annual report, Fact App. at 122.)

6 Pursuant to RCFC 11(b)(3), by so signing, counsel certified that he had conducted "an inquiry reasonable under the circumstances" and that "the allegations and other factual contentions have evidentiary support. . ."

7 Delaware law distinguishes between regular corporations and limited liability companies created pursuant to Title 6, Chapter 18 of the Delaware Code, entitled "Limited Liability Company Act."

> RESOLVED, that the converted Company shall not be required to wind up its affairs . . ., and the Conversion shall not constitute a dissolution of the Company and shall constitute a continuation . . . .

(Emphasis added).[8] Even after the conversion, Allied continued to publish separate financial statements for the former BFI Consolidated Group as part of its SEC Form 10-K filings–as required by covenants in its borrowing agreements with its lenders. The financial statements thereafter published for BFI LLC were just a continuation of the financial statements published for BFI Inc. prior to the conversion. (Proposed Findings 16-18.)

From a corporate law perspective, BFI Inc. never actually filed for dissolution, but rather was converted in legal form from a corporation to an LLC. The conversion was accomplished by the filing of a "Certificate of Conversion From A Corporation to a Limited Liability Company Pursuant to Section 266 of the Delaware General Corporation Law" on December 31, 2004. Thereafter the name of the limited liability company was Browning-Ferris Industries, LLC (BFI LLC). Both before and after this conversion, Allied remained the owner, either directly or indirectly, of the entities which had constituted the BFI Consolidated Group. (Proposed Finding 19).

---

8 Consistent with the limited purpose of the conversion, Allied's annual report describes the conversion, stating–

> Effective for 2005, Browning-Ferris Industries, Inc. was converted to a single member limited liability company (LLC). Allied NA, a wholly-owned subsidiary of Allied Waste Industries, Inc., is the sole member in Browning-Ferris Industries, LLC and therefore BFI continues to be wholly-owned by Allied NA, which ownership has not changed since Allied acquired BFI in 1999.

(Allied annual report, Fact App. at 123 n9.)

In addition, BFI Inc. conducted business as a foreign corporation in Arizona. There, it incorporated under the name of "Browning-Ferris Industries, Inc." and continued in corporate existence until its charter was withdrawn in September 2006. To comply with Arizona's reporting requirements, BFI Inc. filed annual reports for 2004 and 2005 on October 11, 2004 and October 28, 2005 respectively–the latter of which was filed after the refund claims at issue here. Both were filed in the name of "Browning-Ferris Industries, Inc.," even though the later filing occurred after BFI Inc.'s conversion in Delaware into an LLC. BFI Inc. also filed other documents in Arizona under "Browning-Ferris Industries, Inc." subsequent to its conversion in Delaware, including a change of its statutory agent. On September 12, 2006, after plaintiff informed the Court of its intent to move for dismissal of this case, simultaneous applications for the withdrawal of "Browning-Ferris Industries, Inc." and for the registration of BFI as a foreign LLC were filed with the state of Arizona. (Proposed Findings 20-22.)

C. <u>The New Refund Claims</u>.

The Federal Circuit issued its ruling in *Coltec* on July 12, 2006, determining that the contingent liability tax shelter transaction does not produce the remarkable tax benefits claimed by taxpayers like plaintiff. Weeks later, plaintiff discovered the so-called "jurisdictional issue" addressed by the instant motion. At that time, plaintiff and its counsel recognized that, because of the *Coltec* decision, plaintiff would benefit if it could arrange to litigate its contingent liability claims outside the Court of Federal Claims. Plaintiff and its counsel further recognized that a contention that the First BFI Claims were invalid might be a vehicle to have plaintiff's substantive claims litigated outside the Court of Federal Claims. (Proposed Findings 23-24.)

Soon thereafter, on August 22, 2006, the individual entities comprising the BFI Consolidated Group filed a "Designation by Group Members Under §1.1502-77A(d)" with the Internal Revenue Service, terminating BFI Inc. as the common parent of the BFI Consolidated Group and designating BFI Waste Systems of North America, Inc. as the Substitute Agent for the group. That designation was approved by the Service on August 31, 2006. (Proposed Finding 25.)

D. Plaintiff's change of litigating position.

Plaintiff first presented its contention to the Court that the wrong entity had filed the refund claim and the complaint at a hearing conducted on August 29, 2006. At that time, Mr. Karter stated–

> we have come to the realization that the wrong plaintiff, **a plaintiff that is no longer in legal existence filed both the federal tax refund claim**, which is the prerequisite for jurisdiction for a federal tax refund suit, and the complaint in this matter.

(Tr. at 6) (emphasis added). Later, he added that–

> the **termination out of legal existence of Browning Ferris Industries, Inc.** in December of 2004, before the refund claims were filed and before the action was brought, was a defect that requires the dismissal without prejudice of this case.

(Tr. at 9) (emphasis added). At the hearing, Mr. Karter indicated (at 11-12) that new refund claims had been filed. (Proposed Finding 26.)

In fact, plaintiff had filed *two* new sets of refund claims for the years in suit on August 22, 2006. One set of refund claims was filed in the name of "Browning Ferris Industries, LLC for consolidated group f/k/a Browning Ferris Industries, Inc. & Subsidiaries" (the "Second BFI Claims"). The other set of refund claims was filed in the name of "BFI Waste Systems of North

America, Inc. Designee for Consolidated Group f/k/a Browning Ferris Industries, Inc. and Subsidiaries" (the "Third BFI Claims"). Just like the supposedly defective First BFI Claims, the Second BFI Claims and the Third BFI Claims identify "Browning Ferris Industries, Inc. and Subsidiaries" as the taxpayer which filed the original tax returns, reference the same taxable periods, reference the same employer identification numbers, and describe the same contingent liability tax shelter transaction as the grounds for the refund claim. The principal differences are (1) the entity submitting the claims on behalf of the BFI Consolidated Group (the First BFI Claims were filed by BFI Inc., the Second BFI Claims were filed by BFI LLC, and the Third BFI Claims were filed by BFI Waste Systems of North America), and (2) a single paragraph in the Second BFI Claims and the Third BFI Claims addressing agency of plaintiff. The Service has taken no action on the Second and Third BFI Claims. (Proposed Findings 27-28).

## ARGUMENT

Plaintiff's motion to dismiss invokes two different procedural rules to support plaintiff's highly unusual attempt to abandon the lawsuit it filed more than a year ago in hopes of recovering tens of millions of dollars in federal income taxes. It seeks a voluntary dismissal of its complaint without prejudice under RCFC 41(a). Alternatively, its seeks dismissal of defendant's counterclaim (but not the complaint) for lack of subject matter jurisdiction under RCFC 12(b)(1). The gravamen of plaintiff's motion is its contention that the First BFI Refund Claims were a legal nullity and that, therefore, this Court lacks subject matter jurisdiction over the counterclaim because plaintiff has not made the mandatory refund claim required by Section 7422 of the Internal Revenue Code. Plaintiff's arguments are contrary to both the law and the

facts.

## I. RCFC 41(a) DOES NOT AUTHORIZE VOLUNTARY DISMISSAL BECAUSE DISMISSAL WOULD PREJUDICE THE UNITED STATES AND REQUIRE DISMISSAL OF ITS COUNTERCLAIM.

RCFC 41(a), the primary authority cited in support of plaintiff's motion for voluntary dismissal, recognizes three different types of voluntary dismissals–dismissals by notice, dismissals by stipulation, and dismissals by motion and order. In relevant part, the Rule provides–

> **Rule 41. Dismissal of Actions(a) Voluntary Dismissal: Effect Thereof. (1) By Plaintiff; by Stipulation.** Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (I) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. . . .
> **(2) By Order of Court.** Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. **If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.**

(Emphasis added). Here, dismissal by notice (under RCFC 41(a)(1)(I)) is unavailable because the United States has already filed its answer; and dismissal by stipulation (under RCFC 41(a)(1)(ii)) is unavailable because the United States does not consent to dismissal. Plaintiff, therefore, can seek a voluntary dismissal only through the motion and order process authorized by RCFC 41(a)(2). As discussed below, RCFC 41(a) prohibits dismissal here for two distinct reasons.

First, the highlighted portion of RCFC 41(a)(2) bars allowance of a plaintiff's motion for

voluntary dismissal because it would deprive the Court of Federal Claims of jurisdiction over the $18.2 million counterclaim plead by the United States. Under this rule, the critical question is whether the United States' counterclaim can remain pending for independent adjudication; if not, the motion for voluntary dismissal must be denied. In fact, the Court of Federal Claims' jurisdiction over counterclaims is limited by 28 U.S.C. § 1503, which authorizes the Court to "render judgment upon any set-off or demand by the United States against any plaintiff in such court." Binding precedent has construed this provision as depriving the court of jurisdiction over a counterclaim plead by the United States where the plaintiff's underlying suit is dismissed for lack of subject matter jurisdiction. For example, in *Mulholland v. United States*, 175 Ct. Cl. 832, 836-37 (1966), the court considered whether 28 U.S.C. § 1503 allowed it to resolve a counterclaim filed by the United States after it had dismissed the plaintiff's complaint as time-barred by the statute of limitations. Dismissing the counterclaim, the Court of Claims explained that–

> as the Court of Claims is generally without authority to adjudicate claims by the United States against other persons, it has been held that where the United States has asserted in this court a counterclaim against a plaintiff and the plaintiff's claim is rejected because of a lack of jurisdiction, the counterclaim must be dismissed along with the plaintiff's petition, without regards to the merits of the counterclaim.

*Id.* at 846. *See also Daff v. United States*, 78 F.3d 1566, 1571-73 (Fed. Cir. 1996); *Palmer v. United States*, 38 Fed. Cl. 316, 325-26 (1997). That same reasoning would apply here and would deprive the Court of Federal Claims of jurisdiction over the $18.2 million counterclaim brought by the United States if the Court dismissed plaintiff's complaint. Of greater importance, that conclusion requires denial of plaintiff's motion for voluntary dismissal under RCFC

41(a)(2) because dismissal of the complaint would deprive the Court of jurisdiction over the counterclaim.

Second, plaintiff's motion to dismiss under RCFC 41(a)(2) must be denied because it will unfairly prejudice the United States. A court must consider the prejudice to the defendant in evaluating a motion for voluntary dismissal under RCFC 41(a)(2) and must deny the motion if it will produce "plain legal prejudice." *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 217 (1947). Many different factors have been considered in determining whether dismissal would produce "plain legal prejudice" and no precise calculus governs the determination. *Deuterium Corp. v. United States*, 21 Cl. Ct. 132, 134-36 (1990). *See generally*, 9 Wright & Miller, *Federal Practice and Procedure: Civil* § 2364 (1995).

Three of the factors often identified by courts as barring a voluntary dismissal because they constitute "plain legal prejudice" are present here–the effect of dismissal on a pending counterclaim, additional cost resulting from dismissal, and evidence that the plaintiff seeking dismissal is engaging in impermissible forum-shopping. As explained above, defendant would be prejudiced because allowance of plaintiff's motion would deprive the United States of the right to litigate its counterclaim in the Court of Federal Claims. *Tyco Lab., Inc. v. Koppers Co., Inc.*, 627 F.2d 54, 56 (7th Cir. 1980) ("Plain legal prejudice ... is more clearly shown where the defendant has filed a counterclaim prior to the time that plaintiff has moved to dismiss"). Additionally, defendant would be prejudiced based on the considerable time and effort in litigating the case thus far, including approximately 1100 attorney hours, plus other related expenditures. See *Alumni Association of the University of North Carolina v. United States*, 223

Ct. Cl. 765 (1980) (voluntary dismissal denied where defendant had devoted time to preparation of interrogatories); *Schweiger Construction Co. v. United States*, 49 Fed. Cl. 188, 209 (2001). Finally, dismissal is not appropriate where a plaintiff's motion to dismiss is attributable to forum shopping. *See Placid Oil Co. v. Ashland Oil, Inc.*, 792 F.2d 1127, 1134, 1135 (Em. App. 1986) (holding that a Rule 41(a)(2) dismissal should be denied "when the plaintiff's purpose is so to maneuver the litigation that the defendant will lose his existing advantage"); *Bamdad Mechanic Co. v. United Tech. Corp.*, 109 F.R.D. 128, 132-33 (D.Del. 1985); *Weathersby v. General Motors Corp.*, 2006 WL 2865058 (N.D. Miss. 2006) (concluding that "blatant forum shopping" constituted plain legal prejudice to the defendant). Taken together, these factors demonstrate that allowance of plaintiff's motion for voluntary dismissal would produce plain legal prejudice. Accordingly, the motion must be denied.

## II. THE COURT OF FEDERAL CLAIMS HAS SUBJECT MATTER JURISDICTION OVER THIS SUIT.

Plaintiff's brief principally argues that BFI Inc.'s filing of the First BFI Claims was insufficient to satisfy the jurisdictional requirement that the taxpayer must file a refund claim prior to filing a refund suit. Of course, the complaint in this case, the supposedly invalid First BFI Claims, and the supposedly valid Second and Third BFI Claims all seek identical adjustments to the tax liability of the BFI Consolidated Group (not just BFI Inc.) for identical tax years and refer to the same taxpayer identification number. They all relate to the same contingent liability tax shelter transactions, allege the same basic factual, advance the same legal arguments, and were signed by the same individual. Indeed, virtually the only difference

between the supposedly insufficient First BFI Claims and the more recent claims is the name of the entity identified as having filed the refund claims on behalf of the BFI Consolidated Group.

Nonetheless, plaintiff's argument reduces to two related assertions–(1) that BFI Inc. had ceased to exist prior to its filing of the First BFI Claims, and (2) that BFI Inc.'s filing of the First BFI Claims (which both plaintiff and the Service contemporaneously treated as sufficient claims), therefore, did not constitute sufficient claims. While plaintiff fails to identify a single instance in which a court has dismissed a case under comparable circumstances, it further contends that the law requires dismissal of this suit because of plaintiff's supposed failure to name the proper agent for the BFI Consolidated Group in its refund claim–another proposition for which plaintiff has cited no case law.

Of course, "a heavy dose of skepticism is in order when" a plaintiff reverses course after an adverse decision on the merits to contend that the court never had subject matter jurisdiction over the plaintiff's own suit. *Arthur W. Mires, Trustee v. United States*, 2006 WL 3072758 (10th Cir., Oct. 31, 2006). Regardless, as discussed below, plaintiff's motion fails for three reasons. First, under Delaware state corporate law, BFI Inc. was a viable legal entity at the time it filed the First BFI Claims. Second, contrary to plaintiff's assertions, BFI Inc. had authority to file refund claims on behalf of the BFI Consolidated Group at the time it filed the First BFI Claims. Finally, *even if* BFI Inc. had liquidated or was not the legally authorized agent of the BFI Consolidated Group, plaintiff cannot establish that these technicalities require the Court to dismiss this case and throw the BFI Consolidated Group out of this court (and into another court more to its liking).

A. BFI Inc. was a legal entity at the time it filed the First BFI Claims.

The fundamental factual contention presented by plaintiff at the August 2006 hearing–that BFI Inc. had ceased to exist prior to its filing of the First BFI Claims–is simply untrue. BFI Inc. had long existed as a Delaware corporation. All that happened in December 2004 was that it "converted" from a standard domestic corporation to a limited liability company under Delaware's general corporation law. The applicable Delaware statute establishes that such a conversion does not dissolve or terminate the pre-existing entity; rather, it provides as follows–

> **§ 266. Conversion of a domestic corporation to other entities.**
> (a) A corporation of this State may, upon the authorization of such conversion in accordance with this section, convert to a limited liability company. . .
> . . .
> (e) After the time the certificate of conversion becomes effective **the corporation shall continue to exist** as a limited liability company . . . .
> (f) Unless otherwise provided in a resolution of conversion adopted in accordance with this section, the converting corporation shall not be required to wind up its affairs or pay its liabilities and distribute its assets, and **the conversion shall not constitute a dissolution of such corporation and shall constitute a continuation of the existence of the converting corporation** in the form of the applicable other entity of this state.
> . . .
> (h) When a corporation has been converted to another entity or business form pursuant to this section, the other entity or business form shall, for all purposes of the laws of the State of Delaware, be deemed to be the same entity as the corporation. . . .

8 Del. C. § 266 (2006) (emphasis added). Thus, BFI Inc. continued to exist after its conversion under Delaware law, albeit in a slightly different form and with a slightly different name.

Even if the conversion constituted a dissolution of BFI Inc. under Delaware law (which it did not), BFI Inc. retained the legal authority to litigate preexisting claims, such as this tax

refund suit. Like many other states, Delaware recognizes a "winding up" period following a corporate dissolution during which the corporation may sue and be sued, providing that–

> **§ 278. Continuation of corporation after dissolution for purposes of suit and winding up affairs.**
> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of three years from such expiration or dissolution . . . . **With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation**; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

8 Del. C. § 278 (2006) (emphasis added). As BFI Inc. converted on December 31, 2004, filed the First BFI Claims in May 2005 (which was a necessary prerequisite to suit), and filed the complaint on July 8, 2005, it had the legal authority to file the First BFI Claims on behalf of the BFI Consolidated Group even if its conversion constituted a dissolution (which it did not).

Analogous federal income tax law reaches the same conclusion–that BFI Inc. "existed" at the time it filed the First BFI Claims. Similar questions regarding the existence of a corporation during its winding up period have arisen where corporations which have ceased business have contended that they were no longer required to file federal income tax returns. Those questions are now controlled by a regulation which requires dissolving corporations with valuable claims and assets to file returns, providing as follows–

> **§ 1.6012–2 Corporation required to make returns of income.**
> (a)(2) *Existence of corporation.* A corporation in existence during any portion of a taxable year is required to make a return. . . . A corporation is not in existence after it ceases business and dissolves, *retaining no assets*, whether or

> not under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with winding up its affairs, such as for the purpose of suing and being sued. **If the corporation has valuable claims for which it will bring suit during this period, it has retained assets and therefore continues in existence.**

26 C.F.R. § 1.6012–2 (2006) (emphasis added). *See also Hersloff v. United States,* 310 F.2d 947, 949, 951 (Ct. Cl. 1962), *cert. denied*, 373 U.S. 923 (1963) (a corporation, whose charter had expired, continued to exist for federal income tax purposes partly due to the retention of a World War I vintage claim against Britain). Here, the existence of the BFI Consolidated Group's tax claims relating to the contingent liability tax shelter transaction for the pre-merger years would establish BFI Inc.'s continued existence, even if it had formally dissolved under state law. Plaintiff's contrary contention thus fails as a matter of both fact and law.

B. <u>BFI Inc. had authority to file the First BFI Claims on behalf of the BFI Consolidated Group.</u>

Plaintiff's alternative contention (at 7-13) that BFI Inc. could not file refund claims for the BFI consolidated group when the First BFI Claims were submitted to the Service is based upon two related propositions. Primarily, plaintiff contends that, under the "entity classification regulations" set forth under Treas. Reg. § 301-7701, BFI Inc. dissolved or ceased to exist for federal income tax purposes when it converted into a Delaware LLC and was thus rendered incapable of filing a refund claim on behalf of the BFI Consolidated Group. That contention lacks merit.

The "entity classification regulations" codified in Treas. Reg. § 301.7701 reflect the tax law's recognition that individuals and businesses can conduct their economic affairs through many different types of entities (*e.g.*, partnerships, corporations) and that federal income tax law

treats these different types of entities differently. As a result, the classification of an entity can be an important issue in federal income tax law. The law, as set forth in the entity classification regulations, generally allows entities to elect their own classification, but establishes "default classifications" where no election is made. In addition, as a business can change the manner in which it organizes its economic affairs, the regulations also address the tax consequences of a change from classification as one class of entity into another.

Here, plaintiff misreads the entity classification regulations when it argues that the regulations require treatment of the conversion of BFI Inc. into BFI LLC as a liquidation of BFI Inc., which deprived it of the capacity to pursue refund claims. Plaintiff is correct when it argues that when a corporation or association converts into an LLC and chooses to be treated as a disregarded entity, "the following is deemed to occur: The association distributes all of its assets and liabilities to its single owner in liquidation of the association." Treas. Reg. §301.7701-3(g)(1)(iii). However, the same set of regulations establish that BFI LLC retained authority to pursue refund claims on behalf of the BFI Consolidated Group after the conversion because a "disregard entity" is not disregarded for certain purposes, including filing of refund claims, under Treas. Reg. §301.7701-2(c)(2)(iii)(A), which provides–

> In general. An entity that is otherwise disregarded as separate from its owner is treated as an entity separate from its owner for purposes of:
>
> . . .
>
> (1) Federal tax liabilities of the entity with respect to any taxable period for which the entity was not disregarded,
>
> . . .
>
> (3) Refunds or credits of Federal tax.

Thus, characterization of BFI LLC as a disregarded entity under the entity classification regulations did not deprive BFI Inc. of the capacity to file a refund claim on behalf of the BFI Consolidated Group. It is not disregarded with respect to the periods prior to its conversion–including the periods in suit–and it is not disregarded for purposes of seeking credits or refunds like those sought in this suit.[9]

C. BFI has not established that filing of refund claims by the incorrect BFI subsidiary on behalf of the BFI Consolidated Group would defeat the Court's subject matter jurisdiction over the claims of the BFI Consolidated Group.

The claim for refund requirement–the focus of plaintiff's motion–has its origin in the well-settled rule that the United States, as a sovereign, may be sued only to the extent that it has consented to suit, and that the terms of that consent define the court's jurisdiction. *United States v. Dalm*, 494 U.S. 596, 608-10 (1990). As applicable here, that consent is conditioned upon the statutory requirement codified in Section 7422(a) that, in order to maintain a tax refund suit in this Court, a taxpayer must first file a claim for refund. That statute provides, in part, as follows:

> § 7422. CIVIL ACTIONS FOR REFUND.
> (a) No Suit Prior to Filing Claim for Refund.-- No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a

---

9 None of the authorities from the field of consolidated returns cited by plaintiff mandate a contrary conclusion. The regulation upon which plaintiff principally relies, Treas. Reg. § 1.1502-77A(d), imposes obligations upon taxpayers when the common parent has dissolved or terminated, and gives the Service rights in the event taxpayers fail to fulfill those obligations; it does not, as plaintiff apparently claims, give taxpayers the right to treat the actions of the dissolved or terminated common parent as voidable at the taxpayer's option. The preamble to a set of proposed regulations inapplicable to the years in suit cited by plaintiff (at 8-9) likewise do not explicitly give consolidated return taxpayers the right to disavow the actions of a terminated common parent, as advocated by plaintiff. Finally, none of the Tax Court cases cited by plaintiff (at 7-8) provide consolidated return taxpayers with the rights plaintiff seeks.

> claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

(Emphasis added.) This statute has two principal components–(1) it requires filing of a refund claim as a prerequisite to suit, and (2) it authorizes the Service to promulgate regulations defining the required contents for a the claim for refund.

In this case, no question exists regarding whether the First BFI Claims were filed on behalf of the BFI Consolidated Group with the Service, as required by the statutory language–they were. What plaintiff contends, as discussed in the prior section, is whether those refund claims were in the form required by the regulations. Yet, even if plaintiff were correct in contending that the First BFI Claim was not in the form required by the regulations, a separate question would arise regarding the consequences if plaintiff failed to fully comply with the formalities of those regulations. Plaintiff did not address that question and, as outlined below, the law clearly establishes that a refund claim which fails to comply with the requirements of the regulations may still satisfy the statutory claim for refund requirement, particularly where (as here) the Service treats the refund claim addresses the merits of the claim.

The case law has repeatedly distinguished between a failure to file a refund claim, and a failure to file that refund claim in the form required by the regulations. The Supreme Court has distinguished between (1) the statutory claim for refund requirement, and (2) the regulations prescribing the required form and contents of a refund claim. While the Treasury may not waive the congressionally mandated requirement that a formal claim be filed, the Treasury can waive its own formal requirements where the IRS has sufficient knowledge of the claim and makes a

determination on the merits. *Tucker v. Alexander*, 275 U.S. 228, 231 (1927) (the Treasury, through its delegate, the IRS, can waive the formalities of the regulation). *See also United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 (1933); *American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915 (Ct. Cl. 1963). In sum, a failure by plaintiff to file a refund claim in strict compliance with the regulations is not necessarily fatal to this Court's jurisdiction over this suit.

These principles are best illustrated by the many cases that have been litigated concerning the adequacy of the taxpayer's description of its claim, an issue governed by Treas. Reg. § 301.6402-2(b)(1). That regulation provides that:

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof ...

This Court has interpreted this regulation in view of the purpose of the refund claim requirement; the requirement is designed both "to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination." *See Ottawa Silica Co. v. United States*, 699 F.2d 1124, Ct. Cl. 219, 454 F.2d 1379, 1383 (Ct. Cl. 1972) (quoting *Union Pacific R. Co. v. United States*, 182 Ct. Cl. 103, 389 F.2d 437, 442 (Ct. Cl. 1968), *cert denied*, 395 U.S. 944 (1969). In short, an "informal" refund claim, which does not comply with the regulations' requirement that it "set forth in detail each ground" or the "exact basis" for the claim can be adequate if it is "sufficient to apprise" the Service of the claim. Applying those principles, this Court has ruled, for example, that a tax return submitted without any explanation could satisfy

the claim for refund requirement. *Levitsky v. United States*, 27 Fed. Cl. 235, 240-42 (1992). If the Court concluded that the Service understood the nature of the taxpayer's dispute, technical compliance with the regulations prescribing the contents of the taxpayer's refund claim was not required.

This same authority would treat any defect in the form of the First BFI Claims as inconsequential, if (as here) the Service considered those claims in spite of their formal defects (and thereby waived the formal requirements of the regulations). Until plaintiff recently raised the instant dispute, both plaintiff and the Service had treated the First BFI Claims as having adequately apprised the Service of the claims of the BFI Consolidated Group. In fact, the notice of disallowance plainly indicates that the claims filed by BFI Inc. were denied on the merits, stating–

> This letter is your legal notice that we have fully disallowed your claims listed above. Your claims for refund or credit for tax periods ending September 30, 1997, September 30, 1998, and July 30, 1999 have been disallowed in full for the reasons stated in the attached.

Under the circumstances, strict compliance with the requirements set forth in the Treasury Regulations for the filing of a formal refund claim has been waived by the Service. The First BFI Claims–filed on behalf of the BFI Consolidated Group–apprised the IRS of the basis of the claims and were examined by the Service on the merits, even if they contained technical flaws. They, therefore, constitute adequate informal claims, which are sufficient to confer jurisdiction in this case.

## III. RCFC 17 AND 25 ESTABLISH THAT SUBSTITUTION OF THE APPROPRIATE PARTIES IN INTEREST IS THE PROPER PROCEDURE FOR ADDRESSING CHANGES IN THE STATUS OF AN ENTITY

This case, of course, is not the first instance in which the identity of a party has changed during the course of a controversy through death of an individual or the transfer of a corporation. In those circumstances, this Court's rules establish that such issue are resolved through substitution of the successor to the original party, not dismissal of the action. For example, RCFC 25(c) provides that–

> In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

RCFC 17(a) even more emphatically supports substitution as the proper procedure, stating--

> **(a) Real Party in Interest**. Every action shall be prosecuted in the name of the real party in interest. . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect, as if the action had been commenced in the name of the real party in interest.[1]

The bottom line, under either rule, is that plaintiff may (if it so desires) substitute or join some other BFI entity as the party in this action, and the United States would not oppose such a motion. Dismissal of the action, however, is not allowed.

---

1

RCFC 17(b), which governs the capacity to sue or be sued establishes that– "The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Here, as established *supra,* Delaware law authorizes BFI Inc. to prosecute this action.

Finally, the United States observes that plaintiff has remedies far less drastic than dismissal available if its concerns about this Court's jurisdiction BFI Inc.'s capacity to prosecute are genuine. It could, for example, have BFI LLC or BFI Waste Systems file additional complaints in this Court based upon the Second BFI Claims or the Third BFI Claims, and then have those cases either stayed or consolidated with this action. Doing so would ensure that its present concerns about jurisdiction would never deprive it of its opportunity to prosecute its claims. However, it may not use those supposed concerns about jurisdiction as an excuse to forum shop. Plaintiff chose to litigate the claims of the BFI Consolidated Group in this Court in hopes of availing itself of the trial court decision in *Coltec*; it may not reverse that choice now because of its disappointment with the Federal Circuit's decision in *Coltec*.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiff's motion for voluntary dismissal without prejudice pursuant to RCFC 41(a)(2) and for dismissal of counterclaim pursuant to RCFC 12(b)(1). Further, the Court should issue an order requiring plaintiff to respond to the pending discovery requests of the United States, served June 30, 2006, within 60 days of the ruling on the instant motion and scheduling a status conference to establish a new schedule for pretrial proceedings.

Respectfully submitted,

s/ STUART J. BASSIN
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6418
(202) 307-2504 (fax)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
JENNIFER D. SPRIGGS
Senior Trial Attorney
JACOB E. CHRISTENSEN
Trial Attorney

November 22, 2006