No. 05-738 T
(Judge Wheeler)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

# FACTUAL APPENDIX TO OPPOSITION BY THE UNITED STATES TO PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE PURSUANT TO RCFC 41(a)(2) AND FOR DISMISSAL OF COUNTERCLAIM PURSUANT TO RCFC 12(b)(1)

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
STUART J. BASSIN
JENNIFER D. SPRIGGS
JACOB E. CHRISTENSEN
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6418
(202) 307-2504 (Fax)

FACTUAL APPENDIX:

Index

Declaration of Martha Goodrich . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Declaration of Stuart Bassin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

| | |
|---|---|
| Complaint | 8 |
| First Amended Answer and Counterclaim | 17 |
| Reply to Counterclaim | 23 |
| Transcript of hearing, dated August 29, 2006 | 27 |
| Letter, dated August 31, 2006, from Internal Revenue Service to BFI Waste Systems of America | 64 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, Inc. on May 12, 2005, for period ending Sept. 30, 1997 | 65 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, Inc. on May 12, 2005, for period ending Sept. 30, 1998 | 71 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, Inc. on May 12, 2005, for period ending July 31, 1999 | 78 |
| Letter, dated May 2005, requesting immediate disallowance of refund claims | 84 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, LLC on August 22, 2006, for period ending Sept. 30, 1997 | 87 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, LLC on August 22, 2006, for period ending Sept. 30, 1998 | 92 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, LLC on August 22, 2006, for period ending July 31, 1999 | 98 |
| Amended U.S. Corporation Income Tax Return filed by BFI Waste Systems on August 22, 2006, for period ending Sept. 30, 1997 | 104 |
| Amended U.S. Corporation Income Tax Return filed by BFI Waste Systems on August 22, 2006, for period ending Sept. 30, 1998 | 109 |
| Amended U.S. Corporation Income Tax Return filed by BFI Waste Systems on August 22, 2006, for period ending July 31, 1999 | 115 |
| Excerpts, Form 10-K filing by Allied Waste Industries, Inc. for 2005 fiscal year | 121 |

Federal Income Tax Return (Form 1120) for Browning Ferris Industries, Inc. for period ending Sept. 30, 1998 124

Federal Income Tax Return (Form 1120) for Browning Ferris Industries, Inc. and Subsidiaries for period ending Sept. 30, 1999 125

Browning Ferris Industries, Inc., Board resolution, dated December 31, 2004 126

Certificate of Conversion From A Corporation to a Limited Liability Company for Browning Ferris Industries 130

Federal Income Tax Return (Form 1120) for Allied Waste Industries, Inc. and Subsidiaries for 2004 135

Corporation Application for Tentative Refund (Form 1139) for Browning-Ferris Industries, Inc., dated July 27, 2000 158

Correspondence and Check, dated April 25, 2005 159

Certified documents filed with the Arizona Corporation Commission 163

Transcript, Deposition of Elaine Kuether 180

Transcript, Deposition of Dale Parker 203

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-738 T
(Judge Wheeler)

BROWNING-FERRIS INDUSTRIES & SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

DECLARATION OF MARTHA GOODRICH

I, Martha Goodrich, pursuant to the provisions of 28 U.S.C., Section 1746, state as follows:

1. I am a Revenue Agent employed by the Internal Revenue Service (the "Service") and based in Phoenix, Arizona.

2. In that capacity, I am currently assigned as a Team Coordinator responsible for supervising other Service employees engaged in a continuing audit of the consolidated federal income tax returns filed by Allied Waste Industries, Inc. (Allied) and its affiliates.

3. As part of that audit, I am familiar with many facts related to the activities of subsidiaries of Allied, including the companies which previously filed a consolidated return in the name of Browning-Ferris Industries, Inc. and Subsidiaries.

4. Based upon that knowledge, I can attest to the accuracy of the statements set forth in the following paragraphs 5 through 9.

5. During the years in suit, 1997 and 1998, Browning- Ferris Industries, Inc. (BFI Inc.) was the parent company of a large corporate group consisting of more than 100 subsidiary corporations engaged in the waste disposal business, which filed consolidated federal income tax returns in the name of "Browning-Ferris Industries, Inc. & Subsidiaries" and the employer identification number of 74-1673682 (the "BFI Consolidated Group").

6. BFI Inc. filed federal income tax returns for the BFI Consolidated Group on a fiscal year basis with each year ending on September 30. When the BFI Consolidated Group was acquired by Allied, its fiscal year closed on the date of acquisition–July 30, 1999–and a final federal income tax return was filed. Thereafter, neither BFI Inc. nor the BFI Consolidated Group filed separate federal income tax returns.

7. Following the acquisition, BFI, Inc. filed a final return on behalf of its consolidated group for the period up to the acquisition, claiming more than $900 million in capital loss deductions arising out of the contingent liability transaction.

8. For the post-acquisition years, Allied, Allied's subsidiaries, and the former members of the BFI Consolidated Group filed a single consolidated return in the name of "Allied Waste Industries, Inc. and Subsidiaries."

9. The BFI Consolidated Group has availed itself of tax benefits derived from approximately $100 million of the claimed capital losses related to the contingent liability transaction in its 1997 and 1998 tax years. Allied (in its capacity as the parent of the BFI Consolidated Group) has sought to apply approximately $720 million of the remaining capital

losses against its taxable income in its 1999 through 2002 tax years. Plaintiff has, to date, not sought to apply the remaining $90 million in losses against any other tax liability.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Phoenix, Arizona, on November 14, 2006.

MARTHA GOODRICH

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-738 T
(Judge Wheeler)

BROWNING-FERRIS INDUSTRIES & SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

DECLARATION OF STUART J. BASSIN

I, Stuart J. Bassin, pursuant to the provisions of 28 U.S.C., Section 1746, state as follows:

1. I am an attorney employed by the United States Department of Justice.

2. In that capacity, I am currently assigned as attorney of record in this litigation.

3. I have personal knowledge of the facts set forth in this declaration.

4. In my official capacity, I have access to the Court's electronic files in this case. The documents attached hereto at pages 8-83 are excerpts from documents filed with the Court in this case.

5. In my official capacity, I participated in depositions taken in this case. The documents attached hereto at pages 180-288 are transcripts of the depositions of Dale Parker (including an errata sheet) and Elaine Keuther. During those depositions, the documents attached hereto at pages 84-179 were authenticated by the witnesses.

6. Attached hereto are copies of the following documents[1/]

| Description | Pages |
| --- | --- |
| Complaint | 8 |
| First Amended Answer and Counterclaim | 17 |
| Reply to Counterclaim | 23 |
| Transcript of hearing, dated August 29, 2006 | 27 |
| Letter, dated August 31, 2006, from Internal Revenue Service to BFI Waste Systems of America | 64 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, Inc. on May 12, 2005, for period ending Sept. 30, 1997 | 65 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, Inc. on May 12, 2005, for period ending Sept. 30, 1998 | 71 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, Inc. on May 12, 2005, for period ending July 31, 1999 | 78 |
| Letter, dated May 2005, requesting immediate disallowance of refund claims | 84 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, LLC on August 22, 2006, for period ending Sept. 30, 1997 | 87 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, LLC on August 22, 2006, for period ending Sept. 30, 1998 | 92 |
| Amended U.S. Corporation Income Tax Return filed by Browning Ferris Industries, LLC on August 22, 2006, for period ending July 31, 1999 | 98 |
| Amended U.S. Corporation Income Tax Return filed by BFI Waste Systems on August 22, 2006, for period ending Sept. 30, 1997 | 104 |
| Amended U.S. Corporation Income Tax Return filed by BFI Waste Systems on August 22, 2006, for period ending Sept. 30, 1998 | 109 |

[1/] In some instances, I have not included portions of voluminous documents which are not germane to the issues presented by the pending motion.

Amended U.S. Corporation Income Tax Return filed by BFI Waste Systems on August 22, 2006, for period ending July 31, 1999 115

Excerpts, Form 10-K filing by Allied Waste Industries, Inc. for 2005 fiscal year 121

Federal Income Tax Return (Form 1120) for Browning Ferris Industries, Inc. for period ending Sept. 30, 1998 124

Federal Income Tax Return (Form 1120) for Browning Ferris Industries, Inc. and Subsidiaries for period ending Sept. 30, 1999 125

Browning Ferris Industries, Inc., Board resolution, dated December 31, 2004 126

Certificate of Conversion From A Corporation to a Limited Liability Company for Browning Ferris Industries 130

Federal Income Tax Return (Form 1120) for Allied Waste Industries, Inc. and Subsidiaries for 2004 135

Corporation Application for Tentative Refund (Form 1139) for Browning-Ferris Industries, Inc., dated July 27, 2000 158

Correspondence and Check, dated April 25, 2005 159

Certified documents filed with the Arizona Corporation Commission 163

Transcript, Deposition of Elaine Kuether 180

Transcript, Deposition of Dale Parker 203

7. Tax Division attorneys are required to report the number of hours they devote to work on individual cases on a regular basis. That data is collected electronically. As of this date, the Tax Division's records indicate that more than 1100 hours of attorney time have been expended on this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, D.C. on November 22, 2006.

STUART J. BASSIN

ECF

FILED
JUL - 8 2005
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-738T |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, Browning-Ferris Industries, Inc. & Subsidiaries (hereinafter, "BFI" or the "Plaintiff"), brings this suit against the Defendant, the United States of America (hereinafter, the "Defendant"), and alleges as follows:

**OVERVIEW OF THE COMPLAINT**

1. This is a tax dispute arising under the Internal Revenue Code, Title 26 of the United States Code, in which BFI seeks a refund of erroneously assessed and collected federal income taxes of $18,549,092 for the taxable year ended September 30, 1997 and $9,711,514 for the taxable year ended September 30, 1998 (hereinafter, the "1997 and 1998 tax years," respectively). The sole substantive issue to be resolved in this action involves BFI's capital loss in connection with the sale of stock in the taxable year ended July 30, 1999 (hereinafter, the "1999 tax year"), which impacts BFI's federal income tax for the 1997 and 1998 tax years.

2. Jurisdiction is conferred upon this Court by Title 28, United States Code, section 1491, and Title 26, United States Code, section 7422.

3. BFI is a corporation organized under the laws of the State of Delaware. BFI's employer identification number is 74-1673682.

4. BFI was the common parent of an affiliated group of corporations that filed consolidated federal income tax returns for the tax years at issue. Pursuant to Treas. Reg. §1.1502-77(a), BFI is duly authorized to act in its own name with respect to all matters relating to the tax liability of the affiliated group of corporations of which it was the common parent for all periods relevant to this action. The term "BFI" as used herein refers to BFI, the consolidated group, or the applicable members of the group, as appropriate.

5. Defendant is the United States of America.

**FACTS RELATING TO THE CAPITAL LOSS ON THE SALE OF STOCK**

6. On July 30, 1999, Allied Waste Industries, Inc. (hereinafter, "Allied") acquired substantially all of the outstanding stock of BFI.

7. Prior to the acquisition, BFI utilized a large in-house staff to manage the liabilities arising from its operations. In contrast, Allied utilized a small in-house staff and outsourced most of its environmental management, risk management and other expertise.

8. In July 1999, shortly before the close of the acquisition, BFI restructured the management of certain contingent liabilities in a manner consistent with Allied's outsourcing approach and to provide a legal structure that would foster the effective management of the liabilities. The contingent liabilities were liabilities arising from BFI's waste management operations, including, but not limited to, post-closure costs associated with closed landfills, closure and other costs associated with active landfills, costs associated with Superfund matters, costs associated with hazardous waste management, and remediation costs associated with chemical waste management.

9. As a replacement for its heavily staffed internal department, BFI established six separate liability management companies based on the specific expertise needed for the management of the liabilities and compliance with the applicable regulatory laws.

10. In order to consolidate the liabilities into the corresponding liability management companies, BFI contributed certain notes in the aggregate amount of $902,561,661 to the liability management companies in exchange for (i) Class B Common Stock of the liability management companies, and (ii) the assumption of contingent liabilities by the liability management companies in the aggregate amount of $901,660,007.

11. BFI then sold the shares of Class B Common Stock to environmental and insurance consultants with considerable expertise in the liabilities managed by the respective liability management company (hereinafter, the "Consulting Investors"). The ownership of the stock provided an equity incentive for the Consulting Investors to aggressively identify and take advantage of cost-saving opportunities in managing the liabilities.

12. The liability management companies have been helpful to the management of the liabilities and they have considered numerous cost containment strategies, many of which have been implemented and have helped to achieve cost saving relating to the liabilities.

13. The aggregate amount realized by BFI on the sale of the Class B Common Stock to the Consulting Investors in the 1999 tax year was $901,654. BFI's aggregate tax basis in the Class B Common Stock was $902,561,661, an amount which is the sum of the tax basis of the property that BFI contributed to the liability management companies and which is unreduced by the liability management companies' assumption of the contingent liabilities. Consequently, BFI's sale of the Class B Common Stock resulted in an aggregate capital loss of $901,660,007 in the 1999 tax year.

14. BFI is entitled to offset this capital loss against capital gain net income of $80,923,602 in the 1999 tax year and, as a result, incurred an additional net operating loss of $80,923,602 in the 1999 tax year.

**COUNT ONE**
**(1997 Tax Year)**

15. BFI reincorporates the allegations set forth in paragraphs 1 through 13, above, as if fully set forth herein.

16. Pursuant to RCFC 9(h)(6), BFI states the following:

a) On or about June 16, 1998, BFI filed its federal income tax return for the 1997 tax year with the IRS in Houston, Texas. The name, address, and employer identification number of the taxpayer appearing on the tax return are as follows:

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES
757 N. ELDRIDGE
HOUSTON, TEXAS 77079
EIN: 74-1673682

b) On or about the following dates, BFI made payments of income tax in the following amounts for the 1997 tax year to the Internal Revenue Service Center in Austin, Texas:

| DATE PAID OR REFUNDED | AMOUNT PAID (REFUNDED) |
|---|---|
| January 15, 1997 | $19,000,000 |
| March 17, 1997 | 47,500,000 |
| June 16, 1997 | 25,000,000 |
| September 15, 1997 | 26,000,670 |
| December 18, 1997 | (15,000,000) |
| January 15, 1998 | (46,086,008) |
| August 28, 2000 | (32,709,291) |

Total $23,705,371

c) On or about April 25, 2005, BFI made a payment of additional tax in the amount of $19,079,286 to the IRS Appeals Office in Houston, Texas, which forwarded the payment to an IRS Service Center.

d) The net amount of tax paid by BFI with respect to the 1997 tax year is $42,784,657.

e) On or about May 5, 2005, BFI filed a timely claim for refund of $18,549,092 of the $42,784,657 in taxes paid for the 1997 tax year with the IRS Appeals Office in Houston, Texas. A copy of BFI's claim for refund for the 1997 tax year is attached as Exhibit A hereto and incorporated by reference.

f) The name, address, and employer identification number of the taxpayer appearing on the BFI claim for refund for the 1997 tax year are as follows:

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES
15880 N. GREENWAY-HAYDEN LOOP, SUITE 100
SCOTTSDALE, ARIZONA 85260
EIN: 74-1673682

g) The IRS denied BFI's claim for refund for the 1997 tax year pursuant to a notice of disallowance dated May 10, 2005, thereby allowing BFI to bring suit in accordance with Title 26, United States Code, section 6532. A copy of the notice of disallowance is attached as Exhibit B hereto and incorporated by reference.

17. As a result of the capital loss incurred on the sale of the Class B Common Stock and the resulting additional net operating loss in the 1999 tax year, BFI is entitled to an additional net operating loss carryback from the 1999 tax year to the 1997 tax year in the amount of $80,923,602.

18. For the reasons set forth above, BFI is entitled to an income tax refund of at least $18,549,092 for the 1997 tax year, or such greater amount as is legally refundable, plus interest thereon as provided by law.

**COUNT TWO**
**(1998 Tax Year)**

19. BFI reincorporates the allegations set forth in paragraphs 1 through 17, above, as if fully set forth herein.

20. Pursuant to RCFC 9(h)(6), BFI states the following:

a) On or about June 15, 1999, BFI filed its federal income tax return for the 1998 tax year with the IRS in Houston, Texas. The name, address, and employer identification number of the taxpayer appearing on the tax return are as follows:

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES
757 N. ELDRIDGE
HOUSTON, TEXAS 77079
EIN: 74-1673682

b) On or about the following dates, BFI made payments of income tax in the following amounts for the 1998 tax year to the Internal Revenue Service Center in Austin, Texas:

| DATE PAID OR REFUNDED | AMOUNT PAID (REFUNDED) |
|---|---|
| January 15, 1998 | $26,000,000 |
| January 15, 1998 | 46,086,008 |
| March 16, 1998 | 24,000,000 |
| June 15, 1998 | 50,000,000 |
| December 18, 1998 | (45,086,008) |
| July 8, 1999 | (28,871,579) |
| August 28, 2000 | (9,498,799) |

Case 1:05-cv-00738-TCW Document 36 Filed 11/22/2006 Page 17 of 60

Total $62,629,622

c) On or about April 25, 2005, BFI made a payment of additional tax in the amount of $3,519,979 to the IRS Appeals Office in Houston, Texas, which forwarded the payment to an IRS Service Center.

d) The net amount of tax paid by BFI with respect to the 1998 tax year is $66,149,601.

e) On or about May 5, 2005, BFI filed a timely claim for refund of $9,711,514 of the $66,149,601 in taxes paid for the 1998 tax year with the IRS Appeals Office in Houston, Texas. A copy of BFI's claim for refund for the 1998 tax year is attached as Exhibit C hereto and incorporated by reference.

f) The name, address, and employer identification number of the taxpayer appearing on the BFI claim for refund for the 1998 tax year are as follows:

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES
15880 N. GREENWAY-HAYDEN LOOP, SUITE 100
SCOTTSDALE, ARIZONA 85260
EIN: 74-1673682

g) The IRS denied BFI's claim for refund for the 1998 tax year pursuant to a notice of disallowance dated May 10, 2005, thereby allowing BFI to bring suit in accordance with Title 26, United States Code, section 6532. A copy of the notice of disallowance is attached as Exhibit B hereto and incorporated by reference.

21. As a result of the capital loss incurred on the sale of the Class B Common Stock and the resulting additional net operating loss in the 1999 tax year, BFI is entitled to an additional net operating loss carryback from the 1999 tax year to the 1997 tax year in the amount of $80,923,602, which reduces BFI's tax liability for the 1997 tax year by $18,549,092, or such greater amount as is legally refundable.

22. As a result thereof, BFI is subject to alternative minimum tax in the amount of $3,325,937 in the 1997 tax year and is not allowed a nonconventional source fuel credit in the amount of $6,385,577 in the 1997 tax year, but is entitled to a corresponding minimum tax credit in the amount of $9,711,514 in the 1998 tax year.

23. For the reasons set forth above, BFI is entitled to an income tax refund of at least $9,711,514 for the 1998 tax year, or such greater amount as is legally refundable plus interest thereon as provided by law.

**WHEREFORE,** BFI prays for judgment in its favor and against the Defendant:

1. In the amount of $18,549,092 for the 1997 tax year, or such greater amount as is legally refundable, plus interest thereon as provided by law;

2. In the amount of $9,711,514 for the 1998 tax year, or such greater amount as is legally refundable, plus interest thereon as provided by law;

3. For the costs and disbursements of this action, and such other and further relief as this Court deems just and proper.

Dated this 6th day of July, 2005.

Respectfully submitted,

ROBERT F. DENVIR
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 558-5675
Fax: (312) 558-5700
*Attorney of Record for the Plaintiff*

*Of counsel:*

JAMES M. LYNCH
PETER W. POULOS

Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 558-5600
Fax: (312) 558-5700

JAMES L. MALONE III
Winston & Strawn LLP
200 Park Avenue
New York, New York 10166
Phone: (212) 294-6700
Fax: (212) 294-4700

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 05-738 T
(Judge Thomas C. Wheeler)

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

---

FIRST AMENDED ANSWER
AND COUNTERCLAIM

---

As its first amended answer to the complaint, defendant denies each and every allegation therein that is not admitted below.

Defendant further:

1. Admits the allegations in paragraph 1, except denies that the taxes in dispute were erroneously assessed and collected; denies that plaintiff is entitled to the relief it seeks.

2. Denies that jurisdiction is conferred on this Court by 26 U.S.C. § 7422; admits the remaining allegations in paragraph 2.

(c) Admits the allegations in paragraph 16(c).

(d) States that the net tax plaintiff paid for 1997 was $42,783,987, rather than $42,784,657 as alleged by plaintiff in paragraph 16(d).

(e) Admits the allegations of paragraph 16(e), except states that taxes paid for 1997 totaled $42,783,987, rather than $42,784,657 as alleged in paragraph 16(e).

(f)-(g) Admits the allegations in paragraphs 16(f)-(g).

17-18. Denies the allegations in paragraphs 17-18.

19. Defendant reincorporates its responses to the allegations contained in paragraphs 1 through 17, above.

20. (a) Admits the allegations in paragraph 20(a).

(b) Admits the allegations of paragraph 20(b), except states that on January 15, 1998, plaintiff's 1998 account was credited with $46,086,008, which was transferred from plaintiff's 1997 income tax account; states that a refund of $9,498,799 was made on August 2, 2000, rather than August 28, 2000, as alleged in paragraph 20(b).

(c)-(g) Admits the allegations in paragraphs 16(c) through 16(g).

21. Denies the allegations in paragraph 21.

22. States that its attorneys lack knowledge or information sufficient to form a belief as to the truth of the matters alleged in paragraph 22.

23. Denies the allegations in paragraph 23.

COUNTERCLAIM

24. This counterclaim is authorized by the Chief Counsel of the Internal Revenue Service as the delegate of the Secretary of the Treasury. It is brought at the direction of the Chief of the Court of Federal Claims Section of the Tax Division as the delegate of the Attorney General of the United States pursuant to the provisions of 26 U.S.C. § 7401.

25. Jurisdiction of this counterclaim is conferred upon the Court by 28 U.S.C. § 1503.

26. On November 23, 2005, plaintiff was assessed additional tax, restricted interest, and § 6662 accuracy related penalties for taxable years ending September 30, 1997 ("1997"), and September 30, 1998 ("1998"), in the following amounts:

| | 1997 | 1998 |
|---|---|---|
| Tax | $19,079,286 | $5,723,088.00 |
| Restricted Interest | $12,082,749 | $1,354,387.08 |
| Penalty | $ 5,395,492 | |

27. On November 23, 2005, plaintiff's 1997 and 1998 accounts were credited with the following amounts of tax and restricted interest:

| 1997 | 1998 |
|---|---|
| $19,519,331.25 | $5,932,095.32 |

28. After applying the credits in paragraph 4 to the assessments in paragraph 3, the balance of restricted interest and penalty due on plaintiff's 1997 and 1998 accounts was as follows:

| | 1997 | 1998 |
|---|---|---|
| Interest | $11,642,703.75 | $1,145,379.76 |
| Penalty | $ 5,395,492.00 | |

29. Proper notice and demand for payment of these assessments was made on plaintiff on November 23, 2005.

30. Plaintiff has failed to make any payments in satisfaction of the above net assessments of restricted interest and penalty.

31. There remains due and owing on the above assessments of restricted interest and penalty the following sums, plus interest as allowed by law:

| | 1997 | 1998 |
|---|---|---|
| Interest | $11,642,703.75 | $1,145,379.76 |
| Penalty | $ 5,395,492.00 | |
| Total | $17,038,195.75 | $1,145,379.76 |

32. The basis for the above assessments is the Commissioner's determination that plaintiff owed additional taxes and restricted interest for 1997 and 1998, and that plaintiff was liable for an accuracy-related penalty under 26 U.S.C. § 6662 for 1997.

WHEREFORE, defendant requests:

1. That the complaint be dismissed with costs assessed against plaintiff, and

2. That the United States recover judgment on its counterclaim against plaintiff in the amount of $17,038,195.75 for 1997 and $1,145,379.76 for 1998, plus interest thereon as allowed by law.

Respectfully submitted,

s/ ELIZABETH D. SEWARD
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6508
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief

December __21__, 2005

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES | ) | |
| Plaintiff, | ) | No. 05-738 T |
| v. | ) | Judge Thomas C. Wheeler |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**REPLY TO COUNTERCLAIM**

Pursuant to Rules 7 and 12 of the Rules of the United States Court of Federal Claims, Plaintiff, Browning-Ferris Industries, Inc. & Subsidiaries (hereinafter, "BFI" or the "Plaintiff"), replies to the Counterclaim of the Defendant, the United States of America (hereinafter, the "Defendant"), as follows:

24. Plaintiff lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24 of the Counterclaim.

25. Plaintiff admits the allegations in paragraph 25 of the Counterclaim

26. Plaintiff admits that, on or about November 23, 2005, it was assessed additional tax, restricted interest, and a penalty in the amounts alleged in paragraph 26 of the Counterclaim, but denies any liability for such assessments and denies that any and all such amounts are due and owing. Plaintiff denies any remaining allegations in paragraph 26 of the Counterclaim.

27. Plaintiff admits the allegations in paragraph 27 of the Counterclaim.

28. Plaintiff denies the allegations in paragraph 28 of the Counterclaim.

29. Plaintiff admits that, on or about November 23, 2005, Defendant provided notice and demanded payment of net assessments totaling $18,183,575.51, but denies any liability for

such assessments and denies that any and all such amounts are due and owing. Plaintiff denies any remaining allegations in paragraph 29 of the Counterclaim.

30. Plaintiff admits it has made no payment in satisfaction of the net assessments, but denies any liability for such assessments and denies that any and all such amounts are due and owing. Plaintiff denies any remaining allegations in paragraph 30 of the Counterclaim.

31. Plaintiff denies the allegations in paragraph 31 of the Counterclaim.

32. Plaintiff admits that the Commissioner's stated bases for the net assessments are its determinations as alleged in paragraph 32, but denies any liability for such assessments and denies that any and all such amounts are due and owing. Plaintiff denies any remaining allegations in paragraph 32 of the Counterclaim.

## AFFIRMATIVE DEFENSES AND OTHER MATTER

Without assuming any burden of proof for which it is not responsible as a matter of law, and without admitting any of the allegations of the Counterclaim other than those expressly admitted herein, Plaintiff hereby asserts the following affirmative defenses and other matter in response to Defendant's Counterclaim, without prejudice to plead additional affirmative defenses as the facts developed in discovery may warrant:

### FIRST

There was no underpayment of tax on which to impose an accuracy-related penalty under 26 U.S.C. section 6662. The capital loss claimed by the Plaintiff -- arising from its 1999 sale of Class B Common Stock in certain liability management companies to environmental and insurance consultants -- represents the proper tax treatment for the transactions pursuant to 26 U.S.C. sections 357(c)(3) and 358(d)(2). In addition, because the Plaintiff had a non-tax

business purpose for entering into the transactions and the transactions had economic substance, the transactions may not be disregarded for federal income tax purposes.

**SECOND**

No accuracy-related penalty applies because there was reasonable cause for, and Plaintiff acted in good faith with respect to, its tax treatment of the transactions that resulted in the alleged underpayment of taxes. As a result, Plaintiff satisfies the reasonable cause exception to the accuracy-related penalty under 26 U.S.C. section 6664(c). In fact, Plaintiff's tax treatment of the transactions was consistent with the Internal Revenue Service's contemporaneous interpretations of applicable law.

**THIRD**

No accuracy-related penalty for a gross valuation misstatement applies because any alleged underpayment of tax was not attributable to a valuation misstatement under 26 U.S.C. sections 6662(a), (b)(3), (e), and (h).

**FOURTH**

No accuracy-related penalty for negligence or disregard of rules or regulations applies because any alleged underpayment of tax was not attributable to negligence or disregard of rules or regulations under 26 U.S.C. sections 6662(a), (b)(1), and (c).

**WHEREFORE,** Plaintiff prays that Defendant's Counterclaim be dismissed in its entirety, that judgment be entered on behalf of Plaintiff and against Defendant, and that this Court grant such other and further relief as it deems just and proper.

Dated this 29th day of December, 2005.

Respectfully submitted,

s/ ROBERT F. DENVIR
Winston & Strawn LLP

Case 1:05-cv-00738-TCW Document 36 Filed 11/22/2006 Page 28 of 60

35 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 558-5675
Fax: (312) 558-5700
*Attorney of Record for the Plaintiff*

*Of counsel*:

JAMES M. LYNCH
PETER W. POULOS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BROWNING FERRIS INDUSTRIES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Docket No.: 05-738T |
| UNITED STATES, | ) | |
| Defendant. | ) | |

Courtroom 6, Room 507
National Courts Building
717 Madison Place NW
Washington, D.C.

Tuesday,
August 29, 2006

The parties met, pursuant to notice of the Court, at 10:03 a.m.

BEFORE: HONORABLE THOMAS C. WHEELER
Judge

APPEARANCES:

For the Plaintiff:

PHILIP KARTER, Esquire
HERBERT ODELL, Esquire
Miller & Chevalier
300 Conshohocken Sate Road, Suite 570
West Conshohocken, Pennsylvania 19428
(610) 729-7820

Also for the Plaintiff: (Via Telephone)

JOSEPH SCIARROTTA, Esquire
Managing Corporate Counsel
Allied Waste Industries, Inc.
15880 North Greenway - Hayden Loop, Suite 100
Scottsdale, Arizona 85260
(480) 627-2370

**APPEARANCES:** (Continued)

For the Defendant:

STUART JOEL BASSIN, Esquire
JENNIFER SPRIGGS, Esquire
U.S. Department of Justice
Tax Division
555 Fourth Street, N.W., Room 7203
Washington, D.C. 20001
(202) 353-0513

P R O C E E D I N G S

(10:03 a.m.)

THE CLERK: All rise. The United States Court of Federal Claims is now in session, the Honorable Thomas Wheeler presiding.

THE COURT: Good morning.

ALL: Good morning.

THE COURT: Please be seated.

We're on the record this morning in the case of Browning Ferris Industries, Inc. v. The United States, Docket No. 05-738T.

Let's have counsel enter their appearances for the record, please.

MR. KARTER: Good morning, Your Honor. I'm Philip Karter, counsel of record for Browning Ferris, and with me today is my colleague, Herbert Odell, who has also entered an appearance in this case.

I also, I don't know if he has been brought into the conference yet, but we have Mr. Joseph Sciarrotta, who is the managing corporate counsel of Allied Waste Industries, who was going to participate by telephone in this hearing.

THE COURT: Okay, I'm not sure if I was aware of that, but we can certainly accomplish it.

THE CLERK: Your Honor, I need to dial him

in.

THE COURT: All right, why don't we go ahead and do that. Let's take a moment and dial this gentleman in.

MR. KARTER: Thank you.

THE COURT: Sure.

(Pause.)

THE COURT: So did you travel to come here today?

MR. KARTER: But not very far.

THE COURT: Not very far.

MR. KARTER: From Philadelphia.

THE COURT: Okay.

MR. ODELL: We like Washington in the summer, Your Honor.

(Laughter.)

MR. ODELL: Nice and cool.

THE COURT: Hopefully this is the grand finale.

(Pause.)

THE COURT: Hello, is the gentleman on the phone?

THE CLERK: One moment, Your Honor.

THE COURT: Okay. Let's go off the record.

(Whereupon, a short recess was taken.)

THE COURT: We're back on the record now.

Just for the record, we have been spending a few moments getting Mr. Sciarrotta from Allied Waste on the line, and now we will resume by having the Defendant's counsel enter their appearance for the record.

MR. BASSIN: Your Honor, Stuart Bassin for the United States. With me today is Jennifer Spriggs, another attorney from the Tax Division, and D.S. Pensley who is a law student who is with us from Cornell this summer who is much better at the technology than I am, and will be helping out later.

THE COURT: Maybe we should have solicited her assistance.

(Laughter.)

THE COURT: I hope you're having a good summer at the Tax Division.

Well, regarding the Browning Ferris case, I know that we have a scheduling order in place and presumably you all have been working ahead in discovery. With the Federal Circuit's issuance of the Coltec decision, we thought it was appropriate to get in touch with the parties at this stage, and it seems that you all accepted the invitation and chose to appear in court today, which is fine.

I really don't care which side wants to go first to tell the Court what is occurring, but maybe you have worked that out.

MR. KARTER: Well, with Mr. Bassin's permission, perhaps I will take the initiative because I was the impetus for requesting the in-court hearing today.

THE COURT: Come on up to the podium.

MR. KARTER: Sure. One of the reasons why I felt it was important to appear before the Court today is because it has come to our attention that there is a jurisdictional issue present in this case that we were previously unaware of.

I've discussed this with Mr. Bassin and co-counsel last week in anticipation of this conference, and I had hoped to -- without getting into all the technical aspects of this issue -- brief the Court on what the issue is, why we think it is material as to the case as a whole, where it leads us to start from the end and then work my way back is that we have come to the realization that the wrong plaintiff, a plaintiff that is no longer in legal existence filed both the federal tax refund claim, which is the prerequisite for jurisdiction for a federal tax refund suit, and the complaint in this matter.

As Your Honor may know, myself and Mr. Odell were brought into this case only recently. I entered an appearance on June 30th and I entered an appearance for Mr. Odell just last week. We were not the attorneys who brought the complaint. We were not involved in this matter much prior to that time.

In the course of our own becoming familiar with the case, we made the discovery that the putative plaintiff in this case, BFI Industries, Browning Ferris Industries, Inc. was terminated out of legal existence on December of 2004, December 31st, I believe, of 2004.

THE COURT: It's the same law firm all along though, isn't that right?

MR. KARTER: No, it's not. The original law firm on this case and the original counsel of record was Robert Denver of Winston & Strawn.

THE COURT: Yes, I'm sorry. I did see that.

MR. KARTER: All the people in this room are probably as familiar with the contingent liability transactions as anyone. Mr. Odell and I were counsel for Black & Decker. Mr. Bassin, of course, counsel in the Coltec matter. So we're all quite well versed in the issue, and I'm sure Your Honor wants to hear the parties speak as to the relevancy of the Federal

Court's determination as to that case, and we certainly are prepared to do so.

But I think it's important to make the Court aware that we believe that the jurisdictional defect requires a dismissal of this case and a refiling after we satisfy the jurisdictional prerequisites.

Subject matter jurisdiction is a matter that can be raised at anytime, and when I had the conversation with Mr. Bassin and his co-counsel about this issue last week, he was understandably skeptical about the timing of the decision and the fact that in light of the Federal Circuit's decision in Coltec this smacks of the appearance and forum shopping.

My response to that was then, and I would repeat now to Your Honor, is that, first of all, forum shopping is indigenous to the federal tax litigation process. There are three different fora that the taxpayers can choose to go into.

The fact of the matter is that the need to correct the jurisdictional defect is as important as if the taxpayer had won the Coltec case in the Federal Circuit or had lost the case because subject matter jurisdiction, whether considered by this Court or the Federal Circuit on appeal, can cause a dismissal of this case at anytime.

So from our standpoint, we could litigate this case in this Court and prevail, and then have the case dismissed in the Court of Appeals. So it's as important for our perspective as it is for the government's to make sure to get the jurisdiction right, and it's either right or it's wrong, and our research into the issue, and it does involve a byzantine navigation through some of the federal tax statutes and regulations, leads us to the conclusion that the termination out of legal existence of Browning Ferris Industries, Inc. in December of 2004, before the refund claims were filed and before the action was brought, was a defect that requires the dismissal without prejudice of the case.

We would be required to refile refund claims in the name of the appropriate successor taxpayer, which we have done, and then refile either after the rejection of those claims, or the expectation of six months, which is the jurisdictional prerequisite for bringing suit.

THE COURT: Well, I'm sure our student from Cornell can confirm for us that jurisdictional issues always come first, so as much as I would love to hear about the merits and all of that, I think you've raised a good question that we need to address.

Now, what the outcome of that is, whether it's a dismissal without prejudice or whether we can go forward with some kind of substitute of parties arrangement, I don't know. I'm anxious to hear about that.

MR. KARTER: Well, let me just state at the outset that the notion that a dismissal of a case for jurisdictional bases should be weighed against the notion of prejudice to one party or another is not supported by the law. Subject matter jurisdiction exists or it doesn't.

In any event, a dismissal without prejudice simply because one party may gain a tactical advantage of, for example, refiling in another court where the authority may be different than it is in this Court, for example, is not a basis for denial of a dismissal without prejudice, if there is a jurisdictional defect as there is in this case.

I am more than happy to get into the technical nuances of the issue. I'm also happy to let Mr. Bassin respond at this point and then re-address the Court. In fairness to the government, I have not, other than to outline the issue and explain why we believe there is a defect, I have certainly not undertaken to provide them with all of the legal

arguments that we would proffer to the Court in a motion for the Court's consideration.

At the end of the day, we want to make sure that we get it right because if we are wrong, as I said, whether we win the case in the trial level or lose the case, the case could be dismissed at some later point.

One of the reasons why we felt compelled to refile refund claims is because our client's position would be irrevocably prejudiced if we did not do that if a jurisdictional defect were found to exist and the statute of limitations for filing new refund claims had expired.

This taxpayer or the client filed refund claims, defective ones as it turns out, in May of 2005. Under the Internal Revenue Code, the taxpayer has two years to seek the refund of amounts that it has paid, and if we didn't file refund claims before the expiration of that time, and then the statute ran, the government could very well, as it has in many other cases, come into court and said there is a jurisdictional defect here. This matter has to be dismissed, and by the way you're no longer timely under the statute of limitations to refile.

We refiled the claims last week because one

of the statutes was about to expire. So that's where we stand today, and our intention would be to provide Your Honor with Your Honor's approval of a legal brief explaining the reasoning why we think there is a jurisdictional defect that requires dismissal under Rule 41, compliance with the statutory prerequisites for refiling, and then filing a new action when those prerequisites are satisfied.

So at this point why don't I take a break and let Mr. Bassin respond if he has anything to say.

THE COURT: That's fine. Mr. Bassin?

MR. BASSIN: Your Honor, we have two principal points we want to make today. One, we had planned to address, the fact that the Coltec decision is as a practical matter almost dispositive of this case. Plaintiffs badly wants not to be in this forum to litigate this issue, and we think that that's tied to this new-found discovery of a jurisdictional issue.

THE COURT: Well, of course, Coltec may not be over. We don't know where the last word is going to come from.

MR. BASSIN: Right, that is true. And in fact for your reference, there is a rehearing -- petition for rehearing filed, I think, Friday afternoon, and there is talk that they would go to the

Supreme Court.

That said, what Mr. Karter, I think, has omitted is what Plaintiffs are really trying to achieve here is to remove this case from jurisdiction in the Federal Circuit and with the new claims to file in another circuit where Coltec is not the law.

We think that is forum shopping. We think that is impermissible forum shopping.

THE COURT: Well, I think the issue though regardless of the motives that Plaintiff may have is whether jurisdiction probably exists here.

MR. BASSIN: Well, and that is something that we're very interested in hearing about. As Mr. Karter pointed out, he and Mr. Odell have been in the case for a few weeks now. For a very long time prior to that, Browning Ferris asserted in this Court and elsewhere that there was proper jurisdiction.

If you look at paragraphs 3 and 4 of the complaint -- may I provide a copy?

THE COURT: I have a copy of the complaint here.

MR. BASSIN: Okay.

THE COURT: Paragraphs 3 and 4?

MR. BASSIN: Right. Paragraph 3 asserts that BFI is -- not was but is a corporation organized

under Delaware law, and paragraph 4, in the second sentence said, "BFI is duly authorized to act in its own name with respect to all matters relating to the affiliated group of which it was a common parent for all periods relevant to this action."

Furthermore, if you look at the claim for refund also attached to the complaint, and I can give you a copy. May I?

THE COURT: Yes. Thank you.

MR. BASSIN: That claim for refund is filed in the name of Browning Ferris. It's signed by a Dale L. Parker, who is the vice president of taxes of Allied Waste, and we believe -- I think the documents show he was involved in all of these transactions.

Furthermore, we checked Allied Waste's annual report for the 2005 year, and they are asserting that they have brought this lawsuit, and that there is jurisdiction here.

What that means is that what Plaintiffs are now saying is that the sworn statement of their vice president of taxes in filing the refund claim is incorrect; that their in-house lawyers and the team of lawyers from Winston & Strawn who filed this complaint, and who signed the complaint satisfying Rule 11, that they were wrong; and that all of these

people for all of these years had it wrong.

What's interesting to us and we have not been provided with any of the details is that this defect is being discovered at a time when it is very convenient for the Plaintiff to have a failure of subject matter jurisdiction.

THE COURT: Well, have you been able to confirm whether BFI is still a legal entity, and if not, when their legal status ended?

MR. BASSIN: No, we have not. We have not been provided with any of that information.

THE COURT: Is that --

MR. BASSIN: We also don't know what the consequence of whatever it is that happened in Delaware is under state corporate law. For example, if the Environmental Protection Agency had a lawsuit pending against Browning Ferris on December 31, 2004, Browning Ferris/Allied Waste can't now say lawsuit is no good, we don't exist.

The provision and the presumption under the law is that there is a substitution of the parties, or a substitution of the correct successor in interest, and that's encapsulated in Rule 25 of the rules here, and our research in the rather esoteric area of consolidated returns suggests that that's the way the

tax law works.

We've asked and Mr. Karter has not been able to provide us with a citation to a single case where a dismissal for want of subject matter jurisdiction has arise under the circumstances.

It would be interesting -- you know, let me go on. You know, we're sitting here and we feel we've been prejudiced on several grounds. Number one, you know, they selected the forum the first time. Now they're unhappy with it. They want to change. That is beyond the realm of permissible forum shopping.

And as you will recall about six or eight months ago we all briefed a motion for stay of proceedings while Coltec was decided, saying, you know, Coltec is going to be really important here, and when it's all over we may have different views of this case. Plaintiffs opposed, and in the interim we've invested quite a bit of resources in this case. The latest numbers are over 600 hours of attorney time, plus out of pockets, plus all the work we've done with expert witnesses.

We feel we've conducted discovery, there is outstanding discovery requests. We feel that we would be prejudiced by this.

So one thing I wanted to make clear is that

there are two ways that this case can go away. One is a dismissal for one of subject matter jurisdiction as a motion under Rule 12. A second would be a stipulation for dismissal under Rule 41. The government will not stipulate to that dismissal.

THE COURT: Well, this is rather an unusual situation. You don't normally have a plaintiff moving to dismiss for lack of jurisdiction.

MR. BASSIN: Right.

THE COURT: With the government opposing. That's a new one on me. But I still think that you're raising issues that probably need to be fleshed out so that we have our facts straight.

MR. BASSIN: Right.

THE COURT: And I think we need to know whether the case ought to be dismissed or whether we could do a substitution of parties under Rule 25 and cure the defect that way. But I think it ought to be briefed in our usual motion process.

MR. BASSIN: I agree with you, Your Honor.

Let me add a third possibility. There are new refund claims being filed, and to the extent that there is uncertainty as to which entity is the proper plaintiff, whether it is Browning Ferris Industries as this is filed, and the other refund claims, I suspect,

are denominated Allied Waste as successor in interest to Browning Ferris Industries.

What can be done to be sure that we have jurisdiction is that when their jurisdictional time has expired Plaintiffs can file the new Allied Waste complaint here. We can consolidate the cases, and whichever way it goes, we don't have a jurisdictional problem because one of them is right.

But that isn't what Plaintiffs want to do here. What Plaintiffs want to do, as I understand it, is to dismiss this case and file the new Allied Waste as successor in interest case in a different circuit to forum shop, to seek different law, and we think that's impermissible. We have grave reservations as to the merit of their claim of lack of subject matter jurisdiction, and even graver reservations regarding their position that they only option is to dismiss.

So what we would say is rather than address this complicated jurisdictional question, let Browning Ferris or Allied Waste or whoever bring the other lawsuit here and we can be sure that we have jurisdiction, and we want to hear why Plaintiffs don't want to do that.

MR. KARTER: May I, Your Honor?

THE COURT: Well, just to comment first and

then I'll be glad to hear from you, Mr. Karter.

I've seen this done a lot of different ways in my years of practice. You know, sometimes when there is a corporate transaction of some kind that occurs while a lawsuit is pending you just substitute in the new for the old, and the case goes along.

Now, there may be some peculiarity of the tax code or regulations which would cause the jurisdictional issue, but I'm appreciative the preview of the issue that's to come here, but I really think we need to nail down some of the facts.

My preliminary thoughts are that to the extent that judicial economies and efficiencies weigh into this decision, I think you make some good points. but on the other hand, jurisdiction often is a yes or no answer, and if there is not jurisdiction, regardless of what the motivations may be, I'm not sure that there is anything the Court can do about it.

But I think we need to hear more about this through the motions process.

MR. BASSIN: Okay. I'll let Mr. Karter go ahead. Thank you.

THE COURT: Please, Mr. Karter.

MR. KARTER: Thank you, Your Honor.

A couple of points in response. As I said

at the outset, I understood and understand today Mr. Bassin's skepticism. I make no bones about the fact that we think that the decision of the Federal Circuit is flawed and we think that the law that controls this Court is wrong. Be happy to take some time today to explain that, although we recognize that is is controlling precedent on this Court, at least as that case stands today.

However, with regard to the facts as to whether jurisdiction exists, as to whether this entity exists or not, notwithstanding the mistakes that may have been made in the past, I stand before you today with full knowledge of these facts, that this entity was terminated from its existence, and that there are new entities in place that are the proper claimants as to the taxes at issue.

At the end of the day the facts are the facts. Either the company exists or it doesn't. If it doesn't exist, then the jurisdictional question arises.

The second point I'd like to make has to do with Mr. Bassin's comments regarding prejudice to the government and the fact that time has been invested in this case.

It should be quite obvious that the company

has no intention of walking away from this claim, and it's true that considerations of the governing law might dictate where this case would be refiled. That's really a question independent of the jurisdiction question.

If jurisdiction exists, then we are in this Court. That's the decision that was made, and we litigate here. If jurisdiction does not exist, then that's the taxpayer's right to determine the forum in which it litigates, and that may or may not be here. That's true. I wouldn't argue that point.

But as to the time invested, first of all, it's not relevant to the issue of jurisdiction because that's a yes or no question as Your Honor has pointed out. But that time that the government has spent is going to be utilized to the same degree, the work that they've done, the experts that they've consulted, in the case that's refiled wherever it's refiled. The evidence is the same, the information is just as relevant. I'm sure the government's analysis is just as apropos, so there is no prejudice.

But in any event, as I mentioned, as I will be happy to submit in briefs to the Court that the gaining of a tactical advantage, be it by forum shopping or selecting a forum where the law perhaps is

more favorable, is not a basis to deny a request to dismiss with prejudice, particularly if there is jurisdiction lacks. It follows that if there is lack of jurisdiction a case should be dismissed -- I'm sorry, I think I said "with prejudice".

THE COURT: You meant without.

MR. KARTER: Without prejudice.

THE COURT: Well, if Company A acquires Company B while Be has a pending lawsuit, can't you just substitute in the correct party and proceed along?

MR. KARTER: Were it that simple. But under the tax law nothing is. The fact of the matter is that under the tax law when a company's existence is terminated there is a protocol that's supposed to be followed where a designee is named to replace it. It's not a question of liability. Clearly somebody is liable. Somebody assumes the responsibilities, the liabilities.

BFI, Inc. is no more. There is a designee, the appropriate party claimant in this case, and the refund claims were filed in the name of that designee. The IRS actually has its own procedure which is outlined in a revenue procedure as to how the designation is made where all of the subsidiaries of

the former entity effectively elect a new replacement party.

But the consolidated return regs also make clear that a termination does occur, and if a termination does occur, then that entity is no longer a legal entity. You can't file a case in the name of an entity that is not in legal existence.

So those are the issues and those are the issues we're happy to brief.

Now, I agree with Mr. Bassin that I was unable to provide him -- this is, as your Court knows, a unique circumstance where a party is effectively seeking to dismiss its own case without prejudice albeit, but I want to stress again that this is not a question of blatant forum shopping.

We need to be protected just as the government does to cure a jurisdictional defect. I could cite verse after verse of instances where the IRS has come in and asserted that the wrong taxpayer filed the claim, and sought to dismiss because of lack of sovereign immunity, lack of subject matter jurisdiction because the defect was in the filing of the claim and therefore the suit was defective.

Now, those circumstances are not like this, albeit I think this is an issue of first impression

under these specific circumstances, but the analysis is really the same. We are protecting our client's interest. In fact, with this discovery it would be malpractice for us to do otherwise because, as I said, the client could litigate the case, and the government could just as easily raise the issue in the Court of Appeals if we were to win. So we have to take these steps and the Court should, as I think the Court has indicated its willingness to, consider this question first.

There is going to be nothing lost in terms of the work product that the government has undertaken in this case. It will be utilized. I can assure everyone of that. We have no intention of walking away from this case, but we do need to get the jurisdictional issue right.

Now, I do question whether it makes sense for proceedings to continue in this case while this issue is pending. We are perfectly prepared in short order to provide the Court with a legal brief laying out the issues and providing the government opportunity to offer its response, and I would be happy to commit to do that within the next two weeks.

THE COURT: Well, maybe we should do that. Let's talk about a briefing schedule that we can put

in place, and following today's hearing the Court will issue an order memorializing this.

So you say you can file your motion within 14 days?

MR. KARTER: Yes, Your Honor.

THE COURT: So that puts us -- and Mr. Bassin, you look like you're eager to say something.

MR. BASSIN: Yes. Your Honor, if we are going to go forward on this issue, I think there is are significant areas of factual discovery we would want to pursue. For example, what has happened with other litigation that Browning Ferris had pending at the time of this termination. We would probably want to speak to all the people whose sworn statements, whose Rule 11 statements were wrong to find out if they had a factual basis for those statements. We might want to see the malpractice claim that Browning Ferris or Allied Waste has filed against its former counsel for screwing up jurisdiction on a quarter billion dollar claim.

THE COURT: Well, let's not get too far afield here. Let's try to stay on the issue of whether jurisdiction exists in this Court. I don't think the government really needs to worry about malpractice claims that may exist. It gets to be

rather attenuated relevance there.

I'm willing to cut you a little bit of slack here and give you some time to do that, but let's keep it under control here.

MR. KARTER: Your Honor, since the burden obviously is on us to establish the critical facts to raise the jurisdictional question, I think they are really quite narrow in scope. I can't account for whether -- I don't know the answer as to whether claims were brought against Browning Ferris Industries, what its other business dealings have been, and I would submit to the Court that it's completely irrelevant to the discussion we're addressing right now.

The only issue is is this company in legal existence or not. If it's not, what or how took its place, and lastly, what are the legal ramifications of the correct party being substituted or the designee replacing the other party, and can it be accomplished here.

As far as Mr. Bassin's comment about how the taxpayer should be required to refile here on some general notion of equity, that just doesn't fit into the picture. It's a legal issue. It's not an equitable issue. As I said, the government is

certainly not prejudiced by this except to the extent that they feel they have a more favorable forum to appear in.

As I mentioned at the outset, that's indigenous to the law. If a taxpayer has a jurisdictional defect and it has the right and obligation as counsel to the taxpayer to advise to refile, then the forum selection question is an open question regardless of the perceived unfairness.

I would submit that it's completely not unfair to the government, that its interests are not prejudiced, that it can use the same discovery that it's gathered up to this point.

The last point I want to make is I do have some concerns with regard to timing, the effect it has on the rest of the schedule. Mr. Bassin was gracious enough to agree after submitting some very extensive discovery requests to a two-month extension in the time to respond, and we have been working diligently to provide that response, and I in turn agreed to a similar extension, at least we would consent with Your Honor's approval to a similar extension on the back end of whatever additional time Mr. Bassin needed.

I do have some concerns that this process that we will undertaken now will require some further

adjustments to the schedule. I think it's in everyone's best interests to resolve this question. This is not for purposes of taking up time. This is to resolve a serious issue, and I think it's in everyone's best interests to spend our energy on resolving this issue, and getting a final determination as to that issue, and then going forward in the case with appropriate adjustments as necessary.

Thank you, Your Honor.

THE COURT: I tend to agree with you, and I don't want to get too far afield on what we're really aiming at here. We're talking about getting the facts relating to Browning Ferris, when it was no longer a legal entity. I think much of the information of concern of Mr. Bassin is probably publicly available, and I also think that you will want to explain what it is about the tax code and regulations that would prevent a simple substitution of one party for another.

And you may want to answer some of the questions that Mr. Bassin is raising about how these filings could have been made in the first place if the entity was no longer in existence. I think it's certainly an interesting question.

MR. KARTER: I'm not sure that's a question

I can answer, Your Honor. I mean, obviously mistakes were made and they were made on the part of counsel and perhaps others. The fact of the matter is we discovered these mistakes. We brought these mistakes to the attention of the company. We brought the implications of these mistakes to the attention of the company, and we provided legal counsel as to what corrective steps the company needed to take, which was to file correct refund claims and to get a jurisdictional clarification as to the present suit.

It's regrettable that there is an implication of some kind of manipulation going on here. That's completely not the case. When we made this discovery, we undertook the effort to make certain that it wasn't as simple as just substituting party B for party A, but that we needed to track through the pertinent regulations and statutes and determine what we think the right answer is.

At that point we contacted counsel well in advance of this hearing, recognizing that he would not possibly have the opportunity to address all these arguments today. It would be unfair to suggest otherwise, and certainly the Court wouldn't be as informed as it needs to be to render judgment.

So all I would suggest is that we have the

opportunity to explain all that in our legal brief. As I said, we're happy to provide that within the next two weeks, and then the Court can determine however much time it thinks counsel needs to respond. But I would request, in conjunction with that, that we put a stay on the remaining proceedings for the time that it takes to get a final resolution of this issue.

Thank you, Your Honor.

THE COURT: Well, I think you're focusing on the key issue, and that is, what is it about the tax code and regulations that prohibits or prevents the possibility of a substitution of parties, and in fact creates the jurisdictional issue that you're raising. I think that's where we want to focus the parties' energies.

So why don't we plan on having the Plaintiff file its motion to dismiss within two weeks, so that would be -- what is that -- September. Today is the 29th, so Tuesday, September 12th would be your filing date, and I think we'll follow the normal motions periods provided for in the rules, so the government could respond on the 26th, and then seven days for a reply.

MR. BASSIN: Your Honor, the government would request a period to conduct some discovery,

perhaps not as extensive as you would have as I've previously described, but Mr. Karter is saying that Mr. Parker and prior counsel are wrong as to the facts. Perhaps they know facts that are to the contrary of what Mr. Karter thinks they are, and that we should be entitled to develop that type of factual evidence.

We should also be able to find out what has happened with other Browning litigation. For example, I just saw yesterday that there is a case pending the Eighth Circuit right now involving a taxpayer who sought to dismiss for lack of subject matter jurisdiction after an adverse ruling, and there were notions of estoppel that were -- at least the government urged were applicable to that claim.

So we should be able to develop the facts regarding such an estoppel argument.

THE COURT: Well, why don't you wait and see what the Plaintiff has to say in its motion, and if at that point you feel that there is additional information you need, you can contact the Court at that time and perhaps we can have a telephone conference to discuss it further.

MR. BASSIN: Right.

THE COURT: But I really don't want to get

too far afield. I think that basically the issue is when did this entity cease to exist, and what is the effect of that under the tax code and regulations as far as jurisdiction is concerned.

MR. BASSIN: I understand, Your Honor. We're not talking about a long period of time, and I would also note that Mr. Karter has referred to this as a ceasing to exist. There is a state law question floating around there as to exactly -- has it really ceased to exist for purposes of preexisting claims.

THE COURT: Sure. I mean, that's, I think, a common set of facts. A company just doesn't turn the lights out on a given day. You know, there is more to it than that, and I certainly understand there may be fact issues about what is the status of this entity and when did it really cease to exist, and that's what we have to focus on.

MR. KARTER: Sure, and I remind Mr. Bassin and the Court that the onus is on us to establish to the Court's satisfaction that the facts that I am outlining here today are indeed the facts.

So once again, I appreciate the Court's recognition that the inquiry is really quite narrow, and whether this company had other business dealings with other third parties completely unrelated to this