IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BROWNING-FERRIS INDUSTRIES & SUBSIDIARIES<br>Plaintiff,<br>vs.<br>THE UNITED STATES,<br>Defendant. | No. 05-738 T<br>(Judge Wheeler) |

DEPOSITION OF ELAINE KUETHER

BROWNING-FERRIS INDUSTRIES & SUBSIDIARIES 30(b)(6)

Phoenix, Arizona
October 18, 2006

**ARIZONA REPORTING SERVICE, INC.**
Court Reporting
Suite Three
2627 North Third Street
Phoenix, Arizona 85004-1126

CD ENCLOSED

By: JODY L. LENSCHOW, RMR, CRR
Certified Reporter
Certificate No. 50192

Prepared for:

Mr. Jacob E. Christensen
Attorney at Law

CERTIFIED COPY
(When in red)

INDEX TO EXAMINATIONS


| WITNESS | PAGE |
|---|---|
| ELAINE KUETHER | |
| Examination by Mr. Christensen | 4 |


INDEX TO EXHIBITS


| NO. | DESCRIPTION | MARKED | IDENTIFIED |
|---|---|---|---|
| 19 | Amended 30(b)(6) Notice of Deposition | 4 | 5 |
| 20 | Subpoena to Ms. Kuether | 4 | 7 |
| 21 | Affidavit of Elaine E. Kuether | 7 | 7 |

DEPOSITION OF ELAINE KUETHER

was taken on October 18, 2006, commencing at 9:03 a.m., at the Offices of the United States Attorney, Two Renaissance Center, 40 N. Central Avenue, Suite 1200, Phoenix, Arizona, before JODY L. LENSCHOW, Certified Reporter No. 50192 for the State of Arizona.

APPEARANCES:

For the Plaintiff:

MILLER & CHEVALIER
By Mr. Philip Karter
300 Conshohocken State Road
West Conshohocken, Pennsylvania 19428

-and-

ALLIED WASTE INDUSTRIES, INC.
By Mr. Joseph Sciarrotta, Jr.
Managing Corporate Counsel
15880 N. Greenway-Hayden Loop
Suite 100
Scottsdale, Arizona 85260

For the Defendant:

U.S. DEPARTMENT OF JUSTICE
By Mr. Stuart J. Bassin
and Mr. Jacob E. Christensen
Tax Division
Room 7203
555 Fourth Street, N.W.
Washington, D.C. 20001

ALSO PRESENT: Mr. Dale Parker

(Deposition Exhibits Nos. 19 through 20 were marked for identification.)

ELAINE KUETHER,

called as a witness herein, having been first duly sworn by the Certified Reporter to speak the truth and nothing but the truth, was examined and testified as follows:

EXAMINATION

BY MR. CHRISTENSEN:

Q. Thank you, Elaine, for being here today.

A. No problem.

Q. As you know, we're here to take depositions in the case of Browning-Ferris Industries versus United States. Is this the first time you've had your deposition taken?

A. Yes.

Q. We're going to basically just be asking some questions related to some subjects that I'll point out in a few minutes, and if by chance you don't understand a question that I ask you, you can tell me that and I will attempt to rephrase the question or clarify the question so that you can answer that.

If you don't know the answer to any of the

questions I ask, you can let me know that you don't know the answer to that; but to the extent that you do have knowledge, I would like you to answer to the extent that you're able to, to answer that question, and tell me as much as you do know.

A. Okay.

Q. If you need a break or anything, I think this is going to go quick enough that you probably won't need a break, but if for some reason you do, let me know that as well. Mr. Karter may object to some of the questions I ask. If that happens, unless he objects on the grounds of a privilege, such as the attorney-client privilege or something to that effect, then you can go ahead and answer the question. With that, I think we're ready to get going.

Is there any reason that your testimony today could be impaired by physical condition or anything of that sort?

A. No.

Q. Let me give you what's been marked for identification as Exhibit 19.

MR. BASSIN: Let's go off the record.

(An off-the-record discussion ensued.)

BY MR. CHRISTENSEN:

Q. If you could turn to Page 4 on that document,

and this is the notice of the deposition that we're doing today, and the letter i) there, if you could read letter i) to yourself.

Are you prepared today basically to testify to the subject contained there in letter i)?

A. Yes.

Q. Most of my questions will focus on that subject, and they may also interplay with letter a) on Page 3, the facts relating to the conversion of BFI, Inc. into BFI, LLC.

So you've been asked by Browning-Ferris Industries to testify to this subject; is that correct, to testify on their behalf to this subject? Excuse me, to the facts contained in your declaration, the affidavit that was prepared on the 10th of October?

A. Yes.

MR. KARTER: Just to be clear, Jacob, she works for Allied Waste. Allied Waste is the parent company. She was asked by Allied Waste to appear. We offered her as our 30(b)(6) deponent for that particular item, Item i).

MR. CHRISTENSEN: Thank you for that clarification.

BY MR. CHRISTENSEN:

Q. If you can look at what's been marked as

Exhibit 20.

A. These are not marked.

Q. Here we are. Excuse me.

A. Okay.

Q. My purpose in showing this is just to get this into the record of the deposition. This was the subpoena that was issued for your testimony today.

And let's turn to the main focus of our discussion today, which will be the affidavit then. Let's mark that for identification purposes as Exhibit 21.

(Deposition Exhibit No. 21 was marked for identification.)

BY MR. CHRISTENSEN:

Q. Before we talk about the substance there, could you just explain a little bit your educational background?

A. I have a Bachelor's degree in business administration and a paralegal certificate.

Q. Where was the Bachelor's degree obtained?

A. At Ohio Dominican College in Columbus, Ohio.

Q. And the paralegal certificate, what about that?

A. University of Texas at San Antonio.

Q. When did you -- what year was the -- did you receive the certification, the paralegal certification?

A. 2002.

Q. And after obtaining that certification, what did

you do as far as job hunt?

A. I was working in San Antonio as a paralegal in a lottery ticket printing company prior to moving to Phoenix.

Q. And once you moved to Phoenix, where did you work then?

A. The first job I got here is the job that I'm in currently, a paralegal for Allied Waste.

Q. And what year was that that you began working with Allied Waste?

A. March of 2003.

Q. What was your title working with Allied Waste?

A. It was and still is corporate paralegal.

Q. Could you explain a little bit what that means?

A. My responsibilities include the items related to the corporate maintenance of records and compliance for the Allied Waste subsidiaries.

Q. In your position there, who was your supervisor when you began working with Allied Waste?

A. Connie Gecich.

Q. And who was her supervisor?

A. Jo Lynn White.

Q. And is she still -- is Connie -- Gecich, you said?

A. Uh-huh.

Q. Is she still your current supervisor?
A. No.
Q. When did that change?
A. March of 2005.
Q. And who is your current supervisor?
A. Jo Lynn White.
Q. Do you have -- are there any employees that work underneath your supervision?
A. No.
Q. In the past, when you began working with Allied, were there employees that worked underneath your supervision?
A. Yes.
Q. About how many?
A. One.
Q. Was that a paralegal as well?
A. Their title was legal assistant, but they didn't have a paralegal background.
Q. When did that person -- you said currently that person is not working as an assistant underneath you. When did that change?
A. They left the company in December of 2004.
Q. What was -- what was her name?
A. Kara Hensley.
Q. Let's just talk a little bit more in depth about

the types of duties you perform as a corporate paralegal. You mentioned some of them. What sort of records and filings are you in charge of making?

A. The annual compliance, the annual reports with various State agencies, fall under my responsibility; documents filed to form companies or register them or withdraw them or dissolve them also fall under my responsibility.

Q. Would that be any of the subsidiaries of Allied? If any of the subsidiaries needed those type of filings, would that fall on you, regardless of which subsidiary it was?

A. Likely, yes, it would be me, depending on the transaction.

Q. What types of transactions might you not handle then?

A. If it's a more complex transaction, a larger transaction, a law firm would probably be involved in filing documents.

Q. And would that be -- would those filings be made with the State regulatory agencies that we're discussing here?

A. I guess it would depend on the transaction.

Q. What sort of transaction? Can you give an example of something that you wouldn't do that an attorney

would do instead?
A. Well, if it's not just a clear-cut "We need to form this company" type of thing. I can't think of an example offhand.
Q. Let's just speak specifically about Browning-Ferris, Inc. Which State authorities was Allied required to make filings in behalf of that subsidiary or with which State regulatory authorities?
A. For which time frame?
Q. Let's go back. You began working in 2002?
A. Yes.
Q. Let's start there, and if you could tell me which States?
A. At the time I started with the company, Inc. was registered -- well, it was formed in Delaware and was registered in Texas and Arizona. So I would have filed the Delaware franchise tax report and the Texas public information report, which is -- I provide to tax and they attach to the tax returns, and the Arizona annual report.
Q. Were there any other States that required filings from BFI, Inc.?
A. That I'm aware of or --
MR. KARTER: If I may, just for clarification, at what time period are we talking about?

MR. CHRISTENSEN: We're talking about 2002, I believe, when she began working with Allied.

THE WITNESS: No, to my knowledge, those are the only States in which it was registered and those were the only things I was responsible for.

BY MR. CHRISTENSEN:

Q. Did that change at any time up until the present time, the States that receive these filings?

A. Yes.

Q. Okay. In what way?

A. We withdrew Inc. from Texas in 2005.

Q. Any other changes, as far as the required filings with States?

A. No.

Q. Okay. So just to clarify then, when you began working with Allied, BFI, Inc. was required to file filings with the State regulatory authorities in Texas, Arizona, and in Delaware, and currently they're required to file with Arizona and Delaware, but no longer with Texas; is that --

A. Can you repeat the question?

Q. Just to clarify again, when you began working with Allied, the State filings were made with Texas, Arizona and Delaware; is that correct?

MR. KARTER: For which entity?

BY MR. CHRISTENSEN:

Q. For BFI, Inc.

A. Okay.

Q. Is that correct, it was just those three states when you began working?

A. That's correct.

Q. Let's just speak about the Texas filings in particular for a moment.

Could you describe again the filings that were required to be made on behalf of BFI, Inc. in Texas from the time you began in 2002 until the present, just the basic typical filings that were required to be made there?

A. Such as their annual compliance?

Q. Correct. So that was one, the annual compliance?

A. Their public information report.

What would you like to know about that report?

Q. Could you describe what it is again?

A. It's an attachment to the tax filing, and it includes information on the current officers, their titles and their addresses, and then it also includes what entity has an ownership of greater than 10 percent and who are subsidiaries of that company.

Q. Were there any other filings that were -- were you required to make any sort of tax filings in Texas?

A. I don't know.
Q. You don't know whether there was a franchise tax report or something to that effect required to be filed there?
A. Not that I was responsible for; I'm not aware of any.
Q. And let's go to Arizona for a second. What were the filings that were required to be made on behalf of BFI, Inc. with Arizona?
A. The annual report, which is filed with the Arizona Corporation Commission.
Q. Was that the only filing necessary?
A. That's the only one I was aware of and that I was responsible for.
Q. And in Delaware?
A. The franchise tax report.
Q. Any others in Delaware?
A. Not that I'm aware of.
Q. If you could look at Paragraph 3 of what's been marked as Government Exhibit 21. This is your affidavit, and you state there that in January 2005 you transmitted to CT Corporation System some documents.
Could you describe what CT Corporation System is?
A. They're a registered agent. What information

are you --

Q. I guess I'm just not entirely clear as to what services they performed for Allied.

A. Okay. CT Corporation System is our registered agent for statutory representation, and they also assist us with filings with the various State agencies, Secretary of States' offices.

Q. So these filings that we've been talking about, would all of those -- would you employ the services of CT Corporation System to make each of these filings that we've been discussing?

A. Yes.

Q. If you could just take a moment and look in Paragraph 3 of Exhibit 21, at letters (a), (b), (c) and (d). If you could please review those paragraphs for a moment.

Are those documents that you're also -- that BFI, Inc. filed with -- or Allied on behalf of BFI, Inc. filed with the State of Arizona, to the best of your knowledge?

A. Yes.

Q. In addition to the documents you see listed there in Paragraphs (a) through (d), was there any other filing that was made on behalf of BFI, Inc. regarding the conversion from BFI, Inc. to BFI, LLC with the State of

Arizona?

MR. KARTER: Just to clarify, when you say BFI, Inc., are you lumping together BFI, Inc. with BFI, LLC, or are you considering that as a separate entity?

MR. CHRISTENSEN: At this point we're considering that as a separate entity.

MR. KARTER: I don't want to mischaracterize your question, because you asked her about (a) through (d), I believe it was, in reference BFI, Inc. As you see on her affidavit, in (b) it references the different entity BFI, LLC. So I just want to make sure that there is a clear communication as to what it is you're asking.

BY MR. CHRISTENSEN:

Q. Excuse me. Let me rephrase the question. The documents listed in Paragraphs (a) through (d), aside from those documents, were there any other filings with the Arizona statutory agent or the regulatory agencies made related to the conversion of BFI, Inc. to BFI, LLC?

A. Not that I'm aware of.

Q. Do you know when the -- it explains here, of course, BFI, Inc. was registered as a foreign corporation in Arizona. Do you know when that application for registration was made in Arizona for BFI, Inc.?

A. When it was originally --

Q. Yes.

A. -- registered?
No, I don't know.
Q. Was that -- do you know whether that happened before you began working with Allied or after?
A. It was already registered in Arizona when I began working.
Q. If I could have you look at Page 2; and Paragraph 7, if you could please take a moment and read that paragraph.
The last -- close to the bottom of the paragraph, it says, "I transmitted to CT Corporation System copies of the Arizona applications that I had sent to them in January 2005 and asked them to refile these applications."
These applications, those last two words, does that refer to the documents listed in Paragraph 3, Paragraphs (a) through (d)?
A. Yes.
Q. And does it refer solely to those documents, or were there any additional documents that you had them refile in May of 2006?
A. No, I believe it was just those listed in (a) through (d).
Q. Let's just discuss the filings with Texas for a moment.

A. Okay.
Q. Well, before we do that, actually, the documents listed in Paragraphs (a) through (d), when were those prepared for filing on behalf of BFI, Inc. originally?
A. In January 2005.
Q. And did you prepare those personally?
A. Yes.
Q. And in May or in April of 2006, when you discovered that they had not been filed with Arizona, had you retained copies of those documents listed in Paragraphs (a) through (d)?
A. I had the copies that I had retained from January of 2005.
Q. And those are the copies that you submitted to CT Corporation System?
A. Yes.
Q. For filing in 2006?
A. Yes.
MR. KARTER: Just object to form, because you're referring to those particular documents that she retained copies of. Presumably she sent another set.
MR. CHRISTENSEN: Which would have been identical copies.
MR. KARTER: Right. You can rephrase your question or not. I just want to make clear that I have an

objection to the form.
BY MR. CHRISTENSEN:
Q. So you would have sent copies of the documents listed in Paragraphs (a) through (d), you would have sent copies of those to CT Systems Corporation for refiling; is that correct?
A. Yes.
Q. And those were the copies that you had retained since January 2005, when you originally prepared them?
A. Yes.
Q. Now let's go to the Texas filings for a moment.
Listed in Paragraph 3, letters (e) and (f) and (g), those filings seem to relate to filings made with Texas on behalf of BFI, Inc.; is that correct?
A. Yes.
Q. And, also, in Paragraph 4 on Page 2, letters (a) and (b), those also relate to filings with Texas on behalf of BFI, Inc.; is that correct?
A. Yes.
Q. Were there any other documents besides those listed in Paragraph 3, letters (e) and (f) and Paragraphs -- and (g), excuse me, and Paragraph 4(a) and (b) that were made on behalf of BFI, Inc. with Texas?
A. I don't believe so.
Q. Let's just go -- if you could look for a moment

on -- if you look down at the bottom right-hand corner of the document, there's the Bates number there; and if you could look at the documents with Bates stamp Nos. 33 through 47 and tell me if those are true and correct copies of these documents that are listed in Paragraphs 3 and 4?

There's a lot of documents, I know.

A. Can you repeat the question?

Q. Those documents listed in Bates stamp Nos. 33 through 47, are those, to the best of your knowledge, true and correct copies of the documents that you submitted to CT Corporation Systems for filing?

A. Yes.

Q. Did you ever -- between the time that you submitted those in January 2005 and April of 2006, did you receive any sort of confirmation or other document from the State of Arizona recognizing the filings or confirmation that the filings had been received by the State?

A. From what --

Q. From Arizona.

A. From what period of time?

Q. From the time that you submitted the documents in January of 2005 to CT Corporation Systems until you were informed in April of 2006 that they had not been

filed with the State, did you receive any sort of --
A. No.
Q. So you didn't receive any sort of confirmation from the State of Arizona that the documents had been received during that time period?
A. No.
Q. What was it that alerted you to the fact that they had not been filed with the State of Arizona?
A. It just occurred to me that it had taken longer than the estimated time and I had not heard anything.
Q. Do you have any idea why they didn't actually file those documents in January of 2005?
A. I don't know what happened on their end.
Q. Okay. Let's just turn to Delaware for a second. We're almost finished here.
When did you -- back to Arizona for a moment. When did you actually receive a certificate of compliance that BFI, Inc. had been withdrawn as a foreign corporation in Arizona?
A. In September of 2006.
Q. And when did you receive confirmation from the State of Arizona that BFI, LLC had been organized in the State of Arizona?
A. September 2006.
Q. If you could look at Bates stamp Nos. 52 through

54. Excuse me, 52, Bates stamp No. 52. Is that the certificate -- a copy of the certificate you received from the State of Arizona that BFI, Inc. had been withdrawn? Sorry, it's a very hard copy to read.

A. If I'm not mistaken, it's the tax clearance. That's not the actual withdrawal.

Q. Would they have issued another certificate of withdrawal?

A. Looks like they file-stamped the application for withdrawal.

Q. Okay. Let's not worry about that for now. Just let me ask you one more question regarding the Delaware filings, the filings that were made with Delaware on behalf of BFI, Inc. Did you ever file a certificate of dissolution of BFI, Inc. with the State of Delaware?

A. No.

MR. CHRISTENSEN: I think that's all the questions that we have for you. So thank you for your time, and I believe we'll move -- we're ready at this point to move on to --

MR. KARTER: No questions.

(The deposition concluded at 9:40 a.m.)

(Signature waived.)

______________________________
ELAINE KUETHER

STATE OF ARIZONA )
) ss.
COUNTY OF MARICOPA )

BE IT KNOWN that the foregoing deposition was taken before me, JODY L. LENSCHOW, Certified Reporter No. 50192 for the State of Arizona, and by virtue thereof authorized to administer an oath; that the witness before testifying was duly sworn by me; that the questions propounded by counsel and the answers of the witness thereto were taken down by me in shorthand and thereafter transcribed under my direction; that a review of the transcript by the witness was waived; that the foregoing pages contain a full, true, and accurate transcript of all proceedings and testimony had, all to the best of my skill and ability.

I FURTHER CERTIFY that I am not related to nor employed by any of the parties hereto and have no interest in the outcome thereof.

DATED at Phoenix, Arizona, this 30th day of October, 2006.

Jody L. Lenschow

JODY L. LENSCHOW, RMR, CRR
Certified Reporter
Certificate No. 50192