# In the United States Court of Federal Claims

No. 05-738T

(Filed: March 2, 2007)

| | | |
|---|---|---|
| BROWNING FERRIS INDUSTRIES, INC. & SUBSIDIARIES, Plaintiff, v. THE UNITED STATES, Defendant. | * | Tax Refund Suit; Lack of Jurisdiction Due to Defective Refund Claim; Termination of Common Parent Without Designating Substitute Agent for Consolidated Group; Dismissal Without Prejudice; 26 U.S.C. § 7422; Treas. Reg. § 1.1502-77A. |

*Philip Karter*, with whom was *Herbert Odell*, Miller & Chevalier, Chartered, West Conshohocken, Pennsylvania, for Plaintiff.

*Stuart J. Bassin*, with whom were *Eileen J. O'Connor*, Assistant Attorney General, *David Gustafson*, Chief, Court of Federal Claims Section, *Jennifer D. Spriggs*, Senior Trial Attorney, and *Jacob E. Christensen*, Trial Attorney, U.S. Department of Justice, Tax Division, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

In this tax refund suit, Plaintiff has moved for voluntary dismissal of its action without prejudice due to the discovery of an alleged jurisdictional defect in its refund claim. Plaintiff's May 5, 2005 tax refund claims for the years 1997 and 1998 were filed in the name of "Browning-Ferris Industries, Inc." (BFI, Inc.) as agent for a consolidated group of subsidiary companies for which it had been the common parent. Plaintiff maintains that BFI, Inc. was not the proper agent to file such refund claims because BFI, Inc. had been liquidated on December 31, 2004. Plaintiff's new counsel discovered this fact in August 2006, and promptly took corrective action, designating BFI Waste Systems of North America (BFI Waste Systems) as the substitute agent for the BFI Group, and refiling the tax refund claims

for 1997 and 1998 on August 24, 2006. Plaintiff asserts in its September 12, 2006 motion to dismiss that it consequently failed to satisfy the prerequisites in 26 U.S.C. § 7422 for maintaining a tax refund suit, and that the Court therefore lacks jurisdiction. Plaintiff wants to pursue its cause of action relating to the August 24, 2006 refund claims in the name of the proper party, and perhaps in a different forum.

Defendant opposes Plaintiff's motion for voluntary dismissal, arguing that Plaintiff is engaged in blatant forum-shopping to avoid a recent and unfavorable ruling by the U.S. Court of Appeals for the Federal Circuit. Defendant states that Plaintiff's suit arises from a "contingent liability tax shelter transaction" designed to generate artificial capital losses for tax purposes, but without corresponding economic losses. (Deft's Response at 1-2). The purpose of the tax shelter plan, according to Defendant, is to apply artificially created losses against income and gains from other operations, and thereby reduce federal income tax liability. Id. Defendant notes that on July 12, 2006, the Federal Circuit rejected such a plan in a similar case, Coltec Industries, Inc. v. United States, 454 F.3d 1340 (Fed. Cir. 2006), and argues that Coltec will effectively dispose of Plaintiff's substantive arguments in this case. With significant claims on both sides – Plaintiff's $28 million refund claim, and Defendant's $18 million counterclaim – Defendant sees Plaintiff's motion to dismiss as a ploy to avoid the Coltec decision, and move its case to another forum.

Plaintiff filed its motion to dismiss pursuant to RCFC 41(a)(2), but also has asked for dismissal of Defendant's counterclaim under RCFC 12(b)(1). The Court allowed Defendant to conduct limited discovery before filing its response to the motion. The matter has now been fully briefed, and the Court heard oral argument on January 11, 2007.

For the reasons explained below, the Court concludes that Plaintiff's motion to dismiss should be granted. A careful review of the applicable statute and Treasury Regulations confirms that BFI, Inc. was not the agent for the consolidated group of companies on May 5, 2005 when the tax refund claims were filed. By that date, BFI, Inc. had been liquidated and no longer existed for federal income tax purposes. The applicable jurisdictional statute, 26 U.S.C. § 7422, provides that a suit for refund cannot be maintained until "a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." The filing of a refund claim in the name of a corporation that no longer exists does not comply with Treas. Reg. § 1.1502-77A, and deprives the Court of jurisdiction.

While it is true that the effect of this decision may be to allow Plaintiff to pursue its action in another forum, the Court lacks discretion to waive a jurisdictional impediment. Arbaugh v. Y&H Corp., 126 S. Ct. 1235, 1240 (2006). Defendant's counterclaim also must be dismissed, because the counterclaim cannot stand on its own in this Court without Plaintiff's tax refund claim.

## Factual Background[1]

On June 16, 1998 and June 15, 1999 respectively, BFI, Inc. timely filed tax returns for a consolidated group of companies (the BFI Group) for which it was the common parent for the years 1997 and 1998. On July 30, 1999, Allied Waste North America, Inc. (AWNA) acquired substantially all of the outstanding stock of BFI, Inc. As a result of this acquisition, BFI, Inc. became a wholly-owned subsidiary of AWNA, which was and remains a wholly-owned subsidiary of Allied Waste Industries, Inc. (Allied). Allied is the common parent of the consolidated group (the Allied Group) that includes AWNA. At the time of the acquisition, all of the members of the BFI Group became members of the Allied Group. (Pltf's Motion at 4).

On December 31, 2004, BFI, Inc. converted from a Delaware corporation to a Delaware limited liability company known as Browning-Ferris Industries, LLC (BFI, LLC) pursuant to section 266 of the Delaware General Corporation Law. See Del. Code Ann. tit. 8, § 266 (2004). The newly formed entity, BFI, LLC, executed and filed a Certificate of Formation pursuant to the Delaware Limited Liability Company Act on the same date. As a result of that conversion, BFI, Inc. liquidated for tax purposes into AWNA. (Pltf's Motion at 4).

On April 25, 2005, Plaintiff made payments of $19,079,286 and $3,519,979 to the Internal Revenue Service (IRS) with respect to the BFI Group's 1997 and 1998 tax years. On May 5, 2005, BFI, Inc. filed refund claims on behalf of the BFI Group for the same tax years. Specifically, Plaintiff filed forms 1120X with the IRS claiming a refund of $18,549,092 for 1997, and $9,711,514 for 1998. On May 10, 2005, the IRS issued a notice of disallowance for both claims. Id. at 5.

On July 8, 2005, Plaintiff filed suit in this Court for refund of taxes for BFI, Inc.'s 1997 and 1998 tax years. Plaintiff filed the Complaint in the name of "Browning-Ferris, Inc. & Subsidiaries." Plaintiff alleged in the Complaint that BFI, Inc. is a Delaware corporation, and an authorized agent for the BFI Group under Treas. Reg. § 1.1502-77(a). (Complaint, ¶¶ 3-4). In fact, BFI, Inc. no longer existed when Plaintiff filed the May 5, 2005 refund claims, or when Plaintiff brought suit in this Court. (Pltf's Motion at 5). On December 21, 2005, Defendant filed an amended Answer and Counterclaim for approximately $18.2 million in interest and penalties.

---

[1] The facts herein are from the parties' briefs on the motion to dismiss, and from documentary evidence appended to the briefs as exhibits. The material facts are not in dispute. To the extent that fact issues exist, they have no bearing on the outcome of Plaintiff's motion.

On June 30, 2006, Plaintiff substituted new counsel in this case, and in the course of performing due diligence, they discovered that BFI, Inc. did not exist at the time the refund claims were filed. New counsel advised Allied to file corrected refund claims in the name of the proper designee of the BFI Group. Accordingly, on August 24, 2006, members of the BFI Group designated BFI Waste Systems as substitute agent for the BFI Group pursuant to Treas. Reg. § 1.1502-77A(d) and the procedures set forth in Rev. Proc. 2002-43, 2002-2 C.B. 99. The IRS approved the designation of BFI Waste Systems as substitute agent on August 31, 2006. BFI Waste Systems filed claims for refund for the consolidated tax years 1997 and 1998 for the BFI Group on August 24, 2006. Apart from the change in name of the designee and the associated employer identification numbers, the revised refund claims were the same as the refund claims previously filed on May 5, 2005. (Pltf's Motion at 6).

## Positions of the Parties

Plaintiff contends that the Court's subject matter jurisdiction in this case is predicated on the filing of valid tax refund claims for the tax years at issue, 1997 and 1998. Plaintiff thought that it had satisfied the jurisdictional prerequisite when BFI, Inc. filed refund claims on May 5, 2005, on behalf of the BFI Group. However, as a result of BFI, Inc.'s December 31, 2004 liquidation, Plaintiff argues that, under the Treasury Regulations applicable to consolidated returns, BFI, Inc. was not the proper agent to file the claim on behalf of the BFI Group. Therefore, the action is jurisdictionally defective. Plaintiff seeks a voluntary dismissal under RCFC 41(a)(2), and a dismissal of Defendant's counterclaim under RCFC 12(b)(1). Plaintiff asserts that Defendant's counterclaim is not entitled to an independent adjudication in this Court.

Defendant states that RCFC 41(a), at the current stage of proceedings, does not authorize voluntary dismissal without an order of the Court. Defendant argues that the Court should not issue such an order because of Plaintiff's blatant forum-shopping. Defendant contends that, under Delaware corporate law, BFI, Inc. continued to exist as a corporate entity at the time of the original refund claim, and that the conversion of BFI, Inc. into a limited liability company did not deprive it of the power to file the refund claim on behalf of the BFI Group. Defendant asserts that any necessary changes in the "real party in interest" can be addressed through the Court's procedures for substitution of parties under RCFC 17 and 25(c).

## Standard for Decision

Plaintiff's motion is styled as one for voluntary dismissal without prejudice under RCFC 41(a)(2), and for dismissal for lack of subject matter jurisdiction under RCFC 12(b)(1). Regardless of the titles used, the Court regards the issue presented as a threshold jurisdictional question which can be raised at any stage of the proceedings. See Resource

Recycling Corp., Inc. v. United States, 56 Fed. Cl. 612, 615 (2003) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)).

In the normal analysis under RCFC 12(b)(1), the burden is on the plaintiff to "come forward with evidence establishing the court's jurisdiction." See Reynolds v. Army and Air Force Exchange Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). In unusual cases like this, however, where the traditional roles are reversed, the burden logically should follow. In more neutral language, "where a party questions the Court's subject matter jurisdiction, the nonmoving party has the burden of proving the Court's jurisdiction." Id. In this case, through briefing, discovery, and oral argument, each side has been afforded an ample opportunity to develop and present its position. The Court views the issue presented as involving the application of federal tax laws and regulations to agreed upon facts. In such an analysis, the normal evidentiary presumptions in a Rule 12(b)(1) motion are less important. As explained below, the Court finds that the applicable laws and regulations control the outcome here, without regard to Defendant's arguments of forum-shopping and prejudice.

## Discussion

To maintain a suit in this Court for "the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected," a plaintiff must first file a claim for refund or credit with the Secretary of the IRS. Such a claim must be filed "according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." See 26 U.S.C. § 7422; Electrolux Holdings, Inc. v. United States, 71 Fed. Cl. 748, 751 (2006) (citing Greene v. United States, 191 F.3d 1341, 1343 (Fed. Cir. 1999)). As a jurisdictional prerequisite to refund suits, 26 U.S.C. § 7422 cannot be waived by either party or the Court. See Alder Terrace, Inc. v. United States, 116 F.3d 1372, 1376-77 (Fed. Cir. 1998).

### A. Treasury Regulations Relating to Consolidated Returns

The Treasury Department's consolidated return regulations prescribe which entities may act on behalf of a consolidated group. The Treasury Department promulgated these regulations pursuant to the express authority in 26 U.S.C. § 1502, which provides:

> The Secretary shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income tax liability and the various

> factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability. In carrying out the preceding sentence, the Secretary may prescribe rules that are different from the provisions of chapter 1 that would apply if such corporations filed separate returns.

Id. The consolidated return regulations are legislative in character and have the force and effect of law. See Union Oil Co. of Cal. v. Comm'r, 101 T.C. 130, 137-38 (1993); Southern Pacific Co. v. Comm'r, 84 T.C. 395, 400 (1985).

The Tax Court has observed that "[a] central feature of the consolidated return regulations is the role of the common parent as the exclusive agent for the consolidated group with respect to all procedural matters." Interlake Corp. v. Comm'r, 112 T.C. 103, 113 (1999) (citing Southern Pacific Co., 84 T.C. at 401). Treas. Reg. § 1.1502-77A concerns the scope of a common parent's power to act as agent for a consolidated group for tax years beginning before June 28, 2002.[2] The common parent of a consolidated group is "the sole agent for each subsidiary in the group, duly authorized to act in its own name in all matters relating to the tax liability for the consolidated return year." Treas. Reg. § 1.1502-77A(a). Except for certain purposes not relevant here, "no subsidiary shall have authority to act for or to represent itself in any such matter." Id. The regulation further states that the "common parent will file claims for refund or credit, and any refund will be made directly to and in the name of the common parent[.]" Id.

B. Effect of a Common Parent's Termination

If the existence of a common parent is terminated, the common parent is no longer authorized to act on behalf of the consolidated group. Interpreting the consolidated return regulations, the Tax Court concluded in Southern Pacific that the common parent remained as the consolidated group's agent only so long as it did not terminate. 84 T.C. at 401 ("Obviously, if the existence of the common parent were to terminate after the filing of a consolidated return for a particular year, the agency relationship would terminate, and the group would, in the absence of any provision in the regulations, be left without an agent to act on its behalf in any subsequent dispute over its liability for that year."); see also Interlake, 112 T.C. at 114 ("Of course, if the common parent ceases to exist, its authority to act for the group terminates.")

The consolidated return regulations contain procedures for authorizing a new agent to act on behalf of the group if the common parent is terminated. The regulations provide

[2] Treas. Reg. § 1.1502-77A was redesignated and most recently amended on June 28, 2002. See 67 Fed. Reg. 43540, 43544 (June 28, 2002).

that, if the common parent is about to be dissolved, "or if for any other reason its existence is about to terminate," the common parent can designate another member to act as agent for the consolidated group. Treas. Reg. § 1.1502-77A(d). Such designation is expected to occur before the existence of the common parent terminates. Id. However, if the common parent does not designate a new agent for the consolidated group before its existence terminates, the regulation provides that "the remaining members may, subject to the approval of the Commissioner, designate another member to act as such agent, and notice of such designation shall be given to the Commissioner." Id.

Aside from this designation procedure, Treas. Reg. § 1.1502-77A does not authorize any entity to act as agent for a consolidated group whose common parent's existence has terminated. The regulations provide that certain specified entities may serve as alternative agents, but only for the limited purposes of receiving notices of deficiencies and waiving the statute of limitations. See Treas. Reg. § 1.1502-77A(e)(2) and (e)(3).

Where the common parent terminates without designating a new agent, the remaining members of the consolidated group must designate one such remaining member to be the sole agent for the group. The IRS has asserted that this designation "may be filed at any time after the common parent's existence terminates." Rev. Proc. 2002-43 § 8.02.

In 2000, the Treasury proposed new regulations under 26 U.S.C. § 1502 to provide for a more comprehensive set of rules addressing the scope of common parent agency. These new regulations were finalized in 2002, but apply prospectively to tax years beginning on or after June 28, 2002. See Treas. Reg. § 1.1502-77(h); 67 Fed. Reg. 43539 (June 28, 2002) ("The final regulations under § 1.1502-77 apply to taxable years beginning on or after June 28, 2002. The current rules of § 1.1502-77 and § 1.1502-77T, which are collectively retained in § 1.1502-77A, continue to apply with respect to taxable years beginning before June 28, 2002."). The agent for the BFI Group's 1997 and 1998 tax years therefore is determined according to the pre-amendment regulations. See Treas. Reg. § 1.1502-77A(g).

Although the new regulations do not apply in this instance, the preamble to the proposed regulations in 2000 confirms the Treasury's view of the pre-amendment rules concerning a common parent's loss of its authority to act as agent for a consolidated group. According to the Treasury:

> . . . [I]ssues arise about who has the authority to act on behalf of the group for consolidated return years where the common parent has ceased to exist (*e.g.*, due to a merger or liquidation) or where, while continuing to exist, it has ceased to be the common parent of the group (*e.g.*, as a result of being acquired by another corporation).

65 Fed. Reg. 57756 (Sept. 26, 2000). In the preamble, the Treasury acknowledged that the existing regulations provide for an alternative agent in certain circumstances, but stated:

> However, an alternative agent provided by § 1.1502-77T is the agent for the group only for the purposes of mailing notices of deficiency or for executing consents to extend periods of limitations. Under § 1.1502-77T, an alternative agent has no authority to act as the group's agent for other purposes (*e.g.*, *filing a refund claim*, receiving refund payments or executing a closing agreement). As a result, under the current rules, absent a designation of one of the remaining members to act as agent under § 1.1502-77(d), the IRS may have no option other than to deal separately with each remaining member for any purpose not covered by § 1.1502-77T.

Id. (emphasis added).

To ensure that a consolidated group would always have an agent, the new regulations applicable to tax years after June 28, 2002 provide for substitute agents with expansive authority, including the authority to file refund claims for a consolidated group whose common parent has terminated. See Treas. Reg. § 1.1502-77. No comparable provision, and thus no comparable authority, exists under the pre-June 28, 2002 law applicable to this case. For tax years prior to June 28, 2002, when the common parent of a consolidated group has terminated without designating a substitute agent for the group, the only options are (1) for the remaining members to designate one of its members as agent for the group, or (2) for the IRS "to deal separately with each remaining member for any purpose not covered by § 1.1502-77T," *e.g.*, filing a refund claim. See 65 Fed. Reg. 57756.

Consistent with the view expressed in the preamble to the proposed regulations in 2000, the IRS has concluded in Field Service Advices (FSAs) that the designation procedure contained in the Treasury Regulations provides the exclusive procedure for determining what entity is authorized to act on behalf of a consolidated group whose parent has terminated. Absent such designation, the IRS is left with no choice but to deal with each group member individually. See, e.g., FSA 200210012 (Nov. 20, 2001) (where common parent's existence terminated, the consolidated group has "no agent" until the remaining members designate a new agent); FSA 200027026 (April 10, 2002) (the remaining members of a group whose common parent merged into another corporation must designate a new agent to claim credits).

While IRS administrative pronouncements such as FSAs are not binding precedent on the Court, they do indicate how the IRS interprets its own regulations, and may be regarded as persuasive in the absence of authority to the contrary. See, e.g., Buckeye Power,

Inc. v. United States, 38 Fed. Cl. 154, 161 (1997) (finding that a technical advice memorandum demonstrates "the strength of [the taxpayer's] position"); McKnight v. Comm'r, 58 T.C.M. (CCH) 1390, 1393 (1990) (in following the reasoning of a technical advice memorandum, the court noted that "it may . . . in the absence of authority to the contrary, accept the reasoning of a technical advice memorandum as persuasive.").

C. Application of the Law to BFI, Inc. and the BFI Group

When BFI, Inc. converted from a Delaware corporation to a Delaware limited liability company on December 31, 2004, the new entity, BFI, LLC, became a "disregarded entity" for federal tax purposes. Treas. Reg. § 301.7701-3(b)(1)(ii). This regulation provides that a domestic entity other than a corporation, a joint stock company or association, an insurance company, a bank, a government-owned entity or certain foreign entities, is "[d]isregarded as an entity separate from its owner if it has a single owner." Id. Such a disregarded entity may elect to be treated as a corporation for tax purposes under Treas. Reg. § 301.7701-3(c), but BFI, LLC has not made an election to be classified other than its default classification as a disregarded entity.

By converting from a corporation into what became a disregarded entity for tax purposes, BFI, Inc. was deemed to have distributed "all of its assets and liabilities to its single owner in liquidation[.]" Treas. Reg. § 301.7701-3(g)(1)(iii); see also Rev. Rul. 2004-59, 2004-1 C.B. 1050 (effect of conversion of a partnership into a corporation pursuant to state conversion statute is determined by Treas. Reg. § 301.7701-3(g)(1)). BFI, Inc. therefore liquidated for federal tax purposes as a result of the conversion into BFI, LLC under Delaware law. This liquidation of BFI, Inc. constituted a termination of its existence as the common parent of the BFI Group for federal tax purposes. Due to the liquidation, BFI, Inc. ceased to be the parent of the BFI Group.

In Interlake Corp. v. Comm'r, 112 T.C. 103 (1999), the Tax Court considered the authority of a former common parent, Acme, to receive tentative refunds when it had been spun off and had therefore ceased to be a member of the consolidated group. The court determined that "Acme's authority to act for the group . . . terminated when its affiliation with the group terminated. With respect to the group, it is as though Acme ceased to exist." Id. at 114-15. Similarly, BFI, Inc.'s authority to act for the BFI Group terminated when it liquidated and ceased to be the parent of the BFI Group.

As a result of BFI, Inc.'s December 31, 2004 liquidation, the Court concludes that BFI, Inc. was not authorized on May 5, 2005 to file a tax refund claim on behalf of the BFI Group. BFI, Inc.'s attempted filing of the tax refund claim on behalf of the BFI Group was not valid. The Court therefore does not have a properly filed administrative claim before it, and the jurisdictional prerequisite under 26 U.S.C. § 7422 has not been satisfied. See, e.g.,

Stelco Holding Co. v. United States, 42 Fed. Cl. 101, 104 (1998) ("It is firmly settled that a properly filed administrative claim for refund is the indispensable prerequisite to this court's exercise of jurisdiction over a taxpayer's suit for refund.").

D. Defendant's Claims of Forum-Shopping and Prejudice

Defendant's arguments in opposition mainly focus upon the perceived "forum shopping" aspect of Plaintiff's motion, where it sees Plaintiff simply attempting to avoid the effect of the Coltec decision by moving its case to a different court. Defendant asserts that it has expended significant effort in litigating this case to its present stage, and notes that it has an $18.2 million counterclaim against Plaintiff. Relying upon Delaware law, Defendant argues that BFI, Inc. continued to exist as a legal entity with capacity to file claims for refund and to sue under state law. Defendant also states that the IRS considered Plaintiff's May 5, 2005 administrative claim on the merits, and raised no objection that BFI, Inc. lacked authority to file a refund claim for the BFI Group. Defendant suggests that any question relating to the identity of the "real party in interest" can be cured through a substitution of the proper party under RCFC 17 and 25(c).

The flaw in Defendant's position is that the Court does not have any discretion to waive a lack of subject matter jurisdiction. See Giannakos v. M/V Bravo Trader, 762 F.2d 1295, 1297 (5th Cir. 1985) (rejecting argument that "equities" should be considered in evaluating subject matter jurisdiction because the "question of subject matter jurisdiction must be resolved by the application of proper legal principles to the facts[.]"). Moreover, the effect of the Court's dismissal for lack of subject matter jurisdiction will do no more than return the parties to the same position they held when this suit was filed. Defendant's work to date presumably will be of use wherever Plaintiff elects to file suit, and Defendant may still assert its counterclaim in response to a new complaint.

Defendant's reliance on Delaware law also is misplaced. The issue of a common parent's authority to act for a consolidated group is governed by the applicable federal tax regulations. A corporation's continued existence for purposes of winding up its affairs under state law is irrelevant to the question of whether an entity has authority to file a claim for refund under 26 U.S.C. § 7422. Similarly, the fact that the IRS considered Plaintiff's administrative claim on the merits is not a basis for the Court to waive a jurisdictional defect. The applicable consolidated return regulations are legislative in character and have the force and effect of law. See Southern Pacific, 84 T.C. at 400.

Finally, the Court cannot cure a jurisdictional defect through a substitution of parties under RCFC 17 and 25. If the Court had subject matter jurisdiction of the original cause of action, substitution could be made. However, substitution cannot be employed to waive the lack of a properly filed administrative claim under 26 U.S.C. § 7422.

Conclusion

Based upon the foregoing, the Court hereby GRANTS Plaintiff's September 12, 2006 motion to dismiss without prejudice. Defendant's counterclaim also is dismissed without prejudice. The properly designated agent for the BFI Group may commence a new action if it desires from the tax refund claim submitted to the IRS on August 24, 2006.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge