IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-738 T
(Judge Wheeler)

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

# MOTION OF THE UNITED STATES FOR RECONSIDERATION OF THE COURT'S OPINION OF MARCH 2, 2007

STUART J. BASSIN
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6418
(202) 307-2504 (fax)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
JENNIFER D. SPRIGGS
Senior Trial Attorney
JACOB E. CHRISTENSEN
Trial Attorney

TABLE OF CONTENTS

Motion of the United States for Reconsideration:

1. The May 2005 claims were valid as a collective filing by the individual members of the consolidated group.. 2

2. Any defects in the May 2005 claims do not deprive this Court of jurisdiction over this suit.. 2

3. The approach taken in the Court's opinion reflects a new standard that would prejudice taxpayers.. 8

Exhibits:

A. Excerpts from the complaint filed in *Wellpoint, Inc v. United States*, Fed. Cl. No. 06-147 T

B. Excerpt from the complaint filed in *Austin Investment Fund, LLC, by and through its Tax Matters Partner, Ricobene LLC v. United States*, Fed. Cl. No. 06-844 T

C. Answer filed in *Austin Investment Fund, LLC, by and through its Tax Matters Partner, Ricobene LLC v. United States*, Fed. Cl. No. 06-844 T

# TABLE OF AUTHORITIES

*American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915 (1963). ............... 8

*Angelus Milling Co. v. Commissioner*, 325 U.S. 293 (1945).................................................... 3, 4

*Coltec v. United States*, 454 F.3d 1340 (Fed. Cir. 2006). ............................................................ 3

*Kidde Industries, Inc. v. United States*, 40 Fed. Cl. 42 (1997),
*appeal dismissed*, 194 F.3d 1330 (Fed. Cir. 1999). ........................................................... 5

*Kraasch v. Commissioner*, 70 T.C. 623 (1978). ............................................................................. 7

*Mishawaka Properties Co. v. Commissioner*, 100 T.C. 353 (1993). ....................................... 7, 11

*Mobil Corp. v. United States*, 52 Fed. Cl. 327 (2002). ............................................................ 3, 4

*National Forge & Ordnance Co. v. United States*, 139 Ct.Cl. 204 (1957).................................. 11

Internal Revenue Code (26 U.S.C.):

§ 6011(a). ........................................................................................................................ 6

§ 6226 ...................................................................................................................... 10, 11

§ 6532(a)(1). ..................................................................................................................... 5

§ 7422(a). ........................................................................................................... 2, 4, 5, 12

Treas. Reg. (26 C.F.R.) §1.1502-77A. ..........................................................................  1-5, 8

Rev. Proc. 2002-43, 2002-2 C.B. 99. ......................................................................................... 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-738 T
(Judge Wheeler)

BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

# MOTION OF THE UNITED STATES FOR RECONSIDERATION OF THE COURT'S OPINION OF MARCH 2, 2007

Defendant, the United States, respectfully moves the Court to reconsider its Opinion and Order of March 2, 2007, granting plaintiff's motion to dismiss its complaint and the $18 million counterclaim pleaded by the United States. The United States requests reconsideration for three reasons: First, the claims complied with Treas. Reg. §1.1502-77A in light of a principle acknowledged by the Court. Second, the Court's opinion did not fully address the legal authorities establishing that the Court has subject matter jurisdiction because the amended returns (Forms 1120X) filed in May 2005 were, at least, adequate "informal claims." Third, the reasoning of the Court's opinion would create a new jurisdictional standard that would surprise and prejudice taxpayers in refund litigation in this Court.

1. The May 2005 claims were valid as a collective filing by the individual members of the consolidated group.

The last sentence of Treas. Reg. § 1.1502-77A(d) provides, "if the Commissioner has reason to believe that the existence of the common parent has terminated, he may, if he deems it advisable, deal directly with any member in respect of its liability." The Court so observed.[1] Here the right to claim refund of an overpayment of tax previously paid by the consolidated group was owned by the consolidated group; and if there was no single entity authorized to act for the group, then not just one entity but rather all the members of the group must claim the refund. In fact, they did so collectively: The claims were filed by "Browning-Ferris Industries Inc. & Subsidiaries." The individual (Mr. Parker) who signed the refund claim purported to file the claim on behalf of BFI and its subsidiaries. In signing the claim, he represented that he had the capacity to act on behalf of those entities.[2]

2. Any defects in the May 2005 claims do not deprive this Court of jurisdiction over this suit.

Even if, under Treas. Reg. §1.1502-77A, BFI's refund claims bore a defect as the Court's opinion held, the long-standing “informal claim” doctrine requires the Court to treat BFI's refund claims as sufficient to satisfy the jurisdictional requirement of § 7422(a), where the IRS addressed the claims on their merits, notwithstanding any arguable defect in the claims'

---

[1]*See* slip op. at 8 (stating that, in the absence of a designation of an entity to serve as agent for a consolidated group, "the IRS is left with no choice but to deal with each group member individually").

[2] Mr. Parker and the plaintiff should not now be allowed to contradict themselves and deny that he had the authority to do what he did. The Allied Waste group has ratified the refund claims and the lawsuit and should be estopped from self-contradiction. (*See* nn. 7-8, *infra*, and associated text.)

compliance with Treas. Reg. §1.1502-77A. (See Deft. Brief at 23-25.) We acknowledge that the Court's opinion did refer briefly to this argument when it stated (at 10):

> Defendant's arguments in opposition mainly focus upon the perceived 'forum shopping' aspect of Plaintiff's motion .... Defendant also states that the IRS considered Plaintiff's May 5, 2005 administrative claim on the merits, and raised no objection that BFI, Inc. lacked authority to file a refund claim for the BFI Group. . . . . . Similarly, the fact that the IRS considered Plaintiff's administrative claim on the merits is not a basis for the Court to waive a jurisdictional defect. The applicable consolidated return regulations are legislative in character and have the force and effect of law.

However, we offer the following for the Court's further reflection:

(a) While forum-shopping is indeed the phenomenon on display in plaintiff's motion to dismiss its own suit, and while the denial of plaintiff's motion will frustrate plaintiff's late attempt to escape the effect of *Coltec v. United States*, 454 F.3d 1340 (Fed. Cir. 2006), forum-shopping is not the basis for our argument about the jurisdictional adequacy of BFI's refund claims. Taxpayers are granted an acknowledged right (albeit a limited right) to select a forum for tax litigation. The issue here is simply whether, in the process of attempting to change forums, plaintiff contradicts the jurisprudence of tax refund jurisdiction.

(b) In opposing plaintiff's motion, we by no means ask the Court "to waive a jurisdictional defect"–which neither the IRS, nor the parties by stipulation, nor the Court by its *fiat* could do. Rather, the only "waiver" involved in our argument is the agency's implicit waiver of procedural requirements in the Treasury Regulations when it rules on a formally defective claim. As a result of that waiver, there is no jurisdictional defect, as we will explain. In *Mobil Corp. v. United States*, 52 Fed. Cl. 327, 329 (2002), this Court noted the truism that "the Commissioner cannot waive a jurisdictional statute," but it went on (*id*. at 336) to observe that–

> *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 297, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945), recognizes the possibility that IRS could waive applicable regulations. If a claim does not satisfy the requirements of a particular regulation, but IRS waives that

> regulation prior to expiration of the applicable limitations period, the claim can be said to have been brought within the statutory limitations period, fully in accordance with "the regulations of the Commissioner."[3]

That is, a regulatory requirement as to the form of a refund claim may be waived by the Commissioner, notwithstanding that the statute (§ 7422(a)) requires compliance with the regulations.

(c) The statute that plaintiff invokes in order to deny jurisdiction–§ 7422(a)–requires (in the passive voice) that "a claim for refund or credit has been duly filed," but this statute enacted by Congress does not specify *by whom* that claim must have been filed. Rather, that specification appears only in the regulations promulgated by the agency, in this case, Treas. Reg. § 1.1502-77A. Such a regulatory requirement as to the form of a refund claim (in *Mobil*, *supra*, the stating of particular grounds in the claim; in this case, the naming of a particular entity as the claimant) may be waived by the Commissioner. In this case, when the IRS disallowed BFI's claims on their merits, it thereby implicitly waived, for purposes of their form (and for purposes of § 7422(a)), any unfulfilled procedural requirement of the regulation.

(d) BFI's May 2005 claims for refund seemed to be formally correct. BFI Inc. had been the common parent and agent for the consolidated group during each of the refund years at issue in this case, and the claim for refund was filed in the name of BFI, Inc.–*not* "BFI, LLC as

---

[3]The language in *Angelus Milling* to which the *Mobil* decision refers includes the following: "Treasury Regulations are calculated to avoid dilatory, careless, and wasteful fiscal administration by barring incomplete or confusing claims. *[Citations omitted.]* But Congress has given the Treasury this rule-making power for self-protection and not for self-imprisonment. If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it. Even tax administration does not as a matter of principle preclude considerations of fairness."

successor to BFI Inc.," nor "Allied Waste on behalf of BFI, Inc. & Subsidiaries," nor any other such variant–so that the defect was not obvious on the face of the claims. The Service considered the claims on their merits and expressly disallowed them. What is at issue here is an exhaustion-of-administrative-remedies requirement codified in § 7422(a). When the IRS disallows a refund claim, what the agency thereby "waives" is its right to invoke procedural requirements in order to refuse to consider the claim (and to forestall litigation (*see* § 6532(a)(1)). It hands the taxpayer his ticket to court. When the IRS disallows a claim, it may not know of every latent defect lurking in the claim,[4] but the agency does know that the taxpayer may now take that claim to court for litigation on its merits, and the agency thus waives, as a procedural matter, further insistence on the formal, procedural requirements of the regulations. The agency does not thereby waive substantive rules in those regulations, nor excuse the taxpayer from the legal standards that would apply to determine his liability, nor concede the taxpayer's entitlement to recover.

(e) It is true, as the Court observes, that the § 1.1502-77A regulations "are legislative in character and have the force of law." Indeed, under § 7422(a), *all* of "the regulations of the Secretary established in pursuance [of] ... the provisions of law in ... regard" to "a claim for refund or credit [being] ... duly filed" have the force of law by their authorization and

---

[4]*Cf.* Transcript of January 10, 2007, at 38, where the Court raised this question whether such a waiver must be knowing. We submit that some ambiguity or equivocation on the nature of this "waiver" has led to confusion in opinions addressing the subject. For example, in *Kidde Industries, Inc. v. United States*, 40 Fed. Cl. 42, 66 (1997), *appeal dismissed*, 194 F.3d 1330 (Fed. Cir. 1999), the Court went so far as to state that "a determination that the IRS waived the regulations that require a claim to satisfy certain formalities is not a *sine qua non* for application of the informal claim doctrine." We do not agree with the reasoning or outcome of *Kidde*, but it does illustrate that application of the "informal claim" doctrine does not always depend on the agency's awareness of a specific defect and its deliberate and explicit waiver of the particular regulatory requirement.

incorporation in that section.[5] Nonetheless, the regulatory requirements as to the form of tax refund claims have long been acknowledged as waivable by the IRS. What is implicitly waived by the IRS's consideration of a formally defective claim is not the substantive standards of the regulations affecting the taxpayer's right to recover but the threshold procedural issue of whether the claim will be addressed (and whether it can thereafter be litigated). Here, the IRS ruled on a claim by an entity that (unknown to the IRS) had become ineligible to serve as the filer for a consolidated group, and in so doing the IRS thereby concluded the administrative process, so that administrative remedies had been exhausted and litigation could proceed on the basis of that claim. Any substantive standards in the regulations would continue to apply, and the Court would invoke them in deciding whether the plaintiff had overpaid its taxes and could recover.

(f) This is not an instance where the adequacy of a refund claim is put into question by a rival claimant with a competing claim, nor by the possibility that the claimant is a stranger. On the contrary, the same corporate officer who signed BFI's May 2005 refund claims (Deft. Fact App. at 65-83) also signed the substitute, "cured" claims in August 2006 (Pltf. Ex. 6; Deft. Fact App. at 104-20) under a different corporate name (along with the notation that the claimant was "f/k/a" the name on the first claims). By those later Forms 1120X–which are virtually identical to the Forms 1120X except for the names[6]–the new entity (BFI Waste Systems)

---

[5]*See also* 26 U.S.C. § 6011(a): "When required by regulations prescribed by the Secretary any person made liable for any tax imposed by this title ... shall make a return or statement according to the forms and regulations prescribed by the Secretary."

[6]The amounts filled on the August 2006 claims are identical to those on the May 2005 claims, and the text is virtually identical, except for changes related to the different identity of the new claimant. (Compare, for example, Deft. Fact App. at 65-70 and at 104-08.) Most of the attachments to the August 2006 claims are obvious photocopies of attachments to the May 2005 claims, amended by labels bearing the new entity's name.

explicitly ratified the original claims filed under the name of BFI, Inc. And long before that explicit ratification in August 2006, the entire Allied Waste group had at least implicitly ratified the May 2005 claims by the signature of its officer on those claims and by authorizing the filing of this suit.[7] Allied Waste and its subsidiary BFI Waste Systems should not now be permitted to disclaim that authorization or this suit, especially because they objected to the Government's attempt in February 2006 to suspend proceedings, and instead insisted that the case go forward–at substantial expense to the Government–and because the IRS agreed to forego collection of the unpaid interest and penalty (the Government's counterclaim here) in view of the pendency of this suit.[8]

[7]With the complaint, plaintiff filed a "RCFC 7.1 Corporate Disclosure Statement" (dated July 6, 2005) indicating that BFI was a wholly owned subsidiary of Allied Waste, and the Form 10K for Allied Waste (Deft. Fact App. at 122) says that "we" paid the tax and filed this suit. *Cf. Kraasch v. Commissioner*, 70 T.C. 623 (1978) (finding that taxpayers implicitly ratified the filing of a deficiency suit by their accountant, and denying taxpayers' motion to dismiss for lack of jurisdiction); *Mishawaka Properties Co. v. Commissioner*, 100 T.C. 353, 364 (1993) (finding that partners implicitly ratified the filing of a TEFRA suit by a partner who was not the Tax Matters Partner, and denying the partners' motion to dismiss for lack of jurisdiction; "In [*Kraasch*] the person who signed the taxpayers' names was representing their interests before the Internal Revenue Service and handling all of their tax matters. Even though the agent did not have specific authority to sign the taxpayers' names on a petition or to file a petition on their behalf, a petition was filed and the taxpayers were aware of it and they permitted it to represent their wishes").

[8]"In December 2005 the IRS agreed to suspend the collection of this penalty and interest [*i.e.*, the Government's $18 million counterclaim] until a decision is rendered in our suit for refund." (Deft. Fact App. at 122 (Allied's Form 10K).)

3. The approach taken in the Court's opinion reflects a new standard that would prejudice taxpayers.

The approach to jurisdiction reflected in the Court's recent opinion might require dismissal of tax refund actions that had previously been considered jurisdictionally well-founded, notwithstanding possible technical imperfections in the underlying refund claims.[9] This case is exceptional–and perhaps unique–in that it is the taxpayer that seeks jurisdictional dismissal; but in the overwhelming majority of cases, the Court's approach would bar the taxpayer from litigating its claims, to the detriment of the taxpayer–not the United States.

Consolidated group situations like the instant case involve occasions for such issues to arise. Although best practice requires the designation of a substitute agent under § 1.1502-77A, the IRS perceives that acquired consolidated groups often fail to make the prescribed designation. In the Service's experience, there are frequent occasions in which the common parent of a consolidated group ceases to separately exist (due to merging into another corporation, becoming a limited liability company, or otherwise), without designating a substitute agent. Thus, there may be cases currently pending before this Court that have defects

[9]The "informal claim" doctrine as articulated by the courts has a very practical character. As this Court's predecessor stated in *American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915, 920 (1963): "Informal refund claims have long been held valid. But they must have a written component, and should adequately apprise the [IRS] that a refund is sought and for certain years. It is not enough that the [IRS] have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer. On the other hand, the writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and content. The focus is on the claim as a whole, not merely the written component. In addition to the writing and some form of request for a refund, the only essential is that there be made available sufficient information as to the tax and the year to enable the [IRS] to commence, if it wishes, an examination into the claim." (Citations omitted.) This is the standard that taxpayers expect to be applied–and we submit that this standard is easily met by BFI's May 2005 claims.

because the common parent of a consolidated group merged into another entity and failed to designate a substitute agent. If the position reflected in the Court's recent opinion were to prevail, then in cases involving consolidated groups, the Government (and the Court) would be required to inquire into the particular history of each plaintiff to determine whether the proper agent (if one exists) is before the court and thus whether the court has jurisdiction.

For example, under the reasoning of the Court's opinion in this case, the adequacy of the claim in *Aventis, Inc. v. United States*, Fed. Cl. No. 03-2868 T (assigned to the same judge to whom the instant *BFI* case is assigned), would have to be analyzed for jurisdictional adequacy, to see whether the plaintiff could establish that the refund claim (for the 1992 suit year) was filed by the proper entity. At issue in *Aventis* are foreign tax credit carryovers attributable to foreign taxes paid in 1988 and 1989 by an entity, originally named Merrill Dow Pharmaceuticals ("MDP"), that was (until 1990) a member of the consolidated group of which the Dow Chemical Company was the common parent. The 1992 claim was filed in 1999, in the name of "HMR Pharma, Inc and Subsidiaries (formerly Marion Merrill Dow, Inc.)," after a history of several reorganizations within and outside the Dow Chemical group. In the circumstances, we cannot tell whether Aventis would be able to show that HMR Pharma, Inc. and Subsidiaries was the proper entity to file the claim.[10]

---

[10]As we understand the facts in *Aventis* (based on the complaint), in 1989, Dow Chemical acquired Marion Laboratories, which changed its name to Marion Merrill Dow, Inc. Marion Merrill Dow was also the common parent of a separate consolidated group. On December 2, 1989, MDP became a wholly-owned subsidiary of Marion Merrill Dow; and on January 1, 1990, MDP became a member of the Marion Merrill Dow consolidated group. On July 18, 1995, Dow Chemical sold Marion Merrill Dow and its subsidiaries (including MDP) to Hoechst AG. Marion Merrill Dow changed its name to Hoechst Marion Roussel, Inc. On January 1, 1997, Hoechst Marion Roussel, Inc. became a wholly-owned subsidiary of HMR Pharma, Inc. (a U.S. subsidiary of Hoechst AG), and was a member of the HMR Pharma, Inc. consolidated group through December 28, 2001. On December 15, 1999, Hoechst AG merged with Rhone-Poulenc

As another example, we would have to consider whether several of the administrative refund claims that have been thought to form the jurisdictional basis for suit in *Wellpoint, Inc v. United States*, Fed. Cl. No. 06-147 T (before Chief Judge Damich), are jurisdictionally defective under the Court's recent decision, if (as it seems) the refund claims may have been filed in the name of an entity that did not exist, having merged into another entity prior to filing the claims. According to the complaint (Ex. A hereto, ¶¶ 5-8, 38-47), plaintiff in that case is the "successor in interest to Trigon Healthcare, Inc." Trigon Healthcare, Inc. was the common parent of an affiliated group of corporations that filed consolidated income tax returns for the taxable years ended December 31, 1997 through July 31, 2002. On July 31, 2002, Trigon Healthcare, Inc. merged into an entity known as Anthem Southeast, Inc. (the surviving entity). On October 24, 2002 and September 3, 2004, after the merger, several refund claims were filed in the name of "Trigon Healthcare, Inc. & Subsidiaries." Since Trigon Healthcare, Inc. apparently did not exist after the merger, we cannot currently rule out the possibility that the refund claims would be jurisdictionally defective under the Court's decision.[11]

---

(the surviving entity, which changed its name to Aventis). The subsidiary Hoechst Marion Roussel, Inc. then changed its name to Aventis Pharmaceutical, Inc. and merged into its parent (HMR Pharma, Inc.) on December 28, 2001. On December 31, 2001, HMR Pharma, Inc. merged into Rhone-Poulenc-Rorer, which changed its name to Aventis, Inc. on June 13, 2002. For the 1999, 2000, and 2001 tax years, HMR Pharma, Inc. and Rhone-Poulenc-Rorer filed separate consolidated returns. Aventis, Inc. filed its first consolidated return for the tax year 2002. For the 1988 and 1989 tax years, while it was a member of the Dow Chemical consolidated group, MDP had paid foreign taxes. As a result of an IRS appeals settlement with the Marion Merrill Dow consolidated group (which MDP joined on January 1, 1990) for the tax years 1989-1993, excess foreign tax amounts were available to carryover to the 1992 tax year. On October 7, 1999, a refund claim for 1992, based on the carryovers, was filed in the name of "HMR Pharma, Inc and Subsidiaries (formerly Marion Merrill Dow, Inc.)."

[11] *See also Austin Investment Fund, LLC, by and through its Tax Matters Partner, Ricobene LLC v. United States*, Fed. Cl. No. 06-844 T (assigned to the same judge to whom the instant *BFI* case is assigned), which presents an analogous problem under Section 6226 of the Internal Revenue

The rigorous jurisdictional standard reflected in the Court's opinion might even haunt the current plaintiff in its future litigation: Plaintiff intends that it will soon be litigating against the United States in a tax refund suit in the district court, which suit will be predicated upon the August 2006 refund claims filed by BFI Waste Systems, Inc., ostensibly as the authorized agent for the BFI Consolidated Group. Those new refund claims, however, were filed on August 22, 2006–several days *before* the Internal Revenue Service approved BFI Waste Systems' appointment as the authorized agent for the BFI Consolidated Group, on August 31, 2006. (*See* Pltf. Ex. 5.) Rev. Proc. 2002-43, 2002-2 C.B. 99, at §§ 3.03; 8.05(2), (3), states that any such appointment is ineffective until it is approved by the Service. Consequently, the new BFI Waste Systems refund claims are subject to a technical challenge: BFI was *not* (yet) the authorized agent for the BFI Consolidated Group at the time it filed the new claims, so even those claims are arguably invalid.[12] The Court's Opinion in this case suggests that this is the type of issue that must be raised in every tax refund suit arising out of a less-than-perfect refund claim.

---

Code. In that case, "Ricobene LLC" brought suit under Section 6226 as the Tax Matters Partner for Austin Investment Fund, LLC. (*See* Ex. B hereto at 1.) However, Ricobene's correct name appears to be "Ricobene I, LLC." (*See* Ex. C hereto at 4.) Since Section 6226 permits only the Tax Matters Partner to bring suit within 90 days after receipt of a notice of a final partnership administrative adjustment, the "wrong" entity brought suit, and the case should be dismissed under a technical reading of Section 6226. *But see Mishawaka Properties, supra*.

[12] This is certainly not the type of technical jurisdictional challenge that the United States has pressed in the past in this Court, and this Court and its predecessor have in fact criticized the United States when it has pressed such technical arguments too narrowly. *See, e.g., National Forge & Ordnance Co. v. United States*, 139 Ct.Cl. 204, 222 (1957): "Attorneys for the Government frequently ask us to apply to claims for refund a requirement of particularity almost as strict as is customarily applied to indictments for crime. The rule of *strictissimi juris* is not applicable to claims for refund. All that is required of them, as a predicate for suit in this court is that they put the Commissioner of Internal Revenue on notice of the ground of the taxpayer's claim that his taxes were erroneously computed. This does not have to be stated with any greater particularity than is necessary to draw the Commissioner's attention to the claim he makes in his subsequent suit."

However, in each of those circumstances, just as in instant case, the purposes of the statutory refund claim requirement of Section 7422(a) have in fact been fully satisfied, although technical aspects of the implementing regulations may have been met only imperfectly, yet the rule employed by the Court's opinion would deprive the taxpayers of their day in court. The law has heretofore not adopted such a narrow view of jurisdiction, and the United States does not urge such a view, notwithstanding the short-term partisan benefit that this view might confer on the United States in almost all the instances in which the issue would arise. In view of these implications of its ruling–adverse to taxpayers, and disruptive of refund litigation–the United States urges the Court to reconsider its opinion.

Respectfully submitted,

s/ *Stuart J. Bassin*

STUART J. BASSIN
Attorney of Record
U.S. Department of Justice
Tax Division, Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6418
(202) 307-2504 (fax)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
JENNIFER D. SPRIGGS
Senior Trial Attorney
JACOB E. CHRISTENSEN
Trial Attorney

March 16, 2007