IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WELLPOINT, INC.,
FORMERLY ANTHEM, INC., SUCCESSOR
IN INTEREST TO TRIGON HEALTHCARE, INC.,
& SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

FILED FEB 27 2006

06-147 T

## COMPLAINT

The Plaintiff WellPoint, Inc. (formerly Anthem, Inc., successor in interest to Trigon Healthcare, Inc.) & Subsidiaries, through counsel, hereby complains and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for the refund of federal income taxes that Defendant erroneously collected from Plaintiff as a result of Defendant's:

(a) Disallowance of a deduction claimed under Section 162 of the Internal Revenue Code of 1986, as amended, (the "Internal Revenue Code") for a $174,844,000 settlement payment (the "Settlement Payment") that was paid in the taxable year 1997 by Trigon Insurance Company ("Trigon"), the largest Blue Cross and Blue Shield insurer in the Commonwealth of Virginia, to settle and foreclose any and all claims and potential litigation that originated from Trigon's business operations based on the alleged status of Trigon and its predecessors as charities;

(b) Arbitrary and capricious denial of retroactive relief under Section 7805(b) of Internal Revenue Code in connection with the issuance of Technical Advice

[-1-]

EXHIBIT
A

Memorandum ("TAM") 200126008 (Mar. 6, 2001) in which the IRS held that the Settlement Payment was deductible in the taxable year 1997 under Section 162 of the Internal Revenue Code and the subsequent issuance of TAM 200405005 (Aug. 28, 2003) in which the IRS revoked its prior ruling and held that the Settlement Payment was not deductible in the taxable year 1997 and in which the IRS abused its discretion and denied Section 7805(b) relief in a discriminatory manner; and

(c) Disallowance of deductions claimed for the taxable years 1996-2002 under Section 165 of the Internal Revenue Code for the loss of certain intangible assets including without limitation insurance contracts, provider contracts, and employee workforce that were used in Trigon's Blue Cross and Blue Shield insurance business.

2. The deductibility of the Settlement Payment and the loss of intangible assets affects net operating loss carrybacks and carryovers, credit carryovers, and capital loss carrybacks for the taxable years 1994 and 1996-2002. As a result, this also is an action for the refund of federal income taxes that Defendant erroneously collected from Plaintiff because of these carryovers and carrybacks.

## JURISDICTION

3. Plaintiff brings this complaint under Sections 6532 and 7422 of the Internal Revenue Code (26 U.S.C. §§ 6532 and 7422) for recovery of federal income taxes erroneously assessed and collected from Plaintiff for the taxable years 1994 and 1996-2002.

4. This Court has jurisdiction over this action pursuant to Sections 1346(a) and 1491 of the Judicial Code (28 U.S.C. §§ 1346(a) and 1491).

## PARTIES

5. WellPoint, Inc. ("WellPoint") is a corporation organized and existing under the laws of the State of Indiana. Its mailing address and principal place of business are 120 Monument Circle, Indianapolis, IN 46204-4903. WellPoint is the common parent of an affiliated group of corporations that files consolidated income tax returns on a calendar year basis. WellPoint's employer identification number ("EIN") is 35-2145715. As used in this Complaint, the term "Plaintiff" refers to WellPoint, its affiliated group, or the applicable member of its affiliated group, as the context requires.

6. WellPoint is formerly known as Anthem, Inc. ("Anthem"). On November 30, 2004, WellPoint Health Networks, Inc. merged into Anthem Holding Corp., the surviving entity that at the time was a wholly-owned subsidiary of Anthem. In connection with this merger, Anthem changed its name to WellPoint, Inc.

7. Trigon Healthcare, Inc. ("Trigon Healthcare") was a corporation organized and existing under the laws of the Commonwealth of Virginia. Its mailing address and principal place of business were 2221 Edward Holland Drive, Mail Drop 42-B, Richmond, VA 23230. Trigon Healthcare's EIN was 54-1773225. For the taxable years ended December 31, 1997, through July 31, 2002, Trigon Healthcare was the common parent of an affiliated group of corporations that filed consolidated income tax returns on a calendar year basis.

8. Anthem is the successor in interest to Trigon Healthcare. On July 31, 2002, Trigon Healthcare was acquired by Anthem pursuant to a tax-free reorganization in which Trigon Healthcare merged into a new, wholly-owned subsidiary of Anthem. After this merger, the surviving subsidiary was known as Anthem Southeast, Inc. ("Anthem Southeast").

[-3-]

9. Anthem Southeast is a corporation organized and existing under the laws of the State of Indiana. Its mailing address and principal place of business are 2221 Edward Holland Drive, Mail Drop 42-B, Richmond, VA 23230. Anthem Southeast is a wholly-owned subsidiary of WellPoint and a member of WellPoint's consolidated federal income tax group. Anthem Southeast's EIN is 32-0031791.

10. Blue Cross and Blue Shield of Virginia, Inc. ("BCBS-VA") was incorporated as a mutual insurance company under the laws of the Commonwealth of Virginia as a result of the 1982 merger of separate Blue Cross and Blue Shield entities. BCBS-VA's mailing address and principal place of business were 2221 Edward Holland Drive, Mail Drop 42-B, Richmond, VA 23230. BCBS-VA's EIN was 54-0357120. Prior to 1997, BCBS-VA was the common parent of an affiliated group of corporations that filed consolidated income tax returns on a calendar year basis.

11. On February 5, 1997, BCBS-VA converted from a mutual insurance company into a stock corporation in accordance with Section 38.2-1005.1 of the Code of Virginia. In connection with this demutualization, BCBS-VA became known as Trigon Insurance Company (d/b/a Trigon Blue Cross Blue Shield) and became a wholly-owned subsidiary of Trigon Healthcare.

12. Trigon was a corporation organized and existing under the laws of the Commonwealth of Virginia. Its mailing address and principal place of business were 2221 Edward Holland Drive, Mail Drop 42-B, Richmond, VA 23230. During the taxable years ended December 31, 1997, through July 31, 2002, Trigon was a wholly-owned subsidiary of Trigon Healthcare and a member of Trigon Healthcare's consolidated federal income tax

group. Trigon's EIN was 54-0357120. As used in this Complaint, the term "Trigon" includes Trigon and its predecessor BCBS-VA unless otherwise noted.

13. When Trigon Healthcare was acquired by Anthem on July 31, 2002, Trigon became a wholly-owned subsidiary of Anthem Southeast. On December 2, 2002, Trigon changed its name to Anthem Health Plans of Virginia, Inc., which is a member of WellPoint's consolidated federal income tax group.

14. Defendant is the United States of America.

## GENERAL ALLEGATIONS

15. Plaintiff seeks to recover a sum of at least $112,583,449, or such other amount as may be legally refundable, plus interest as provided by law, which sum represents an overpayment by Plaintiff of federal income tax for its taxable years ended December 31, 1994, December 31, 1996, December 31, 1997, December 31, 1998, December 31, 1999, December 31, 2000, December 31, 2001, and July 31, 2002.

16. BCBS-VA or Trigon Healthcare, as applicable, timely filed a Form 1120, U.S. Corporation Income Tax Return, for each of the taxable years 1994 and 1996-2002 with the Internal Revenue Service Center at Richmond, Virginia, as further described in Counts One through Eight below.

17. BCBS-VA, Trigon Healthcare, or the successor in interest, as applicable, timely paid to the Internal Revenue Service at Philadelphia, Pennsylvania, the full amount of the income taxes reported to be due on the tax returns for each of the taxable years 1994 and 1996-2002, as further described in Counts One through Eight below.

18. Plaintiff timely executed Forms 872, "Consent to Extend the Time to Assess Tax," for the taxable years 1996, 1999, and 2000, as further described in Counts Two, Five, and Six below.

19. This action arises out of numerous claims for refund submitted by Trigon Healthcare or its successor in interest. These refund claims related to (i) the deduction for the Settlement Payment, (ii) the deductions for the loss of intangible assets, and (iii) the net operating loss carrybacks and carryovers, credit carryovers, and capital loss carrybacks resulting from these deductions. These refund claims are further described in Counts One through Eight below.

20. On March 4, 2004, the IRS disallowed Plaintiff's refund claims, as further described in Counts One through Eight below.

**Blue Cross and Blue Shield Insurance Business**

21. Plaintiff is engaged in the business of providing insurance coverage under the "Blue Cross and Blue Shield" trade name. In each of its states of operation, the business is conducted in a separately incorporated entity that is a direct or indirect subsidiary of WellPoint.

22. Prior to the enactment of the Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085 (the "1986 Tax Act"), Trigon was part of the nationwide industry of companies that were licensed to provide Blue Cross and Blue Shield health insurance and were exempt from federal income taxes as social welfare organizations under Section 501(c)(4) of the Internal Revenue Code.

23. In connection with the 1986 Tax Act, Congress decided that, for federal tax purposes, providing health insurance should be classified as a commercial activity subject to

tax. As a result, the 1986 Tax Act provided that, effective January 1, 1987, every Blue Cross and Blue Shield entity would be taxable "in the same manner as if it were a stock insurance company," subject to certain special transition rules and provisions as described in paragraphs 56-57 below.

24. As of January 1, 1987, Trigon became a taxable entity under Section 833(a) of the Internal Revenue Code, which was enacted as part of the 1986 Tax Act.

25. In reclassifying the business of the Blue Cross and Blue Shield entities as taxable in nature under the 1986 Tax Act, Congress made it clear that these entities would enter the tax system with a fresh start for federal tax purposes so that there would be no adverse results from their prior classification by Congress as tax-exempt social welfare organizations.

**Settlement Payment Deduction**

26. In the taxable year 1997, Trigon made a settlement payment in the amount of $174,844,000 to the general fund of the Commonwealth of Virginia (previously defined as the "Settlement Payment") to settle and foreclose any and all claims and potential litigation that originated from Trigon's business operations based on the alleged status of Trigon and its predecessors as charities and that attempted to restrict Trigon's use of its assets to conduct its insurance business.

27. Plaintiff claimed a deduction under Section 162 of the Internal Revenue Code in the amount of $174,844,000 on its amended corporate tax returns for the taxable years 1996 and 1997, as described in Counts Two and Three below, on the basis that the Settlement Payment was an ordinary and necessary business expense that was incurred in the ordinary course of Trigon's business operations, that resolved claims and potential litigation that

threatened Trigon's business reputation, goodwill, assets, and ability to continue its business, and that attempted to restrict Trigon's use of its assets to conduct its insurance business.

28. The Blue Cross predecessor and the Blue Shield predecessor of Trigon were formed in 1935 and 1944, respectively, as health services plans. In 1982, these predecessors merged to become BCBS-VA.

29. As described in paragraphs 22-24 above, Trigon became a taxable insurance company as of January 1, 1987.

30. In 1988, Virginia's laws relating to health services plans were recodified and included in the state's insurance statutes. Because of this legislation, BCBS-VA converted from a health services plan to a mutual insurance company in 1991.

31. BCBS-VA converted from a mutual insurance company to a stock company in 1997 and became known as Trigon Insurance Company.

32. Neither Trigon nor any of its predecessors were ever classified as a charitable corporation under Section 501(c)(3) of the Internal Revenue Code and, as a result, never operated as charities and were not qualified to receive tax deductible contributions.

33. Since their formation, Trigon and its predecessors have always been engaged in the business of providing health insurance.

34. After the demutualization, BCBS-VA's health insurance operations were continued in Trigon. As a stock company, Trigon continued the same health insurance business that BCBS-VA had conducted prior to the demutualization.

35. In the early 1990s, the insurance industry was undergoing significant changes and Trigon's competitors were growing through acquisitions. To remain competitive, Trigon needed to raise capital and it needed stock currency to pursue acquisitions. Trigon also

[-8-]

needed some element of equity based compensation to attract and retain the best management. To accomplish these goals, Trigon began considering a conversion from a mutual insurance company to a stock company.

36. Under existing Virginia law (Va. Code Ann. § 38.2-1005 (1952, as amended)), "[n]o mutual insurance company . . . shall be converted into a stock corporation unless such conversion and the plan for conversion are approved by the Commission." As a result, Trigon began an informal and open dialog with the Virginia Insurance Bureau to agree upon a method of conversion. After its investigation, the Virginia Insurance Bureau took the position that Trigon's conversion from a mutual to a stock company could be accomplished under existing state law. As a result, Trigon submitted an application for conversion with the Virginia Insurance Bureau in June 1995.

37. In July 1995, the Virginia Attorney General notified the Virginia Insurance Bureau of its intention to participate in the demutualization proceedings. In doing so, the Virginia Attorney General raised the questions of (i) whether the conversion was permitted under state law, (ii) whether the public, as opposed to Trigon's policyholders, should receive any stock issued as a result of the demutualization, (iii) what restrictions should be placed on the conversion if approved, and (iv) whether the conversion was fair, equitable, and consistent with current law.

38. The July 1995 letter from the Virginia Attorney General, received nearly ten years after Trigon's federal tax exemption was terminated, was the first notice that the Commonwealth of Virginia sent to Trigon indicating that Trigon was a "public benefit" corporation whose assets were subject to the doctrines of "cy pres," equitable approximation,

and constructive trust. Trigon initiated negotiations with the Virginia Attorney General to resolve any potential claims and litigation.

39. In December 1995, the parties reached a settlement whereby Trigon would make a payment to a designated foundation to resolve the claims of the Commonwealth of Virginia and its citizens provided that such payment did not exceed the amount of Trigon's surplus as of December 31, 1987.

40. In January 1996, Trigon filed a revised plan of demutualization with the Virginia Insurance Bureau. Because of Trigon's concern that challenges to the conversion may arise after the Virginia Insurance Bureau's approval that could take a substantial amount of time and expense to resolve, Trigon sought and obtained legislative action on the method by which the demutualization would occur. The only change from Trigon's prior agreement with the Virginia Attorney General was that (i) the Settlement Payment would be made to the Commonwealth of Virginia as opposed to a tax-exempt foundation and (ii) $10 million in interest would be added to the amount of the payment.

41. The legislation was enacted in Section 38.2-1005.1 of the Virginia Code, which provides in part "[i]n the case of a domestic mutual insurer that converted from a health services plan that was in existence prior to December 31, 1987, the plan of conversion allocates and distributes to the State Treasurer, in addition to any shares of stock that the Commonwealth may be entitled to receive as a policyholder, shares of stock or cash or both with a value equal to the surplus, computed in accordance with generally accepted accounting principles, of such health services plan on December 31, 1987, plus ten million dollars."

42. Based on this legislation, Trigon filed an amended application for demutualization with the Virginia Insurance Bureau. The policyholders approved the

demutualization plan at a special meeting held on September 6, 1996. Three days later, the Virginia Insurance Bureau began public hearings and issued its ruling approving the transaction subject to certain changes. Based on these hearings, Trigon filed an amended plan with the Virginia Insurance Bureau, which was approved in November 1996.

43. In February 1997, Trigon paid $174,844,000 to the "general fund" of the Commonwealth of Virginia.

44. On February 5, 1997, Trigon's demutualization was accomplished with BCBS-VA merging into a new stock subsidiary organized under Virginia law and known as Trigon Insurance Company. Thereafter, Trigon conducted the same prepaid health insurance business as a stock company as it did prior to the demutualization.

45. Trigon had to defend against any potential claims and lawsuits based on the alleged status of Trigon and its predecessors as charities. Such claims had their origin in Trigon's ordinary business operations, threatened Trigon's business reputation, goodwill, and assets, and ability to continue its business, and attempted to restrict Trigon's use of its assets to conduct its insurance business.

46. After Plaintiff filed an amended return for the taxable year 1996 claiming a deduction for the Settlement Payment, it sought Technical Advice from the IRS National Office confirming the deductibility of the Settlement Payment.

47. On March 6, 2001, the IRS National Office issued TAM 200126008 in which the IRS held that the Settlement Payment was deductible as an ordinary and necessary business expense under Section 162 of the Internal Revenue Code but was deductible in the taxable year 1997 instead of the taxable year 1996.

[11-]

48. In reliance on TAM 200126008, Plaintiff amended its tax return for the taxable year 1997 and claimed the deduction for the Settlement Payment.

49. Over two years later, the IRS issued TAM 200405005 (Aug. 28, 2003), in which it revoked TAM 200126008 and took the position that the Settlement Payment was made to "satisfy" a "charitable trust obligation." The IRS cited no authority for this unprecedented legal theory.

50. In TAM 200405005, the IRS considered whether it should grant Section 7805(b) relief and apply the revocation of the prior ruling without retroactive effect. The IRS noted "the only relevant factor is whether Taxpayer acted in good faith in relying on the TAM and revoking it retroactively would be to the taxpayer's detriment." The IRS denied Section 7805(b) relief.

51. Prior to the issuance of TAM 200126008 and TAM 200405005, the IRS National Office had issued another TAM on the same issue. The IRS issued TAM 9853007 (Sept. 29, 1998) to the Blue Cross entity in California in which it held that settlement payments qualify as ordinary and necessary business expenses under Section 162 of the Internal Revenue Code. Subsequently, the IRS changed its mind and issued TAM 200228016 (Apr. 9, 2002). In this revocation, no legal theory was stated but the taxpayer was granted Section 7805(b) retroactive relief. The Blue Cross entity in California is currently a member of Plaintiff's consolidated federal tax group.

52. The Settlement Payment was made to foreclose claims that had their origin in Trigon's ordinary business operations, that threatened Trigon's business reputation, goodwill, assets, and ability to continue its business, and that attempted to restrict Trigon's use of its assets to conduct its insurance business. Notwithstanding the contentions made by Defendant

under paragraph 49 above, the Settlement Payment made by Trigon is an ordinary and necessary expense incurred during the taxable year 1997 in carrying on Trigon's health insurance business and is deductible in full under Section 162 of the Internal Revenue Code.

53. There has been no change in the facts on which TAM 200126008 was based. Between the time of TAM 200126008 and TAM 200405005, there was no change in the applicable law.

54. Trigon acted in good faith in relying on TAM 200126008, and its retroactive revocation is detrimental to Trigon and its successor in interest. The IRS abused its discretion and arbitrarily and capriciously denied Trigon relief under Section 7805(b) of the Internal Revenue Code even though it had granted such relief to similarly situated taxpayers. As a result, such denial was erroneous and should be set aside.

55. On the basis of TAM 200405004, the IRS erroneously disallowed Plaintiff's claims for refund relating to the deduction for the Settlement Payment under Section 162 of the Internal Revenue Code.

**Intangibles Deduction**

56. In connection with the repeal of the tax exemption for Blue Cross and Blue Shield entities in the 1986 Act, Congress described with considerable specificity the manner in which these entities would transition from tax-exempt to taxable entities. For example, Congress stated that "such formerly tax-exempt organizations should not be taxed on unrealized appreciation or depreciation that accrued during the period the organization was not subject to federal income taxation."

57. As a result, Congress enacted a "fresh start" provision in Tax Reform Act of 1986, Pub. L. No. 99-514, Section 1012(c)(3)(A)(ii), *reprinted in* 100 Stat. 2085, at 2394

(1986), stating that "[f]or purposes of determining gain or loss, the adjusted basis of any asset held on the 1st day of such taxable year [i.e., January 1, 1987] shall be treated as equal to its fair market value as of such day" (the "Fresh Start Basis Rule"). Because of this rule, the taxable income or loss of a Blue Shield and Blue Cross entity "will be based solely on items of income and loss that economically accrue after the organization became subject to federal tax."

58. At all times during the taxable years 1987 through 2002, Trigon was a taxable entity and Trigon was subject to the Fresh Start Basis Rule.

59. On January 1, 1987, which was the first day of Trigon's first tax year beginning after December 31, 1986, Trigon held intangible assets including insurance contracts, provider contracts, and its employee workforce.

60. Trigon enters into insurance contracts with individuals and employer groups, which were renewable on a periodic basis. Under these contracts, Trigon pays for healthcare provided by doctors, hospitals, and other providers in exchange for a contractual right to receive the payment of a premium. This premium is Trigon's primary source of income. The profit from these contracts is a primary source of net income.

61. Trigon also enters into contracts with healthcare providers, which were renewable on a periodic basis. These contracts spell out the terms for the provision of service to Trigon's customers as well as the amount of the payment due to the provider. These contracts are valuable assets – they provide for discounted healthcare services for Trigon's customers.

62. Trigon employs a workforce of approximately 2,000 full-time employees who administer the insurance business. This assembled workforce is a valuable asset because the

employees' training and experience allows them to run the company in an efficient and profitable manner.

63. During the taxable years 1996-2002, some of Trigon's insurance or provider contracts were terminated or canceled when Trigon, an employer, a sponsor of a group, an individual, or a healthcare provider did not renew the contract at the end of the contract term, or when the contract was otherwise terminated.

64. During the taxable years 1996-2002, Trigon lost some of its employee workforce due to the termination of employment relationships from resignation, termination, sickness, death, and other causes.

65. Each time an insurance contract, provider contract, or employee relationship was terminated, the contract or relationship became worthless and lost all of its usefulness in Trigon's business, and Trigon suffered a loss for which it was not covered by insurance or otherwise compensated.

66. The insurance contracts, provider contracts, and employee workforce were valuable assets covered by the Fresh Start Basis Rule.

67. The insurance contracts, provider contracts, and employee workforce were discrete intangible assets that had an ascertainable fair market value as of January 1, 1987.

68. Each time Trigon lost one of the insurance contracts, provider contracts, or employee relationships, it suffered a loss equal to the fair market value of the asset on January 1, 1987.

69. Because of these losses, Plaintiff claimed deductions on its original or amended returns, as described in Counts Two through Eight below, for these lost intangible assets under Section 165 of the Internal Revenue Code as follows:

| Taxable Year | Customer | Provider | Workforce | Total |
|---|---|---|---|---|
| 1996 | $39,870,255 | $20,696,029 | $208,971 | $60,775,255 |
| 1997 | 23,925,762 | 24,875,121 | 0 | 48,800,883 |
| 1998 | 27,283,624 | 6,685,851 | 0 | 33,969,475 |
| 1999 | 5,000,000 | 100,000 | 567,286 | 5,667,286 |
| 2000 | 6,000,000 | 100,000 | 218,181 | 6,318,181 |
| 2001 | 4,000,000 | 100,000 | 164,639 | 4,264,639 |
| 2002 | 5,000,000 | 100,000 | 883,687 | 5,983,687 |

70. The IRS has disallowed these deductions on the grounds that the termination of the contracts with employers, subscribers, providers, and provider organizations and the employee relationships are not a deductible loss under Section 165 of the Internal Revenue Code, that there is no ascertainable fair market value of these assets, that each contract or relationship is not an individual asset that can be valued separately, and that Plaintiff has not substantiated a reliable value of these assets.

**Carryovers and Carrybacks**

71. Trigon Healthcare had a capital loss carryback for the taxable year 1999 in the amount of $13,887,744. A Form 1139, Corporation Application for Tentative Refund, was filed to carryback this loss to the taxable year 1996, which generated alternative minimum tax credit carryovers to the taxable years 1997 and 1998.

72. The deductibility of the Settlement Payment and the loss of intangible assets affects net operating loss carrybacks and carryovers, credit carryovers, and capital loss carrybacks for the taxable years 1994 and 1996-2002.

**COUNT ONE**
**1994 TAX YEAR**

73. On or before September 15, 1995, BCBS-VA timely filed a Form 1120, U.S. Corporation Income Tax Return, for its taxable year ended December 31, 1994, with the

[- 16-]

Internal Revenue Service Center at Richmond, Virginia, reporting total tax in the amount of $22,998,198. The name, address, and EIN of the taxpayer appearing on this return were as follows:

Blue Cross & Blue Shield of VA & Subsidiaries
2221 Edward Holland Drive
Richmond, VA 23230
EIN: 54-0357120

74. BCBS-VA timely paid to the Internal Revenue Service at Philadelphia, Pennsylvania, the full amount of the income taxes reported to be due on its tax return for the taxable year 1994 as follows:

a. $701,458 overpayment of tax for the taxable year 1993 applied to the taxable year 1994.

b. $9,500,000 of estimated tax paid on or before April 15, 1994.

c. $11,545,000 of estimated tax paid on or before June 15, 1994.

d. $2,000,000 of estimated tax paid on or before September 15, 1994.

e. $2,500,000 of estimated tax paid on or before December 15, 1994.

75. On May 30, 2001, Trigon Healthcare, as successor in interest to BCBS-VA, timely filed a Form 1120X, Amended U.S. Corporation Income Tax Return, for its taxable year 1994 with the Internal Revenue Service Center at Richmond, Virginia. This Form 1120X made a claim for refund in the amount of $5,608,009 as a result of a net operating loss carryback generated by the deduction of the Settlement Payment in the taxable year 1997. This claim for refund is attached at Exhibit A.

76. On October 24, 2002, Trigon Healthcare, as successor in interest to BCBS-VA, timely filed a Form 1120X, Amended U.S. Corporation Income Tax Return, for its taxable

year 1994 with the Internal Revenue Service Center at Richmond, Virginia. This Form 1120X made a claim for refund in the amount of $9,852,585 as a result of a net operating loss carryback generated by the deduction for the loss of intangible assets in the taxable year 1997. This claim for refund is attached at Exhibit B.

77. On examination of the two refund claims described in paragraphs 75 and 76 above, the IRS erroneously determined that Trigon Healthcare was not entitled to the carrybacks because it was not entitled to the deductions for the Settlement Payment or the loss of intangible assets in the taxable year 1997. The IRS issued Trigon Healthcare a Notice of Disallowance, dated March 4, 2004, that included the disallowance of the refund claims totaling $15,460,594 for the taxable year 1994. This notice is attached at Exhibit C.

78. On April 5, 2004, Anthem, as successor in interest to Trigon Healthcare, filed a request for an administrative review by the IRS Appeals Office of the disallowance of the refund claims described in paragraphs 75 and 76 above.

79. On April 15, 2004, the IRS disallowed the appeal relating to the refund claim for $9,852,585, which is described in paragraph 76 above and which relates to the net operating loss carryback for the 1997 deduction for the loss of intangible assets. The IRS executed a Form 907, Agreement to Extend Time to Bring Suit, which extends the statute of limitations for litigating the $9,852,585 refund claim for the taxable year 1994 until December 31, 2009. A copy of the Form 907 is attached at Exhibit D.

80. On April 13, 2005, the IRS disallowed the appeal relating to the refund claim for $5,608,009, which is described in paragraph 75 above and which relates to the net operating loss carryback for the 1997 deduction for the Settlement Payment.

81. As a result of the IRS' denial of the two refund claims described in paragraphs 75 and 76 above, Plaintiff overpaid the federal income tax for the taxable year 1994 and is entitled to a refund in the amount of $15,460,594, or such other amount as provided by law, plus interest as provided by law.

**COUNT TWO**
**1996 TAX YEAR**

82. On or before September 15, 1997, Trigon Healthcare, as successor to BCBS-VA, timely filed a Form 1120, U.S. Corporation Income Tax Return, for BCBS-VA's taxable year ended December 31, 1996, with the Internal Revenue Service Center at Richmond, Virginia, reporting total tax in the amount of $33,993,422. The name, address, and EIN of the taxpayer appearing on that return were as follows:

Blue Cross & Blue Shield of VA & Subsidiaries
2221 Edward Holland Drive
Richmond, VA 23230
EIN: 54-0357120

83. BCBS-VA or Trigon Healthcare timely paid to the Internal Revenue Service at Philadelphia, Pennsylvania, the full amount of the income taxes reported to be due on its tax return for the taxable year 1996 as follows:

a. $2,415,423 overpayment of tax for the taxable year 1995 applied to the taxable year 1996.

b. $4,000,000 of estimated tax paid on or before April 15, 1996.

c. $8,500,000 of estimated tax paid on or before June 17, 1996.

d. $6,200,000 of estimated tax paid on or before September 16, 1996.

e. $5,800,000 of estimated tax paid on or before December 16, 1996.

f. $10,084,577 of tax paid on or before March 17, 1997.

[- 19-]

g. $3,892 credit from regulated investment companies.

84. Trigon Healthcare did not claim the deductions for the Settlement Payment or the loss of intangible assets on BCBS-VA's originally filed Form 1120, U.S. Corporation Income Tax Return, for the taxable year 1996.

85. On March 24, 2000, and on May 24, 2000, Trigon Healthcare and the IRS timely executed Forms 872-A, Special Consent to Extend the Time to Assess Tax, for the taxable year 1996.

86. On December 23, 1997, Trigon Healthcare timely filed a Form 1120X, Amended U.S. Corporation Income Tax Return, for its taxable year 1996 with the Internal Revenue Service Center at Richmond, Virginia. This Form 1120X made a claim for refund in the amount of $33,993,422 as a result of its claiming the deduction for the Settlement Payment in the taxable year 1996. This claim for refund is attached at Exhibit E.

87. On September 3, 2004, a deduction for the loss of intangible assets in the amount of $60,775,255 for the taxable year 1996 was incorporated in a timely filed protective refund claim on Form 1120X, Amended U.S. Corporation Income Tax Return, in the amount of $12,155,051. This claim for refund is attached at Exhibit F.

88. On examination of the refund claim described in paragraph 86 above, the IRS determined that Trigon Healthcare was not entitled to the deduction for the Settlement Payment. The IRS issued Trigon Healthcare a Notice of Disallowance, dated March 4, 2004, that included the disallowance of the refund claim for $33,993,422 for the taxable year 1996. This notice is attached at Exhibit C.

89. The IRS never issued Trigon Healthcare a formal notice disallowing the deduction for the loss of intangible assets in the taxable year 1996.

[- 20-]

90. On April 5, 2004, Anthem, as successor in interest to Trigon Healthcare, filed requests for an administrative review by the IRS Appeals Office of the disallowance of the refund claims described in paragraphs 86 and 87 above.

91. On April 13, 2005, the IRS disallowed the appeal relating to the refund claim for $33,993,422, which is described in paragraph 86 above and which relates to the deductibility of the Settlement Payment in the taxable year 1996.

92. On July 12, 2005, the IRS issued Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, for the taxable year 1996.

93. As a result of the IRS' denial of the refund claim described in paragraph 87 above, Plaintiff overpaid the federal income tax for the taxable year 1996 and is entitled to a refund in the amount of $12,155,051, or such other amount as provided by law, plus interest as provided by law.

**COUNT THREE**
**1997 TAX YEAR**

94. On or before September 15, 1998, Trigon Healthcare timely filed a Form 1120, U.S. Corporation Income Tax Return, for its taxable year ended December 31, 1997, with the Internal Revenue Service Center at Richmond, Virginia, reporting total tax in the amount of $19,292,537. The name, address, and EIN of the taxpayer appearing on that return were as follows:

Trigon Healthcare, Inc. & Subsidiaries
2221 Edward Holland Drive
Corporate Tax Department 42-B
Richmond, VA 23230
EIN: 54-1773225

95. Trigon Healthcare timely paid to the Internal Revenue Service at Philadelphia, Pennsylvania, the full amount of the income taxes reported to be due on its tax return for the taxable year 1997 as follows:

a. $3,010,470 overpayment of tax for the taxable year 1996 applied to the taxable year 1997.

b. $9,250,000 of estimated tax paid on or before April 15, 1997.

c. $4,000,000 of estimated tax paid on or before June 16, 1997.

d. $7,000,000 of estimated tax paid on or before September 15, 1997.

e. $8,500,000 of estimated tax paid on or before December 15, 1997.

96. Trigon Healthcare did not claim deduction for the Settlement Payment but did claim the deduction for the loss of intangible assets on its originally filed Form 1120, U.S. Corporation Income Tax Return, for the taxable year 1997.

97. On May 29, 2001, Trigon Healthcare timely filed a Form 1120X, Amended U.S. Corporation Income Tax Return, for its taxable year 1997 with the Internal Revenue Service Center at Richmond, Virginia. This Form 1120X made a claim for refund in the amount of $30,085,571 as a result of the IRS' issuance of TAM 200126008 in which the IRS ruled that the Settlement Payment was deductible in the taxable year 1997 under Section 162 of the Internal Revenue Code as an ordinary and necessary business expense. This claim for refund is attached at Exhibit G.

98. On October 24, 2002, a deduction for the loss of intangible assets in the amount of $48,800,883 for the taxable year 1997 was incorporated in a timely filed refund claim on Form 1120X, Amended U.S. Corporation Income Tax Return, in the amount of $0. This claim for refund is attached at Exhibit H.

99. On examination of the refund claim described in paragraph 97 above, the IRS erroneously determined that Trigon Healthcare was not entitled to the deduction for the Settlement Payment. The IRS issued Trigon Healthcare a Notice of Disallowance, dated March 4, 2004, that included the disallowance of the refund claim for $30,085,571 for the taxable year 1997. This notice is attached at Exhibit C.

100. The IRS issued Trigon Healthcare a thirty-day letter dated March 4, 2004, in which the IRS proposed to disallow the deduction for the loss of intangible assets and determined there was an overpayment of tax in the amount of $11,226,380 for the taxable year 1997. This thirty-day letter is attached at Exhibit I.

101. On April 5, 2004, Anthem, as successor in interest to Trigon Healthcare, filed requests for an administrative review by the IRS Appeals Office of the disallowance of the refund claims described in paragraphs 97 and 98 above.

102. On April 15, 2004, the IRS disallowed the appeal relating to the deduction for the loss of intangible assets, which is described in paragraph 98 above. The IRS executed a Form 907, Agreement to Extend Time to Bring Suit, which extends the statute of limitations for litigating the deduction for the loss of intangible assets for the taxable year 1997 until December 31, 2009. The amount of tax reflected in the Form 907 for the taxable year 1997 is $0 because the deduction for the intangibles loss resulted in a net operating loss carryback to the taxable year 1994. The refund of taxes is incorporated and described in Count One above. A copy of the Form 907 is attached at Exhibit D.

103. On April 13, 2005, the IRS disallowed the appeal relating to the refund claim for $30,085,571, which is described in paragraph 97 above and which relates to the deductibility of the Settlement Payment in the taxable year 1997.

104. As a result of the IRS' denial of the refund claims described in paragraphs 97 and 98 above, Plaintiff overpaid the federal income tax for the taxable year 1997 and is entitled to a refund in the amount of $30,085,571, or such other amount as provided by law, plus interest as provided by law.

**COUNT FOUR**
**TRIGON'S 1998 TAX YEAR**

105. On or before September 15, 1999, Trigon Healthcare timely filed a Form 1120, U.S. Corporation Income Tax Return, for its taxable year ended December 31, 1998, with the Internal Revenue Service Center at Richmond, Virginia, reporting total tax in the amount of $29,352,402. The name, address, and EIN of the taxpayer appearing on that return were as follows:

Trigon Healthcare, Inc. & Subsidiaries
2221 Edward Holland Drive
Corporate Tax Department 42-B
Richmond, VA 23230
EIN: 54-1773225

106. Trigon Healthcare timely paid to the Internal Revenue Service at Philadelphia, Pennsylvania, the full amount of the income taxes reported to be due on its tax return for the taxable year 1998 as follows:

a. $12,467,933 overpayment of tax for the taxable year 1997 applied to the taxable year 1998.

b. $5,500,000 of estimated tax paid on or before April 15, 1998.

c. $6,000,000 of estimated tax paid on or before June 15, 1998.

d. $0 of estimated tax paid on or before September 15, 1998.

e. $12,000,000 of estimated tax paid on or before December 15, 1998.

f. $2,500,000 of tax paid on or before March 15, 1999.

107. Trigon Healthcare claimed a deduction in the amount of $33,969,475 for the loss of intangible assets on its originally filed Form 1120, U.S. Corporation Income Tax Return, for the taxable year 1998.

108. On September 10, 2001, Trigon Healthcare timely filed a Form 1120X, Amended U.S. Corporation Income Tax Return, for its taxable year 1998 with the Internal Revenue Service Center at Richmond, Virginia. This Form 1120X made a claim for refund in the amount of $10,545,917 as a result of credit carryovers, net operating loss carryovers, and capital loss carrybacks generated by the deductions of the Settlement Payment and the loss of intangible assets in the taxable year 1997. This claim for refund is attached at Exhibit J.

109. On October 16, 2002, a deduction for the loss of intangible assets in the amount of $33,969,475 for the taxable year 1998 was incorporated in a timely filed protective refund claim on Form 1120X, Amended U.S. Corporation Income Tax Return, in the amount of $6,793,895. This claim for refund is attached at Exhibit K.

110. On examination of the refund claim described in paragraph 108 above, the IRS erroneously determined that Trigon Healthcare was not entitled to the credit carryovers, net operating loss carryovers, and capital loss carrybacks. The IRS issued Trigon Healthcare a Notice of Disallowance, dated March 4, 2004, that included the disallowance of the refund claim for $10,545,917 for the taxable year 1998. This notice is attached at Exhibit C.

111. The IRS issued Trigon Healthcare a thirty-day letter dated March 4, 2004, in which the IRS proposed to disallow the deduction for the loss of intangible assets and determined there was an overpayment of tax in the amount of $6,752,821 for the taxable year 1998. This thirty-day letter is attached at Exhibit I.

112. On April 5, 2004, Anthem, as successor in interest to Trigon Healthcare, filed requests for an administrative review by the IRS Appeals Office of the disallowance of carryovers and carrybacks and the deduction for the loss of intangible assets.

113. On April 15, 2004, the IRS disallowed the appeal relating to the deduction for the loss of intangible assets, which is described in paragraph 109 above. The IRS executed a Form 907, Agreement to Extend Time to Bring Suit, which extends the statute of limitations for litigating the $6,793,895 refund claim for the taxable year 1998 until December 31, 2009. A copy of the Form 907 is attached at Exhibit D.

114. On April 13, 2005, the IRS disallowed the appeal relating to the refund claim for $10,545,917, which is described in paragraph 108 above and which relates to the carryovers and carrybacks generated by the deductions of the Settlement Payment and the loss of intangible assets in the taxable year 1997.

115. As a result of the IRS' denial of the refund claims described in paragraphs 108 and 109 above, Plaintiff overpaid the federal income tax for the taxable year 1998 and is entitled to a refund in the amount of $17,339,812, or such other amount as provided by law, plus interest as provided by law.

**COUNT FIVE**
**1999 TAX YEAR**

116. On or before September 15, 2000, Trigon Healthcare timely filed a Form 1120, U.S. Corporation Income Tax Return, for its taxable year ended December 31, 1999, with the Internal Revenue Service Center at Richmond, Virginia, reporting total tax in the amount of $30,983,297. The name, address, and EIN of the taxpayer appearing on that return were as follows:

Trigon Healthcare, Inc. & Subsidiaries
2221 Edward Holland Drive
Corporate Tax Department 42-B
Richmond, VA 23230
EIN: 54-1773225

117. Trigon Healthcare timely paid to the Internal Revenue Service at Philadelphia, Pennsylvania, the full amount of the income taxes reported to be due on its tax return for the taxable year 1999 as follows:

a. $9,115,531 overpayment of tax for the taxable year 1998 applied to the taxable year 1999.

b. $7,000,000 of estimated tax paid on or before April 15, 1999.

c. $8,000,000 of estimated tax paid on or before June 15, 1999.

d. $0 of estimated tax paid on or before September 15, 1999.

e. $7,000,000 of estimated tax paid on or before December 15, 1999.

118. Trigon Healthcare claimed a deduction in the amount of $5,667,286 for the loss of intangible assets on its originally filed Form 1120, U.S. Corporation Income Tax Return, for the taxable year 1999. This deduction resulted in a reduction of taxes in the amount of $1,983,550.

119. On September 10, 2001, Trigon Healthcare timely filed a Form 1120X, Amended U.S. Corporation Income Tax Return, for its taxable year 1999 with the Internal Revenue Service Center at Richmond, Virginia. This Form 1120X made a claim for refund in the amount of $10,652,376 as a result of credit carryovers, net operating loss carryovers, and capital loss carrybacks generated by the deductions of the Settlement Payment and the loss of intangible assets in the taxable year 1997. This claim for refund is attached at Exhibit L.

120. On September 3, 2003, Trigon Healthcare and the IRS timely executed Form 872-A, Special Consent to Extend the Time to Assess Tax, for the taxable year 1999.

121. On examination of the refund claim described in paragraph 119 above, the IRS erroneously determined that Trigon Healthcare was not entitled to the credit carryovers, net operating loss carryovers, and capital loss carrybacks. The IRS issued Trigon Healthcare a Notice of Disallowance, dated March 4, 2004, that included the disallowance of the refund claim for $10,652,376 for the taxable year 1999. This notice is attached at Exhibit C.

122. The IRS issued Trigon Healthcare a thirty-day letter dated March 4, 2004, in which the IRS proposed to disallow the deduction for the loss of intangible assets and determined there was an overpayment of tax in the amount of $7,914,515 for the taxable year 1997. This thirty-day letter is attached at Exhibit I.

123. On August 30, 2004, Anthem, as successor to Trigon Healthcare, timely filed a protective refund claim on Form 1120X, Amended U.S. Corporation Income Tax Return, for the taxable year 1999. This Form 1120X made a claim for refund in the amount of $1,572,133 to reflect an alternative minimum credit carryover resulting from a refund claim for the taxable year 1996 with respect to the loss of intangible assets. This claim for refund is attached at Exhibit M.

124. On April 5, 2004, Anthem, as successor in interest to Trigon Healthcare, filed requests for an administrative review by the IRS Appeals Office of the disallowance of carryovers and carrybacks and the deduction for the loss of intangible assets.

125. The IRS did not respond to the protest of the disallowance of the deduction for the loss of intangible assets.

126. On April 13, 2005, the IRS disallowed the appeal relating to the refund claim for $10,652,376, which is described in paragraph 119 above and which relates to the carryovers and carrybacks generated by the deductions of the Settlement Payment and the loss of intangible assets in the taxable year 1997.

127. As a result of the IRS' denial of the deduction and the refund claim described in paragraphs 118 and 119 above, Plaintiff overpaid the federal income tax for the taxable year 1999 and is entitled to a refund in the amount of $12,635,926, or such other amount as provided by law, plus interest as provided by law.

**COUNT SIX**
**2000 TAX YEAR**

128. On or before September 17, 2001, Trigon Healthcare timely filed a Form 1120, U.S. Corporation Income Tax Return, for its taxable year ended December 31, 2000, with the Internal Revenue Service Center at Richmond, Virginia, reporting total tax in the amount of $22,048,093. The name, address, and EIN of the taxpayer appearing on that return were as follows:

Trigon Healthcare, Inc. & Subsidiaries
2221 Edward Holland Drive
Corporate Tax Department 42-B
Richmond, VA 23230
EIN: 54-1773225

129. Trigon Healthcare timely paid to the Internal Revenue Service at Philadelphia, Pennsylvania, the full amount of the income taxes reported to be due on its tax return for the taxable year 2000 as follows:

a. $133,085 overpayment of tax for the taxable year 1999 applied to the taxable year 2000.

b. $10,000,000 of estimated tax paid on or before April 17, 2000.

c. $2,000,000 of estimated tax paid on or before June 15, 2000.

d. $13,500,000 of estimated tax paid on or before September 15, 2000.

e. $9,600,000 of estimated tax paid on or before December 15, 2000.

130. Trigon Healthcare claimed a deduction in the amount of $6,318,181 for the loss of intangible assets on its originally filed Form 1120, U.S. Corporation Income Tax Return, for the taxable year 2000. This deduction resulted in a reduction of taxes in the amount of $2,211,363.

131. The IRS issued Trigon Healthcare a thirty-day letter dated March 4, 2004, in which the IRS proposed to disallow the deduction for the loss of intangible assets and determined there was a deficiency of $15,074,568 for the taxable year 2000. This thirty-day letter is attached at Exhibit I.

132. On March 24, 2004, Trigon Healthcare and the IRS timely executed Form 872-A, Special Consent to Extend the Time to Assess Tax, for the taxable year 2000.

133. On April 5, 2004, Anthem, as successor in interest to Trigon Healthcare, filed a request for an administrative review by the IRS Appeals Office of the disallowance of the deduction for the loss of intangible assets.

134. On August 30, 2004, Anthem, as successor to Trigon Healthcare, timely filed a protective refund claim on Form 1120X, Amended U.S. Corporation Income Tax Return, for the taxable year 2000. This Form 1120X made a claim for refund in the amount of $7,544,155 to reflect an alternative minimum credit carryover resulting from a refund claim for the taxable year 1996 with respect to the loss of intangible assets. This claim for refund is attached at Exhibit N.

135. On April 13, 2005, the IRS issued a Statutory Notice of Deficiency and determined and assessed a deficiency of $15,074,568 for the taxable year 2000.

136. Anthem, as successor in interest to Trigon Healthcare, paid the deficiency for the taxable year 2000 to the Internal Revenue Service Center by offsetting this deficiency with the overpayments in tax for the taxable years 1996, 1997, and 1998.

137. As a result of the IRS' denial of the deduction and the refund claim described in paragraphs 130 and 134 above, Plaintiff overpaid the federal income tax for the taxable year 2000 and is entitled to a refund in the amount of $9,755,518, or such other amount as provided by law, plus interest as provided by law.

**COUNT SEVEN**
**2001 TAX YEAR**

138. On or before September 15, 2002, Anthem, as successor in interest to Trigon Healthcare, timely filed a Form 1120, U.S. Corporation Income Tax Return, for its taxable year ended December 31, 2001, with the Internal Revenue Service Center at Richmond, Virginia, reporting total tax in the amount of $45,483,295. The name, address, and EIN of the taxpayer appearing on that return were as follows:

Trigon Healthcare, Inc. & Subsidiaries
2221 Edward Holland Drive
Corporate Tax Department 42-B
Richmond, VA 23230
EIN: 54-1773225

139. Trigon Healthcare timely paid to the Internal Revenue Service at Ogden, Utah, the full amount of the income taxes reported to be due on its tax return for the taxable year 2001 as follows:

a. $13,185,484 overpayment of tax for the taxable year 2000 applied to the taxable year 2001.

b. $16,000,000 of estimated tax paid on or before April 16, 2001.

c. $14,000,000 of estimated tax paid on or before June 15, 2001.

d. $0 of estimated tax paid on or before September 17, 2001.

e. $6,000,000 of estimated tax paid on or before December 17, 2001.

f. $6,000,000 of tax paid on or before March 15, 2002.

140. Trigon Healthcare claimed a deduction in the amount of $4,264,639 for the loss of intangible assets on its originally filed Form 1120, U.S. Corporation Income Tax Return, for the taxable year 2001. This deduction resulted in a reduction of taxes in the amount of $1,492,624.

141. On October 16, 2002, Anthem, as successor in interest to Trigon Healthcare, timely filed a Form 1120X, Amended U.S. Corporation Income Tax Return, for its taxable year 2001 with the Internal Revenue Service Center at Richmond, Virginia. This Form 1120X made a claim for refund in the amount of $11,564,062 as a result of credit carryovers, net operating loss carryovers, and capital loss carrybacks generated by the deductions of the Settlement Payment and the loss of intangible assets in the taxable year 1997. This claim for refund is attached at Exhibit O.

142. On examination of the refund claim described in paragraph 141 above, the IRS erroneously determined that Trigon Healthcare was not entitled to the credit carryovers, net operating loss carryovers, and capital loss carrybacks. The IRS issued Trigon Healthcare a Notice of Disallowance, dated March 4, 2004, that included the disallowance of the refund claim for $11,564,062 for the taxable year 2001. This notice is attached at Exhibit C.

143. The IRS issued Trigon Healthcare a thirty-day letter dated March 4, 2004, in which the IRS proposed to disallow the deduction for the loss of intangible assets and determined there was a deficiency in the amount of $8,763,025. This thirty-day letter is attached at Exhibit I.

144. On April 5, 2004, Anthem, as successor in interest to Trigon Healthcare, filed requests for an administrative review by the IRS Appeals Office of the disallowance of the carryovers and carrybacks and the deduction for the loss of intangible assets.

145. On April 15, 2004, the IRS disallowed the appeal relating to the deduction for the loss of intangible assets. The IRS executed a Form 907, Agreement to Extend Time to Bring Suit, which extends the statute of limitations for litigating the $11,564,062 refund claim for the taxable year 2001 until December 31, 2009. A copy of the Form 907 is attached at Exhibit D.

146. On April 13, 2005, the IRS issued a Statutory Notice of Deficiency and determined and assessed a deficiency of $8,763,025 for the taxable year 2001.

147. Anthem, as successor in interest to Trigon Healthcare, paid the deficiency for the taxable year 2001 to the Internal Revenue Service Center by offsetting this deficiency with the overpayments in tax for the taxable years 1998 and 1999.

148. As a result of the IRS' denial of the deduction and the refund claim described in paragraphs 140 and 141 above, Plaintiff overpaid the federal income tax for the taxable year 2001 and is entitled to a refund in the amount of $13,056,686, or such other amount as provided by law, plus interest as provided by law.

**COUNT EIGHT**
**2002 TAX YEAR**

149. On or before April 15, 2003, Anthem, as successor in interest to Trigon Healthcare, timely filed a Form 1120, U.S. Corporation Income Tax Return, for its taxable year ended July 31, 2002, with the Internal Revenue Service Center at Richmond, Virginia, reporting total tax in the amount of $26,436,930. The name, address, and EIN of the taxpayer appearing on that return were as follows:

Trigon Healthcare, Inc. & Subsidiaries
2221 Edward Holland Drive
Mail Drop 42-B
Richmond, VA 23230
EIN: 54-1773225

150. Trigon Healthcare timely paid to the Internal Revenue Service at Ogden, Utah, the full amount of the income taxes reported to be due on its tax return for the taxable year 2002 as follows:

a. $9,000,000 of estimated tax paid on or before April 15, 2002.

b. $9,000,000 of estimated tax paid on or before June 17, 2002.

c. $9,000,000 of tax paid on or before October 15, 2002.

151. Trigon Healthcare claimed a deduction in the amount of $5,983,687 for the loss of intangible assets on its originally filed Form 1120, U.S. Corporation Income Tax Return, for the taxable year 2002. This deduction resulted in a reduction of taxes in the amount of $2,094,291.

152. The IRS issued Trigon Healthcare a thirty-day letter dated March 4, 2004, in which the IRS proposed to disallow the deduction for the loss of intangible assets and

determined there was a deficiency in the amount of $2,094,291. This thirty-day letter is attached at Exhibit I.

153. On April 5, 2004, Anthem, as successor in interest to Trigon Healthcare, filed a request for an administrative review by the IRS Appeals Office of the disallowance of the deduction for the loss of intangible assets.

154. On April 13, 2005, the IRS issued a Statutory Notice of Deficiency and determined and assessed a deficiency of $2,094,291 for the taxable year 2002.

155. Anthem, as successor in interest to Trigon Healthcare, paid the deficiency for the taxable year 2002 to the Internal Revenue Service Center by offsetting this deficiency with the overpayments in tax for the taxable years 1999 and 2000.

156. As a result of the IRS' denial of the deduction described in paragraph 151 above, Plaintiff overpaid the federal income tax for the taxable year 2002 and is entitled to a refund in the amount of $2,094,291, or such other amount as provided by law, plus interest as provided by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in its favor and against the United States:

(1) in the amount of $15,460,594 for the taxable year ended December 31, 1994, or such other amount as may be legally refundable, plus interest as provided by law;

(2) in the amount of $12,155,051 for the taxable year ended December 31, 1996, or such other amount as may be legally refundable, plus interest as provided by law;

(3) in the amount of $30,085,571 for the taxable year ended December 31, 1997, or such other amount as may be legally refundable, plus interest as provided by law;

(4) in the amount of $17,339,812 for the taxable year ended December 31, 1998, or such other amount as may be legally refundable, plus interest as provided by law;

(5) in the amount of $12,635,926 for the taxable year ended December 31, 1999, or such other amount as may be legally refundable, plus interest as provided by law;

(6) in the amount of $9,755,518 for the taxable year ended December 31, 2000, or such other amount as may be legally refundable, plus interest as provided by law;

(7) in the amount of $13,056,686 for the taxable year ended December 31, 2001, or such other amount as may be legally refundable, plus interest as provided by law;

(8) in the amount of $2,094,291 for the taxable year ended July 31, 2002, or such other amount as may be legally refundable, plus interest as provided by law; and

(9) such other and further relief as this Court deems appropriate.

Dated: February 24, 2006

Respectfully submitted,

PHILIP C. COOK

Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7491
Fax: (404) 253-8556
Counsel for Plaintiff

Of Counsel:

Michelle M. Henkel
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7633
Fax: (404) 253-8656

J. Bradford Anwyll
Alston & Bird LLP
601 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2061
Telephone: (202) 756-3300
Fax: (202) 756-3333