# United States Court Of Federal Claims

| | | |
|---|---|---|
| BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-738T |
| | ) | |
| v. | ) | Judge Thomas C. Wheeler |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION**

---

PHILIP KARTER
Chamberlain, Hrdlicka, White, Williams & Martin
300 Conshohocken State Road, Suite 570
West Conshohocken, PA 19428
610/772-2300 Telephone
610/772-2305 Facsimile
*Attorney of Record for Plaintiff*

HERBERT ODELL
Chamberlain, Hrdlicka, White, Williams & Martin
300 Conshohocken State Road, Suite 570
West Conshohocken, PA 19428
610/772-2300 Telephone
610/772-2305 Facsimile
*Of Counsel*

April 19, 2007

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

ARGUMENT ..... 1

A. Defendant Fails To Satisfy The Exacting Standards Required To Prevail On A Motion for Reconsideration ..... 1

B. Individual Members Of The Consolidated Group Had No Authority To File The May 2005 Refund Claims ..... 3

C. As This Court Already Has Ruled, The Informal Claims Doctrine Does Not Apply To Claims Filed By The Wrong Taxpayer ..... 5

D. The Court's Decision Does Not Create A New Legal Standard But Merely Reflects That Each Case Turns On Its Own Unique Facts ..... 8

CONCLUSION ..... 11

## TABLE OF AUTHORITIES

### CASES

*American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct. Cl. 106 (1963)......... 6, 8

*Angelus Milling Co. v. Commissioner*, 325 U.S. 293 (1945).................................................... 6, 7

*Bernard v. United States*, 12 Cl. Ct. 597 (1987)................................................................ 2

*First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279 (Fed.Cir. 1999))..... 9

*Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298 (1999).................................................. 2

*General Elec. Co. v. United States*, 189 Ct. Cl. 116 (1969) ........................................................ 2

*Grass Valley Terrace v. United States*, 69 Fed. Cl. 506 (2006) .................................................... 9

*Holland v. United States***,** 62 Fed. Cl. 395 (2004)............................................................... 9

*Kidde Industries, Inc. v. United States*, 40 Fed. Cl. 42 (1997), *appeal dismissed*, 194 F.3d 1330 (Fed. Cir. 1999)........................................................................ 6, 7, 8, 11

*Kraasch v. Commissioner*, 70 T.C. 623 (1978) ........................................................................ 6

*Mason & Hanger-Silas Mason Co., Inc. v. United States*, 207 Ct. Cl. 1031 (1975) ...................... 2

*Mishakawa Properties Co. v. Commissioner*, 100 T.C. 353 (1993)............................................. 6

*Mobil Corp. v. United States*, 52 Fed. Cl. 327 (2002) ............................................................ 6, 7

*Pacific Gas and Elec. Co. v. United States*, 58 Fed. Cl. 1 (2003) ......................................... 1, 2, 5

*Pikeville Coal Co. v. United States*, 37 Fed. Cl. 304 (1997) .................................................... 1, 2

*Principal Mut. Life Ins. Co. v. United States*, 29 Fed. Cl. 157 (1993)) ................................. 1, 2, 5

*Rosengarten v. United States*, 149 Ct. Cl. 287 (1960)................................................................. 6

*Southern California Federal Savings & Loan Ass'n. v. United States*, 52 Fed. Cl. 444 (2002)..... 9

### REGULATIONS

Treas. Reg. § 1.1502-75(d). ............................................................................................. 4

Treas. Reg. § 1.1502-77 ....................................................................................................... 12

Treas. Reg. § 1.1502-77A ........ 3, 9, 10, 11

Treas. Reg. § 1.1502-77A(a) ........ 3, 4, 6

Treas. Reg. § 1.1502-77A(d) ........ 4

Treas. Reg. § 1.1502-77A(e) ........ 4

Treas. Reg. § 1.1502-77T ........ 4

Treas. Reg. § 1.1502-77T(a) ........ 4

**TAX MATERIALS**

2001 IRS NSAR 142 (OCT. 22, 2001) ........ 4

65 Fed. Reg. 57755 (Sept. 26, 2000) ........ 3, 4

**RULES**

RCFC 17(A) ........ 9, 10

RCFC 59 ........ 1

# United States Court Of Federal Claims

| | | |
|---|---|---|
| BROWNING-FERRIS INDUSTRIES, INC. & SUBSIDIARIES, | ) | |
| Plaintiff, | ) | No. 05-738T |
| v. | ) | Judge Thomas C. Wheeler |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION

As grounds for its motion for reconsideration, Defendant raises three arguments, two of which fail to plow new ground, and the third of which Defendant could have raised, but failed to do, in prior proceedings. Beyond Defendant's failure to satisfy the criteria for granting a motion for reconsideration under RCFC 59, discussed more fully below, each of the arguments fails on its own lack of merit.

## ARGUMENT

### A. Defendant Fails To Satisfy The Exacting Standards Required To Prevail On A Motion for Reconsideration

To prevail on a motion for reconsideration, the movant must meet at least one of two exacting standards, neither of which is satisfied by Defendant's motion. First, a party must "point to a manifest error of law or mistake of fact". *Pacific Gas and Elec. Co. v. United States*, 58 Fed. Cl. 1, 2 (2003); *Pikeville Coal Co. v. United States*, 37 Fed. Cl. 304, 313 (1997) (citing *Principal Mut. Life Ins. Co. v. United States*, 29 Fed. Cl. 157, 164 (1993)). Alternatively, a party must demonstrate a change in circumstances, such as an intervening change in the controlling

law, or the availability of previously unavailable evidence, or some other reason why the motion is "necessary to prevent manifest injustice". *Pacific Gas*, *supra*, at 2 (citing *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 301 (1999)).

In view of these limiting circumstances, the Court of Federal Claims has repeatedly rejected efforts to use a motion for reconsideration to raise arguments that could have been raised during the original proceedings. *See*, *e.g.*, *Bernard v. United States*, 12 Cl. Ct. 597, 598 (1987) ("Motions pursuant to RUSCC 59 are not to be used as relief because an unhappy party failed to urge a theory which it could have raised in original proceedings."); *Mason & Hanger-Silas Mason Co., Inc. v. United States*, 207 Ct. Cl. 1031 (1975) (citing *General Elec. Co. v. United States*, 189 Ct. Cl. 116 (1969) (". . . where a party adversely affected by the court's decision on the issue has had fair notice that the question may well be in the case, has had a fair chance to present its position, has failed to do so, and gives no sufficient excuse for its failure, a demand for post-decision relief will normally be rejected.")).

Similarly, motions for reconsideration are not intended to allow a party to simply reassert arguments that have already been considered by the Court. *See Pikeville Coal Co.*, 37 Fed. Cl. at *313*; *Pacific Gas and Elec. Co.*, 58 Fed. Cl. at 2 (citing *Principal Mut. Life Ins. Co.*, 29 Fed. Cl. at 164).

In its current motion, Defendant has demonstrated no error, mistake, or change that would justify the Court's reconsidering its prior ruling. Instead, Defendant merely repeats arguments that have already been rejected by this Court or raises an argument that it failed to raise earlier. Although Defendant may be dissatisfied with the Court's decision or believe that its prior arguments were not adequately presented to the Court, neither of these reasons constitute a proper justification for the Court to reconsider its decision.

**B. <u>Individual Members Of The Consolidated Group Had No Authority To File The May 2005 Refund Claims</u>**

Defendant first argues that the defective May 2005 refund claims filed by Browning-Ferris Industries, Inc. (hereinafter "BFI, Inc."), the former agent for the Browning-Ferris consolidated group, whose existence terminated for tax purposes on December 31, 2004, should be treated as claims filed by each of the group's subsidiaries because "the claims were filed by 'Browning-Ferris Industries, Inc. & *Subsidiaries*.'" (Emphasis supplied.) In making this unsupported claim, Defendant ignores the plain language of Treas. Reg. § 1.1502-77A(a) that "[t]he common parent . . . shall be the *sole agent* for each subsidiary in the group . . ." (emphasis added) and that, except for the filing of certain elections, "no subsidiary shall have authority to act for or to represent itself in any such matter." *Id*. Therefore, contrary to Defendant's claim, subsidiaries within the consolidated group are not authorized to act independently.

By referencing the section of this Court's opinion that cites language in the 2000 preamble to the new section 1502 regulations, 65 Fed. Reg. 57755 (Sept. 26, 2000),[1] Defendant confuses what the IRS is permitted to do with what taxpayers may do. The preamble states that, under what was then the existing regulation (*i.e.*, current Treas. Reg. § 1.1502-77A, the regulation applicable in this case), there were circumstances in which the IRS might have to deal separately with each remaining member of a consolidated group whose agent had terminated. However, beyond any actions undertaken by the IRS, nothing in the preamble or elsewhere indicates that each remaining member of the consolidated group could have performed affirmative acts on its own, such as the filing of a refund claim, in place of the agent for the

---

[1] *See* Defendant's Motion for Reconsideration ("Def. Br.") at 2, n. 1.

group.[2] In fact, were the Court to apply Defendant's logic, there would be nothing to prevent each of the 46 group members who signed the Designation by Group Members under Treas. Reg. § 1.1502-77A(d) from filing separate refund claims for the same overpayment.[3]

Defendant's argument is also flatly contradicted by the IRS' own administrative position. For example, in a 2001 Non Docketed Service Advice Review ("NSAR"), 2001 IRS NSAR 142 (Oct. 22, 2001), the Service stated:

> Treasury Regulation § 1.1502-77T[4] provides a list of alternative agents, each of which may act as the agent for a consolidated group if the common parent of the group ceases to be the common parent regardless of whether the group remains in existence under Treasury Regulation § 1.1502-75(d). Pursuant to the regulation, the alternative agents may act on behalf of the consolidated group in two circumstances. First, they are the corporations to which notices of deficiency should be sent. Second, they are the corporations with the authority to give waivers of statutes of limitations. See Treas. Reg. § 1.1502-77T(a). *There is nothing in the wording of the temporary regulation that empowers the alternative agents to file claims for refund on behalf of the consolidated group or receive any refunds that are due the consolidated group for years during which they filed consolidated returns.*

(Emphasis added.)[5]

---

[2] The lack of any authority supporting Defendant's argument is not surprising considering that it would conflict with the plain language of Treas. Reg. § 1.1502-77A(a), which expressly proscribes group members from acting as alternative agents for the group.

[3] The preamble contemplated this problem in explaining why the IRS rejected the possibility of expanding the scope of the authority of alternative agents, which was limited to mailing of notices of deficiency or executing consents to extend the statute of limitations under Treas. Reg. § 1.1502-77A(e). In particular, the preamble concluded that the alternative agent approach lacked certainty because, *inter alia*, "more than one corporation could initiate actions on behalf of the group." 65 Fed. Reg. at 57756.

[4] As pointed out previously, the reference to Treas. Reg. § 1.1502-77T refers to current Treas. Reg. § 1.1502-77A(e).

[5] *See* Plaintiff's Brief in Support of Motion for Voluntary Dismissal Without Prejudice Pursuant to RCFC 41(a)(2) and for Dismissal of Counterclaim Pursuant to RCFC 12(b)(1) (Document 25) at 11, n. 5 (citations omitted). (Although administrative pronouncements such as FSAs and NSARs are not binding precedent, they can be taken into account as persuasive authority).

In sum, the regulation is clear on its face and the mere inclusion of the word "subsidiaries" (as in Browning-Ferris Industries, Inc. *and subsidiaries)* after the name of the agent for the consolidated group is insufficient to authorize each and every one of the 46 subsidiaries to exercise any authority to file claims independently or collectively.

**C. <u>As This Court Already Has Ruled, The Informal Claims Doctrine Does Not Apply To Claims Filed By The Wrong Taxpayer</u>**

Defendant's second argument revisits its previous contention that the jurisdictional defects in the May 2005 refund claims can be ignored under the informal claim doctrine.[6] It contends that the doctrine is invoked because the IRS considered the May 2005 claims, thereby waiving its right to claim that they were defective. Defendant acknowledges that the Court already considered this precise argument, pointing out ". . . the fact that the IRS considered Plaintiff's administrative claim on the merits is not a basis for the Court to waive a jurisdictional defect." Def. Br. at 3 (citing Ct. Op. at 10).

What is notably absent from Defendant's renewal of this argument is any claim that the Court's opinion contains a "manifest error of law or mistake of fact," a change in the controlling law, the availability of previously unavailable evidence, or some other reason why the motion is "necessary to prevent manifest injustice." *See, e.g., Pacific Gas and Elec. Co.*, 58 Fed. Cl. at 2 (citing *Principal Mut. Life Ins. Co.*, 29 Fed. Cl. at 164).

In both this and the prior occasion where it raised this defense, Defendant has failed to consider that the authorities underlying the informal claim doctrine do not apply to claims filed

[6] *See* Document 32, Opposition by the United States to Plaintiff's Motion for Voluntary Dismissal Without Prejudice Pursuant to RCFC 41(a)(2) and for Dismissal of Counterclaim Pursuant to RCFC 12(b)(1) ("Defendant's Opposition Brief"), at 22, *et. seq*.

by the *wrong taxpayer*.[7] As pointed out in our reply brief to Defendant's Opposition Brief (Document 37) at 12-13, the only authorities dealing with claims filed by the wrong taxpayer clearly provide that the informal claim doctrine does not apply to such claims. *See American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct. Cl. 106 (1963); *Rosengarten v. United States*, 149 Ct. Cl. 287, 293-94 (1960) ("We are aware of no case . . . where a court has held that a request for refund for a particular year constituted a claim for another year, nor any case in which a claim for refund by a specific taxpayer constituted an informal claim for that year on behalf of a different taxpayer.").

The three cases cited by Defendant in support of its informal claim argument, *Mobil Corp. v. United States*, 52 Fed. Cl. 327, 329 (2002), *Angelus Milling Co. v. Commissioner*, 325 U.S. 293 (1945), and *Kidde Industries, Inc. v. United States*, 40 Fed. Cl. 42, 66 (1997), *appeal dismissed*, 194 F.3d 1330 (Fed. Cir. 1999), none of which were cited in Defendant's Opposition Brief, do not deal with informal claims filed by the wrong taxpayer. *Mobil* involved a taxpayer's attempt to invoke the informal claim doctrine to include an additional claim for interest based on a theory the taxpayer came up with almost a decade after its original refund claims were filed and after the applicable statute of limitations for filing claims had long since expired. Rather than file a new refund claim, the taxpayer informally asked the IRS to recalculate interest by

---

[7] Defendant's reliance on the principle of implied ratification is also inapposite. *See* Def. Br. at 7. In each of the cases cited by the Defendant for this principle, the person whose act was implicitly ratified had acted as an agent for the ratifying principal(s). *See Kraasch v. Commissioner*, 70 T.C. 623, 628 (1978); *cf. Mishakawa Properties Co. v. Commissioner*, 100 T.C. 353, 364-65 (1993) (relying on the "Kraasch rationale [which] is rooted in concepts of agency and ratification" to hold that the principle of implied ratification may be applied in a TEFRA proceeding). In contrast to both *Kraasch* and *Mishakawa*, the applicable regulations make clear that the common parent of a consolidated group "shall be the *sole agent* for each subsidiary in the group…." Treas. Reg. § 1.1502-77A(a) (emphasis added). Consequently, BFI, Inc., which had already terminated when the May 2005 refund claims were filed, could no longer have been an "agent" whose acts could be ratified by the correct taxpayer.

using a different calculation method than the IRS had used in calculating interest paid to the taxpayer on its earlier formal claim.

In rejecting the taxpayer's argument, the court held that it did not matter whether the taxpayer's new interest claim constituted an "informal claim" or that the IRS examined its merits because the statute of limitations for bringing claims, formal or informal, had already run. Looking past the court's rejection of the application of the informal claim doctrine in that case, *Mobil* is inapposite to Defendant's argument here because it involved an effort by the *correct taxpayer* to invoke the doctrine. Similarly, the IRS' consideration of technically defective claims in *Angelus Milling* did not involve filings by the wrong taxpayers but rather deficiencies in the claim forms used and the grounds set forth therein.

Finally, in *Kidde Industries*, the court determined that a taxpayer's communication to an IRS agent, with whom it regularly interacted, of its intent to file for a WIN tax credit, followed by the production of binders of evidence supporting its claim to the credit, was sufficient to constitute an informal claim by the taxpayer. That case, like the others cited by Defendant, involved claims filed by the correct taxpayer, the only situation in which the informal claim doctrine has been held to apply.

In all three of the cases cited by Defendant, the taxpayers argued, as Defendant does here, that the IRS' consideration of the merits of their refund claims constituted a waiver of the defense that such claims were technically deficient.[8] However, because such arguments did not involve claims by the wrong taxpayer, which have never been approved as informal claims to the

[8] In two of the cited cases, the courts denied the waiver argument anyway, albeit for different reasons. In *Mobil*, the court rejected the waiver argument because the purported waiver occurred after the statute of limitations had expired. In *Angelus Milling*, the court ruled against the taxpayer because of the evidence that the IRS had waived the formal requirements of the claim was deemed insufficient.

best of our knowledge, they provide no support to Defendant's position. *Kidde* even quotes from the opinion in *American Radiator* that it is insufficient that an informal claim "involving the same ground has been filed for another year *or by a different taxpayer*." 40 Fed. Cl. at 61 (emphasis added).[9]

**D. <u>The Court's Decision Does Not Create A New Legal Standard But Merely Reflects That Each Case Turns On Its Own Unique Facts</u>**

The predicate for Defendant's final argument, one it failed to raise prior to the current motion, is that the Court's order dismissing the case for lack of jurisdiction will create a new standard that, paradoxically, would work to the detriment of other taxpayers who might be barred from litigating their refund claims[10] and potentially wreak havoc on tax litigants everywhere. Defendant suggests that the law was not intended to be applied so rigorously as to "deprive taxpayers of their day in court." Def. Br. at 12.

Defendant then focuses on situations involving consolidated groups, in which it contends that the common parent of the consolidated group ceases to exist without designating a substitute agent. Three current matters are cited in support of its argument, two of which, *Aventis, Inc. v. United States*, Fed. Cl. No. 03-2868 T, and *Austin Investment Fund, LLC v. United States*, Fed. Cl. No. 06-844 T, are pending before this Court according to Defendant.

---

[9] Curiously, Defendant cites to the same quote from the opinion in *American Radiator* (*see* Def. Br. at 8, n. 9), a statement that is plainly at odds with Defendant's position.

[10] Defendant even suggests that the ruling might adversely affect Plaintiff's future intention to refile its case, arguing that the refund claims filed by BFI Waste Systems, Inc. in August 2006, might still be defective. Def. Br. at 11. For the record, "Plaintiff," *i.e.*, BFI, Inc., no longer exists for tax purposes, having terminated on December 31, 2004. Moreover, the validity of the August 2006 refund claims by BFI Waste Systems, Inc. have nothing to do with this case nor the jurisdictional question presented to this Court. (In any event, the purported defect to which Defendant has pointed – with which we disagree – can be adequately addressed with the filing of protective refund claims by BFI Waste Systems, Inc.)

Each of the three case examples offered is distinguishable from the instant case and is not subject to the particular legislative regulation, Treas. Reg. § 1.1502-77A, that controls here. The *Austin Investment Fund* case, for example, involved the question of whether the taxpayer had deposited sufficient funds to vest the court with jurisdiction in accordance with the special provisions applicable to TEFRA partnerships. Defendant posits that *Austin* may be jurisdictionally defective under the ruling in this case because the wrong entity may have brought the suit in that case.

However, what Defendant describes as an "analogous problem" (Def. Br. at 10, n. 11) is anything but. *Austin*, unlike the present case, involves only the question of whether the wrong party brought suit, a situation that could easily be corrected by the substitution of the property party. *See* RCFC 17(a). *See also Grass Valley Terrace v. United States*, 69 Fed. Cl. 506, 511 (2006) (citing *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1289 (Fed.Cir. 1999)) ("RCFC 17(a) 'sets forth the broad and general principle that actions should be brought in the name of the real party in interest and that *courts should be lenient* in permitting ratification, joinder, or substitution of that party.'").

Further, the substitution of a real party in interest pursuant to RCFC 17(a) is deemed to relate back for limitations purposes to the date of the original pleading, so there is no question of whether the suit remains timely. *Holland v. United States***,** 62 Fed. Cl. 395, 401 (2004). *See also Southern California Federal Savings & Loan Ass'n. v. United States*, 52 Fed. Cl. 444, 457 (2002) ("Because joinder or substitution has the 'same effect if the action had [originally] been commenced in the name of the real party in interest,' the new Plaintiff is automatically considered to have filed on time. . . . The real party in interest simply steps into the shoes of the timely filed Plaintiff and thus is deemed timely.").

In contrast to *Austin*, in the present case the wrong party filed both the May 2005 refund claims and the complaint. Although the filing of the complaint by the wrong party is a correctable defect, the filing of refund claims by the wrong party creates a jurisdictional defect that cannot be remedied by substitution of the correct party in the legal proceeding.

Next, we address the *Aventis* case, which presents a Byzantine set of facts that, when thoroughly parsed, once again reveal an important distinction from the facts of this case. At the time that the refund claims were filed in *Aventis*, the taxpayer filing such claims, HMR Pharma, Inc., was the proper parent of the consolidated group. As such, it was the appropriate entity to file the claims.

When the refund suit was subsequently brought, HMR Pharma, Inc. had merged into Aventis, Inc., which became the successor in interest to the claim for refund and the real party in interest for purposes of RCFC 17(a). Thus, unlike the instant case, there is no question in *Aventis* that the refund claim was filed by the correct taxpayer. Further, *Aventis* involved a merger of two companies, not the termination, liquidation or dissolution of the agent for the consolidated group. As such, that case is not controlled by Treas. Reg. § 1.1502-77A, which applies when the agent for the consolidated group is no longer in existence and there is no successor in interest.

Finally, in *Wellpoint, Inc. v. United States*, Fed. Cl. No. 06-147 T, certain claims for refund were filed while the parent corporation of the consolidated group that was claiming the refund was in existence, while other claims that were filed by the same entity were filed after that entity had already merged into another corporation. Regarding the first set of claims, like *Aventis*, they were filed by the right taxpayer, which only merged into another entity after the claims were filed. Thus, the party filing the refund claims *was* the authorized agent for the

consolidated group at the time such claims were filed. As for the second set of claims, which were filed in the name of the same party after it had already merged into another entity, that is also distinguishable from the instant case because there continued to be a post-merger entity who succeeded to the rights of the refund claimant. By comparison, in this case BFI, Inc. terminated on December 31, 2004 (before the refund claims were filed), and had no successor in interest. Consequently, as in the *Aventis* case, Treas. Reg. § 1.1502-77A does not apply because no termination, liquidation or dissolution took place.

## CONCLUSION

The overriding consideration that the Defendant has ignored in each of its first two arguments is that the party who purported to file the May 2005 refund claims had previously terminated as a legal entity for tax purposes when such claims were filed. Under the controlling legislative regulation, the case law and the IRS' own pronouncements, subsidiaries of the terminated BFI, Inc. were not authorized to file refund claims in substitution of the defective claim filed by the wrong taxpayer, which had terminated prior to the filing of such claims. This remains so regardless of the mistaken belief of the individual who signed the May 2005 claims, which is irrelevant to the determination of whether jurisdiction exists as a result of the regulation.

As for Defendant's third argument, Defendant overlooks the lesson articulated in one of the cases it cites, *Kidde Industries, Inc. v. United States*, that "[c]ourts assess whether a taxpayer has satisfied the requirements for an informal claim on a case-by-case basis and consider the totality of the facts presented." 40 Fed. Cl. at 61. The active cases to which Defendant points involve different facts that do not fall within the rubric of Treas. Reg. § 1.1502-77A, the legal standard that applies in this case, and the specific reason why the Court determined that jurisdiction was lacking.

In fact, contrary to Defendant's inflated claim that the Court's ruling could lead to the widespread disruption of tax refund litigation, the ruling is quite narrow and pertains to a set of unique circumstances where the claim was filed by a non-existent party.[11] The presently pending cases cited by Defendant do not involve such a situation. Rather, they involve refund claims filed by the proper party itself or its legal successor.

For all of the foregoing reasons, Defendant's Motion for Reconsideration should be denied.

Respectfully submitted,

*/s/ Philip Karter*
PHILIP KARTER
Chamberlain, Hrdlicka, White, Williams & Martin
300 Conshohocken State Road, Suite 570
West Conshohocken, PA 19428
610/772-2300 Telephone
610/772-2305 Facsimile
*Attorney of Record for Plaintiff*

HERBERT ODELL
Chamberlain, Hrdlicka, White, Williams & Martin
300 Conshohocken State Road, Suite 570
West Conshohocken, PA 19428
610/772-2300 Telephone
610/772-2305 Facsimile
*Of Counsel*

Dated: April 19, 2007

[11] The ruling is further limited to factually identical cases involving consolidated return years beginning before June 28, 2002. Under the successor regulation, Treas. Reg. § 1.1502-77, the Court's ruling would have no application even where the claim was filed by a non-existent party.

**CERTIFICATE OF SERVICE**

It is hereby certified that service of the foregoing RESPONSE TO UNITED STATES' MOTION FOR RECONSIDERATION was made on this 19th day of April, 2007, by electronically filing a copy of the same with the Court under the CM/ECF system with notification of such filing to Defendant's counsel, Stuart J. Bassin.

*/s/ Philip Karter*

PHILIP KARTER
Chamberlain, Hrdlicka, White, Williams & Martin
300 Conshohocken State Road, Suite 570
West Conshohocken, PA 19428
610/772-2300 Telephone
610/772-2305 Facsimile